

100 S. West Street, Suite 400 • Wilmington, DE 19801
Telephone 302.576.1600 • Facsimile 302.576.1100
www.ramllp.com

**Benjamin J. Schladweiler**
bschladweiler@ramllp.com

**<u>VIA E-FILING & HAND DELIVERY</u>**
The Honorable Mary Pat Thynge
844 N. King Street
Wilmington, DE  19801-3555

September 18, 2015
REDACTED PUBLIC VERSION

**Re:**  **_AVM Technologies LLC v. Intel Corporation_, C.A. No. 15-33-RGA**

Dear Judge Thynge:

The parties currently dispute provisions contained in two paragraphs in the proposed Protective Order.  [D.I. 79.]  AVM respectfully asks that the Court adopt AVM's proposals, which are reasonably calibrated to provide a level playing field in the face of Intel's near-stranglehold on vital technical information.  In contrast, Intel's proposals are a naked attempt to confer litigation advantage.  They would (a) impair AVM's review by permitting the unchecked placement of material on the inconvenient-to-access Secured Computers; (b) provide AVM inadequate tools for analyzing those materials on those Secured Computers; (c) limit AVM's access to the Secured Computers arbitrarily, by imposing a blanket three-business-day notice rule unrelated to any security concerns; and (d) place AVM's counsel and consulting experts at a disadvantage by providing Intel's consulting experts and counsel with a more user-friendly environment for reviewing the Secured Computers.

**A.  Intel Wants the Unfettered Ability to Add Unspecified New Types of Documents to the Secured Computers, but Is Not Willing to Provide AVM the Proper Data Formats and Tools on those Secured Computers (Paragraph 25).**

AVM's prior letter regarding the Protective Order explained the inherent difficulties in conducting circuit analysis in modern microprocessors, which have more than a _billion_ transistors.  [D.I. 45.]  It is critical that AVM's experts have access to the necessary technical materials in the proper formats, with the proper tools.  [D.I. 45 at 2; D.I. 66, _see_ McAlexander Dec. at ¶¶9-22.]  Intel's proposals are designed to thwart that objective.

**<u>Paragraph 25, First Sentence</u>**

AVM asks that the Court reject Intel's request for unfettered ability to produce any documents it wants on the Secured Computers under Intel's control, even if they are not within the categories to which the parties have already agreed —_without providing prior notice to AVM_.  Intel's proposal is blatantly unfair.  The materials on the Secured Computers are inconvenient and expensive for AVM to access and analyze.  The Secured Computers should be reserved only for those Intel materials that, _objectively_, are entitled to the highest level of secrecy.

The parties have already agreed (1) to production of certain sensitive materials, such as computer source code, on Secured Computers; and (2) to expand the types of materials that may

The Honorable Mary Pat Thynge
Page 2

be added to those Secured Computers beyond traditional "source code" to include "schematics, layouts, extracted netlists, transistor models, [and] performance verification data." [D.I. 79, ¶25.] AVM also recognizes that it is hypothetically possible that documents not coming within the previously-agreed categories may nevertheless be sufficiently confidential that they can be appropriately included on the Secured Computers. Thus, AVM agreed to include a catch-all category for other materials, even though Intel claimed that it could not identify any such other documents that would not fall within the previously agreed categories.

In exchange, AVM asks only that Intel be required to give advance notice of the types of additional documents that Intel proposes to add to the Secured Computers, so that AVM can object to the inclusion of materials that do not merit the resulting inconvenience and expense to AVM. Notice to AVM is necessary to ensure that 1) AVM knows what information is being produced on the computers and 2) that all documents meet the criteria for such highly confidential treatment. Given that Secured Computer production is generally reserved only for source code, and that AVM has already agreed to a significant expansion of the categories of documents to be produced in this manner, AVM's proposal that it be provided with notice and an opportunity to object to further expansion, is more than reasonable.

**Paragraph 25, Last Sentence ((g)(h))**

AVM asks that Intel be required to provide AVM with the appropriate tools to analyze the extracted netlists produced in native or industry standard format via the Secured Computers. [D.I. 79, ¶25, §§ (g), (h).] Unless AVM has the proper tools and formats, AVM cannot properly analyze the information, let alone perform the appropriate timing simulations. [*See* D.I. 45 at 2; D.I. 66, McAlexander Dec. ¶¶9, 12-16.] Indeed, Intel alleged in the prior litigation that such simulations were necessary to show infringement of the asserted patent. [*See* D.I. 59 at 4-5 (criticizing AVM for lack of simulations).]

