**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-33-RGA |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| INTEL CORPORATION, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**LETTER TO THE HONORABLE MARY PAT THYNGE**
**FROM DAVID E. MOORE, ESQUIRE**

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

Enclosures
cc: Clerk of Court (via Hand Delivery)
    Counsel of Record (via Electronic Mail)

*Attorneys for Defendant Intel Corporation*

Dated:  January 25, 2016
Public Version Dated: February 9, 2016
1216101/42223



1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**David E. Moore**
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Fax

January 25, 2016; Public Version Dated: February 9, 2016

**VIA ELECTRONIC FILING**
The Honorable Mary Pat Thynge
U.S. District Court for the District of Delaware          **PUBLIC VERSION**
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, Delaware 19801

    *Re:    AVM Technologies, LLC v. Intel Corporation, C.A. No. 15-33-RGA*

Dear Chief Magistrate Judge Thynge:

    Defendant Intel Corporation ("Intel") respectfully requests that the Court order Plaintiff AVM Technologies, LLC ("AVM") to produce documents relating to communications with ***third parties*** that have been improperly withheld based on relevance and privilege objections.

    On October 21, 2015, Intel served AVM with requests for production, seeking documents concerning communications and agreements between AVM and third-party potential and actual investors related to the patent-in-suit and this litigation ("the funding documents"). Ex. A (Intel's Third Set of Requests for Production) (Request Nos. 103-108). On November 24, 2015, Intel propounded interrogatories seeking information related to any interests or investment in AVM or the present litigation. Ex. B (Intel's Fourth Set of Interrogatories) (Nos. 20A-21A). On November 20, 2015, AVM served objections and responses to Intel's document requests, in which it refused to produce ***any*** documents responsive to Intel's requests, claiming that any such document "necessarily implicates privileged information and/or work product, and is irrelevant to any claim or defense in this case." Ex. C (AVM's Responses and Objections to Intel's Third Set of Requests for Production). AVM also refused to respond to Intel's interrogatories on similar grounds. Ex. D (AVM's Responses and Objections to Intel's Fourth Set of Interrogatories).

    On December 2, 2015, pursuant to the Court's Order Regarding Discovery (D.I. 82), Intel identified three email custodians and proposed narrow search terms to aid in AVM's collection and production of email. Among those terms were several terms crafted to obtain relevant discovery regarding AVM's communications with potential and actual investors. Ex. E (Dec. 2 letter from C. Specht to J. Knight) (terms 3-7 and 27-39). However, AVM refused to run searches for these terms on the ground that they were "focused on … irrelevant and/or privileged and protected information." Ex. F (Dec. 9 letter from J. Knight to C. Specht). The parties met and conferred regarding AVM's refusal to search for and produce the requested documents or respond to Intel's discovery requests on November 24 and December 16, 2015, and January 13, 2016. However, AVM continues to maintain its unsupported position that the funding documents and any factual information relating to litigation funding or investment in AVM are

not relevant to any claim or defense and/or are privileged. *See* Ex. G (Jan. 11 letter from J. Knight to T. Zubler). Moreover, despite its assertions of privilege, AVM has represented that it will not include any such withheld documents on a privilege log. *See id.*

AVM's blanket refusal to produce or log the funding documents is unjustified and improper. The funding documents are likely to contain information that is highly relevant to key issues in this litigation. For example, such documents likely reveal information regarding third parties' actual and potential investment in the patent-in-suit, which is indisputably relevant to the patent's valuation and therefore to damages. Such documents likely also contain statements by AVM, Mr. Tran, or the actual and potential investors evaluating the scope of the patent-in-suit that bear directly on liability issues (*e.g.*, AVM's and others' concerns about specific challenges to infringement and validity issues) in the litigation. Yet, without articulating any specific objection to Intel's requests, AVM has refused to search for and produce *any* responsive documents, describe any such withheld documents on a privilege log, or provide factual information regarding any interests in AVM or this litigation.

