IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, | ) |
| Plaintiff, | ) C.A. No. 15-33-RGA |
| v. | ) **JURY TRIAL DEMANDED** |
| INTEL CORPORATION, | ) **PUBLIC VERSION** |
| Defendant. | ) |

LETTER TO THE HONORABLE MARY PAT THYNGE
FROM DAVID E. MOORE, ESQUIRE

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000

Enclosures
cc: Clerk of Court (via Hand Delivery)
    Counsel of Record (via Electronic Mail)

dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

Dated: January 26, 2016
Public Version Dated: February 10, 2016
1214949/42223



**Potter Anderson Corroon** LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**David E. Moore**
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Fax

January 26, 2016; Public Version Dated: February 10, 2016

**VIA ELECTRONIC FILING**
The Honorable Mary Pat Thynge
U.S. District Court for the District of Delaware                    **PUBLIC VERSION**
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, Delaware 19801

    Re:    *AVM Technologies, LLC v. Intel Corporation*, C.A. No. 15-33-RGA

Dear Chief Magistrate Judge Thynge:

    AVM's motion to compel would impose a substantial burden on Intel well out of proportion to the needs of this case. At issue are AVM's broad-sweeping interrogatories and requests for production that seek information about *any Intel product* that uses dynamic circuits—*irrespective* of whether those products have been accused of infringing the patent-in-suit, U.S. Patent No. 5,859,547 ("the '547 patent"). Similarly at issue is AVM's request for a multitude of papers from other Intel litigations that involve *neither dynamic circuits nor the accused products in this case*. AVM's requests seek irrelevant information and are inconsistent with Federal Rule of Civil Procedure 26(b)(1), which requires that discovery be "proportional" to the needs of the case. These demands come on top of Intel's extensive production, which spans over *25 million pages* of documents and over 6 terabytes of data on the Secured Computers. This production is among the largest—if not the largest—that Intel has ever shouldered in patent litigation, which is striking given that it has been occasioned by the assertion of a single patent. While AVM has a right to assert its patent and seek discovery, that discovery should not be unbounded. At some point, there should be limits.

**I.    Intel's Prior Microprocessor Products**

    The discovery requests at issue seek information for *any Intel product* that uses dynamic circuits without regard to whether that product is accused of infringement.[1] Intel has answered interrogatories and produced documents for the four Intel products accused in this case—Sandy Bridge, Ivy Bridge, Haswell, and Broadwell. And Intel has re-produced the substantial volume of documents it produced for the Pentium 4 and Core 2 products accused in the prior litigation.

    Nevertheless, AVM continues to request a broad range of information on Intel products that have *never been accused* of infringing the '547 patent. *See* Ex. 1 [11-23-15 Ltr. from

---

[1] *See, e.g.*, D.I. 153, Ex. A at 11 ("[A]ll documents ... Relating to the reliability of *any Dynamic Circuit in any Intel product*..."); *id.*, Ex. B at 48 ("All Documents and Communications Relating to any waivers or exceptions made during the design process of *any microprocessor*...").

Knight to Zubler] at 1. AVM's proposed narrowing of these requests—to any Intel product dating to the first time Intel used ▉▉▉▉▉▉▉▉—is not meaningful: AVM's requests would still require Intel to search across the company for documents dating back *well over 20 years*.

AVM does not need documents concerning Intel's use of ▉▉▉▉▉▉ *over the past two decades* in order to analyze whether the accused products (all of which were released in the last five years) infringe AVM's patent. Intel has produced large volumes of information about its design and development of the accused products in this case as well as the products accused in the prior case (which were developed in the late 1990s and early 2000s). Intel also has produced the complete schematics and layout data, as well as many design documents, for the prior art P6 processor (developed in the early 1990s).[2] AVM's demand that Intel also produce documents covering many more products extending back over twenty years is unreasonable. Although there may be design carryover between products, AVM's assertion that it needs 20-year-old documents to determine what Intel thinks of AVM's supposed invention. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Moreover, there is nothing in the record to suggest that Intel documents about older products will say anything different.

The burden of collecting this additional information would be substantial. Although AVM claims it is seeking only narrow types of documents about Intel's old products, that claim—even if true—would not meaningfully lessen the burden. Trying to find specific types of documents dating back over a decade is like searching for a needle in a haystack, and the largest burden comes from locating the documents in the first place, not from the volume of documents produced. Locating these documents would require Intel to conduct a *worldwide search*, interviewing *dozens of people* and then spending hundreds of hours trying to find documents. AVM's purported rationale for needing this information—to understand the history of Intel's use of dynamic logic—does not justify such a burdensome search. Given the substantial volume of actually relevant documents that Intel has produced, AVM's requests are not "proportional to the needs of the case" and are inconsistent with Fed. R. Civ. P. 26(b)(1).

## II.     Patent Litigation Documents

AVM's request for materials from other Intel litigations is also unreasonable and is hardly tailored, as AVM asserts, to testing whether Intel's assertions about the accused dynamic circuits "are contradicted by its positions in earlier cases." D.I. 153 at 2. To the contrary, AVM's request demands virtually all litigation documents for any Intel patent-infringement litigation that involved dynamic circuits or *any of the products* accused in this matter—even if the litigation had nothing to do with any issue in this case.[3]

---

[2] In addition, through its search for documents relating to the accused products, Intel produced nearly *100,000 documents* relating to two more non-accused products—Nehalem and Westmere.

