**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INTEL CORPORATION, )<br>)<br>Defendant. ) | C.A. No. 15-33-RGA<br><br>**JURY TRIAL DEMANDED** |

**INTEL CORPORATION'S NOTICE OF DEPOSITION TO
<u>AVM TECHNOLOGIES, LLC.</u>**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30, Defendant Intel Corporation ("Intel") will take the deposition upon oral examination of AVM Technologies, LLC ("AVM") beginning at 9:00 a.m. local time on April 7, 2016, at the offices of Perkins Coie, 1120 NW Couch Street, Portland Oregon 97209-4128. The deposition will be conducted before an officer authorized by law to administer oaths, and the testimony will be recorded stenographically and may be videotaped.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), AVM is required to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the subject matters described in Schedule A, attached hereto. The person(s) so designated shall be the person(s) in AVM's control most knowledgeable regarding the subject matters described in Schedule A. It is requested that AVM provide Intel with written notice, no later than five (5) business days in advance of the date upon which the depositions is scheduled of: (1) the name and employment position of each designee; and (2) the topics in Schedule A as to which each such designee will testify.

The deposition will proceed in accordance with the Federal Rules of Civil Procedure. You are invited to attend and cross-examine.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| David C. Marcus<br>WILMER CUTLER PICKERING HALE<br>    AND DORR LLP<br>350 South Grand Avenue<br>Los Angeles, California 90071<br>Tel: (213) 443-5300 | By:   /s/ Bindu A. Palapura<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE 19801<br>    Tel: (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com |

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
Kevin A. Goldman
Claire M. Specht
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

Jason Kipnis
WILMER CUTLER PICKERING HALE
    AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel: (650) 858-6000

Dated: March 15, 2016
1218883 / 42223

*Attorneys for Defendant and Counterclaimant Intel Corporation*

**SCHEDULE A**

**Definitions**

1. "AVM," "You," and "Your" means AVM Technologies, LLC. and any of its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, predecessors, parents, subsidiaries, affiliates, divisions, or departments, including Translogic Technology, Inc., or any of its officers, directors, principals, agents, employees, attorneys, representatives, partners, predecessors, parents, subsidiaries, affiliates, divisions, departments, or Joseph Tran.

2. "Translogic," means Translogic Technology, Inc., and any of its past or present officers, directors, principals (including Joseph Tran), agents, employees (including Mark Acuff), attorneys, representatives, partners, predecessors, subsidiaries, affiliates, divisions, or departments.

3. "Intel" means Intel Corporation and any of its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, predecessors, subsidiaries, affiliates, divisions, or departments.

4. "Person" means any natural person or any business, legal or governmental entity or association.

5. "'547 Patent" means United States Patent No. 5,859,547.

6. The "Patent-in-Suit" means United States Patent No. 5,859,547, and any other patent later asserted by AVM in this litigation.

7. "Related Patents" means all patents and applications in the family of the '547 Patent, including any abandoned applications.

8. "Accused Intel Product, Process, or Instrumentality" means any product, device, apparatus, process, method, act, or other instrumentality made, used, offered for sale, sold, or

practiced by or on behalf of Intel, that AVM alleges infringes or induces infringement of the Patent-in-Suit.

9. "Present Litigation" means the lawsuit filed by AVM against Intel on January 12, 2015, Civil Action No. 15-00033-RGA (D. Del.)

10. "Prior Litigation" means the lawsuit filed by AVM against Intel on July 16, 2010, Civil Action No. 10-610-RGA (D. Del.)

11. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12. "Concerning" means relating to, alluding to, referring to, constituting, describing, discussing, evidencing, or regarding.

13. "Document" is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a) and shall be construed to mean, without limitation, any written, printed, typed, stored, photostated, photographed, recorded or otherwise reproduced communication, compilation or reproduction including computer or electronically generated or stored information or data, whether assertedly privileged or not. "Document" specifically includes all forms of electronic data. A draft or nonidentical copy is a separate document within the meaning of this term.

14. "Related to" and "relating to" mean referring to, summarizing, reflecting, commenting on, constituting, containing, embodying, mentioning, showing, comprising, evidencing, discussing, or describing.

15. "Identify" when referring to a document, means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

16. "Identify" when referring to a person, means to provide, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the

present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requests.

17. "Identify" as used herein to apply to an oral communication shall mean to state the date and place of the communication, the substance thereof, and to identify all persons who participated in or heard the communication.

18. Intel expressly reserves the right to supplement or modify the following topics or to serve additional Notice(s) of Deposition with novel topics at a later time.

**Topics**

1. The formation and activities of AVM, including, without limitation:

    a) the source and amount of any capital used to fund operations at AVM; and

    b) AVM's corporate structure, employees, and products.

2. The substance and content of any AVM Board Meeting or Translogic Board meeting at which Joseph Tran or any other AVM employee was present, including minutes or memoranda related to any such meeting, where the topics of Intel, any Accused Intel Product, Process, or Instrumentality, the '547 Patent, the Prior Litigation, the Present Litigation, or dynamic logic were discussed.

3. The '547 Patent and all Related Patents.

4. The conception and reduction to practice of the inventions claimed in the '547 Patent and all Related Patents.

5. The drafting, preparation, and prosecution of the applications for the '547 Patent and all Related Patents.

6. All known prior art to the '547 Patent.

7. The inventions claimed in the '547 Patent and all Related Patents, including any alleged improvements over or differences from the prior art.

8. Any advantages or disadvantages of the inventions claimed in the '547 Patent and all Related Patents.

9. Any ownership interest and/or assignment of the '547 Patent and all Related Patents, including, without limitation, any agreement or communication relating to those ownership interests and/or assignments or any consideration provided for or received in connection with those ownership interests and/or assignments.

