IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, a Delaware Limited Liability Company, Plaintiff, v. INTEL CORPORATION, a Delaware Corporation, Defendant. | C.A. No. 15-33-RGA **JURY TRIAL DEMANDED** **REDACTED PUBLIC VERSION** |

**[SEALED] LETTER TO THE HONORABLE MARY PAT THYNGE FROM BENJAMIN J. SCHLADWEILER REGARDING DISCOVERY DISPUTE**

ROSS ARONSTAM & MORITZ LLP
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

Enclosures
cc: *via hand delivery to The Honorable Mary Pat Thynge*

Dated: March 18, 2016



100 S. West Street, Suite 400 • Wilmington, DE 19801
Telephone 302.576.1600 • Facsimile 302.576.1100
Benjamin J. Schladweiler
bschladweiler@ramllp.com

Dear Chief Magistrate Judge Thynge                                      March 18, 2016

### I. AVM's Privilege Log Is Not Properly Before the Court.

Intel's Point I consists almost exclusively[1] of complaints regarding AVM's privilege log and documents withheld on the basis of privilege. (D.I. 208 at 1-2). But Intel never indicated that it would raise these issues in this discovery dispute, or that the parties were at an impasse. (Ex. A, March 4, 2016 email) (Intel's counsel highlighting in yellow the issues for this discovery conference). Indeed, the first time the parties met and conferred on the privilege issues was March 8 (Ex. B, March 9, 2016 email), a full day after Intel contacted the Court seeking this conference. (D.I. 200). And the parties never reached an impasse on the issue. Just three days ago Intel stated it was "considering [AVM's] position" on these very issues, and that was the last time the parties discussed the issues before Intel filed its dispute letter. (Ex. C, March 15, 2016 email).

Intel's litigation by ambush tactics violate this Court's Discovery Order (D.I. 37) and Local Rule 7.1.1, and deprive AVM of a fair opportunity to respond to Intel's letter brief. While Intel had nearly two weeks to craft its submission, AVM had a 24-hour response time. This severely prejudiced AVM's ability to address these newly raised issues. In order to assure fairness, AVM respectfully requests that the Court postpone AVM's response to and the Court's consideration of Intel's Point I until the parties have a chance to adequately meet and confer on the issue. *C.f.*, *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 WL 1135739, at *1-2 (D. Del. Mar. 23, 2010) (denying motion to compel for failing to comply with D. Del. LR 7.1.1); *Interdigital Commc'ns Inc. v. Nokia Corp.*, 13-cv-10 (D. Del. Mar. 26, 2015) (D.I. 449) (same).

### II. Intel is Not Entitled to Discovery of AVM's Analysis of the Accused Products.

Intel is not entitled to AVM's underlying analysis for its Infringement Contentions. Such analysis, performed by AVM's attorneys and consultants of the data *Intel produced* for the Accused Products, is quintessential work product and trial preparation material, and is protected by Rule 26(b)(3). Producing the "scripts" Intel seeks would be akin to deposing AVM's attorneys and consultants on how they conducted their infringement analyses. Intel's motion to compel should be denied.

AVM spent months analyzing Intel's data for the Accused Products and provided a specific identification of each and every circuit that it alleges infringes the asserted claims. Tellingly, Intel does not provide the Court with an example of the reports that are the subject of its motion. (Ex. D).[2] They are much more than "computerized lists," providing detailed

---

[1] Although Point I also includes a short discussion of Intel's general complaints that the size of AVM's document production is intrinsically suspect (D.I. 208 at 1), Intel has impossibly intertwined this with the improperly raised privilege issues.

[2] Despite multiple requests, Intel did not timely provide AVM with a copy of the reports from the Secured Computer. AVM will provide a copy to the Court as soon as it receives the information.

information about each circuit, including which claims are infringed and the specific pieces of Intel data that correspond to individual claim elements.  Counsel and its experts selected each of these circuits—now totaling ▇▇▇▇ circuits—from billions of potential circuits after analyzing terabytes of data Intel produced only on the Secured Computers.  This analysis—much of which is embodied in "scripts" AVM generated on the Secured Computer—is what Intel seeks to discover.  But *all of the underlying data* cited to, and therefore relied on, in AVM's Infringement Contentions was produced by Intel.  Intel knows the conditions under which the data was created and can perform the exact same analysis AVM performed to determine whether the identified circuits infringe.

