# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, | ) |
| | ) C.A. No. 15-33-RGA |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) **PUBLIC VERSION** |
| INTEL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## LETTER TO THE HONORABLE MARY PAT THYNGE
## FROM DAVID E. MOORE, ESQUIRE

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
 AND DORR LLP
350 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
Kevin A. Goldman
Claire M. Specht
WILMER CUTLER PICKERING HALE
 AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
 AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant and Counterclaimant Intel Corporation*

OF COUNSEL:

Jason Kipnis
WILMER CUTLER PICKERING HALE
 AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel: (650) 858-6000

Dated: March 17, 2016
Public Version Dated: April 6, 2016
1219063 / 42223

<u>VIA ELECTRONIC FILING</u>

The Honorable Mary Pat Thynge
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, Delaware 19801

**PUBLIC VERSION**

Re: *AVM Technologies, LLC v. Intel Corporation*, C.A. No. 15-33-RGA

Dear Chief Magistrate Judge Thynge:

Defendant Intel Corporation ("Intel") respectfully requests that the Court order Plaintiff AVM Technologies, LLC ("AVM") to: (1) produce non-privileged information it is withholding and correct deficiencies in its privilege log; (2) produce the computer program scripts on which AVM relies to allege infringement; and (3) provide a full and complete response to Intel's interrogatory requesting the facts underlying AVM's damages claim.

## I. AVM Is Improperly Withholding Non-Privileged Information.

AVM has stated that its document production is now complete, but AVM's scant production and deficient privilege log make clear that AVM is improperly withholding non-privileged information, including discoverable underlying facts, non-privileged business activity, and third-party documents in AVM's possession. AVM's total production of 2,800 documents consists almost entirely of AVM's production from the prior litigation and public domain materials. Indeed, aside from some public materials and a small handful of emails, the only documents that AVM has produced that relate to the asserted patent and post-date final judgment in the prior litigation are a few reverse-engineering reports; even there, AVM has failed to produce documents or communications related to creating the reports. And, although Intel's email search requests to AVM generated over 32,000 hits (Ex. 1 (1/6/16 Letter from Knight to Specht)), AVM withheld nearly every document as allegedly privileged and produced only 139 emails—████████████████████████████████████

Thus, it appears that AVM is withholding on the basis of privilege ***virtually every relevant document generated by AVM since the prior litigation between the parties***, including every document containing non-privileged information regarding AVM's ownership, management, finances, assets, and business operations, as well as the value and ownership of the '547 patent—as no such documents have been produced. Even while Intel has produced over 20 million pages of documents and multiple terabytes of Intel's most confidential data, AVM has deprived Intel of even the most basic information about AVM—such as who it is owned by, who its officers are, its business operation, and any valuations of its assets, including the '547 patent.

What is more, AVM is withholding hundreds of documents on what appears to be an improper basis. AVM's February 29, 2016 privilege log revealed that AVM is withholding over 1,400 documents—a number that dwarfs the number of newly-produced documents generated by AVM. Ex. 2 (AVM Privilege Log). AVM's privilege log indicates that AVM has withheld as work product almost 1,200 documents under the generic claim of "research conducted by Joseph Tran for the benefit and at the direction of his attorneys in furtherance of litigation enforcing the 547 Patent against Intel." *Id.* at Nos. 1-23, 26-816, 819-1178, 1402. But hundreds of these generic entries predate the alleged conception date of the '547 patent (October 16, 1996). *E.g.*, *id.* at Nos. 343-427. Indeed, some of them date back to 1965—***over 30 years before the patent was conceived, and 45 years before AVM sued Intel.*** *E.g.*, *id.* at Nos. 534 & 986. Hundreds of these generic entries are undated. *E.g.*, *id.* at Nos. 21-23, 26-92.

When Intel identified these deficiencies, AVM merely stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But that conclusory statement does not show how documents dating back to **45 years before AVM sued Intel** could possibly have been prepared in response to "an identifiable specific claim or impending litigation." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 473 (E.D. Pa. 2005) ("Advising a client about matters which may or even likely will ultimately come to litigation does not satisfy the 'in anticipation of' standard. The threat of litigation must be more imminent than that."); *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 186 (D.N.J. 2003) ("If documents are created for routine business purposes, by non-attorneys, they do not fall within the purview of the work product privilege. Forwarding an e-mail or other such document that fits this description to an attorney does not transform it into the attorney's work product[.]").

AVM also has withheld as work product *and* attorney-client privileged many communications between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AVM's failure to identify the parties to these communications deprives Intel of any ability to test or challenge the sufficiency of AVM's privilege assertions. *See SmithKline Beecham*, 232 F.R.D. at 476 (holding generic descriptions of authors insufficient and noting that party amended log to identify third-party consultants); *Little Hocking Water Assn., Inc. v. E. I. du Pont de Nemours and Co.*, No. 2:09-CV-1081, 2013 WL 607969, at *8 (S.D. Ohio Feb. 19, 2013) (privilege log failing to identify "litigation consultants" by name was "cryptic" and did not provide sufficient information to enable the Court to determine privilege). Indeed, AVM demanded—and Intel agreed—that Intel supplement its privilege log to provide more specific author names and to provide additional details on privilege where a document was not "authored by or sent to attorneys." Ex. 5 (3/2/16 Letter from Knight to Sewall) at 2; Ex. 4 (3/9/16 Email from Specht to Baxter) at 4. Yet, AVM refuses to do the same for its own log.

