IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVM TECHNOLOGIES, LLC,<br>a Delaware Limited Liability Company,<br><br>     Plaintiff,<br><br>  v.<br><br>INTEL CORPORATION, a Delaware<br>corporation,<br><br>     Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:   C. A. No. 15-33-RGA/MPT<br>:<br>:<br>:<br>:<br>: |

**<u>Memorandum Order</u>**

A telephonic hearing was held on January 29, 2016 to address a number of discovery issues.[1] During the hearing, the Court invited counsel to supplement their original submissions[2] on the remaining issue addressed in this Memorandum Order, that is AVM's request for a database search by Intel of the following terms: charge sharing, power race, contention and short circuits and their synonyms,[3] which was opposed by Intel.

AVM justifies its request because of Intel's reliance on the P6 processor as prior art and its description of the P6 processor as a progenitor of the accused product. It further admits its request would require a search from 1995 to the present and would include products that predate the patent-in-suit and are not accused of infringement.

---

[1] *See* D.I. 153, 156.
[2] *See* D.I. 176, 180, 182.
[3] During the January 29, 2016 teleconference, AVM offered to provide synonyms of these four words. At present, how many other search terms AVM is seeking is unknown.

**AVM's Position**[4]

In light of certain defenses raised by Intel in which it claims that circuits in its earlier products are the same as the circuits accused, AVM argues it should not be limited to documents on which Intel intends to rely, and Intel should perform a word search of the terms noted above and their synonyms because they are directly relevant to the technology involved.[5] It maintains that documents containing these terms are important in explaining how Intel viewed these core concepts and AVM's technology regarding the use of a controlled short circuit or contention to address problems of charge sharing and power race. According to AVM, such information would refute Intel's defense of lack of utility, noninfringing alternatives and design around, and would provide insight into when and why Intel chose its infringing technology and also counter Intel's arguments of accidental occurrence. AVM seeks discovery on products that are not accused and pre-date the accused products because documents created when features were introduced would more likely address their purpose and the problems to be resolved.

**Intel's Position**

Intel notes that there are four accused products in the present matter which span a significant period of time, beginning in the mid-2000s to the present, for which a

---

[4] Intel maintained during the teleconference that AVM's arguments and proposal of search terms was a new and different position than indicated in AVM's document requests and interrogatories. In any event, the parties' arguments during the teleconference are addressed herein.

[5] AVM contends that its technology is directed to problems known as charge sharing and power race by having (in layman's vernacular) an induced short circuit or contention. January 29, 2016 Transcript at 6.

substantial number of documents have been produced, including the immediate predecessor generations of products not accused.  It contends AVM's request, including the four terms and their synonyms, involves a range of documents covering over 20 years and is directed to nearly every microprocessor made by Intel.  Intel discounts AVM's offer to limit its request to projects only involving or including dynamic or domino circuits because those limitations always applied in this matter and would not reduce the massive effort required to complete AVM's requested search.[6]  In support of its position, Intel relies on the declaration of Laura Wills, manager of Litigation Strategic Collections, who is responsible for litigation-related activities, including "searching for and collecting technical documents, schematics and source code."[7]  Her position requires her to interface with engineers and IT personnel throughout the company and coordinate the efforts required "to locate and collect documents from repositories where potentially relevant materials are located."[8]  As noted in her declaration, Intel produced documents regarding Pentium 4 and Core processors that were accused in prior litigation with ATM and documents relating to the Pentium Pro or P6 processor.  ATM's present request involves any of Intel's prior products that contain dynamic circuits, which would cover substantially all microprocessor products dating back through the development of Intel's P5 processor released in 1993.[9]  Documents relating to design  extend back another few years before the release date, and AVM's request covers 15 microprocessor

---

[6] Intel describes its production to date in response to AVM's other document requests as "over 25 million pages plus 6 terabytes of data."  D.I. 176 at 1.
[7] D.I. 176, Ex. B ¶ 1.
[8] *Id.*
[9] *Id.*, Ex. B ¶¶ 4-5.

