# **<u>EXHIBIT 2</u>**

1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF DELAWARE
2


3       AVM TECHNOLOGIES, LLC,          )
        a Delaware Limited Liability    )
4       Corporation,                    )
                                        )
5                    Plaintiff,         )
                                        )
6       v.                              )
                                        )
7       INTEL CORPORATION,              )
        a Delaware Corporation,         )
8                                       )
                     Defendant.         )
9

10                   United States District Court
                     844 King Street
11                   Wilmington, Delaware

12                   Teleconference
                     Tuesday March 22, 2016
13                   11:30 a.m.

14
        BEFORE:   THE HONORABLE MARY PAT THYNGE
15                Chief United States Magistrate Judge

16

17      APPEARANCES:

18      BENJAMIN J. SCHLADWEILER, ESQ.
         ROSS ARONSTAM & MORITZ, LLP
19              and
        DAVID MICHAEL UNDERHILL, ESQ.
20      JON R. KNIGHT, ESQ.
        ROSEANNE c. BAXTER, ESQ.
21       BOYD SCHILLER
            For the Plaintiff
22

23

24
```

1   scripts, the set of criteria that they used.
2   But when they have to go to trial and prove
3   infringement they just can't have an expert --
4   well, I guess they could have an expert sit
5   there and say it infringes because I say so,
6   but I don't think it's going to get them that
7   far.
8            How are the scripts going to then
9   be relevant for AVM to prove infringement?
10           MR. MARCUS:  Well, that's a good
11  question, Your Honor.  And I think the answer
12  is that they may well have the expert use the
13  scripts at trial.  But the reason we need them
14  now is the whole idea behind infringement
15  contentions, which is to put us on notice of
16  their infringement.
17           Just for example, and we're still
18  in discovery now, right?  We're in fact
19  discovery?
20           THE COURT:  Yes.
21           MR. MARCUS:  Let's say that the
22  script reveal that they contend that a certain
23  circuit or transistor behaved a certain way or
24  how the circuits function, we may need to try

```
 1    to go interview some Intel engineer and add
 2    that engineer to our disclosures because we may
 3    need that engineer to challenge the scripts.
 4    So that's the first thing.
 5              The second thing is, they can't
 6    really deviate from the scripts in their trial
 7    presentation because the infringement
 8    contentions, that is their infringement
 9    allegations, when the whole idea behind the
10    contentions is to put the other side on notice.
11              And so they're not going to be able
12    to change the criteria and say the different
13    kinds of circuits infringement once we get into
14    trial than they're doing now.  And so since
15    they've used them now and they've relied on
16    them now and we're handicapped without access
17    to them, it's perfectly appropriate for them to
18    serve them on us or produce them.
19              Let me add another thing, Your
20    Honor.  They made some mention about this is
21    the same thing as cross-examining their
22    attorneys or their consultants.  And it's not,
23    Your Honor.  I mean, they may have tried 80
24    different scripts with their consultants and
```

```
 1   their attorneys, and those scripts, we're not
 2   saying produce those.  We're only saying -- and
 3   if we depose them we might examine why they
 4   tossed one out, why they used another.  That
 5   might be getting into work product or core work
 6   product.  But here they've actually used the
 7   scripts and relied on them affirmatively which
 8   weighs work product.  And it's not opinion work
 9   product because they've already exposed them.
10   We're not getting behind anything.  The only
11   thing they've said in their papers, something
12   to the effect that Intel says they might be
13   able to reverse engineer and that's devastating
14   to Intel.
15            The fact of the matter is, Your
16   Honor, I don't know if we can reverse engineer.
17   We're scrambling to find out their criteria.
18   We're not there.  And they said it was a
19   month-long process to identify the infringing
20   circuits.
21            And so it may not even be possible
22   for us to figure them out.  They have put it
23   out there, but the volume is so vast that the
24   burden is gigantic for us to try to figure it
```

```
 1    out.
 2              And the last thing, I don't really
 3    understand, other than making our lives
 4    exceptionally difficult, I'm not sure what they
 5    lose by producing the scripts.  They've now
 6    told us -- they're going to have to tell us
 7    what the criteria are; how they got the things
 8    in the reports; what metrics they used, that
 9    all has to be in the case.
10              So the real question is are they
11    going to wait an squeeze us at the end or can
12    they produce them now since they've relied on
13    them.  Infringement contentions are designed to
14    put us on notice.  We're not completely on
15    notice.  And they've waived privilege by
16    relying on it.  Just as to the scripts they've
17    used to rely on.
18              I'm not talking about what their
19    thought was, how they picked them, what else
20    they did.  We're not taking a deposition on
21    that.
22              THE COURT:  Okay.  All right.
23    What's the response and who's going to be
24    presenting that?
```

```
 1    we have gone in and, you know, tested their,
 2    you know, their anything.  We're using their
 3    data.  This is simply our tool for analyzing
 4    their data.
 5              THE COURT: Okay.  Go ahead.  Finish
 6    it up.
 7              MR. UNDERHILL:  One problem with
 8    having disclosed this now is Mr. Marcus
 9    shouldn't be able to use this with our expert.
10    If our expert comes in and tweaks the
11    methodology and goes in a different direction,
12    he shouldn't be cross-examined on, well, back
13    in March the script said this and now it says
14    there and why did you change it.  That's just
15    not an appropriate means that Intel should
16    have.
17              MR. MARCUS:  Your Honor, may I?
18              THE COURT:  Let me just make a
19    note, if you don't mind, so that I have this
20    down, David.
21              MR. MARCUS:  Sure.
22              THE COURT: Okay.  Your response is?
23              MR. MARCUS:  Sure.  I would say
24    that the time for infringement contentions was
```

1  long ago under the scheduling order.  They've
2  amended and supplemented numerous times,
3  including, most recently, a couple weeks ago.
4  I mean, at some point in fact discovery they
5  need to go with their contentions.  And I would
6  tell you that that time is now.  We have one
7  month left in fact discovery.  We need to know
8  what we're shooting at.
9            And so it just doesn't seem fair
10 that they can keep changing until the last day
11 of fact discovery.  I don't that's complicated
12 by the order or fairness.
13           So if they've relied on the scripts
14 for their infringement contentions, they're
15 going to rely on the scripts for their trial
16 presentation.  There's no other way to present
17 on 1.5 million circuits.
18           Mr. Underhill talked about gory
19 detail, and there is gory detail.  And the fact
20 is AVM's expert didn't sift through manually
21 1.5 million circuits to identify the allegedly
22 infringing circuits.  They used a program that
23 they wrote.  We're entitled to know what that
24 program is because it tells us what are the

```
 1    characteristics of a circuit that infringe.
 2              They've given us information but,
 3    again, they're not going through 1.5 million,
 4    and no one could.  And so without the
 5    computerized reports, we're simply unable to
 6    understand their contentions or fairly
 7    challenge them or even work up our defense.
 8    We're just kind of shooting in the dark.
 9              And, again, this is a different
10    case than a case where an expert or counsel
11    identifies ten or 20 circuits and those are in
12    play and you investigate them.  No one is doing
13    that here.  They've decided to put a
14    million-and-a-half circuits in play.  That
15    makes this case exceptional and out of the
16    ordinary.
17              They relied on the scripts to do
18    that.  They didn't do it manually.  So once
19    they relied on the scripts, for us to know what
20    their contentions are and what they're actually
21    saying infringes, there's no other way except
22    to have the scripts.  That's it.  It's very
23    simple.
24              And, again, I don't think it's core
```