IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| | ) | C.A. No. 15-33-RGA-MPT |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF AVM TECHNOLOGIES, LLC'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO EXCLUDE
EXPERT TESTIMONY REGARDING INTEL PATENTS**

*Of Counsel*:

David Boies
Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY  10504

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C.  20005

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA  90401

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276


Dated:  January 27, 2017

ROSS ARONSTAM & MORITZ LLP
Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...........................................................2

STATEMENT OF FACTS ....................................................................................................2

LEGAL PRINCIPLES ..........................................................................................................3

ARGUMENT .........................................................................................................................5

      I.      The Existence of Intel's Own Patents Is Not
              a Proper Predicate for any Damages Opinions
              Given by Intel's Experts ...........................................................................5

      II.     Shih's and Davis's Suggestion that Patents Unrelated
              to the Accused Circuits Are Relevant to Damages
              Violates the Apportionment Requirement ...................................................8

      III.    The Expert's Testimony Will Confuse, Not Assist,
              the Trier of Fact ....................................................................................10

      IV.    The Colwell and Subramanian Opinions Are Unreliable
              Because the Experts Did Not Perform a Proper Claim
              Construction Analysis ............................................................................10

CONCLUSION ....................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Commonwealth Sci. and Indus. Research Org.*,
    809 F.3d 1295 (Fed. Cir.  2015)...........................................................................Passim

*Daubert v. Merrell Dow Pharm., Inc*.,
    509 U.S. 579 (1993)...................................................................................................4, 5, 10

*Ericcson v. D-Link Sys., Inc*.,
    773 F.3d 1201 (Fed. Cir. 2014)..........................................................................7

*Garretson v. Clark*,
    111 U.S. 120 (1884).............................................................................................8

*Georgia-Pacific Corp. v. U.S. Plywood Corp*.,
    318 F. Supp. 1116 (S.D.N.Y. 1970).........................................................................1, 5

*In re Innovation IP Ventures, LLC Patent Litig*.,
    2013 WL 5593609 (N.D. Ill. Oct. 3, 2013).............................................................7

*In re Paoli R.R. Yard PCB Litig*.,
    35 F.3d 717 (3d Cir. 1994)...................................................................................5

*M2M Solutions LLC v. Motorola Solutions, Inc*.,
    2016 WL 767900 (D. Del. Feb. 25, 2016) .............................................................6

*Phillips v. AWH Corp*.,
    415 F.3d 1303 (Fed. Cir. 2005)...........................................................................11

*Schneider ex rel. Estate of Schneider v. Fried*,
    320 F.3d 396 (3d Cir. 2003)................................................................................Passim

*Summit 6, LLC v. Samsung Elecs. Co*.,
    802 F.3d 1283 (Fed. Cir. 2015)...........................................................................5

*Union Carbide Corp. v. Tarancon Corp*.,
    742 F. Supp. 1565 (N.D. Ga. 1990) .....................................................................10

*VirnetX, Inc. v. Cisco Sys., Inc*.,
    767 F.3d 1308 (Fed. Cir. 2014)...........................................................................8

## INTRODUCTION AND SUMMARY OF ARGUMENT

AVM objects to the testimony of Robert Colwell, Ph.D., Vivek Subramanian, Ph.D., Julie L. Davis, and Willy Shih about Intel's own patents.[1] The presence of patents held by the alleged infringer is not a factor under *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Nevertheless, Ms. Davis (Intel's primary damages expert) suggests that the accused products practice "thousands of [unidentified] Intel patents," and that this supports her damages theory. But she did not perform a patent infringement analysis, she is not qualified to perform one, and her conclusion is based on a misreading of Dr. Colwell's and Dr. Subramanian's reports. Those reports identify only 11 Intel patents that Intel allegedly uses in the Accused Products—they do not even identify the "thousands" of Intel patents, let alone analyze them. Ms. Davis's report devotes a single sentence to the 11 patents actually identified by Drs. Colwell and Subramanian. (JA, Ex. 8, Davis Report at 54.)[2] But she does not opine that those patents have any particular value or that they have any connection to dynamic circuits that are at issue in this case. Thus, insertion of them into the case violates the standards for standards for apportionment set out by the Federal Circuit.

