# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-33-RGA |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT INTEL CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 112

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

Dated: January 27, 2017
Public Version Dated: February 13, 2017
1243148 / 42223

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS .....................................................................................3

    A.    The '547 patent describes essential features not included in certain claims............3

    B.    The Court rejected AVM's interpretation of the claims in the prior litigation .................................................................................................................5

III.   LEGAL STANDARDS ..........................................................................................7

    A.    The written description requirement ......................................................................7

    B.    The definiteness requirement ................................................................................8

IV.    ARGUMENT ..........................................................................................................8

    A.    Claims 1-5, 9, 12-14, 16, 18, and 19 are invalid for failure to satisfy the written description requirement with respect to the "simultaneous activation" feature of the alleged invention .........................................................8

        1.    Claims 12-14, 16, and 18 are invalid because they encompass dynamic logic circuits with no overlap ....................................................10

        2.    Claims 1-5, 9, and 19 are invalid because they encompass dynamic logic circuits with no overlap during the evaluation phase.......................12

    B.    Claim 21 (and claims 12-14, 16, and 18 if interpreted as AVM proposes) are invalid for failure to satisfy the written description requirement with respect to the "isolation" feature of the alleged invention ....................................13

    C.    Claims 1-7, 9, and 19-21 are indefinite under AVM's theory that "simultaneous activation" is defined by an arbitrary "███████" measure not disclosed in the patent ....................................................................................15

        1.    AVM derived its measure of "simultaneous activation" using an ad-hoc, arbitrary process ........................................................................16

        2.    Under AVM's approach, it would be impossible to determine with reasonable certainty whether a given product has "simultaneous activation." ...................................................................................18

V.     CONCLUSION .....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................7

*Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) (en banc)............................................................1, 7

*Atlantic Research Marketing Systems, Inc. v. Troy*,
   659 F.3d 1345 (Fed. Cir. 2011)....................................................................8, 11, 15

*Boston Scientific Corp. v. Johnson & Johnson*,
   647 F.3d 1353 (Fed. Cir. 2011)................................................................................8

*Butamax Advanced Biofuels LLC v. Gevo, Inc.*,
   117 F. Supp. 3d 632, 642 (D. Del. 2015)...............................................................20

*Carnegie Mellon University v. Hoffmann-La Roche Inc.*,
   541 F.3d 1115 (Fed. Cir. 2008)....................................................................8, 11, 15

*Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*,
   531 F. Supp. 2d 629 (D. Del. 2008).......................................................................11

*Delaware Display Group LLC v. Lenovo Group Ltd.*,
   No. CA 13-2108-RGA, 2015 WL 6870031 (D. Del. Nov. 6, 2015)........................8

*Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*,
   803 F.3d 620 (Fed. Cir. 2015)....................................................................8, 19, 20

*General Electric Co. v. Wabash Appliance Corp.*,
   304 U.S. 364 (1938)..................................................................................................8

*Halliburton Energy Services, Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008)..........................................................................8, 20

*Honeywell Internationl, Inc. v. International Trade Commisson*,
   341 F.3d 1332 (Fed. Cir. 2003)..............................................................................20

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*,
   558 F.3d 1368 (Fed. Cir. 2009)..........................................................................7, 11

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
   No. 13-1668-LPS, 2016 WL 4363485 (D. Del. Aug. 12, 2016)..............................8

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005)....................................................................................8, 15

*Matsushita Electical Industries Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................................................7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014)................................................................................................8, 16

*Teva Pharmaceutical USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015).......................................................................................20

*Transcend Medical, Inc. v. Glaukos Corp.*,
    No. 13-cv-830, 2015 WL 5546988 (D. Del. Sept. 18, 2015)....................................................8

**Federal Statutes**

35 U.S.C. § 112, ¶ 1 ....................................................................................................1, 7

35 U.S.C. § 112, ¶ 2 ....................................................................................................1, 8

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................................7

# I.   INTRODUCTION

Defendant Intel Corporation moves for summary judgment of invalidity with respect to all asserted claims of U.S. Patent No. 5,859,547 ("the '547 patent") based on a failure to comply with the Patent Act's written description and/or definiteness requirements.

*Written Description.*   The Patent Act's written description provision, 35 U.S.C. § 112, ¶ 1, requires that a patent specification support the full scope of what is claimed.  The written description must demonstrate that the inventor was in possession of the claimed invention when the patent application was filed and that the inventor actually invented what is claimed.  *See Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  The '547 patent specification describes the alleged invention as a dynamic logic circuit in which (1) the precharge and evaluation transistors are "simultaneously activated" (*i.e.*, "overlap") for a period of time during the circuit's evaluation phase, and (2) the evaluation transistor isolates the precharge transistor from the logic block.  The '547 patent describes these two features as essential features of the alleged invention.

