IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AVM TECHNOLOGIES, LLC,

                 Plaintiff;

v.

INTEL CORPORATION,

                 Defendant.

Civil Action No. 15-33-RGA

## MEMORANDUM ORDER

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment on Intel's Utility Defense and to Strike Unreliable Expert Testimony on the Question of Utility (D.I. 407) and related briefing (D.I. 408, 502, 528). The Court heard oral argument on April 12, 2017. For the reasons that follow, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion for Partial Summary Judgment and to Strike Unreliable Expert Testimony on the Question of Utility (D.I. 407) is **DENIED**.

### A. Motion to Strike Expert Testimony

"[T]he district court acts as a gatekeeper" to ensure that expert testimony is reliable and helpful. *Schneider v. Fried*, 320 F.3d 396, 404 (3rd Cir. 2003). "The primary locus of this obligation is [Federal Rule of Evidence] 702." *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 589 (1993). It reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702, as amended in 2000, codified the Supreme Court's holding in *Daubert*. *Daubert* imposes a "trilogy" of requirements: (1) qualification, (2) reliability, and (3) fit. *Schneider*, 320 F.3d at 404. My determination that proffered testimony complies with these prerequisites is governed by Federal Rule of Evidence 104(a). *Daubert*, 509 U.S. at 592. As such, I must find *Daubert*'s trilogy of requirements is met by a preponderance of the evidence. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).

On the one hand, this showing requires the party proffering expert testimony do more than make a *prima facie* case of reliability. *Id.* at 743. On the other hand, the "evidentiary requirement of reliability is lower than the merits standard of correctness." *Id.* The proffering party does not "have to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Id.* at 744.

Plaintiff's objections to Dr. Ivey's testimony fall within the reliability prong of the *Daubert* trilogy. Under this prong, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. Reliability does not require certainty, *Daubert*, 509 U.S. at 590, but does require "validity," *Paoli*, 35 F.3d at 742. The Third Circuit has warned, however, that "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence." *Id.* at 744. An expert's opinion must be founded on good grounds, not perfect ones. *Id.* I can conclude there are good grounds for the opinion even if I "think[] there are better grounds for

2

some alternative conclusion" or that the expert's methodology "has some flaws such that if they had been corrected, the scientist would have reached a different result." *Id.* The Third Circuit has directed that a "judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate." *Id.* at 744–45.

Plaintiff makes two arguments for striking Dr. Ivey's testimony related to Defendant's utility defense. First, Plaintiff complains that Dr. Ivey "did not perform any analytical analysis showing the benefits or costs in any particular circuit. (D.I. 408 at 11). Second, Plaintiff characterizes Dr. Ivey's conclusion that a design engineer would not practice the invention because the disadvantages outweigh the benefits as "speculat[ion] without support." (*Id.*). In response to the first point, Defendant points to evidence in the record showing that Dr. Ivey relied on studies performed by Defendant and simulations performed by both Plaintiff's infringement expert and Defendant's noninfringement expert. (D.I. 501 at 14). Defendant responds to the second argument by pointing to Dr. Ivey's statements that his opinions were based on his many years of experience in the industry and his knowledge of circuit design principles. (*Id.*).

I agree with Defendant that Plaintiff has not shown that Dr. Ivey's opinions are unreliable. As to Plaintiff's first argument, there is no reason an expert cannot rely on analysis performed by other experts. This, as Defendant pointed out (a point to which Plaintiff failed to respond), is precisely what Dr. Ivey did. Furthermore, Plaintiff is not challenging Dr. Ivey's qualifications. Dr. Ivey, it seems to me, is qualified to opine on basic circuit design and whether the invention claimed in the '547 patent provides a benefit. I would hardly characterize the opinion of an expert as "speculation without support" simply because that opinion is based on

3

decades of experience in the field. If Plaintiff believes Dr. Ivey's testimony is based on erroneous facts or a flawed analysis, Plaintiff is free to explore that on cross-examination. Since I find that Plaintiff has failed to establish that Dr. Ivey's testimony about the utility defense is unreliable, I will deny Plaintiff's motion to strike this testimony.

## B. Motion for Partial Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–49 (1986).

35 U.S.C. § 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter" may obtain a patent on that invention. To satisfy the requirement that the invention be "useful," the invention must have both "specific and substantial utility." *In re Fisher*, 421 F.3d 1365, 1371 (Fed. Circ. 2005). Substantial utility means the invention has practical or real world utility, evidenced by the invention's "significant and presently available benefit to the public." *Id.* Whether the utility requirement is met is a question of fact. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956 (Fed. Cir. 1983).

Plaintiff argues that there is no dispute of material fact as to whether the invention is useful because the circuits "are not inoperable" and because the invention "can provide a benefit in some dynamic logic circuits." (D.I. 408 at 8). Plaintiff asserts that the bar for meeting the

4

utility requirement is low and that the invention must only be operable and have limited utility. (*Id.*). Plaintiff further asserts that Defendant's argument for lack of utility, which Plaintiff characterizes as a cost-benefit analysis, "is not a legally cognizable utility defense." (*Id.* at 10).

As an initial matter, I find that Plaintiff has misstated the law for showing lack of utility. The test for substantial utility is not whether the invention is "inoperable," it is whether "one skilled in the art can use a claimed discovery in a manner which provides some immediate benefit to the public." *Nelson v. Bowler*, 626 F.2d 853, 856 (C.C.P.A 1980). I think that Defendant has pointed to sufficient evidence in the record to raise a dispute of material fact as to whether the invention claimed in the '547 patent provided a "significant and presently available benefit to the public." (D.I. 502 at 12).

As to Plaintiff's assertion that Defendant's alleged cost-benefit analysis is not legally cognizable, I have reviewed all of the case law cited by Plaintiff in support of this argument. The cited cases are distinguishable. For example, Plaintiff cites to cases where the claimed invention was less useful than other inventions in the prior art. (D.I. 408 at 10). This is not the same as Defendant's lack of utility argument in the instant case. Defendant argues that the invention claimed in the '547 patent is of no benefit at all, not that it is less useful than other inventions. (D.I. 502 at 12). This is not, then, a cost-benefit analysis in the way that Plaintiff characterizes it.

Furthermore, Plaintiff's citations to cases finding utility where the invention was harmful or had drawbacks are also distinguishable. (D.I. 408 at 10). Here, Defendant is not simply arguing that there are drawbacks to the invention; rather, Defendant argues that these drawbacks are so significant as to result in an invention that provides no benefit. (D.I. 502 at 11-13). This is substantially different from the *NexMed* case Plaintiff relies on where the invention was found

5

to have utility because the defendants contended only that practicing the invention "burned those who used it," not that it was not capable of successfully treating cold sores. *NexMed Holdings, Inc. v. Beta Techs., Inc.*, 718 F. Supp. 2d 1299, 1311 (D. Utah 2010). The court reasoned that "a harmful product may still be useful," pointing to the example of radiation treatment for cancer. *Id.* Here, the essence of Defendant's argument is that the invention does not provide the benefit promised in the patent, not that it provides a benefit but has other drawbacks. Despite Plaintiff's attempts to characterize Defendant's argument as a cost-benefit analysis, I fail to see how this argument that the invention has no benefit at all is on point with the cost-benefit cases Plaintiff cites.

Defendant has pointed to sufficient evidence in the record to raise a genuine dispute of material fact on the question of utility. I will therefore deny Plaintiff's Motion for Partial Summary Judgment on Intel's Utility Defense.

Entered this 27 day of April, 2017.

Richard G. Andrews
United States District Judge