**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-33-RGA-MPT |
| | ) | |
| INTEL CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JOINT [PROPOSED] FINAL JURY INSTRUCTIONS[1]**

---

[1] These instructions reflect the Court's prior resolution of disputes between the parties regarding the final jury instructions. The parties preserve their objections to previously disputed language.

# 1. GENERAL INSTRUCTIONS

## 1.1.   INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  If you prefer, you may read along as I deliver them; however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at any time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. I will then explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

### 1.2.    JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented.  I will instruct you about the burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3.    BURDENS OF PROOF

AVM has the burden of proving patent infringement by what is called a preponderance of the evidence. That means AVM has to produce evidence which, when considered in light of all of the facts, leads you to believe that what AVM claims is more likely true than not.  To put it differently, if you were to put the plaintiff's and the defendant's evidence on the opposite sides of a scale, the evidence supporting the plaintiff's claims would have to make the scales tip somewhat on his side.

In this case, Intel contends that U.S. Patent No. 5,859,547 patent, which I will also refer to as the '547 patent, is invalid.  Intel has the burden of proving invalidity by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

### 1.4.    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**1.5. USE OF NOTES**

You may use notes taken during the trial to assist your memory. Remember that your notes are for your personal use. They may not be given or read to anyone else. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your notes are valuable only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

### 1.6. STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

### 1.7.    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.8.   DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence:  direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

### 1.9.    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

### 1.10.   EXPERT WITNESSES

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field – he or she is called an expert witness – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credibility of the expert witness and decide whether to rely upon his or her testimony.

## 2.     THE PARTIES AND THEIR CONTENTIONS

As I previously told you, AVM alleges that certain Intel microprocessors from the Sandy Bridge, Ivy Bridge, Haswell, and Broadwell microprocessor families infringe claims 1, 2, 4-7, 9, and 21 of the '547 Patent.

Intel denies that it has infringed the asserted claims of the '547 patent and also argues that the Asserted Claims are invalid.

In this case, you must decide the issues according to the instructions I give you.  In general these issues are:

1.      Whether AVM has proven by a preponderance of the evidence that Intel has infringed any of the asserted claims of the '547 patent.
2.      Whether Intel has proven by clear and convincing evidence that any of the asserted claims of the '547 patent are invalid.
3.      If any patent claims are infringed and not invalid, what amount of damages AVM has proven by a preponderance of the evidence.

### 3.      THE PATENT CLAIMS

### 3.1.      THE ROLE OF CLAIMS IN THE PATENT

Before you can decide the issues in this case, you will need to understand the role of

patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The

claims are important because it is the words of the claims—not the specification, the

embodiments or examples—that define what a patent covers and whether there is infringement.

The figures and text in the rest of the patent provide a description and/or examples of the

invention and provide a context for the claims, but it is the claims that define the breadth of the

patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each

claim may cover more or less than another claim.  Therefore, what a patent covers depends, in

turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or

not there is infringement of the claim and to decide whether or not the claim is invalid. The law

says that it is my role to define the terms of the claims and it is your role to apply my definitions

to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start

of the case, I have determined the meaning of the claims.  I am providing them to you in a

document labeled JX1.  I will provide to you my definitions of certain claim terms. You must

accept my definitions of these words in the claims as being correct. It is your job to take these

definitions and apply them to the issues that you are deciding, including the issues of

infringement and validity.

### 3.2. HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers. A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.  As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

### 3.3.    INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, asserted claims 1 and 21 of the '547 patent are each independent claims.

The remainder of the asserted claims in the '547 patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

Because a dependent claim incorporates all of the features of the independent claim it refers to, if you find that an independent claim is not infringed, then the claims that depend on that independent claim cannot be infringed.  Similarly, if you find that an independent claim is not anticipated or obvious, then the claims that depend on that independent claim are also not anticipated or obvious.

## 4.0.    INFRINGEMENT

## 4.1.  INFRINGEMENT GENERALLY

AVM alleges that Intel infringes the '547 patent.

I will now instruct you how to decide whether or not Intel has infringed the '547 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In order to prove infringement, AVM must prove that the requirements of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of infringement have been proved.

AVM must prove by a preponderance of the evidence that Intel made, used, sold, offered for sale within, or imported into the United States a product or process that meets all of the requirements of a claim and did so without the permission of AVM during the time the '547 patent was in force.  You must compare the Accused Products with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.  If they are met, there is infringement.  Infringement does not require proof that Intel intended to infringe.

You must determine, separately for each asserted claim, whether or not there is infringement.  There is one exception to this rule. If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the Accused Products meet additional requirements of any claims that depend from the independent claim, thus, whether those claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

### 4.2.  LIMITATIONS ON INFRINGEMENT — THE REVERSE DOCTRINE OF EQUIVALENTS

If a company makes, uses, sells, offers to sell within, or imports into the United States a product that meets all of the requirements of a claim and thus infringes that claim, the company is not liable for infringement if the requirements of the so-called "reverse doctrine of equivalents" are satisfied.