Further, Intel has repeatedly shown that it has no problem resolving technical hurdles as soon as the Court orders production. [*See, e.g.,* D.I. 88 at 1.]

**B. Intel Cannot Reasonably Require 3-Business-Days' Notice For AVM To Access Documents on the Secured Computers (Paragraph 26).**

**Paragraph 26**

Intel demands that AVM be denied access to documents on the Secured Computers unless it provides notice to outside counsel three business days in advance. *AVM has already communicated that it is willing, as a professional courtesy, to endeavor to provide such notice.* But this is not good enough for Intel. It demands an absolute right to deny AVM access anytime that AVM does not provide the full three business day notice. [D.I. 79, ¶26.] Intel's proposal is unreasonable. There may be circumstances in which AVM cannot (or through administrative error, does not) provide such notice. The draconian restriction that Intel seeks would do nothing

to advance legitimate interests, but could unreasonably restrict AVM's ability to respond to the myriad professional and personal events that invariably occur during a lawsuit. AVM's proposal recognizes that it will provide reasonable notice; that three days is presumed to be reasonable; but that AVM cannot and should not be held to an arbitrary deadline. Intel's demand for three business days' notice is clearly a solution in search of a nonexistent problem. The Secured Computers are located at its outside counsel's offices, as Intel insisted. All that is required is for Intel's counsel to admit AVM into the room where the computer is kept. For weeks, AVM has provided three days' notice where possible. It intends to continue to do so.

### C. It is Unfair for Intel to Provide Its Counsel and Experts Better and Easier Access to Documents on the Secured Computers than It Provides to AVM (Paragraph 26).

**Paragraph 26**

Intel enticed AVM into agreeing to treat Intel's non-source code, technical material as "source code" to be produced under stringent restrictions on Secured Computers by promising that both parties' experts would have equal access. [*See* Hearing Tr. June 16, 2015, 22:11-17 ("And finally, Your Honor, we're going to be operating with the same materials here. Our experts are going to be looking at the same PDFs as their experts and using the same tools; in our case noted [sic] to prove noninfringement, in their case trying to prove infringement.").] Intel has now changed its mind and attempts to void its promise. It now seeks a provision in the protective order by which only its *testifying* experts—but not its counsel or its consulting experts—would be limited to the same strictures that bind AVM. While AVM believes that both sides should be subject to the same restrictions, it is willing to agree to a limited carve-out so that Intel's counsel can manage document production. [D.I. 79, ¶26.] But AVM vigorously opposes Intel's decision to provide a more user-friendly Secured Computer to its experts.

In this regard, Intel has recently admitted that it has set up a computer in its Los Angeles offices for its exclusive use. [2015-8-4 Frazier Ltr. to Lafferty at 2.] Despite repeated inquiry, Intel refuses to provide information about the LA computer, including "any differences/additions between the material and tools loaded on the LA computer compared to the Delaware and DC computers made available to AVM's counsel and experts." [2015-8-2 Lafferty Email to Frazier.] In fact, Intel has even refused to make a witness available for a Rule 30(b)(6) deposition on this topic. The only reasonable conclusion is that Intel has created a more user-friendly computer environment for its counsel and consulting experts, while simultaneously claiming that it is cost prohibitive to make the same set-up available to AVM's counsel and experts.

AVM respectfully requests that the Court adopt AVM's language, which will ensure that Intel and AVM counsel and consulting experts are working on an even playing field.

### D. Intel Has Withdrawn Its Objection to AVM's Proposal Regarding Paragraph 35.

**Paragraph 35**

Intel notified counsel for AVM via email on Thursday, September 17, 2015, that it was withdrawing its objection to AVM's proposal regarding Paragraph 35. Accordingly, the parties are in agreement that the Court should adopt AVM's Proposal for Paragraph 35.

The Honorable Mary Pat Thynge
Page 4

Respectfully submitted,

*/s/ Benjamin J. Schladweiler*

Benjamin J. Schladweiler (#4601)

cc:  All Counsel of Record