I. **AVM's Refusal To Produce The Funding Documents Based On Relevance Objections Should Be Rejected.**

Intel's discovery requests seek information that is relevant to the claims and defenses in the current litigation. Document Request Nos. 103 to 107 concern documents and communications relating to requests for funding and any resulting financing and funding agreements between AVM and third parties relating to the patent-in-suit, this litigation, and/or other litigations involving the patent-in-suit. *See* Ex. A. Similarly, Interrogatory Nos. 20A and 21A seek factual information regarding any investment in AVM or this litigation. *See* Ex. B. Such investment information is relevant to the valuation of AVM's patent, and therefore to damages. *In re IPCom GmbH & Co.*, 428 F. App'x 984, 985 (Fed. Cir. 2011) (affirming discoverability of documents relating to purchase price and valuation of patents); *see also Net2Phone, Inc. v. eBay, Inc.*, No. 06-CV-2469, 2008 WL 8183817, at *12 (D.N.J. June 26, 2008) (ordering production of valuation documents disclosed during negotiations with potential investors because "plaintiff embraced them in the context of a commercial event and defendants should have an opportunity to investigate the bases for valuations contained in these documents and challenge the plaintiff's present valuation position with them").

Moreover, documents exchanged between AVM and actual and potential investors are likely to contain analyses or statements by AVM or the investors regarding the scope of the patent-in-suit that bear directly on liability issues. AVM's own analyses of the patent-in-suit, including any identification of perceived strengths or weaknesses in its case, may provide evidence of the meaning of the patent claims, their application to the accused products, and invalidity through, for example, secondary considerations of obviousness. *See Conopco, Inc. v. Warner-Lambert Co.*, No. 99-CV-101, 2000 WL 342872, at *6 (D.N.J. Jan. 26, 2000) ("Actions and statements against interest of the owner of a patent or inventor may be considered by a court when construing the scope of a patent and are relevant to the issues of infringement and validity."); *see also Net2Phone*, 2008 WL 8183817, at *12 ("It would be unfair to allow plaintiffs to take one position in one context to advance its commercial purposes and preclude defendants from seeing if it took a different position in litigation. The defendants should be able to impeach plaintiff with its own statements or those it embraced on this topic."). Similarly,

January 25, 2016; Public Version Dated: February 9, 2016
Page 3

actual and potential investors' analyses of the patent, including any assessments of its
weaknesses, bears directly on the patent's value. For example, a potential investor's concerns
about whether the patent is valid and infringed are relevant to the hypothetical negotiation,
particularly to the extent those concerns affect the investor's willingness to finance the licensing
or enforcement of the patent.[1]

   For these reasons, courts—including courts in the Third Circuit—commonly allow
discovery relating to third-party investors in patent litigations. *See, e.g., Leader Techs., Inc. v.
Facebook, Inc.*, 719 F. Supp. 2d 373, 377 (D. Del. 2010) (ordering production of documents
exchanged between patentee and litigation financing companies despite claims that the
communications were privileged and work product); *Corning Inc. v. SRU Biosystems, LLC*, 223
F.R.D. 189, 190 (D. Del. 2004) (same); *Net2Phone*, 2008 WL 8183817, at *12 (same); *see also,
e.g., Santella v. Grizzly Indus., Inc.*, 286 F.R.D. 478, 483 (D. Or. 2012) (ordering production of
un-redacted version of document distributed to potential investors); *In re Google Litig.*, No. 08-
CV-03172, 2011 WL 6113000, at *3 (N.D. Cal. Dec. 7, 2011) (finding third-party discovery
requests to a venture capital firm that invested in party in patent litigation to be relevant and
discoverable); *BridgeLux, Inc. v. Cree, Inc.*, No. M8-85, 2008 WL 151344, at *2 (S.D.N.Y. Jan.
15, 2008) (compelling discovery from a third-party "important investor" who may have relevant
documents that the patentee "no longer possesses and has not produced"). Indeed, recently
proposed legislation would *require* the disclosure of the kind of information that Intel seeks at
the outset of a patent litigation, without the need for any discovery requests. *See* Innovation Act,
H.R. 9, 114th Cong. § 4(a) (1st Sess. 2015) (requiring disclosure of any entity with "a financial
interest in the patent or patents at issue or the plaintiff" upon the filing of the complaint and
defining "financial interest" to mean "with regard to a patent or patents, the right of a person to
receive proceeds related to the assertion of the patent or patents, including a fixed or variable
portion of such proceeds" and "with regard to the plaintiff, direct or indirect ownership or control
by a person of more than 5 percent of such plaintiff").