[3] *See* D.I. 153, Ex. B at 63 ("All complaints, answers, summary judgment motions, expert reports, deposition transcripts, and Intel's discovery responses from any other district court litigation or ITC proceeding involving patent infringement of or by the Accused Products or any

AVM has specifically identified more than 20 Intel litigations for which it wants voluminous litigation documents, but despite Intel's repeated requests, AVM has never articulated *any* connection between the technology at issue in those litigations and the patent in this case. Indeed, AVM has not identified a single prior Intel litigation relating to dynamic circuits. AVM's letter to the Court merely repeats its conclusory assertion that any litigation involving the accused products, dynamic circuits, or microarchitecture is necessarily relevant. But that assertion fails to show the required "tangible connection" between the technology at issue in this case and in the prior litigations. *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 382 (D. Del. 2009) (requiring "a tangible connection between the technology at issue in each suit to justify a finding of relevance"); *Vasudevan Software, Inc. v. MicroStrategy Inc.*, No. 11-cv-06637-RS-PSG, 2013 WL 597655, at *3-5 (N.D. Cal. Feb. 15, 2013) ("The starting point of the 'technological nexus' standard is not the product; the starting point is the patent-at-issue. *Similarity thus arises from whether the other litigation involved patents, technology, or features similar to the patent-at-issue, not whether the other litigation involved patents, technology, or features similar to the product at issue.*" (emphasis added)).[4]

As Intel has repeatedly stated in correspondence and conferences with AVM, Intel would be willing to consider AVM's request if AVM were to show a reasonable connection between a limited number of litigations and the claims or defenses in this case. *See, e.g.*, Ex. 3 [1-23-16 Email from Zubler to Knight] at 1; Ex. 4 [12-3-15 Ltr. from Zubler to Knight] at 1, ¶ 2; Ex. 5 [10-21-15 Ltr. from Zubler to Knight] at 6, ¶ 21. AVM, however, has not done so.

### III. Rule 30(b)(6) Deposition

AVM is also wrong that Intel violated its obligations with respect to AVM's Rule 30(b)(6) custodial deposition notice. Intel provided a witness, Intel Fellow David Papworth, to testify about AVM's legitimate noticed topics, but objected to unwarranted "discovery about discovery." *See* Ex. 6 [12-31-15 Ltr. from Zubler to Lafferty]. AVM proceeded to take Mr. Papworth's deposition, but then told Intel it would move to compel another witness to address topics related to discovery about discovery. AVM flatly rejected Intel's proposals to address those topics via written discovery or correspondence.

To avoid burdening the Court with another discovery dispute, Intel provided AVM with a detailed summary of its document production efforts thus far. *See* Ex. 7 [1-22-16 Ltr. from Zubler to Lafferty]. As explained in that letter, Intel's summary provides all of the information AVM could reasonably expect to obtain in a Rule 30(b)(6) deposition, and this approach is consistent with case law that AVM has cited to Intel. Intel believes the information provided in its letter should moot this issue.

### IV. AVM's Remaining Complaints

AVM's letter ends with a list of unsupported complaints about discovery issues that

---

Dynamic Circuits.").

[4] Additionally, collecting and producing these litigation documents is not as simple as "pulling the litigation papers," as AVM has suggested. ████████████████████
████████████████████

The Honorable Mary Pat Thynge
January 26, 2016; Public Version Dated: February 10, 2016
Page 4

either are without merit or have already been resolved. *First*, for no discernible reason, AVM complains that Intel once stated (eight months ago) that it did not believe there were "dynamic circuits" in its Accused Products. AVM, however, has taken this statement out of context: it was made during a scheduling negotiation and was meant to be an objection to AVM's use of a disputed claim term—"dynamic *logic* circuit"—in a scheduling submission to the Court. This statement had *zero* impact on Intel's document production, which has always produced documents about dynamic circuits in Intel's products.

*Second*, AVM wrongly accuses Mr. Papworth of giving inconsistent testimony. Mr. Papworth never testified that "production of layouts in a usable format" was impossible, as AVM claims. Instead, he testified that producing layouts *in a specific format that AVM requested* was impossible. *See* D.I. 61, ¶ 38 ████████████████████████████████████████; *id.* ¶¶ 18-21, 49. In July, AVM's expert testified that layouts in any format would serve AVM's purposes. Ex. 8 [Hearing Tr.] at 196:8-197:12. There was no discrepancy between Mr. Papworth's testimony and Intel's later production of layouts ██████.

*Third*, with regard to the performance verification data, this issue was resolved before the November substantial completion deadline. *See* Ex. 9 [11-20-15 Ltr. from Sewall to Lafferty].

*Fourth*, with respect to AVM's allegation that Intel has failed to provide the requested simulation tool, Intel did provide a Windows version of the HSpice software tool in early October. After AVM complained of compatibility issues in mid-November, Intel has worked continuously to provide a Linux version of the software. Intel has provided consistent updates on its progress, and Intel is now close to finalizing the new version. In the end, AVM merely complains that Intel was not able to complete the project as fast as AVM would have liked.

*Finally*, Intel met the deadline for substantial completion. *See, e.g.*, Ex. 10 [12-4-15 Email from Specht to Lafferty] at 1; Ex. 11 [1-13-16 Email from Sewall to Knight] at 1. By November 20, 2015, Intel had produced 867,139 documents—over 90 percent of Intel's document collection to date, and the vast majority of what Intel expects to produce in this litigation.[5]

                              Respectfully,

                              */s/ David E. Moore*

                              David E. Moore

DEM:nmt/1214949/42223

Enclosures
cc:    Clerk of Court (via hand delivery, w/encls.)
        Counsel of Record (via electronic mail, w/encls.)

---

[5] Most of the post-November 20 production consists of email, which is on a separate timetable under the Court's ESI order and the parties' agreement.