10. Any investment in the '547 Patent, in all Related Patents, or in AVM, including investment in any litigation, legal proceeding, offer to license, or negotiation related to the '547 Patent, including, without limitation:

    a) any agreement or communication related to such investments; and

    b) any consideration offered, provided for, or received in connection with any such investment.

11. Any ownership interests in AVM, including, without limitation, any agreement or communication relating to any ownership interest in AVM or any consideration provided for or received in connection with ownership interests in AVM.

12. Any valuation of the '547 Patent, including any valuation prepared by or on AVM's behalf, at AVM's request, in AVM's possession, or communicated to AVM, including any draft, formal, or informal valuation of the '547 Patent.

13. All communications, presentations, and documents of any kind relating the '547 Patent, Intel, any Accused Intel Product, Process, or Instrumentality, the Prior Litigation, or the Present Litigation.

14. Any relationship, past or present, between AVM and Translogic or AVM and any former Translogic employee, including, without limitation:

    a) any contact or communication between Translogic, or anyone associated with Translogic, and AVM related to the '547 Patent, Intel, any Accused Intel Product, Process, or Instrumentality, or dynamic logic, including the date of such contact or communication and the substance thereof.

15. Any compensation of, or payment to, Joseph Tran by Translogic or AVM between 2000 and the present that relates directly or indirectly to the '547 Patent.

16. AVM's business activities from 2010 to the present.

17. AVM's revenues, profits, investments, and losses from 2010 to the present, including without limitation:

      a)    AVM's actual and projected revenues, profits, and losses associated with its use, sale, or licensing of the '547 Patent.

18. AVM's assets from 2010 to the present.

19. All communications between Intel and AVM, Joseph Tran, and/or Translogic concerning the '547 Patent.

20. Any reverse engineering or tear-down testing performed on any Intel product, or any other product, by AVM, on AVM's behalf, at AVM's request, or in AVM's possession including, without limitation:

      a)    date of the reverse engineering or tear-down performed;

      b)    identity of the Person(s) performing or involved in the reverse engineering or tear-down testing;

      c)    the identity of the Intel product on which the reverse engineering or tear-down testing occurred;

      d)    the results of the reverse engineering or tear-down testing;

      e)    the identity of the AVM representative or Translogic representative most knowledgeable about the reverse engineering or tear-down testing; and

      f)    the identity of all documents relating to any reverse engineering or tear-down testing.

21. AVM's Complaint, including its allegations that Intel infringes the '547 Patent.

22. Any evidence possessed by AVM that the Intel Accused Products, Processes, and Instrumentalities "are materially different from the designs that were the subject of" the Prior Litigation.

23. Any evidence possessed by AVM of indirect infringement of the '547 Patent, including infringement under 35 U.S.C. § 271(b), 271(c), and 271(f).

24. Any evidence possessed by AVM of willful infringement of the '547 Patent.

25. Joseph Tran's and AVM's first awareness of any Accused Intel Product, Process, or Instrumentality, including without limitation:

        a)      Joseph Tran's and AVM's first awareness that any Accused Intel Product, Process, or Instrumentality allegedly infringes the '547 Patent.

26. Joseph Tran's and AVM's first awareness of Intel's alleged infringement of the '547 Patent.

27. Any notice given to Intel of the '547 Patent, the application that resulted in the '547 Patent, and/or Intel's alleged infringement of the '547 Patent.

28. Any secondary considerations or other objective evidence of non-obviousness, including without limitation:

        a)      any praise for the invention of the '547 Patent;

        b)      any copying of the invention of the '547 Patent;

        c)      any commercial success of products practicing the '547 Patent;

        d)      any long felt and unresolved need satisfied by the invention of the '547 Patent;

        e)      any unexpectedly superior results achieved by the invention of the '547 Patent over the prior art; and

        f)      any teaching away from the invention of the '547 Patent by people skilled in the art.

29. The identity of any products or prototypes that practice or practiced the '547 Patent, including without limitation:

        a)      any Accused Intel Product, Process, or Instrumentality;

        b)      any product or prototype made or designed by Intel;

        c)      any product or prototype made or designed by AVM;

        d)      any product or prototype made or designed by third parties.

30. Any non-infringing alternatives to the '547 Patent.

31. The manner in which the invention claimed in the '547 Patent impacts the performance of microprocessors.

32. Any damages that AVM has suffered or will suffer as a consequence of Intel's actions, including without limitation:

   a) any lost sales, lost profits, reasonable royalties, price erosion, or any other damages; and

   b) any license agreements that are economically and technologically comparable to a license covering the '547 Patent.

33. Any harm that AVM has sustained or will sustain as a result of Intel's actions, including any monetary harm, non-monetary harm, and any irreparable harm.

34. Any portion of revenue from the sale of any Accused Intel Product, Process, or Instrumentality that is attributable to the invention claimed in the '547 Patent as opposed to other features and factors.

35. Any relationship between the features of the '547 Patent and customer demand for the Accused Intel Product, Process, or Instrumentality, including without limitation:

   a) any evidence possessed by AVM that customers of the Accused Intel Product, Process, or Instrumentality have ever been aware of the patented features of the '547 Patent; and

   b) any evidence possessed by AVM that the patented features of the '547 Patent are the basis for demand of the Accused Intel Product, Process, or Instrumentality.

36. The value of the patented features of the '547 Patent, including without limitation:

   a) any improved performance and/or efficiency of any Accused Intel Product, Process, or Instrumentality; and

   b) any price increases or premiums for any Accused Intel Product, Process, or Instrumentality caused by the patented features of the '547 Patent.

37. Any policy, practice, or custom of AVM regarding licensing.

38. The identity and location of any document or communication related to any of the above topics.

39. Any policy, practice, or custom of AVM regarding document retention, preservation, and/or destruction.