**AVM's Infringement Contention Analysis is Opinion Work Product.**  The selection of infringing circuits, the data analyzed, and the criteria AVM applied to select these circuits is "[c]ore or opinion work-product," which encompasses the "mental impressions, conclusions, opinion or legal theories of an attorney or other representative of a party concerning the litigation," and is "generally afforded near absolute protection from discovery."  *In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997*); see also Hickman v. Taylor*, 329 U.S. 495, 511 (1947).  Similarly, the methods employed by AVM—including any "scripts" created as part of that analysis—would inherently reflect this underlying analysis, including (1) what information was considered; (2) what information was not considered; (3) why some circuits were identified as infringing and others were not; and (4) the various criteria AVM used to eliminate circuits that might otherwise infringe, if any.  Intel all but admits this is what it seeks.  (D.I. 208 at 4 ("the parameters that AVM alleges create an infringing circuit")).  But discovery about the creation of AVM's infringement contentions is not appropriate.  *Sloan Valve Co. v. Zurn Indus.*, 2012 WL 5499412, at *3 (N.D. Ill. Nov. 13, 2012) ("how [patentee], its consultants, and its attorneys came to the conclusions reflected in the infringement contentions is not relevant to any party's claim or defense.").

Intel's conclusory statement that the information it seeks is akin to "search terms" and "testing parameters" that are "routinely discoverable" is incorrect.  First, that information is not "routinely discoverable."  *See, e.g., Phillips Elec. N. Am. Corp. v. Universal Elecs. Inc.,* 892 F. Supp. 108, 110 (D. Del. 1995) (holding that tests and analyses performed by plaintiff's employees were immune from discovery because they were conducted at the direction of counsel in anticipation of litigation).  Second, AVM's analysis of Intel's data is not akin to "testing parameters," which relate to the *creation* of underlying data rather than an analysis of data already produced by Intel.  Thus, Intel's reliance on *Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*, where the dispute was over new *underlying data* resulting from actual testing of the Accused Product, is misplaced.  2013 WL 812484, at *3 (D. Mass. Mar. 4, 2013).

**Further, AVM Did Not Waive Protection By Disclosing The Results of Its Analysis.**  Intel alleges that AVM "relies" on "computer scripts" for its infringement contentions.  This is not correct.  The only *data* that AVM relies on is what Intel produced for the Accused Products.  AVM utilized the underlying analysis of that data—including its attorneys' mental processes and any "scripts" developed specifically for the purpose of reviewing and organizing this data—to the same extent that any attorney utilizes his or her analysis of data to prepare Infringement Contentions.  Indeed, if this can be termed "reliance," every interrogatory response, deposition question, or argument made would subject attorneys to discovery of their mental impressions.

*See United States v. Nobles*, 422 U.S. 225, 240 n.14 (1975).  But simply providing the results of an analysis does not waive protection of the underlying analysis.  *See Fast Memory Erase, LLC v. Spansion, Inc.,* 2009 WL 4884091, at *2 (N.D. Tex. Dec. 16, 2009) (finding no waiver of testing data incorporated into demonstrative aids at Markman hearing).

**Intel Cannot Show Substantial Need for AVM's Work Product.**  The mental impressions and processes of AVM's counsel and consultants used to prepare its Infringement Contentions is opinion work product that "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. U.S.*, 449 U.S. 383, 401 (1981).  But even if it was not opinion work product, Intel's admission that it "could attempt to run its own scripts" and thereby perform the same analysis AVM performed on the data eviscerates any claim of "substantial need." *Reckitt Benckiser LLC v. Amneal Pharms.*, *LLC*, 2012 WL 2871061, at *6-7 (D.N.J. July 12, 2012) ("where a party has the ability to 'perform its own tests', '[s]uch testing would not be [considered] an undue hardship'"); *see Sicurelli v. Jeneric/Pentron Inc.,* 2006 WL 1329709, at *3 (E.D.N.Y. May 16, 2006) (to obtain work product, party must "demonstrate that it cannot obtain the substantial equivalent of the information it seeks.").  Further, the large number of infringing circuits does not justify invading AVM's work product, else work product protection would be eviscerated in any complex case.  Finally, Intel's claim that it is entitled to AVM's work product because it does not have sufficient information to understand AVM's infringement contentions is simply not true.  (*See, e.g.*, Ex. D).  Even so, if Intel required more information to understand AVM's contentions, it could have—but chose not to—file a motion for clarification.

**The Proper Time for Any Such Discovery Is After Expert Reports.**  When AVM produces its expert reports, any data that its *testifying* expert considers will be identified, and any analysis he intends to rely on for his opinion will be disclosed.  If the expert relies on any "scripts," they will be produced, and Intel will have ample opportunity to review that information and depose the witness.  *See JDS Therapeutics, LCC v. CVS Pharmacy, Inc.*, 2015 WL 6459092, at *1-2 (S.D.N.Y. Oct. 21, 2015) ("defendant submits that it 'needs to understand the basis for the allegations against it, including the testing necessary to support Plaintiffs' claims' and that it 'cannot get that information from another source.'  This entreaty is unpersuasive, however, because, as plaintiffs observe, any expert tests that they intend to use as evidence in this action will be timely disclosed to defendant in accordance with the expert disclosure deadlines set in the case management plan.").