Intel requests that the Court order AVM to produce basic non-privileged documents about AVM that it is withholding, to produce documents improperly withheld as work product, and to supplement its privilege log to identify all parties to communications to allow Intel to assess AVM's privilege claims.

## II. AVM Should Produce The Scripts On Which It Relies To Allege Infringement.

AVM has now asserted that *over* ▮▮▮▮▮▮▮▮ circuits in the accused products infringe the '547 patent, based on computerized programs or "scripts" that AVM has used to scan Intel's produced data and identify certain features in the circuits. Despite its reliance on these scripts, AVM has refused to produce them. Accordingly, Intel cannot effectively challenge the basis for AVM's identification of accused circuits.

**Background.** On October 23, 2015, AVM served infringement contentions claiming that "approximately ▮▮▮▮▮▮▮▮ dynamic circuits" identified in a report stored on a Secured Computer ("Computerized Report") "may … infringe the claims of the '547 patent" and that AVM "may be able to identify a subset of these additional circuits as infringing the '547 patent" at a later time. Ex. 6 (Infringement Contentions) at 9-10. On January 21, 2016, AVM supplemented its infringement contentions, now stating that each of the ▮▮▮▮▮▮▮▮ circuits ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ infringed claim 12 of the '547 patent, and that any of the circuits ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ infringe at least claim 22." Ex. 7 (Second Supp. Infringement Contentions) at 12. AVM, however, failed to identify *which* of the ▮▮▮▮▮▮▮▮ circuits fell into which category.

Given the volume of accused circuits, Intel believed that AVM used computerized

"scripts" to generate the Computerized Report rather than individually assessing the schematics for each circuit. Intel therefore asked AVM to produce the scripts so that it could evaluate AVM's claims. Ex. 8 (2/16/16 Letter from Zubler to Lafferty); Ex. 9 (2/23/16 Letter from Zubler to Lafferty). AVM refused to provide the scripts, claiming they are work product. Ex. 4 at 15 (2/18/16 Email from Lafferty to Zubler) & 13-14 (2/26/16 Email from Lafferty to Zubler).

On February 22, 2016, AVM served a fourth set of infringement contentions alleging that the Computerized Report circuits infringe "at least claim 22." Ex. 10 (Third Supp. Infringement Contentions) at 18-20. On March 7, 2016, AVM served a fifth set of contentions, in which it contended that "at least ▇▇▇ dynamic circuits" identified in a second Computerized Report infringe certain claims. Ex. 11 (Amended Infringement Contentions) at 20-22.[1]

**Argument.** Intel is entitled to discover the scripts used to generate the Computerized Reports to assess AVM's claims that over ▇▇▇ circuits infringe the '547 patent. The Computerized Reports are computer-generated lists of circuit components that allegedly satisfy certain claim elements; they do not identify the complete structure of the circuits or explain how the circuits allegedly meet limitations, such as the relative positions of different components. Rather, AVM generated the Computerized Reports *en masse* by running computer scripts to identify structures that meet some set of criteria programmed in the scripts but not revealed by AVM's infringement contentions. The scripts are thus part-and-parcel of AVM's infringement contentions, as they are the only evidence of the actual parameters that AVM is relying on to allege infringement. Indeed, any infringement claim against these circuits at trial would require reference to the scripts to explain how and why the circuits allegedly infringe. These scripts define the basis for AVM's identification of accused circuits and are no different from other information that is routinely disclosed in discovery, like search terms and testing parameters.

AVM's sole basis for refusing to produce the scripts is that they are work product. However, AVM *waived* any work product protection afforded the scripts when it chose to rely on the resulting reports to allege infringement. A party waives work product protection where "(1) assertion of the privilege was a result of *some affirmative act* ... by the asserting party; (2) through this affirmative act, the asserting party *put the protected information at issue* by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information *vital to his defense*." *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 159 (D.N.J. 2008) (emphases added) (quotation omitted). AVM's conduct satisfies each factor. AVM put the scripts at issue by affirmatively relying on the Computerized Reports generated from the scripts to allege infringement. *See Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*, No. 10-cv-11041, 2013 WL 812484, at *2 (D. Mass. Mar. 4, 2013) ("ZOLL waived [work product] protection as to the technical information regarding testing of the accused products" when it "explicitly and, presumably, intentionally cited the relevant tests in numerous places throughout its preliminary infringement contentions...."). Production of the scripts is also vital to Intel's ability to defend against AVM's allegations: as explained above, the Computerized Reports do not fully explain AVM's infringement allegations, and Intel is entitled to examine and challenge the scripts because AVM will have to rely on them to justify its infringement contentions against ▇▇▇ circuits. *See Tessenderlo Kerley, Inc. v. OR-Cal, Inc.*, No. 11-cv-04100, 2012 WL 1253178, at *3 (N.D. Cal. Apr. 13, 2012) ("The data forming the basis of plaintiff's claims must fairly be disclosed in order for defendant to prepare its defense.").