projects or more such projects, in addition to those produced to date.[10]  The Wills declaration outlines why the production requested would be highly burdensome, including that Intel does not maintain a single or central document repository or index of its many different document repositories, does not have a single "standard" set of processor design documents nor a comprehensive text-searchable database for prior products.[11]  Intel's document retention policies do not require maintaining design engineering documents for more than seven years post last product shipment because there is no need for such information, and these documents are not categorized on a keyword-search database.[12]  The efforts required to search for documents is complicated by the fact that various teams worked on each product using different locations to store related documents, and identifying potential storage locations regarding retired products is a time-intensive, iterative process involving numerous engineers to address such issues as determining the different servers, databases and other storage locations used, and what has happened with each potential storage location in the intervening years.[13]  Once a project is completed, the documents are moved from individual computers in multiple databases to different locations and may be archived or deleted.[14]  Locating the appropriate data bases does not consider the

---

[10] *Id.,* Ex. B ¶ 5.
[11] *Id.*, Ex. B ¶¶ 8, 11, 13.
[12] *Id.*, Ex. B ¶
[13] *Id.*, Ex. B ¶¶ 15-16.  According to the Wills declaration, this process of identifying storage locations to identify search sources relating to the AVM's four specified terms would involve over 200 interviews since no one person or group of people has this information and would further require engineers and IT personnel numerous hours.  *Id.*, Ex. B ¶ 17-18
[14] *Id.*, Ex. B ¶¶ 15-16.

time and effort involved in collecting and processing storage locations. In addition, Intel generally cannot run word searches for documents within a location based on the text of documents; rather the initial search would employ metadata criteria, such as filed name, file type and date, requiring Intel to collect, process and transfer all documents from storage locations to a text-searchable database to run AVM's requested searches.[15]

**Analysis**

Nothing in AVM's arguments suggest why the production by Intel to date is inadequate, such as how or what in that production indicates that Intel has culled or selected documents that only or primarily support its position on liability.[16] AVM's contention that it is only requesting that Intel conduct a text search of the locations most likely to have relevant information is unpersuasive and does not address the significant concerns identified by Intel. Further, AVM's suggestion that "when given sufficient motivation, Intel has always found ways to provide AVM with the discovery it needs without undue burden" misses the point and ignores the required balancing considerations under proportionality for discovery. In its determination, the court evaluates the parties' arguments and reasoning for or against the requested production

---

[15] *See* D.I. 176, Ex. B ¶¶ 19-23 regarding the magnitude of potential documents involved and the time necessary to transfer a storage location to a document processing platform for collection and processing.

[16] Intel represented that it "has liberally and neutrally produced documents responsive to AVM's request that Intel found while searching . . . even if those documents pertained to unaccused products." D.I. 176. During the hearing, Intel noted that its production to date provided substantial information regarding how it designed its products and why and its view of the idea in the patent-at-issue. It further represented that production was not limited to the four accused products, but included preceding generations of processors. Transcript January 29, 2016 at 15:16-17:16.

on the bases of the production sought, the other production to date, the degree of the requested production's relevance, and the burdens imposed on the party from whom the production is requested.

Nor does the court find the four identified terms narrow as suggested by AVM and likely will result in numerous irrelevant documents.[17] The term "contention" is not limited to dynamic circuits or to the '547 patent. Similarly, "short circuit" involves other conditions other than those short circuit conditions specifically related to the invention of the '547 patent.

In the post-hearing submissions, AVM accepted Intel's offer to further search the "Intel Registered Content Service" database formerly known as Anacapa, a database previously searched, that contains only the highest level documents relevant to a product. Intel advised in its February 10, 2016 submission that it is transferring potentially searchable contents of this database to a search capable platform to perform the keyword searches requested and was working to complete this process shortly.[18] However, AVM also requests that Intel search databases devoted specifically to particular projects, which include dynamic or domino circuits. As explained in Intel's submissions, there is no known database or databases that contain comprehensive documents for prior Intel products. Therefore,

IT IS ORDERED that AVM's request for production is denied in part and granted in part.

---

[17] As noted previously, the "synonyms" AVM also requests as part of the word search have not been identified and may include similar general terms, resulting in significant irrelevant documents to review for production.

[18] D.I. 176 at 2.

IT IS FURTHER ORDERED that Intel perform what is reasonably necessary to enable keyword searches of the Intel Registered Content Service Database for the following terms: charge sharing, power race, contention and short circuit(s) and additional, limited synonyms for these terms of up to 12 total, as agreed to by the parties. If the parties cannot agree on the synonyms, they are to advise the court.

May 3, 2016 /s/ Mary Pat Thynge
UNITED STATES MAGISTRATE JUDGE