Mr. Shih (Intel's licensing expert) did not even incorporate the 11 patents actually identified by Drs. Colwell and Subramanian into his report. Instead, he relies on "tens of thousands" of unidentified Intel patents—that neither he nor Dr. Colwell nor Dr. Subramanian analyzed—for an entirely irrelevant and unexplained "patent stacking" theory.

Finally, Dr. Colwell's and Dr. Subramanian's opinions fail to set forth their claim

---

[1] *See* JA, Ex. 5, Colwell Opening Report regarding Intel-Patented Inventions; JA, Ex. 34, Subramanian's Opening Report regarding Intel-Patented Inventions; JA, Ex. 8, Davis Report at 19, 54, and 82; JA, Ex. 32, Shih Report at ¶ 38.
[2] Exhibits so denoted are to the Joint Appendix submitted by the parties.

constructions or claim construction analysis.  Dr. Colwell admitted that he failed to follow well-accepted rules of claim construction, and instead substituted his own version of the "plain" meaning of claim terms, rather than consulting required sources such as the patent specification

In short, the experts' opinions about the Intel patents are unreliable, will not assist the trier of fact in determining any issues in this case, are very likely to confuse the jury, and must be excluded.  *See Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003).

## NATURE AND STAGE OF THE PROCEEDINGS

Discovery has concluded, and a jury trial is scheduled for May 1, 2017.  (D.I. 252 at 2.) In lieu of filing separate motions repeating the same objections to the two self-contained reports that Drs. Colwell and Subramanian filed on the issue of Intel patents, AVM presents this single combined motion.

## STATEMENT OF FACTS

On September 24, 2016, Drs. Colwell and Subramanian submitted opening reports "Regarding Analysis of Intel-Patented Inventions Embodied in the Accused Intel Products." (JA, Exs. 5, 34.)  Unlike Intel's other expert reports, these reports do not explain how they relate to any issue in the case.

In his report (JA, Ex. 5, "Colwell Report"), Dr. Colwell opined that the Accused Products practice five Intel patents related primarily to software instructions.[3]  (*Id.* at Ex. 3, ¶¶ 44 et seq.) He further stated that those patents allegedly improve the speed, efficiency, and performance of the Accused Products.  (*Id.* at ¶¶ 17, 18.)  Although Dr. Colwell's Report repeatedly referred to

---

[3] *See, e.g.*, JA, Ex. 5, Colwell Report at ¶ 45 (discussing the ████ patent, which was ████

2

the "thousands of patents" in "Intel's vast patent portfolio" (*id.* ¶¶ 4, 20), he reviewed only the five patents provided to him by Intel's counsel. (JA, Ex. 5, Colwell Report at Ex. 2, Ex. 3; ¶¶ 44 et seq.; JA, Ex. 7, Colwell Dep. at 15:19-16:10.) And although Dr. Colwell's report attempted to create the impression[4] that hundreds of Intel patents are embodied in the Accused Products, Dr. Colwell made no effort to investigate any Intel patents other than the five referenced in his report. (JA, Ex. 7, Colwell Dep. at 17:5-18:2.)

Dr. Subramanian similarly asserts that "Intel has tens of thousands of patents, including at least hundreds of patents covering its manufacturing, process, and circuit-level technology." (JA, Ex. 34, Subramanian Report at ¶ 4.) But Dr. Subramanian reviewed and analyzed only six patents provided to him by Intel. (*Id.* at 10, Ex. 1.)

Neither Dr. Colwell nor Dr. Subramanian linked the 11 Intel patents purportedly practiced by the Accused Products to AVM's '547 patent, nor did they compare the functionality claimed by the Intel patents to that claimed by AVM's '547 patent.

On November 14, 2016, Intel submitted damages expert reports from Mr. Shih and Ms. Davis. Mr. Shih, Intel's licensing expert, did not rely on the 11 patents specifically analyzed by Drs. Colwell and Subramanian. Instead, Mr. Shih relied on the Colwell and Subramanian reports solely for the statement that "Intel has tens of thousands of its own patents, including at least hundreds of its own patents directed to its processor architecture." (JA, Ex 32, "Rebuttal Expert Report and Disclosure of Willy Shih" ("Shih Report") ¶ 38.)