Thirteen of the sixteen asserted claims, however, are written so broadly—or have been interpreted so broadly by Plaintiff AVM Technologies, LLC ("AVM")—that they avoid these essential features and thus lack support in the specification.  Some claims encompass dynamic logic circuits in which the precharge and evaluation transistors are never simultaneously activated (*i.e.*, no overlap); other claims encompass circuits with overlap only during the precharge phase (*i.e.*, no overlap during the evaluation phase); and still other claims encompass circuits in which the evaluation transistor does not isolate the precharge transistor from the logic block.  Accordingly, these claims fail to satisfy the written description requirement.

*Indefiniteness.*   The Patent Act also requires that a patent claim "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  35 U.S.C.

§ 112, ¶ 2.  This definiteness requirement is intended to provide notice to the public of the precise bounds of the patent rights claimed by the patentee.  If a claim fails to inform those skilled in the art of the scope of the invention with reasonable certainty, the claim is invalid.

AVM interprets the "simultaneous activation" claim elements as requiring a measure of transistor activation that a person of ordinary skill could not decipher from the patent. Specifically, AVM would define transistor activation by two voltage measures referred to as $V_{IL}$ and $V_{IH}$, which AVM's expert estimates to be ▮▮▮▮▮ of the supply voltage of the accused circuits.  As explained in Intel's summary judgment motion regarding the *Kessler* doctrine, however, these are incorrect measures of transistor activation.  Neither the '547 patent nor its prosecution history mentions or provides any guidance as to how to determine those measures.  AVM's expert admits that there are multiple ways of determining $V_{IL}$ and $V_{IH}$, and he arrived at his "▮▮▮" measure only after performing a series of complex, arbitrarily selected steps—steps that have never been disclosed to the public as the correct methodology for determining infringement, even though the '547 patent is now expired. Indeed, neither AVM nor its expert applied (or even mentioned) $V_{IL}$, $V_{IH}$, or the ▮▮▮ measure of "simultaneous activation" in the prior litigation when alleging that Intel's products infringed the '547 patent.  But by applying its new ▮▮▮ measure in this case, AVM now contends— contrary to the position it litigated for nearly three years—that the Intel products it accused of infringement in the first case do *not* infringe the "simultaneous activation" claims.[1]

AVM's newly manufactured methodology for determining "simultaneous activation"

---

[1]     AVM's stark change in position is clearly motivated by its attempt to avoid Intel's preclusion defenses.  Given the nearly identical structure of the memory read circuits in Intel's products, only by changing its method for assessing "simultaneous activation" can AVM argue that the products accused here are not "essentially the same" as the products accused in the prior case.  *See* Brief in Support of Motion for Summary Judgment That AVM's Infringement Claims Are Barred by the *Kessler* Doctrine and Claim Preclusion ("*Kessler* Brief") at 17-18.

thus confirms that it is impossible to determine with reasonable certainty whether a given product infringes.  Accordingly, as interpreted by AVM, claims 1-7, 9, and 19-21 are indefinite.

## II.    STATEMENT OF FACTS

### A.    The '547 patent describes essential features not included in certain claims.

The '547 patent describes the alleged invention as a particular dynamic logic circuit that purports to improve upon the dynamic logic circuits known in the prior art.  The specification repeatedly and consistently defines the alleged invention as a dynamic logic circuit that includes a delay for "simultaneously activating" the precharge and evaluation transistors during the circuit's evaluation phase.  JA Ex. 1, '547 patent, abstract, 3:4-19, 6:20-26, 6:45-49.[2]  According to the patent, this use of "overlap" in the activation of the precharge and evaluation transistors overcomes the problem of charge-sharing by causing "an influx of additional charge at the start of the evaluation phase."  *Id.* at 3:13-19; *see also id.* at 6:20-26, 6:45-49.[3]

The specification also repeatedly and consistently defines the alleged invention as a dynamic logic circuit in which the evaluation transistor is located between the precharge transistor and the logic block and thereby separates and isolates the precharge node from the logic block.  *Id.* at abstract, 3:9-13, 4:42-50, 6:1-13, 7:35-40.   The patent describes this arrangement as key to the patent's purported advantages.  *Id.* at 3:26-28. As the Court explained in its claim construction order, the placement of the evaluation transistor so as to isolate the precharge node from the logic block is a "fundamental feature" of the invention.  D.I. 328 at 15.

AVM asserts claims 1-7, 9, 12-14, 16, and 18-21.  Each claim is directed to a dynamic logic circuit, but the claims vary in scope.  Claim 1 reads:

---

[2]      "JA" refers to the Joint Appendix to Summary Judgment and *Daubert* Briefs.
[3]      The '547 patent uses "overlap" to refer to simultaneous activation of the precharge and evaluation transistors.  JA Ex. 1, '547 patent, 6:45-47 (describing "overlap period 404 during which the precharge transistor and the evaluation transistor are both simultaneously activated").

1.      A dynamic logic circuit, comprising:

a dynamic logic block;

a precharge transistor;

an evaluation transistor between the dynamic logic block and the precharge transistor; and

a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors.