Under the reverse doctrine of equivalents, even if AVM establishes that a claim limitation is met by an element in the Accused Products, the Accused Products still do not infringe if they are so far changed in principle from the patented invention that they perform the same or similar function in a substantially different way.  Infringement does not require proof that Intel intended to infringe.

In determining whether the reverse doctrine of equivalents applies to preclude a finding of infringement, you should consider the following four criteria: (1) the principle of the claimed invention; (2) the principle of the accused product or process; (3) the degree of change in the principle of the accused product or process from that of the claimed invention; and (4) whether the accused product or process performs in a substantially different way.  The reverse doctrine of equivalents applies to individual limitations of a patent claim such that if you find that any element of the Accused Products is so far changed in principle from a patented limitation that it performs the same or similar function in a substantially different way, you should find that Intel is not liable for infringement.

**5.  INVALIDITY**

I will now instruct you on the rules you must follow in deciding whether or not Intel has proven that the asserted claims of the '547 patent are invalid.  To prove that any claim of the patent is invalid, Intel must persuade you by clear and convincing evidence.

### 5.1.  PRIOR ART

Under the patent laws a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before.  That which came before is referred to as the "prior art."  Anything before December 20, 1996 is prior art to the '547 patent.  **[Intel Proposal**:[2] Intel relies on all prior art, including the Myers & Ivey article, the Wang article, Figures 1 and 2 of the '547 patent, the Rajivan patent, and the Intel Pentium Pro (P6) microprocessor, to show the state of the art as of 1996.][3] Intel asserts the Myers & Ivey article and the Wang article as invalidating prior art.  Nothing else is asserted as invalidating prior art.

---

[2] **Intel**:  Intel proposes this language to define the relevant prior art in this case, which is helpful so that the jury can understand what was known in the art before the application for the '547 patent was filed.  The state of the prior art is also relevant to the obviousness inquiry, which requires the jury to consider "the scope and content of the prior art."  *See infra* § 5.4.  Given that the next two sentences in the proposed instruction specifically identify Myers & Ivey and Wang as the only asserted "invalidating prior art," it would be misleading not to identify the other prior art references by name as well.  It is also fair to identify the other prior art references and to explain that they show the state of the art.

[3] **AVM:** AVM objects to this language as confusing and unnecessary as it repeats what is conveyed in the prior sentence.

### 5.2.    CONSIDERED OR NOT CONSIDERED BY THE PATENT OFFICE

When a party challenging the validity of a patent relies on prior art that was considered by the Patent Office examiner during the prosecution of the application which resulted in the issued patent, that party's ability to satisfy its clear-and-convincing evidence burden may be more difficult.  When a party challenging the validity of a patent presents evidence that was not considered by the Patent Office examiner during the prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy that party's clear-and-convincing evidence burden.

**5.3. ANTICIPATION**

In order for someone to be entitled to a patent, the invention must actually be "new."  In general, inventions are new when they have not been made, used, or disclosed before. In this case, Intel contends that each of the Asserted Claims is not new.

Invalidity by anticipation requires the presence in a single prior art disclosure of all requirements, or limitations, of a claimed invention arranged as in the claim. For a claim to be anticipated, each claim limitation must be disclosed, either expressly or inherently, in a single prior art reference, and arranged or combined in the same way as recited in the claim.  You may not combine two or more items of prior art to find anticipation.  In determining whether every one of the elements of the claimed invention is found in a prior publication or patent, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular publication or patent.

### 5.4.  OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it

was made by an inventor, in order to be patentable, the invention must also not have been

obvious to a person of ordinary skill in the field of technology of the patent at the time the

invention was made. Intel may establish that a patent claim is invalid by showing, by clear and

convincing evidence, that the claimed invention would have been obvious to persons having

ordinary skill in the art at the time the invention was made in the field of technology of the

patent.

In determining whether a claimed invention is obvious, you must consider the level of

ordinary skill in the field of technology of the patent that someone would have had at the time

the invention was made, the scope and content of the prior art, and any differences between the

prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the

prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building

blocks of prior art. In considering whether a claimed invention is obvious, you may but are not

required to find obviousness if you find that at the time of the claimed invention there was a

reason that would have prompted a person having ordinary skill in the field of technology of the

patent to combine the known elements in a way the claimed invention does, taking into account

such factors as (1) whether the claimed invention was merely the predictable result of using prior

art elements according to their known function(s); (2) whether the claimed invention provides an

obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or

suggests the desirability of combining elements claimed in the invention; (4) whether the prior

art teaches away from combining elements in the claimed invention; (5) whether it would have

been obvious to try the combinations of elements, such as when there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.  To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.