   Thus, AVM cannot reasonably claim that discovery related to litigation funding is not
relevant to the claims and defenses in this case. Indeed, the relevance of this discovery is borne
out by AVM's production of documents in this *very category* in the prior litigation—which it
*reproduced* in this case—that were indisputably relevant to both liability and damages. ██████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

[1] AVM's assertion that such documents are irrelevant because the appropriate time for assessing
damages is "long before any potential contacts with investors" is inapposite. Ex. J (Dec. 8, 2015
email from R. Baxter). AVM has not even identified the communications at issue, let alone the
dates on which they occurred. And, in any event, such valuations are relevant—and are certainly
*discoverable*—regardless of their date. *See, e.g., Oracle Am., Inc. v. Google Inc.*, No. 10-CV-
03561, 2012 WL 877125, at *3 (N.D. Cal. Mar. 15, 2012) (finding valuation dated four years
after the hypothetical negotiation to be relevant to the reasonable royalty analysis, explaining that
"[p]ost-infringement information can be helpful in assessing whether a royalty is reasonable.")
(citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333-34 (Fed. Cir. 2009)).

## II.    AVM's Blanket Assertions Of Privilege And Work Product Protection Should Be Rejected.

Despite the clear relevance of the funding discovery, AVM asserts a blanket claim of privilege over *all* documents and factual information responsive to Intel's requests. But AVM's generic recitation of the "attorney-client privilege, the work product doctrine, and/or any other applicable privilege or immunity" does not shield this discovery from disclosure. *See* Ex. C. Any such assertions should fail for several reasons.

*First*, AVM's generic and boilerplate privilege and work product objections are insufficient to carry its burden. *See Fruchtman v. Town of Dewey Beach*, 886 F. Supp. 2d 427, 427-28 (D. Del. 2012) ("A party objecting to discovery on the basis of privilege has the burden of establishing the existence and applicability of that privilege."). When responding to discovery requests, "claims of attorney-client privilege and work product protection do not excuse a party from *specifically identifying* the allegedly privileged item." *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1439 (D. Del. 1989) (emphasis added). Rather, a party asserting privilege must set forth "a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality" and "a party asserting work product protection must 'identify the withheld documents with sufficient particularly that the opposing counsel can intelligently argue that the privilege ought not to apply.'" *Id.*; *see also Sys. Am., Inc. v. Tyagi*, C.A. No. 97-42, 1997 WL 35386736, at *5 (D. Del. Feb. 20, 1997). To date, AVM has offered no basis for its generic claims of privilege and work product. Indeed, AVM has refused to even identify the specific documents that it alleges are privileged on a privilege log. *See* Ex. G; *see also In re Joy Global, Inc.*, C.A. No. 01-039, 2008 WL 2435552, at *4-5 (D. Del. June 16, 2008) (rejecting party's "blanket" assertion of privilege and work product and directing the party to describe the withheld documents on a privilege log).

*Second*, communications with third parties, including AVM's communications with actual and potential investors, are discoverable and not protected by any applicable privilege or work product. While AVM fails to identify the nature and scope of the documents that it seeks to withhold, courts have generally rejected claims of privilege and work product seeking to shield communications between a patentee and its investors. *See, e.g., Leader Techs.*, 719 F. Supp. 2d at 377; *Corning*, 223 F.R.D. at 190; *Net2Phone*, 2008 WL 8183817, at *12. This case is no different, particularly given AVM's refusal to identify the allegedly privileged documents or any basis for their privilege and work product objections.

*Third*, to the extent that any applicable privilege were to protect the funding documents from disclosure (none do), any such privilege was *waived* when AVM selectively produced certain litigation funding documents in this case. *See, e.g., Net2Phone*, 2008 WL 8183817, at *12-13 (subject matter waiver over valuation and patent opinion documents where patentee disclosed documents in those categories and ordering production of withheld documents).

## III.    Conclusion

Intel respectfully requests that the Court order AVM to produce documents, including email, responsive to Intel's document Request Nos. 103 to 107 and to respond to Interrogatory Nos. 20A and 21A.

The Honorable Mary Pat Thynge
January 25, 2016; Public Version Dated: February 9, 2016
Page 5


Respectfully,

/s/ David E. Moore

David E. Moore

DEM:nmt/1216101/42223

Enclosures
cc:     Clerk of Court (via hand delivery, w/encls.)
        Counsel of Record (via electronic mail, w/encls.)


January 28, 11:00 a.m. Teleconference, Attendees for Intel:

        David E. Moore, Potter Anderson & Corroon LLP

        David C. Marcus, WilmerHale LLP

        Todd Zubler, WilmerHale LLP

        Brad Waugh, Intel Corp.