### III. AVM Has Provided Intel with All Available Information Regarding Its Damages.

Intel paints a misleading[3] picture of the state of discovery.  More than nine months ago, AVM asked Intel to identify key damages documents and information including sales, revenues, costs, and profits for the Accused Products.  (Ex. E at 7–8).  Intel failed to specifically identify

---

[3] Intel alleges, for example, that "AVM has stated that it will not provide any further information during fact discovery."  This is simply not true.  During numerous meet and confer sessions and in its supplemental response, AVM said it would further supplement as information becomes available, a position confirmed in the very supplemental response at issue.  (Ex. G at 3; Ex. H, March 4, 2016 email).

this data under Rule 33(d) until March 2016. (Ex. F at 3-5). Nevertheless, AVM supplemented its response to Intel's Interrogatory No. 19A, which sought the "bases for all damages," and specifically asked for "an identification of any license agreements that AVM contends *may be relevant* to AVM's purported damages." (Ex. G at 1-2) (emphasis added). AVM described (in as much detail as it could, given Intel's delays) the bases for its damages claims, including explanations of some of the analyses underway by its experts. ████████████████████████ ████████████████████████████████████████████████ AVM has thus fully answered the portion of Interrogatory No. 19A relating to licenses, as Intel sought only information regarding "*any license*" that "*may be relevant.*" (*Id.* at 1-2).

AVM's response to Interrogatory 19A is completely proper given the current state of discovery. As Intel itself stated, AVM must identify information during fact discovery "*[i]f AVM is aware of factual information* relating to damages." (D.I. 208 at 4) (emphasis added). AVM has complied. (Ex. G at 3-4). AVM simply has no more information to share with Intel at this time, in large part due to Intel's own discovery delays. For example, Intel has not yet identified Rule 30(b)(6) witnesses on licensing, pricing, or sales information, even though AVM served its notice three weeks ago. AVM's experts are still analyzing the ████████ licenses at issue, Intel's newly-identified sales data, and developing AVM's damages analyses.

Intel, however, demands more, essentially asking that the expert discovery deadline be moved from May 27, 2016 to sometime in March, which the law does not permit. *See U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 545 (N.D. Ill. 2005) (noting a party should be able to rely on the discovery schedule "and assume it would not have to craft a damages theory until expert discovery"); Peter S. Menell et al., *Patent Case Management Judicial Guide* (Federal Judicial Center, 2009) at 4-4 (noting contention interrogatories in patent cases "waste the parties' efforts before meaningful responses can be developed based on completion of fact and expert discovery").[4] As such, this Court should not compel AVM to produce or identify information it does not yet know or share theories it has not yet developed. *See, e.g., Brooke Credit Corp. v. Lobell Ins. Servs., L.L.C.*, 2007 WL 4125791, at *7 (D. Kan. Nov. 15, 2007) (denying motion to compel supplementation, based on party's assurances that no responsive documents were withheld); *B. Braun Med. Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994) (motion to compel denied, as early answers to interrogatories would not streamline case, and defendants "may have to articulate theories of their case not yet fully developed.").

---

[4] Intel's cases are inapposite. Neither concerned a defendant who delayed identifying relevant damages information for nine months, and the responses at issue provided much less information than the response AVM has provided. *See Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 278-79 (N.D. Cal. 2015) (plaintiff's response "was, essentially, 'wait until we serve our expert report'"); *Mobile Storage Tech. Inc. v. Fujitsu Ltd.*, 2010 WL 1292545 (N.D. Cal. Mar. 31, 2010) (plaintiff responded that it sought damages to compensate for infringement, enhanced damages for willful infringement, and attorneys' fees and costs); *In re Cyclobenzaprine Patent Litig.*, No. 09-MD-2118, D.I. 453 at 2-3 (D. Del. Oct. 22, 2013) (noting "unique circumstances surrounding this litigation," because infringement and validity had already been decided and plaintiff sought damages related to "a very discrete set of events").

4

          Respectfully submitted,

          */s/ Benjamin J. Schladweiler*

          Benjamin J. Schladweiler (#4601)

Enclosures
cc: All Counsel of Record
    Clerk of the Court (via hand delivery)

March 22, 2016, 11:30 a.m. Teleconference, Attendees for AVM:

    D. Michael Underhill, BOIES SCHILLER & FLEXNER LLP

    Rosanne Baxter, BOIES SCHILLER & FLEXNER LLP

    Jon R. Knight, BOIES SCHILLER & FLEXNER LLP

    Benjamin J. Schladweiler, ROSS ARONSTAM & MORITZ LLP