Independent of waiver, Intel is entitled to the scripts because it has a *substantial need* for them. *See WebXchange Inc. v. Dell Inc.*, 264 F.R.D. 123, 128 (D. Del. 2010) (work product

---

[1] Intel intends to challenge AVM's late-disclosed infringement allegations.

discoverable where there is "substantial need, undue hardship, or inability to obtain their equivalent by other means"); *see also* Fed. R. Civ. P. 26(b)(3)(A). Without the scripts, Intel does not have proper notice of AVM's infringement theories and cannot effectively challenge the basis for AVM's identification of accused circuits. AVM did not review each of the ▮▮▮▮ circuits individually. Forcing Intel to do so would pose an undue hardship, particularly given that it is AVM's burden—not Intel's—to establish that the ▮▮▮▮ circuits satisfy the claim limitations. Intel could attempt to run its own scripts, but that would not clarify AVM's infringement theories or reveal the parameters that AVM alleges create an infringing circuit—parameters that AVM relied upon to identify accused circuits. *See Tillotson Corp. v. Shijiazhaung Hongray Plas. Prods., Ltd.*, 244 F.R.D. 683, 693 (N.D. Ga. 2007) (defendant's ability to undertake independent analysis insufficient to put on notice of plaintiff's contentions).

Because AVM placed the scripts at issue and withholding the scripts poses an undue hardship on Intel's ability to challenge AVM's infringement claims, Intel asks that the Court order AVM to produce the scripts used to generate the Computerized Reports. *See Sandvik Intellectual Prop. AB v. Kennametal, Inc.*, No. 2:10-CV-00654, 2011 WL 466696, at *4 (W.D. Pa. Feb. 4, 2011) (finding substantial need to overcome work product where party had "unquestionably made testing parameters a central issue" on invalidity of the patent-in-suit).

### III. AVM's Refusal To Provide The Factual Bases For Its Damages Claim Is Improper.

AVM is also withholding critical information about a key element of its affirmative case—its damages claim. On November 12, 2015, Intel served Interrogatory No. 19A seeking the factual bases of AVM's damages claim. *See* Ex. 12 (Intel's Third Set of Interrogatories) at 7. For more than three months, AVM refused to provide *any* response. *See* Ex. 13 (AVM's Second Supplemental Responses) at 2; Ex. 14 (2/17/16 Letter from Sewall to Knight). On February 29, 2016, AVM supplemented its response to list some vague damages theories that AVM may or may not pursue. *See* Ex. 13 (AVM's Second Supplemental Responses) at 3-5. AVM, however, failed to identify *any facts* that it will rely on to support its damages claim, such as the identity of *any licenses* that it believes are comparable to a license to the patent-in-suit. Moreover, AVM has stated that it will not provide any further information during fact discovery. *See* Ex. 4 at 11-12 (3/1/16 Email from Specht to Lafferty).

AVM bears the burden on damages, and its refusal to provide the factual bases for its damages claim is improper. Intel has produced thousands of documents in response to AVM's damages-related discovery requests, including ▮▮▮▮ license agreements. If AVM is aware of factual information relating to damages, it is obligated to identify that information during fact discovery—as several courts have held. *See Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 279 (N.D. Cal. 2015) (ordering plaintiff to respond to interrogatory to identify the facts relevant to its damages claim, including "comparable licenses, the term of the reasonable royalty sought and any other *Georgia-Pacific* factors on which Plaintiff intends to rely"); *Mobile Storage Tech., Inc. v. Fujitsu Ltd.*, No. 09-CV-03342, 2010 WL 1292545, at *1 (N.D. Cal. Mar. 31, 2010); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, No. 09-MD-2118, D.I. 453 at 2-3 (D. Del. Oct. 22, 2013) (attached as Ex. 15) (ordering plaintiff to provide damages-related facts because "[f]acts are the subject of fact discovery, and parties are required to disclose such facts before the facts are massaged and manipulated by their expert witnesses").

AVM's refusal to provide the factual bases of its damages claims during fact discovery prevents Intel from taking discovery relating to those facts. Intel therefore requests that the Court order AVM to supplement its response to Interrogatory No. 19A to provide: (1) the facts that AVM will rely on to support its damages claims; including (2) the license agreements that AVM believes are technologically and economically comparable to a license to the '547 patent.

                    Respectfully,

                    */s/ David E. Moore*

                    David E. Moore

DEM/msb/1219063 / 42223
Enclosures
cc:   Clerk of Court (via hand delivery) (w/encs.)
      All Counsel of Record (via electronic mail) (w/encs.)

March 22, 11:30am Teleconference, Attendees for Intel:

    David E. Moore, Potter Anderson & Corroon LLP

    David C. Marcus, WilmerHale LLP

    Todd Zubler, WilmerHale LLP

    Kevin Goldman, WilmerHale LLP

    Brittany Amadi, WilmerHale LLP

    Michaela Sewall, WilmerHale LLP

    Brad Waugh, Intel Corporation