Ms. Davis, Intel's damages expert, relied on the Colwell and Subramanian reports for a

---

[4] *See, e.g.*, JA, Ex. 5, Colwell Report at ¶ 4 ("Intel has . . . hundreds of patents directed to its processor architecture. Given the number of Intel patents in this area, I have not tried to identify each architecture patent that is implemented in an Intel product. Instead, I have identified a subset of Intel patented inventions that are implemented in the accused Sandy Bridge, Ivy Bridge, Haswell, and Broadwell products."); ¶ 20.)

nearly identical statement: "In fact, Intel has tens of thousands of its own patents, including at least hundreds of its own patents directed to its processor architecture." (JA, Ex. 8, Rebuttal Expert Report and Disclosure of Julie L. Davis ("Davis Report") at 19.)

Ms. Davis purports to analyze "[t]he value that factors other than the claimed invention *contribute to the [accused products]*." (JA, Ex. 8, Davis Report at 81 (emphasis added).) Under this factor, Ms. Davis announced that within Intel's Accused Processors there are "thousands of its own patents on processor features and functionality" in the list. (*Id.* at 81-82.)

Neither Mr. Shih nor Ms. Davis tied their statements about the "thousands of patents" to any proper element of a reasonable royalty analysis. At his deposition, Mr. Shih responded only that Subramanian's statement of "tens of thousands" of Intel patents related to microprocessor complexity and to "patent-stacking":

> Q. How, if at all, does the fact that in your opinion Intel has tens of thousands of its own patents, including at least hundreds of its own patents directed to its processor architecture, influence your opinions in this case?
>
> A. Well, what it does is it highlights the importance of cumulative innovation in complex products like modern microprocessors. And that puts a spotlight on the problem of patent stacking, which is to say that since a modern processor relies on so many patents, a company like Intel has to be very careful in licensing patents from outside and not to pay too much for each one. (JA, Ex. 33, Shih Dep. at 137:15-138:6.)

Ms. Davis testified that she had not determined the technical or economic value of any of the Intel patents practiced by the Accused Products, and had not performed any comparison of these Intel patents with the '547 patent. (JA, Ex. 9, Davis Dep. at 156:16-158:13.)

## LEGAL PRINCIPLES

Under *Daubert* and Fed. R. Evid. 702, experts must be qualified, and their opinions must be reliable and fit the issues presented in the case. *See Schneider ex rel. Estate of Schneider v.*

*Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003).  An expert's opinion may "fit" the issues if it is relevant and assists the trier of fact.  *Id.*  "[A] reasonable or scientifically valid methodology is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case."  *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).  The party offering the expert bears the burden of establishing the admissibility of the expert testimony by a preponderance of the evidence.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994).

## ARGUMENT

I.   **The Existence of Intel's Own Patents Is Not a Proper Predicate for any Damages Opinions Given by Intel's Experts**

The speculative and passing references in the Colwell, Subramanian, Davis and Shih reports to the existence of "tens of thousands" of Intel patents are not a proper element of a damages analysis.[5]  *See Schneider*, 320 F.3d at 404–05 (expert opinion must be relevant); *Summit 6*, 802 F.3d at 1296 ("[A] reasonable or scientifically valid methodology is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case.").

<u>Davis</u>:  Ms. Davis incorrectly assumed that the accused products practice "thousands" of Intel patents.  Her report analyzes "[t]he value that factors other than the claimed invention *contribute to the [accused products]*."  (JA, Ex. 8, Davis Report at 81 (emphasis added).)  In particular, Ms. Davis opined that included in Intel's Accused Processors are "thousands of its own patents on processor features and functionality."  (*Id.* at 81-82.)  Her statement has no support in the record. Intel's technical witnesses Drs. Colwell and Subramanian identified only 11 Intel patents that allegedly cover the Accused Products.  (JA, Ex. 5, Colwell Report at Ex. 3,

---

[5] The infringer's patents are not an identified *Georgia-Pacific* factor.  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

¶¶ 44 *et seq.*; JA, Ex. 34, Subramanian Report at 9-10, Ex. 1.)  Ms. Davis did not perform a patent claim analysis on a single Intel patent—let alone on "thousands."  Nor could she have, as Ms. Davis does not have the technical expertise. She has a bachelor's degree in business administration.  (JA, Ex. 8, Davis Report at 1.)  It is improper for her to present testimony that thousands of Intel patents are practiced by the Accused Products.  *See, e.g.*, *M2M Solutions LLC v. Motorola Solutions, Inc.*, Civ. No. 12-33-RGA, 2016 WL 767900, at *6 (D. Del. Feb. 25, 2016) (striking expert testimony; "In sum, Plaintiff asks this Court to allow it to present damages testimony to the jury, whereby a non-technical expert extrapolates from a survey unrelated to the patented invention to calculate how many customers use the patented features of the accused products.").