JA Ex. 1, '547 patent, 8:47-54.  Claim 1 requires the precharge and evaluation transistors to be "simultaneously activated," but it does not specify *when* that overlap must occur.  Claims 2-5 and 9, which depend from claim 1, also do not specify when the "simultaneous activation" must occur.  *Id.* at 8:55-64, 9:16-18.  Similarly, independent claim 19 requires the precharge and evaluation transistors to be "activated simultaneously for a period of time," but says nothing about when the overlap must occur.  *Id.* at 10:20-21.[4]

Independent claim 12 reads as follows:

12.     A dynamic logic circuit, comprising:

a precharge transistor including a gate terminal and a source-to-drain path coupled between a first-supply-voltage node and a precharge node;

a logic block including at least one transistor coupled between a second-supply-voltage node and a logic-block output node, said at least one transistor in the logic block further including a gate terminal couplable to an input signal;

an evaluation transistor having a source-to-drain path and a gate terminal, the source-to-drain path coupled between the logic-block output node and the precharge node, the gate terminal coupled to a clock signal node; and

a delay coupled between the clock signal node and the gate terminal of the precharge transistor.

---

[4]     In contrast, claims 6, 7, 20, and 21 require simultaneous activation during the evaluation phase.  *See* JA Ex. 1, '547 patent, 9:2-9 (precharge transistor in "an inactive state" only "during a major portion of the evaluation phase"); *id.* at 10:30-32 ("precharge transistor is active during a period of time at a beginning of the evaluation clock phase"); *id.* at 10:43-45 ("precharge transistor is activated during a minor portion of the evaluation clock phase").

*Id.* at 9:29-45. Claim 12 recites a "delay" element like claim 1. But unlike that claim, it contains no limitation requiring simultaneous activation or overlap in the activation of the precharge and evaluation transistors. Claims 13, 14, 16, and 18, which depend from claim 12, also do not require overlap. In addition, claim 12 and its dependent claims do not recite that the evaluation transistor must be located "between the dynamic logic block and the precharge transistor," as claims 1 and 19 require. Instead, claim 12 and its dependent claims contain a substantively identical limitation: "an evaluation transistor having a source-to-drain path … coupled between the logic-block output node and the precharge node." *Id.* at 9:38-42.

Independent claim 21 reads:

21. A method of precharging and evaluating a dynamic logic circuit, the method comprising the steps of:

switching a precharge transistor, using a clock signal, between an active state during a precharge clock phase and an inactive state during a major portion of an evaluation clock phase;

switching an evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase;

delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase.

*Id.* at 10:34-45. Of relevance here, claim 21 contains no requirement that the evaluation transistor must be located "between" the logic block and the precharge transistor.

**B.    The Court rejected AVM's interpretation of the claims in the prior litigation.**

*AVM1.* In the prior case, *AVM Technologies, LLC v. Intel Corp.*, C.A. No. 10-610-RGA ("*AVM1*"), this Court construed several claim limitations, including the "delay" and "simultaneous activation" terms. AVM proposed claim constructions that would have limited every claim to require overlap and, specifically, overlap during the evaluation phase. As Intel

pointed out, however, the '547 patent was drafted so that some claims require no overlap (claims 12-14, 16, and 18), other claims require overlap but with no limitation on when the overlap must occur (claims 1-5, 9, and 19), and other claims require overlap during the evaluation phase (claims 6, 7, 20, and 21). *AVM1*, D.I. 135 at 39-40.

The Court declined to adopt AVM's constructions. Specifically, the Court construed the term "delay" to mean "a circuit element that delays the clock signal to the precharge transistor." *AVM1*, D.I. 148 at 11. The Court rejected AVM's proposed construction, which would have defined "delay" to require overlap during the evaluation phase, explaining that such a construction would have rendered redundant the "for simultaneously activating" limitation in claim 1. *Id.* at 12. The Court also construed the term "for simultaneously activating" in claim 1 to mean "for causing to be on at the same time." *Id.* The Court rejected AVM's proposed construction, which would have required the overlap to occur "for a portion of the evaluation phase," explaining that, unlike claim 21 which requires overlap during the evaluation phase, claim 1 "contains no similar requirement." *Id.* at 13.

Intel moved for partial summary judgment of invalidity on the ground that claims 1-5, 9, 12-14, 16, and 18 are invalid for failure to comply with the written description requirement. *AVM1*, D.I. 157 & 158. In response, AVM withdrew its assertion of claims 12-14, 16, and 18—the claims that do not require overlap. *AVM1*, D.I. 173. *AVM1* ended in March 2013 after this Court granted summary judgment of no damages. *AVM1*, D.I. 294.

*AVM2.* In this action, the Court has construed additional claim limitations, including the phrase "between the dynamic logic block and the precharge transistor" from claims 1 and 19. D.I. 328 at 14-18. The Court rejected AVM's proposed construction of that term, which would have permitted the evaluation transistor to be located anywhere "intermediate the dynamic logic

6

block and the precharge transistor." *Id.* at 15. The Court explained that "a fundamental feature of the invention is that the evaluation transistor separates and isolates the logic block from the precharge node," because "the evaluation transistor's important function is to electrically couple and uncouple (or isolate) the precharge node and the logic block." *Id.* at 15, 16-17. The Court thus construed the phrase "between the dynamic logic block and the precharge transistor" to mean "positioned such that the only way charge can flow from the precharge transistor to the logic block is by passing through the evaluation transistor." *Id.* at 18.[5]

## III.   LEGAL STANDARDS

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (emphasis omitted). Invalidity must be proved by clear and convincing evidence. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009).