### 5.5.  LEVEL OF ORDINARY SKILL IN THE ART

A person of ordinary skill in the art would be somebody who has a bachelors or masters degree in electronic engineering or similar discipline, and two or three years' experience in circuit design including dynamic logic circuits.

### 6. DAMAGES

If you find that the Accused Products infringe any of the Asserted Claims, and that those claims are not invalid, you must determine the amount of damages to be awarded AVM for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not consider damages in your deliberations.

AVM must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely true than not.

If proven by AVM, damages must be in an amount adequate to compensate AVM for the infringement. But the damage award cannot be less than a reasonable royalty. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance only in the event you find in favor of AVM. You will need to decide the issue of damages only if you find that one or more of the asserted claims are both not invalid and infringed.

AVM has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that AVM establishes that it more likely than not suffered. While AVM is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

### 6.1.  REASONABLE ROYALTY DEFINITION – USING THE HYPOTHETICAL NEGOTIATION MODEL

In this case, AVM seeks damages in the form of a so-called "reasonable royalty."  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of AVM and Intel would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed that the '547 patent was valid and infringed, and that both parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

## 6.2.  REASONABLE ROYALTY—RELEVANT FACTORS

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. The rates paid by Intel to license other patents comparable to the '547 patent.

2. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

3. The duration of the '547 patent and the term of the license.

4. The established profitability of the product made under the '547 patent; its commercial success; and its current popularity.

5. The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.

6. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

7. The extent to which Intel has made use of the invention; and any evidence that shows the value of that use.

8. The opinion testimony of qualified experts, who may provide a calculation of damages for the jury.

9. The amount that a licensor and a licensee (such as Intel) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

### 6.3.    Reasonable Royalty—Use of Comparable License Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent[s] in question, or for rights to similar technologies.  A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between AVM and Intel in order for you to consider it.  However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between AVM and Intel, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

### 6.4    Patent Expiration

The '547 patent expired on December 20, 2016.

[**Intel Proposal**:  The fact that the patent has expired is not relevant to infringement or invalidity, but may be relevant to damages.  AVM is only seeking damages for sales of products for the period before the date of expiration.][4]

[**AVM Proposal**: AVM asserts infringement and claims damages only for events prior to the date of expiration.  The fact that the patent has expired is not relevant to infringement or validity.  AVM is only seeking damages for sales of products for the period before the date of expiration. ][5]

---

[4]    **AVM:**  AVM objects to Intel's proposal because expiration has no relevance to damages and should not be included here.  While term may have some relevance to the hypothetical negotiation, this is already discussed in a separate instruction.

[5]    **Intel**:  Intel objects to AVM's proposal.  The first sentence in AVM's proposal is unnecessary because its content is sufficiently covered by the last sentence, which the parties agree on.  If the Court instructs the jury that damages are not relevant to infringement or invalidity, it is fair to also instruct the jury that expiration is relevant to damages.

## 7.  DELIBERATION AND VERDICT

### 7.1.  INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  After you hear closing arguments of counsel, you will return to the jury room to begin your deliberations.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, to me, or to anyone else except each other about the case.  The first thing you should do is select a foreperson. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson.

### 7.2.  UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A verdict form has been prepared for you. The verdict form asks you a series of questions about the parties' claims. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless you are directed otherwise in the verdict form, you must answer all of the questions posed, and you all must agree on each answer.

### 7.3.  DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4.     COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

POTTER ANDERSON & CORROON LLP

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*/s/ Bindu A. Palapura*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Of Counsel*:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

*Of Counsel*:

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
Kevin A. Goldman
Sarah R. Frazier
WILMERHALE
60 State Street
Boston, MA  02109
william.lee@wilmerhale.com
lauren.fletcher@wilmerhale.com
jordan.hirsch@wilmerhale.com
kevin.goldman@wilmerhale.com
sarah.frazier@wilmerhale.com

Edward H. Takashima
BOIES SCHILLER FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

David C. Marcus
WILMERHALE
350 South Grand Avenue
Suite 2100
Los Angeles, CA  90071
david.marcus@wilmerhale.com

Rosanne C. Baxter
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

William G. McElwain
Todd Zubler
Brittany Amadi
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
william.mcelwain@wilmerhale.com
todd.zubler@wilmerhale.com
brittany.amadi@wilmerhale.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

*Counsel for Plaintiff AVM Technologies, LLC*

Matthew Leary
WILMERHALE
1225 Seventeenth Street
Suite 2600
Denver, CO 80202
matthew.leary@wilmerhale.com

*Counsel for Defendant Intel Corporation*

Dated:  May 6, 2017