Ms. Davis also referenced Intel's "tens of thousands of patents" and the 11 Intel patents analyzed by Drs. Subramanian and Colwell in the context of her broader discussion of the "Value of the Invention Claimed in the '547 Patent to Intel."  (JA, Ex. 8, Davis Report at 18, 19, 54.)  But this "qualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—[is] insufficiently reliable."  *Commonwealth Sci. and Indus. Research Org.*, 809 F.3d 1295, 1302 (Fed. Cir.  2015) ("CSIRO").  Indeed, Ms. Davis admitted that she has no "understanding of what technologies those patents cover."  (JA, Ex. 9, Davis Dep. at 156:22-157:9.)  And she conceded that she did not "attempt[] . . . to determine . . . the value" of the patents to Intel, "estimate the economic or monetary benefit that Intel obtains by practicing those patents," or "determine whether [the] patent[s] [are] more or less valuable to Intel in the accused processors than the '547 patent."  (*Id*. at 157:10-158:13.)

Ms. Davis recognized that patents could have a range of values. (JA, Ex. 8, Davis Report at 18-54.)  Thus, assuming for the sake of argument that Intel practices 11 of its patents this does

not permit Ms. Davis to simply present the existence of Intel patents as a factory the jury to use in a damages analysis.  Instead, she would be required to present a quantitative market valuation as to how those patents contribute to the value of the dynamic circuits that are the subject of infringement in this case.

_Shih_:  When Mr. Shih was confronted at deposition with the fact that his report failed to explain the alleged relevance of Intel having "tens of thousands of its own patents, including at least hundreds of its own patents directed to its processor architecture," (JA, Ex. 32, Shih Report at ¶ 38) he claimed that they somehow relate to "patent stacking":

> Well, what it does is it highlights the importance of cumulative innovation in complex products like modern microprocessors.  *And that puts a spotlight on the problem of patent stacking*, which is to say that since a modern processor relies on so many patents, a company like Intel has to be very careful in licensing patents *from outside* and not to pay too much for each one.

(JA, Ex. 33, Shih Dep. at 137:21-138:6 (emphasis added).)  His explanation reflects a misunderstanding of "patent stacking," which is where a licensee must pay royalties for licenses to patents to multiple third parties, such that the "royalties will 'stack' on top of each other and may become excessive in the aggregate." *Ericcson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014); *see also In re Innovation IP Ventures, LLC Patent Litig.*, No. 11 C 9308, 2013 WL 5593609, at *9 (N.D. Ill. Oct. 3, 2013).  Because Intel does not need to pay royalties for its own patents, Intel's own patents have no relevance to patent stacking.

Moreover, even assuming for the sake of argument that Intel's own patents were somehow relevant to patent stacking, Mr. Shih's testimony still is improper because "abstract recitations of royalty stacking theory, and qualitative testimony that an invention is valuable— without being anchored to a quantitative market valuation—are insufficiently reliable." *CSIRO*, 809 F.3d at 1302; *see also Ericcson*, 777 F.3d at 1234 ("a general argument that [stacking is a]

possibilit[y]" is not "competent evidence"; the accused infringer must "present[] actual evidence of . . . stacking.").

II.     **Shih's and Davis's Suggestion that Patents Unrelated to the Accused Circuits Are Relevant to Damages Violates the Apportionment Requirement**

The parties "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature *and the unpatented features*." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (citing *Garretson v. Clark*, 111 U.S. 120, 121 (1884)) (emphasis added). In other words, the apportionment inquiry must separate the "the value of the allegedly infringing features from the value of all other features." *CSIRO*, 809 F.3d at 1301.

The apportionment inquiry looks to exclude features not covered by the '547 patent, *whether or not covered by other Intel patents*.   Although Intel disputes various elements of AVM's damages analysis, it recognizes that AVM's analysis is intended to apportion down to the value contributed by the '547 technology.  Ms. Davis notes that:

- "Dr. Hatch uses a multi-step methodology to calculate his damages total." (JA, Ex. 8, Davis Report at 84.)