### A.   The written description requirement

A patent claim is invalid if the specification does not contain an adequate written description of the claimed invention. *See* 35 U.S.C. § 112, ¶ 1. The test for determining the sufficiency of the written description "is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm.*, 598 F.3d at 1351. "[C]ompliance with the

---

[5]      The parties subsequently submitted letter briefing to the Court regarding whether the Court's construction of the phrase "between the dynamic logic block and the precharge transistor" in claims 1 and 19 also applies to the phrase "coupled between the logic-block output node and the precharge node" in claim 12. D.I. 340. The Court later issued an order noting that the Court's *Markman* opinion had not construed this claim 12 language. D.I. 344 at 1 n.2.

written description requirement is a question of fact," but is "amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *Atlantic Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1353 (Fed. Cir. 2011).[6]

### B.  The definiteness requirement

A patent claim is invalid if it does not "particularly point[] out and distinctly claim[]" the invention. *See* 35 U.S.C. § 112, ¶ 2. "The inventor must 'inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not.'" *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938). The test for determining whether the claims are sufficiently definite is whether the "patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). Indefiniteness is a question of law that may be resolved on summary judgment. *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 625 (Fed. Cir. 2015).[7]

## IV.  ARGUMENT

### A.  Claims 1-5, 9, 12-14, 16, 18, and 19 are invalid for failure to satisfy the written description requirement with respect to the "simultaneous activation" feature of the alleged invention.

The written description of the '547 patent describes using a delay to cause simultaneous

---

[6] *See, e.g.*, *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1363 (Fed. Cir. 2011) (affirming summary judgment of invalidity under written description requirement); *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1125 (Fed. Cir. 2008) (same); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (same).

[7] *See, e.g.*, *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1256 (Fed. Cir. 2008) (affirming summary judgment of invalidity for indefiniteness); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 13-1668-LPS, 2016 WL 4363485, at *11 (D. Del. Aug. 12, 2016) (finding claims indefinite); *Delaware Display Grp. LLC v. Lenovo Grp. Ltd*, No. CA 13-2108-RGA, 2015 WL 6870031, at *7-9 (D. Del. Nov. 6, 2015) (same); *Transcend Med., Inc. v. Glaukos Corp.*, No. 13-cv-830, 2015 WL 5546988, at *7 (D. Del. Sept. 18, 2015) (same).

activation (or "overlap") of the precharge and evaluation transistors as a fundamental feature of the invention.  JA Ex. 26, Ivey Rpt. ¶¶ 663-664.  The written description also makes clear that such overlap must occur during the evaluation phase in order to address the charge-sharing problem that the inventors sought to solve.  *Id.* ¶ 669.  For example, the '547 patent states:

- **Abstract:**  "A delay coupled to the precharge transistor allows the *precharge transistor to remain activated during a portion of an evaluation clock phase* to overcome any effects of charge-sharing between the precharge node and the dynamic logic block."  JA Ex. 1, '547 patent, abstract (emphasis added).

- **Summary of the Invention:**  "A delay is coupled to the precharge transistor and ensures that the *precharge transistor is activated for at least a portion of an evaluation phase* to charge the logic block.  Thus, charge-sharing between the precharge node and the dynamic logic block is overcome by an influx of additional charge at the start of the evaluation phase."  *Id.* at 3:13-19 (emphasis added).

- **Detailed Description:**  "[T]he circuit of FIG. 3A *charges the logic block during a portion of the evaluation phase* to overcome any charge-sharing that occurs at the start of the evaluation phase.  This charging occurs because the *precharge transistor and the evaluation transistor are activated simultaneously for a period of time* sufficient for the precharge transistor to properly charge the dynamic logic block."  *Id.* at 6:20-26 (emphases added).

Indeed, the only two embodiments disclosed in the specification (Figs. 3 and 5) each are described as using simultaneous activation during the evaluation phase.  *Id.* at 6:20-26, 7:5-9.  The '547 patent discloses overlap during the evaluation phase because that is the time when the charge-sharing problem that the '547 patent is designed to address occurs and when simultaneous activation could potentially address such charge-sharing.  *See id.* at 2:32-35 ("[C]harge-sharing between the logic block and the precharge node during the evaluation phase can cause the precharge node to undesirably go low.").