- "Dr. Hatch uses Dr. Hassoun's opinion as to the speed increase attributable to the claimed invention of the '547 patent." (*Id.*)

- "Dr. Hatch uses Dr. Knittel's opinion regarding the percentage price change attributable to various speed increases. . . . Dr. Hatch assumes that an increase in speed translates to an increase in price and combines the opinions of Dr. Hassoun and Dr. Knittel to purportedly determine the price change attributable to the '547 patent for each SKU." (*Id.*)

The Colwell and Subramanian testimony that Intel allegedly has 11 patents on features in the Accused Products violates the apportionment analysis for two independent reasons.

First, "qualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—[is] insufficiently reliable." *CSIRO*, 809 F.3d at 1302.  Dr.

Subramanian and Dr. Colwell do not attempt to provide any quantitative comparison between the value of the '547 patent accused technology and the value contributed by the 11 patents.

Second, whether or not Intel has patents on various features of its Accused Products outside of the accused features of the dynamic circuit is irrelevant to damages inquiry. There is a significant disconnect between the 11 Intel patents allegedly practiced by the Accused Products and the accused features of dynamic logic circuits that are the sole focus of the '547 patent. Neither Dr. Colwell nor Dr. Subramanian testify that any of the 11 patents are directed to the dynamic circuit level technology claimed in the '547 patent. With one exception, the Intel patents Drs. Colwell and Subramanian focus relate to either very high-level features, such as software instructions, or very basic features such as the design of an individual transistor. In no instance do they opine that the accused dynamic logic circuits employ these features:

- A software instruction that identifies the capabilities of a CPU (JA, Ex. 5, Colwell Report at ¶ 47);

- A software instruction that converts data from floating point form to integer form (*id*. at ¶ 52);

- A form of organizing packets of data in software (*id*. at ¶ 57);

- A software instruction that allows for multi-tasking (*id*. at ¶ 62); and

- The combination of two software instructions. (*Id*. at ¶ 67.)

- Two materials science patents on "straining" the silicon in a channel, without any evidence that this is used in the dynamic transistors that are at issue in this case (Ex. 34, Subramanian Report at ¶¶ 37 and 41);

- Two materials science patents for using high-dielectric constant materials (*id*. at ¶¶45 and 49); and

- One materials science patent on the use of low resistance semiconductor material (*id*. at ¶ 53).

Moreover, in the one instance in which the Subramanian Report discusses a circuit design in the register file, there is no suggestion that this circuit design relates to the accused dynamic

circuits.

- A patent regarding low voltage, low leakage, high density, variation tolerant memory bit cells, without any suggestion that this design is present in the accused dynamic circuits (*Id.* at ¶ 57.)

The entire market value rule is not a rule that only applies to plaintiffs. It applies to all of the damages analysis presented to the jury. If AVM attempted to speak about the value of unrelated portions of the Accused Processors, the Court would disallow the testimony. The same principle bars Intel's testimony about its patents.

### III.     The Expert's Testimony Will Confuse, Not Assist, the Trier of Fact

An expert's testimony must be relevant; but it also "must assist the trier of fact." *See Schneider*, 320 F.3d at 404. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal quotations omitted).

If Intel's experts are permitted to mention "tens of thousands" of Intel patents, including 11 that allegedly cover the accused products, the jury will be unnecessarily confused about the significance of those patents to the case. *See, e.g.*, *Union Carbide Corp. v. Tarancon Corp.*, 742 F. Supp. 1565, 1577 (N.D. Ga. 1990) ("As defendants' expert, Dr. Omri Behr, testified, most lay people believe that once they receive a patent, their invention has been held unique *and* non-infringing. Lay persons are often surprised by the idea of that they can still be responsible for infringing another dominating patent.").