AVM agrees that the '547 patent describes the alleged invention as a dynamic logic circuit in which the precharge and evaluation transistors are both on for a period of time during the evaluation phase.  In its opening claim construction brief in *AVM1*, for example, AVM wrote: "This means that during the evaluation phase, there is a short period of time when the precharge

9

transistor and the evaluation transistor are concurrently powered on and thereby defeat the charge-sharing problem that dogged the prior art. Without this simultaneous activation, caused by the delay element, the claimed dynamic logic circuit would not work." *AVM1*, D.I. 56 at 15. Both named inventors similarly testified that the patent describes the invention as including overlap during the evaluation phase. JA Ex. 56, 2012 Tran Dep. at 384-385 ("[I]t described in the patent very clearly that, you know, we try to create what – a short circuit – periods of short circuit during the evaluation phase ...."); JA Ex. 57, Acuff Dep. at 61 ("[A] key feature of [the invention] is … the overlap of the precharge and the [evaluation] timing during the evaluation cycle …."). And AVM's expert in *AVM1*, Joseph McAlexander, testified that "the written description supports the simultaneous activation to be during the portion of the evaluation phase, not during the precharge phase." JA Ex. 54, McAlexander Dep. at 77-78.

> ### 1.   Claims 12-14, 16, and 18 are invalid because they encompass dynamic logic circuits with no overlap.

Claim 12 is directed to a "dynamic logic circuit" that includes "a delay coupled between the clock signal node and the gate terminal of the precharge transistor." JA Ex. 1, '547 patent, 9:44-45. But unlike the other independent claims, claim 12 contains no limitation requiring overlapping activation of the precharge and evaluation transistors. *See, e.g.*, JA Ex. 10, Hassoun Infring. Rpt. ¶ 425 ("In contrast, claim 12 does not require simultaneous activation."). As a result, claim 12 and its dependent claims 13, 14, 16, and 18 are broad enough to encompass dynamic logic circuits that do not have any overlap at all. *See, e.g.*, JA Ex. 26, Ivey Rpt. ¶ 691; JA Ex. 35, Subramanian Preclusion Rpt. ¶¶ 339-340.

As explained above, the written description of the '547 patent describes the alleged invention only as a dynamic logic circuit that includes overlap in activation of the precharge and evaluation transistors. JA Ex. 26, Ivey Rpt. ¶¶ 663, 692. It never describes the alleged invention

as including a dynamic logic circuit in which there is no overlap.  *Id.* ¶ 663.  Indeed, AVM's

expert in *AVM1*, Mr. McAlexander, agreed with this reading of the written description:

> Q.    And the written description of the '547 patent describes an invention that
>       uses overlap, correct?
>
> A.    It does.
>
> Q.    ... Any person of ordinary skill in the art reading the specification would
>       understand that the invention requires overlap of the precharge and
>       evaluation transistors, correct?
>
> A.    Yes.
>
> Q.    ... The specification never describes the invention as a dynamic logic
>       circuit that ... does not include overlap, correct?
>
> A.    That is correct.

JA Ex. 54, McAlexander Dep. at 66 (objections omitted); *see id.* at 67 ("[T]o say that there is no

overlap or a negative overlap, that would not be supported by the written description.").

There can be no genuine dispute that the '547 patent provides no written description

support for claims that encompass dynamic logic circuits without overlap.  Claims 12-14, 16, and

18 therefore should be held invalid.  *See Carnegie Mellon,* 541 F.3d at 1127 ("A broad claim is

invalid when the entirety of the specification clearly indicates that the invention is of a much

narrower scope." (internal quotation marks omitted)); *Atlantic Research*, 659 F.3d at 1354-1355

(invalidating claims for gun design with single attachment point because written description

disclosed only invention using two support points); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558

F.3d 1368, 1378 (Fed. Cir. 2009) ("[T]he specification describes only medical valves with

spikes. ...  [A] person of skill in the art would not understand the inventor ... to have invented a

spikeless medical valve."); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 531 F.

Supp. 2d 629, 639 (D. Del. 2008) ("[C]laim 34 ... must contain ... an annular reinforcing

bead.   The specification does not support that broader claim which eliminates that

11

limitation."), *rev'd on other grounds*, 559 F.3d 1308 (Fed. Cir. 2009).

> **2.    Claims 1-5, 9, and 19 are invalid because they encompass dynamic logic circuits with no overlap during the evaluation phase.**

Claim 1 is directed to a "dynamic logic circuit" with "a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors." JA Ex. 1, '547 patent, 8:47-54.   Claim 19 recites a "dynamic logic circuit" in which "the precharge and evaluation transistors are activated simultaneously for a period of time." *Id.* at 10:7-20.   Claims 1 and 19 thus require the precharge and evaluation transistors to be on at the same time, but do not indicate *when* that overlap must occur.   As a result, claim 1 (and dependent claims 2-5 and 9) and claim 19 are broad enough to encompass circuits in which the overlap occurs only during the precharge phase and never during the evaluation phase.   *See* JA Ex. 26, Ivey Rpt. ¶ 680.