### IV.     The Colwell and Subramanian Opinions Are Unreliable Because the Experts Did Not Perform a Proper Claim Construction Analysis

Dr. Colwell's and Dr. Subramanian's comparison of the 11 Intel patents to the Accused Products should also be excluded because they did not provide their claim constructions or a

10

claim construction analysis.   Merely stating that the "ordinary" meaning "generally" applies, as

Drs. Colwell and Subramanian do, begs the question of what that meaning is. More importantly,

the "ordinary meaning" can only be determined after considering the patent specification,

*Phillips v. AWH Corp*., 415 F.3d 1303, 1321 (Fed. Cir. 2005) (*en banc*), which "is always highly

relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to

the meaning of a disputed term."  *Id.* at 1315 (quote omitted).  Dr. Colwell conceded that he did

not interpret the five Intel patents set forth in his Report in light of the patent specification,

because he believed the terms to be "self-sufficient on their face":

> Q  So, let's go to the next patent, paragraph 50 of Exhibit 1.  It's
> Patent No. ██████
>    A   (Witness complies.)
>    Q   Do you see that?
>    A   I do.
>    Q   Okay.  And you analyzed ████████ correct?
>    A   Correct.
>    Q   Did the specification of the ████ patent inform your
> understanding of any of these claim terms?
>    A   I don't remember needing much clarification on these terms.
> I thought they were pretty much self-sufficient on their face.
>    Q   So, you applied plain and ordinary meaning for each – each
> of these terms?
>    A   As best as I can remember now, yeah.
>    Q   You certainly don't identify any claim terms where the
> specification formed your understanding in – in the – in Exhibit 1
> in your report; right?
>    A   I think that's correct, yeah.

(JA, Ex. 7, Colwell Dep. at 101:1-19).  Dr. Colwell similarly testified that could not remember

looking at the specifications of and/or did not cite to the specifications of three of the four

remaining patents included in the report.  (*Id.* at 120:9-17, 129:9-130:4, 131:17-132:10)[6].  He

also did not analyze any of the patents' file histories.  (*Id.* at 89:22-90:4; 101:24-102:2; 120:18-

---

[6] Dr. Colwell testified that he reviewed the specification for a single patent.  (JA, Ex. 7, Colwell
Dep. at 78:25-80:24.)

24: 130:5-12; 132:11-133:4.)

Dr. Colwell's and Dr. Subramanian's failure to provide claim constructions and their interpretation techniques render their infringement methodologies suspect; their opinions are not "the product of reliable principles and methods" and should be stricken.  Fed. R. Evid. 702(c); *see also Schneider*, 320 F.3d at 404 (admissible "testimony must be reliable; it 'must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'").

<u>**CONCLUSION**</u>

For the foregoing reasons, AVM respectfully requests that the Court exclude the testimony of Intel experts Dr. Robert Colwell, Dr. Vivek Subramanian, Julie L. Davis, and Willy Shih regarding Intel's patents.

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

David Boies
Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY  10504
dboies@bsfllp.com
rbaxter@bsfllp.com

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C.  20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA  90401
etakashima@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
jsheasby@irell.com

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

Dated:  January 27, 2017

13

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on January 27, 2017, a true copy of the foregoing **Plaintiff AVM Technologies, LLC's Opening Brief in Support of its Motion to Exclude Expert Testimony Regarding Intel Patents** was served via electronic mail upon the following counsel of record:

Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

David C. Marcus
WILMERHALE
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
david.marcus@wilmerhale.com

Matthew Leary
WILMERHALE
1225 Seventeenth Street
Suite 2600
Denver, CO 80202
matthew.leary@wilmerhale.com

Jason Kipnis
WILMERHALE
950 Page Mill Road
Palo Alto, CA 94304
jason.kipnis@wilmerhale.com

*Counsel for Defendant Intel Corporation*

William F. Lee
Jordan L. Hirsch
Lauren B. Fletcher
Kevin A. Goldman
Claire M. Specht
Sarah R. Frazier
Michaela P. Sewall
WILMERHALE
60 State Street
Boston, MA 02109
william.lee@wilmerhale.com
jordan.hirsch@wilmerhale.com
lauren.fletcher@wilmerhale.com
kevin.goldman@wilmerhale.com
claire.specht@wilmerhale.com
sarah.frazier@wilmerhale.com
michaela.sewall@wilmerhale.com

Todd Zubler
William G. McElwain
Brittany Amadi
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
todd.zubler@wilmerhale.com
william.mcelwain@wilmerhale.com
brittany.amadi@wilmerhale.com

David J. Burman
Jonathan L. McFarland
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
dburman@perkinscoie.com
jmcfarland@perkinscoie.com

*Counsel for Defendant Intel Corporation*

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)