As explained above, the written description of the '547 patent uniformly describes the invention as having overlap that occurs during the evaluation phase, and never describes the invention as having overlap that occurs only during the precharge phase.   *Id.* ¶ 669.   AVM's expert in *AVM1*, Mr. McAlexander, agreed with this reading of the '547 patent:

> Q.    … And any person of ordinary skill in the art reading the specification would understand that the invention requires the overlap of the precharge and evaluation transistors to occur during the evaluation phase, correct?
>
> A.    During at least a portion of the evaluation phase, yes.
>
> Q.    … The specification never describes the invention as a dynamic logic circuit that uses overlap during the precharge phase, correct?
>
> A.    That is not discussed.
>
> Q.    … Now, if some of the claims of the '547 patent are construed to be broad enough to encompass a dynamic logic circuit in which the only overlap occurs during the precharge phase, do you agree that the written description does not support the full scope of those claims?
>
> A.    Regardless of your question, I don't think the written description, as claimed, support - supports a claimed invention that covers that precharge

phase as based on the claims of the '547 patent.

JA Ex. 54, McAlexander Dep. at 74-75 (objections omitted).  Mr. McAlexander further admitted that "the written description supports the simultaneous activation to be during the portion of the evaluation phase, not during the precharge phase." *Id.* at 77-78.  Similarly, AVM's new validity expert Andrew Wolfe conceded that "the two embodiments that are described in detail [in the patent] don't have that characteristic," *i.e.*, "simultaneous activation of the precharge and evaluation transistors during the precharge phase."  JA Ex. 42, Wolfe Dep. at 274-275.  He further agreed that precharge phase simultaneous activation "certainly would not address the specific [charge-sharing] problem" purportedly addressed by the patent.  *Id.* at 275.

In sum, the written description fails to support claims that encompass circuits in which overlap occurs only during the precharge phase rather than the evaluation phase.  Because claims 1-5, 9, and 19 are written broadly and do not specify when the overlap occurs, they are invalid.

**B.    Claim 21 (and claims 12-14, 16, and 18 if interpreted as AVM proposes) are invalid for failure to satisfy the written description requirement with respect to the "isolation" feature of the alleged invention.**

As the Court recognized in its claim construction order, "[i]t is clear from a full reading of the '547 patent that a fundamental feature of the invention is that the evaluation transistor separates and isolates the logic block from the precharge node."  D.I. 328 at 15.  Indeed, the written description makes clear that the alleged invention includes an evaluation transistor placed between the precharge transistor and the logic block so as to separate and electrically isolate those two elements.  JA Ex. 26, Ivey Rpt. ¶ 672.  For example, the '547 patent states:

- **Abstract:** "The evaluation transistor separates a precharge node from the logic block … so that the logic block is not charged." JA Ex. 1, '547 patent, abstract.

- **Summary of the Invention:**  "An evaluation transistor is positioned between the logic block and the precharge transistor and electrically uncouples the logic block from the precharge node … so that the precharge node is unaffected by the capacitance of the logic block." *Id.* at 3:9-13; *see id.*, Figs. 3A, 5A.

13

- **Summary of the Invention:** "The circuit according to the invention has several advantages.  The precharge transistor is isolated from the logic block by the evaluation transistor." *Id.* at 3:26-28.

- **Detailed Description:** "The evaluation transistor *electrically uncouples* the logic block and the precharge node (so substantially no charge flows therebetween). ... During the portion 402, the evaluation transistor *electrically couples* (i.e., charge can flow between) the precharge node and the logic block." *Id.* at 6:1-11 (emphases added)); *see also id. at* 4:44-47; *id.* at 7:32-38.

Further, the patent explicitly attributes several of the purported benefits of the alleged invention to the evaluation transistor's placement.  *See id.* at 3:31-38, 7:37-40, 7:50-53, 7:60-63.  As the Court explained, "the advantages resulting from the evaluation transistor's positioning apply to the invention as a whole, rather than just a specific embodiment." D.I. 328 at 16.

*Claim 21.*  Claim 21 is directed to "a method of precharging and evaluating a dynamic logic circuit" in which "the precharge transistor is activated during a minor portion of the evaluation clock phase." JA Ex. 1, '547 patent, 10:34-46.  But unlike claims 1 and 19, claim 21 does not specify that the evaluation transistor must be "between the dynamic logic block and the precharge transistor."  Claim 21 is therefore broad enough to encompass circuits in which the evaluation transistor is not located between the precharge transistor and the logic block and thus does not isolate the logic block from the precharge node.  JA Ex. 26, Ivey Rpt. ¶ 707.

As explained above, the written description of the '547 patent describes the invention only as a dynamic logic circuit in which the evaluation transistor is placed between the precharge transistor and the logic block so as to isolate the logic block from the precharge node.  *Id.* ¶¶ 672, 709.  Nothing in the written description suggests that the evaluation transistor could be located anywhere other than between the precharge transistor and the logic block.  *Id.*

Given the disclosure of the '547 patent, a person of ordinary skill in the art would not have understood the inventors to have invented a dynamic logic circuit without an evaluation transistor that isolates the logic block from the precharge node.  Because claim 21 does not

14

require this "fundamental feature of the invention" (D.I. 328 at 15), the claim is invalid.  *See, e.g., LizardTech*, 424 F.3d at 1345 (invalidating method claim for making "seamless DWT" generically because person of ordinary skill "would not understand LizardTech to have invented a method for making a seamless DWT, except by [using a particular disclosed technique]"); *Carnegie Mellon*, 541 F.3d at 1126-1127; *Atlantic Research*, 659 F.3d at 1354-1355.

*Claims 12-14, 16, and 18.*  Claim 12 recites an evaluation transistor with "a source-to-drain path … coupled between the logic-block output node and the precharge node."  JA Ex. 1, '547 patent, 9:38-42.  As explained in Intel's Motion for Partial Summary Judgment of Non-Infringement, this language in claim 12 is substantively the same as the "between the dynamic logic block and the precharge transistor" language in claims 1 and 19.  Brief in Support of Motion for Partial Summary Judgment for Non-Infringement at 10-13; *see also* D.I. 340 at 1-2; JA Ex. 36, Subramanian Non-Infring. Rpt. ¶¶ 103-111.  This language of claim 12 should therefore be construed in the same fashion as the Court's prior construction of the "between" language—*i.e.*, as requiring the evaluation transistor to be "positioned such that the only way charge can flow from the precharge transistor to the logic block is by passing through the evaluation transistor."  D.I. 328 at 14.  If, however, the Court disagrees with that construction, then claim 12 (and its dependent claims 13, 14, 16, and 18) is invalid for failure to satisfy the written description requirement because, like claim 21, it is broad enough to encompass circuits that lack the isolation feature of the disclosed invention.

**C.      Claims 1-7, 9, and 19-21 are indefinite under AVM's theory that "simultaneous activation" is defined by an arbitrary "▮▮▮▮" measure not disclosed in the patent.**

Claims 1, 19, and 21 (and their dependent claims) each require the precharge and evaluation transistors to be "simultaneously activat[ed]."  JA Ex. 1, '547 patent, 8:52-54, 10:19-

20, 10:43-45.[8]   The Court construed this phrase to mean that the precharge and evaluation transistors are both "on at the same time."   *See AVM1*, D.I. 148 at 12; D.I. 344.   AVM's infringement expert Marwan Hassoun contends, however, "that 'simultaneous activation' in terms of the '547 patent is when the precharge transistor gate voltage is less than $V_{IL}$ and the evaluation transistor gate voltage is greater than $V_{IH}$," where $V_{IL}$ and $V_{IH}$ define "logic low" and "logic high" voltage levels, respectively.   JA Ex. 10, Hassoun Infring. Rpt. ¶ 426.   Because the values of $V_{IL}$ and $V_{IH}$ for any given circuit are not readily known, Dr. Hassoun performs a series of complicated simulations to conclude that $V_{IL}$ and $V_{IH}$ in the accused products are equivalent to ██████████ of the supply voltage ("$V_{CC}$"), respectively.   *Id.* ¶ 427.   In other words, Dr. Hassoun urges a "████" measure of transistor activation.

Intel disagrees with AVM's ████ measure for transistor activation, as it is supported by neither the intrinsic nor extrinsic evidence, is derived arbitrarily, and is inconsistent with how the parties analyzed transistor activation in *AVM1*.   *See Kessler* Brief at 14-17.   However, if AVM's ████ measure is adopted, the claims requiring "simultaneous activation" are indefinite because they fail to "inform those skilled in the art about the scope of the invention with reasonable certainty."   *Nautilus*, 134 S. Ct. at 2129.

### 1.   AVM derived its measure of "simultaneous activation" using an ad-hoc, arbitrary process.

Even if AVM were correct that "simultaneous activation" depends on $V_{IL}$ and $V_{IH}$ (an interpretation with which Intel disagrees), as Dr. Hassoun himself acknowledges, there are "several methods of calculating [$V_{IL}$ and $V_{IH}$]."   JA Ex. 10, Hassoun Infring. Rpt. ¶¶ 453-454. To arrive at his ████ measure, for example, Dr. Hassoun performed an ad-hoc series of arbitrary

---

[8]   Although claim 21 does not contain the phrase "activated simultaneously," the parties agree that it includes this same substantive limitation.   *See* JA Ex. 10, Hassoun Infring. Rpt. ¶ 619; JA Ex. 36, Subramanian Non-Infring. Rpt. ¶ 192.

steps that lack any support in the '547 patent or its prosecution history. 

2.   **Under AVM's approach, it would be impossible to determine with reasonable certainty whether a given product has "simultaneous activation."**

Under AVM's approach, claims requiring the precharge and evaluation transistors to be "simultaneously activated" (claims 1-7, 9, and 19-21) would fail the definiteness requirement because it would be impossible to determine with reasonable certainty whether a given product meets the claims. Dr. Hassoun's methodology for determining the $V_{IL}$ and $V_{IH}$ values is not disclosed anywhere in the patent or its prosecution history.[10] Nothing in the patent suggests that a person of ordinary skill in the art should, to determine transistor activation, design and simulate a hypothetical circuit in which the precharge and evaluation transistors are "shorted" ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬ Nor is Dr. Hassoun's methodology an established measure of $V_{IL}$ or $V_{IH}$ in the art—indeed, Dr. Hassoun admits that there are "several methods of calculating" $V_{IL}$ and $V_{IH}$. JA Ex. 10, Hassoun Infring. Rpt. ¶¶ 453-454. And, as Dr. Hassoun's own alternative simulations indicate, the method by which $V_{IL}$ and $V_{IH}$ are measured will lead to different values of $V_{IL}$ and $V_{IH}$ for the same accused circuit, an inconvenience he simply rounds away. *Compare, e.g.*, *id.* ¶¶ 455-456 (calculating $V_{IL}$ as ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬, *with id.* ¶ 457 (alternatively calculating same $V_{IL}$ as ▬▬▬▬▬).

As Intel's expert Dr. Vivek Subramanian explained, "[i]t is therefore unclear how companies such as Intel are expected to determine whether their products use the 'simultaneous activation' feature of the claimed invention, if Dr. Hassoun's undisclosed methodology is to be applied." JA Ex. 36, Subramanian Non-Infring. Rpt. ¶ 236; *see also* JA Ex. 27, Ivey Reply Rpt. ¶¶ 145-148. Indeed, neither AVM nor its expert even mentioned, much less applied, $V_{IL}$ or $V_{IH}$

---

[10]   Intel disagrees that transistor activation should be measured by "logic low" or "logic high" voltage levels (as AVM contends), but even were that the case, nothing in the patent suggests that these levels are equivalent to $V_{IL}$ and $V_{IH}$. *Kessler* Brief at 17.

in determining whether Intel's products in *AVM1* satisfied the "simultaneous activation" limitations.  *See* JA Ex. 36, Subramanian Non-Infring. Rpt. ¶¶ 243-245; JA Ex. 17, Hassoun Dep. at 52-53.  Remarkably, Dr. Hassoun contends that his new ▮▮▮▮ measure would result in the products accused in *AVM1* *not* satisfying the "simultaneous activation" limitations—contrary to AVM's infringement contentions that were litigated for nearly three years in that case.  JA Ex. 17, Hassoun Dep. at 52 ("I concluded the … AVM1 chips did not have simultaneous activation.").  Thus, under AVM's newly manufactured measure, it is impossible to determine with any reasonable certainty whether a given product falls within the scope of the claims.  This is the epitome of indefiniteness.

The Federal Circuit reached a similar conclusion in *Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*, 803 F.3d 620 (Fed. Cir. 2015), where it assessed the definiteness of claims relating to an improved type of plastic that required a determination of the "slope of strain hardening." *Id.* at 631-633.  It "was known" that to determine the slope of strain hardening, "the maximum slope should be measured," but the court noted that different "methods existed to determine the maximum slope." *Id.* at 633.  The court therefore considered "whether the existence of multiple methods leading to different results without guidance in the patent or the prosecution history as to which method should be used renders the claims indefinite." *Id.* at 634.  The court concluded that the multiple potential methods—none of which was specified in the patent or prosecution history—rendered the claims indefinite. *Id.* at 633-634 ("There is no question that each of these four methods may produce different results, i.e., a different slope. … Because the methods do not always produce the same results, the method chosen for calculating the slope of strain hardening could affect whether or not a given product infringes the claims.").

As in *Dow Chemical*, the '547 patent and its prosecution history fail to "disclose a single

known approach" for determining $V_{IL}$ and $V_{IH}$ in any given circuit. *Id.* at 630. Indeed, Dr. Hassoun acknowledges that there are multiple ways to determine those values, and Dr. Hassoun's own simulations reveal how different methods yield different results. This uncertainty renders the claims indefinite. *See also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1344-1345 (Fed. Cir. 2015) (claim indefinite where limitation could be measured in different ways, yielding different results, and the patent and prosecution history did not provide guidance as to which measure to use); *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1341 (Fed. Cir. 2003) (same); *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 117 F. Supp. 3d 632, 642 (D. Del. 2015) (same).[11]

Rather than relying on a method disclosed in the patent or established in the industry, Dr. Hassoun simply invented a hypothetical circuit, constructed his own arbitrary simulations, determined a range of possible values for $V_{IL}$ and $V_{IH}$, and then arbitrarily selected the ▮▮▮▮ measure as a purportedly "conservative" measure. But his improvised methodology—which is plagued with arbitrary guesswork and uncertainty—does not comport with the public notice function that the definiteness requirement demands. Accordingly, under AVM's interpretation of the "simultaneous activation" requirement, claims 1-7, 9, and 19-21 are invalid.

## V.  CONCLUSION

Intel requests that the Court grant summary judgment that claims 1-5, 9, 12-14, 16, and 18-21 are invalid for failing to satisfy the written description requirement, and that claims 1-7, 9, and 19-21 are, if AVM's claim interpretation is accepted, invalid for indefiniteness.

---

[11]    *Cf. Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) ("When a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the composition may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite.").

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

By:   */s/ Bindu A. Palapura*
        David E. Moore (#3983)
        Bindu A. Palapura (#5370)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE 19899
        Tel:  (302) 984-6000
        dmoore@potteranderson.com
        bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

Dated: January 27, 2017
Public Version Dated: February 13, 2017
1243148 / 42223

21