#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVM TECHNOLOGIES, LLC,           ) | |
|                                                         ) | |
|  Plaintiff,       ) | C.A. No.  15-33-RGA |
|                                                         ) | |
|  v.                      ) | **JURY TRIAL DEMANDED** |
|                                                         ) | |
| INTEL CORPORATION,                   ) | |
|                                                         ) | |
|  Defendant.      ) | |

**DEFENDANT INTEL CORPORATION'S MEMORANDUM IN SUPPORT OF ITS RULE 50(A) MOTION AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUES OF INFRINGEMENT, INVALIDITY AND DAMAGES**

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
   AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

Dated:  May 7, 2017
5154223/42223

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant and Counterclaimant Intel Corporation*

## TABLE OF CONTENTS

I. The Court should enter JMOL of invalidity for all asserted claims. ...................................1

  A. The Myers & Ivey article anticipates claims 1, 2, 6, 7, 9, and 21 of the '547 patent. ........................................................................................................2

  B. The Myers & Ivey article, either alone or in combination with the Wang article, renders obvious claims 4, 5, 6, 7, and 21 of the '547 patent........................4

  C. Dr. Wolfe's testimony cannot support a finding that the transistor identified by Dr. Ivey is not an "evaluation transistor" under the Court's claim construction. ..............................................................................................7

II. The Court should enter JMOL of non-infringement for all asserted claims........................9

  A. The Court should enter JMOL of no literal infringement........................................9

  B. The Court should enter JMOL of no infringement under the RDOE. ...................12

III. The Court should enter JMOL on damages and instruct the jury that it may not return a verdict greater than $5 million...............................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Leesona Corporation v. United States*,
    530 F.2d 896 (Ct. Cl. 1976) ........................................................................................................13

*Norian Corporation v. Stryker Corporation*,
    363 F.3d 1321 (Fed. Cir. 2004).....................................................................................................5

*Optivus Technology, Inc. v. Ion Beam Applications S.A.*,
    469 F.3d 978 (Fed. Cir. 2006).......................................................................................................5

*Precision Metal Fabricators, Inc. v. Jetstream Systems Company, Division of
    Oerlikon Motch Corporation*,
    693 F. Supp. 814 (N.D. Cal. 1988) .......................................................................................13, 15

*SRI International v. Matsushita Electronics Corporation of America*,
    775 F.2d 1107 (Fed. Cir. 1985)...................................................................................................12

Pursuant to Federal Rule of Civil Procedure 50(a), Intel moves for judgment as a matter of law ("JMOL") on Intel's defenses of invalidity and non-infringement under the reverse doctrine of equivalents ("RDOE"). Intel further renews its motion for JMOL on the issues of infringement and damages. *See* D.I. 700. JMOL is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Based on the evidence in the record, a reasonable jury could only conclude that the asserted claims of U.S. Patent No. 5,859,547 ("the '547 patent") are invalid, not infringed (literally or under the RDOE), and that the only damages award supported by the record is a one-time lump-sum no greater than $5 million.

## I. The Court should enter JMOL of invalidity for all asserted claims.

Intel bears the burden of proving invalidity by clear and convincing evidence. In light of the evidence presented at trial, a reasonable jury could reach only one conclusion—that each of the asserted claims of the '547 patent is invalid in light of the prior art. There is no dispute that dynamic logic circuits that include a precharge transistor, a dynamic logic block, and an evaluation transistor located between the precharge transistor and the dynamic logic block were well-known in the art. *See* 5/5/2017 Trial Tr. 1548:1-1550:12 (Ivey); *id.* 1557:12-1558:17 (Ivey); *id.* 1683:2-1684:18 (Wolfe); *see also* DDX6.12; DDX6.13; DDX6.14; PTX0001 (Fig. 2). And as Dr. Ivey explained, other prior art taught simultaneous activation of the precharge and evaluation transistors. *See* 5/5/2017 Trial Tr. 1559:14-1566:18; *see also* DTX0046 at 00015 (Fig. 13); DTX0940 at 00007; DDX6.20; DDX6.21; DDX6.22; DDX6.98; DDX6.99. Thus, the only allegedly novel aspect of the invention is the delay "for causing" simultaneous activation. 5/5/2017 Trial Tr. 1550:8-12 ("Q. What does Mr. Tran claim to have invented there? … A. He claims to have invented a delay for causing simultaneous activation.").

During trial, Intel's invalidity expert, Dr. Peter Ivey explained that each of the asserted claims was anticipated by and/or rendered obvious in view of the prior art. Dr. Ivey is an expert in the field of semiconductor devices and circuit design (*see* 5/5/17 Trial Tr. 1542:22-1545:23), and he was thoroughly familiar with the two cited pieces of prior art, one of which he wrote and the other of which explicitly discussed and built on his work.

Dr. Ivey explained that claims 1, 2, 6, 7, 9, and 21 of the '547 patent are anticipated by a 1985 article written by Dr. Ivey and co-author David Myers, entitled "A Design Style for VLSI CMOS" ("the Myers & Ivey article"). DTX0075; *see* 5/5/17 Trial Tr. 1592:24-1596:8 (claim 1); *id.* 1596:9-1597:10 (claim 2); *id.* 1601:24-1605:21 (claim 6); *id.* 1605:22-1606:9 (claim 7); *id.* 1606:10-1607:1 (claim 9); *id.* 1607:2-1610:22 (claim 21). Dr. Ivey further explained that claims 4, 5, 6, 7, and 21 are obvious in view of either the Myers & Ivey article alone or in combination with a 1989 article written by J.S. Wang, C.Y. Wu, and M.K. Tsai entitled "Novel dynamic CMOS logic free from problems of charge sharing and clock skew" ("the Wang article"). DTX0079; *see* 5/5/17 Trial Tr. 1597:11-1601:11 (claim 4); *id.* 1601:12-1601:23 (claim 5); *id.* 1601:24-1605:21 (claim 6); *id.* 1605:22-1606:9 (claim 7); *id.* 1607:2-1610:22 (claim 21).

**A.     The Myers & Ivey article anticipates claims 1, 2, 6, 7, 9, and 21 of the '547 patent.**

Dr. Ivey first presented a detailed presentation of the Myers & Ivey article, including an explanation of the structural and timing diagrams. 5/5/17 Trial Tr. 1576:11-1585:2. Then, applying the Court's claim constructions (*see, e.g.*, *id.* 1593:5-8), Dr. Ivey explained that the Myers & Ivey article discloses each limitation of claims 1, 2, 6, 7, 9, and 21. Independent claim 1 of the '547 patent recites:

1. A dynamic logic circuit, comprising:

a dynamic logic block;

>    a precharge transistor;
>
>    an evaluation transistor between the dynamic logic block and the precharge transistor; and
>
>    a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors.

PTX0001 at 8:46-53.

Dr. Ivey explained that Figure 3(a) of the Myers & Ivey article discloses a "dynamic logic circuit" as claimed. *See* 5/5/17 Trial Tr. 1577:1-4; DTX0075 at 00003 (Fig. 3(a)). Dr. Ivey further explained that the dynamic logic circuit disclosed in Figure 3(a) includes a dynamic logic block, a precharge transistor, and an evaluation transistor between the dynamic logic block and the precharge transistor. *See id.* 1577:9-11 (dynamic logic block); *id.* 1577:5-8 (precharge transistor); *id.* 1577:1216, 1582:3-1585:2, 1586:15-18 (evaluation transistor); *see also* DDX6.41. Dr. Ivey also explained that the dynamic logic circuit of Figure 3(a) includes "a delay coupled to the precharge transistor," as illustrated in Figure 4(a) of the Myers & Ivey article. 5/5/17 Trial Tr. 1577:17-1578:22, 1579:18-23; *see also* DTX0075 at 00004 (Fig. 4(a)); DDX6.43. And finally, Dr. Ivey explained that the delay coupled to the precharge transistor in the Myers & Ivey article is "for simultaneously activating the precharge and evaluation transistors" (*i.e.*, for causing to be on at the same time (D.I. 682 at 2)) as clearly illustrated in the timing diagram of Figure 3(b) in the Myers & Ivey article. 5/5/17 Trial Tr. 1579:24-1581:4, 1595:10-13, 1595:17-1596:6; *see* DTX0075 at 00003 (Fig. 3(b)); DDX6.46.

With respect to claims 2, 6, 7, and 9, which each depend from claim 1, Dr. Ivey explained that each of the additional limitations of those claims is disclosed in the Myers & Ivey article. *See* 5/5/17 Trial Tr. 1596:9-1597:10 (claim 2); 1601:24-1605:21 (claim 6); 1605:22-1606:9 (claim 7); 1606:10-1607:1 (claim 9).

3

> Independent claim 21 of the '547 patent recites:
>
> 21. A method of precharging and evaluating a dynamic logic circuit, the method comprising the steps of:
>
> switching a precharge transistor, using a clock signal, between an active state during a precharge clock phase and an inactive state during a major portion of an evaluation clock phase;
>
> switching an evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase;
>
> delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase.

PTX0001 at 10:34-45.  Dr. Ivey explained that the Myers and Ivey article discloses the method of claim 21, including the step of "switching a precharge transistor, using a clock signal, between an active state during a precharge clock phase and an inactive state during a major portion of an evaluation clock phase."  5/5/17 Trial Tr. 1607:2-24; *see* DTX0075 at 00003 (Figs. 3(a), 3(b)).  Dr. Ivey also explained that the Myers & Ivey article discloses the step of "switching an evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase."  5/5/17 Trial Tr. 1608:1-1608:17; *see* DTX0075 at 00004 (Fig. 4(c)); DDX6.90; *see also* 5/5/17 Trial Tr. 1603:20-1605:14; DDX6.83.  Finally, Dr. Ivey explained that the Myers & Ivey article discloses the step of "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase."  5/5/17 Trial Tr. 1608:18-1610:22; *see* DTX0075 at 00004 (Fig. 4(c)); DDX6.92.

> **B.    The Myers & Ivey article, either alone or in combination with the Wang article, renders obvious claims 4, 5, 6, 7, and 21 of the '547 patent.**

Dr. Ivey also explained that claims 4 and 5 (and claims 6, 7, and 21 (if not anticipated)) would have been obvious in view of either the Myers & Ivey article alone or in combination with

4

the Wang article. Dr. Ivey first explained that a person of ordinary skill in the art would have been motivated to combine the Myers & Ivey article with the Wang article. *See, e.g.*, 5/5/17 Trial Tr. 1600:23-1601:5. Dr. Ivey explained that the Wang article discussed—and claimed to improve on—the Myers & Ivey article. Thus, there was not just a reason to combine the Myers & Ivey article with the additional teachings in the Wang article—the Wang article ***actually combined*** its teachings with those of the Myers & Ivey article. *See id.* 1599:8-1600:18 ("[T]hey're building on the work that we did in 1985 to improve it."); *id.* 1600:23-1601:5 ("Q. So would it have been obvious to a person of ordinary skill in the art at the time of the '547 patent to have combined your article with the anti-float circuit that was in the Wang article? A. That's what Wang did, it would have been obvious to do so."); *see also* DTX0079 at 00002 ("In this paper, a new four-phase dynamic CMOS logic derived from the four-phase precharge-discharge logic (Myers and Ivey 1985) is proposed and analyzed."); *see also Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 990 (Fed. Cir. 2006) (affirming summary judgment of obviousness where the secondary reference "specifically note[d]" the existence of the primary reference); *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1328, (Fed. Cir. 2004) (affirming denial of post-trial motion seeking to overturn a jury verdict of obviousness where the secondary prior art reference "expressly discussed" the primary prior art reference, which supplied sufficient evidence of motivation to combine the references).

Claim 4 requires an "anti-float circuit," and claim 5 requires an "anti-float circuit that includes a latch." PTX0001 at 61-64. Dr. Ivey explained that while the Myers & Ivey article does not disclose an anti-float circuit, it would have been obvious to add an anti-float circuit (including a latch) to the circuit disclosed in Figure 3(a) of the Myers & Ivey article. *See* 5/5/17 Trial Tr. 1597:11-1601:23. Dr. Ivey cited the Patent Office examiner's statement that adding an

anti-float circuit to a dynamic logic circuit would have been obvious in the context of claims 4 and 5. *See* 5/5/17 Trial Tr. 1597:11-1598:14; PTX0006 at AVM002922 ("It would have been obvious to one having ordinary skill in the art at the time the invention was made to have coupled an anti-float circuit … for the purpose of control leakage and fluctuation of the precharge node (column 2, lines 18-32)."); DDX6.75.  Figure 2 of the '547 patent, which shows a dynamic logic circuit known in the prior art, also discloses an anti-float circuit that includes a latch.  *See* PTX0001 (Fig. 2).  Dr. Ivey further cited the Wang article, which expressly added an anti-float circuit (including a latch) to the Myers & Ivey circuit.  5/5/17 Trial Tr. 1600:16-1601:20; DTX0079 at 00011 (Fig. 9(a)); DDX6.76; DDX6.77; DDX6.78; DDX6.79.  In light of this evidence, claims 4 and 5 would have been obvious based on the Myers & Ivey either alone or in combination with the Wang article.  *See* Trial. Tr. 1601:7-11 ("[W]hat is your opinion regarding whether claim 4 is valid or invalid?  A. It's invalid for the reason that it's obvious in the light of our article and the Wang article."); *id.* 1601:15-20 ("[Q.] The next one is the anti-float circuit includes a latch.  Does your article in combination with the Wang article render that claim obvious?  A. Yes, that circuit that's highlighted in yellow is a latch.").

Claims 6 and 7 require "switching the evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase" (PTX0001 at 9:6-9), and claim 21 requires "switching an evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase" and "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase" (*id.* at 10:40-45).  As noted above, Dr. Ivey explained that each of those claim elements is disclosed by the Myers & Ivey article.  For each limitation, Dr. Ivey cited Figure 4(c) from the Myers & Ivey article, which

6

shows the actual output waveforms from the semiconductor chip that incorporated the circuit described in Figure 3(a) of the Myers & Ivey article. *See* 5/5/17 Trial Tr. 1603:20-1604:16, 1608:8-1610:22; DDX6.83, DDX6.90, DDX6.92 (citing DTX0075 at 0004 (Fig. 4(c))). In each case, Dr. Ivy pointed to a small shift in the actual waveforms compared to the idealized waveforms of Figure 3(b), which created the necessary transistor activation during the phases required by the claims (as shown by the yellow shaded period highlighted by Dr. Ivey's demonstratives). *See* DDX6.83, DDX6.90, DDX6.92. Dr. Ivey further explained that this shift—known as "clock skew"—was a well-known phenomenon in the art and is specifically described by the Wang article, which is entitled "Novel dynamic CMOS logic free from problems of charge sharing and clock skew." 5/5/17 Trial Tr. 1604:17-1605:14; DDX6.84; *see also* DTX0079. Thus, the required shift of the idealized signals was not only disclosed expressly in Figure 4(c) of the Myers & Ivey article but also would have been obvious to a person of skill in the art, and claims 6, 7, and 21 therefore were obvious based on the Myers & Ivey article either alone or in combination with the Wang article. *See* 5/5/17 Trial Tr. 1603:20-1605:14, 1608:8-1610:22; DTX0079 at 00004 (Fig. 2(b)); DDX6.84.

Based on the evidence, no reasonable jury could conclude that claims 1, 2, 4, 5, 6, 7, 9, and 21 are not invalid in view of the Myers & Ivey article either alone or in combination with the Wang article.

**C. Dr. Wolfe's testimony cannot support a finding that the transistor identified by Dr. Ivey is not an "evaluation transistor" under the Court's claim construction.**

Dr. Ivey's limitation-by-limitation testimony was unchallenged by AVM on cross-examination or by AVM's rebuttal validity expert, Dr. Andrew Wolfe, except with respect to a

single claim limitation—the "evaluation transistor" limitation.[1] AVM also presented no evidence regarding objective considerations of non-obviousness. *See* 5/5/17 Trial Tr. 1555:2-3, 1572:16-20.

With respect to the "evaluation transistor" limitation, Dr. Wolfe testified that the transistor located between the precharge transistor and the dynamic logic block in Figure 3(a) of the Myers & Ivey article is not an "evaluation transistor," but is instead a "hold transistor." *See* 5/5/17 Trial Tr. 1667:9-15, 1710:16-22 (Wolfe). The label given to that transistor in the Myers & Ivey article, however, is irrelevant to whether the transistor located between the precharge transistor and the dynamic logic block is an "evaluation transistor" under the Court's construction. The Court has construed "evaluation transistor" to mean "a transistor that is connected a clock signal and is used to control when the precharge node may discharge." D.I. 682 at 2. There is no dispute that the transistor in Figure 3(a) located between the precharge transistor and the dynamic logic block is connected to a clock signal. *See* 5/5/17 Trial Tr. 1582:18-1583:4 (Ivey). The only dispute is whether that transistor is "used to control when the precharge node may discharge." But there is no factual disagreement about how that transistor operates. The precharge node ***cannot*** discharge if that transistor is off, and that transistor ***must*** be on in order for the precharge node to discharge. *See* 5/5/17 Trial Tr. 1584:4-22 (Ivey); *id.* 1668:15-1669:7 (Wolfe). Indeed, AVM's expert Dr. Wolfe admitted that it is a "precondition" to discharge of the precharge node that this transistor be on. *Id.* 1668:15-1669:7 (Wolfe). The transistor between the precharge transistor and the dynamic logic block in Figure 3(a) of the

---

[1] On that basis alone, Dr. Wolfe disputed that the Myers & Ivey article disclosed the limitations that require a delay for causing the simultaneous activation of a precharge transistor and an evaluation transistor. *See, e.g.*, 5/5/17 Trial Tr. 1710:12-22 (Wolfe).

8

Myers & Ivey article is therefore used to control when the precharge node may discharge,and no reasonable jury could conclude otherwise.

In sum, a reasonable jury could find only that the asserted claims of the '547 patent are invalid in view of the Myers & Ivey article, either alone or in combination with the Wang article. Specifically, no reasonable jury could conclude that the transistor located between the precharge transistor and the dynamic logic block in Figure 3(a) of the Myers & Ivey article is not an "evaluation transistor" under the Court's claim construction. The Court should enter judgment as a matter of law that claims 1, 2, 4, 5, 6, 7, 9, and 21 of the '547 patent are invalid under 35 U.S.C. § 102 and/or § 103.

## II. The Court should enter JMOL of non-infringement for all asserted claims.

### A. The Court should enter JMOL of no literal infringement.

AVM bears the burden of proving infringement by a preponderance of the evidence. Because AVM has not raised the doctrine of equivalents at trial, AVM must prove literal infringement. AVM has failed to present sufficient evidence from which a reasonable jury could find infringement of any of the asserted claims of the '547 patent.

Claims 1, 2, 4, 5, 6, 7, and 9 each require "a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors." PTX0001 at 8:52-54. Claim 21 similarly requires "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase." PTX0001 at 10:44-46. The Court has construed "delay" to mean "a circuit element that delays the clock signal to the precharge transistor." D.I. 682 at 1. The Court has also construed "for simultaneously activating" to mean "for causing to be on at the same time." D.I. 682 at 2.

AVM has failed to present evidence demonstrating that Intel's accused products contain "a delay coupled to the precharge transistor for simultaneously activating the precharge and

9

evaluation transistors" or that Intel has performed the step of "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase." Relying on a single circuit that was supposedly "representative" of the approximately 1.3 million accused circuits, AVM's technical expert Dr. Hassoun testified that various transistors and logic gates coupled to the precharge transistor are the claimed "delay." *See* 5/2/2017 Trial Tr. 536:17-24 (Hassoun); PDX127. He failed to demonstrate, however, that those elements are "for causing" simultaneous activation or delay the precharge clock phase "so that" there is simultaneous activation as the claims require—as explained in Intel's Rule 50(a) motion filed on May 4, 2017. *See* D.I. 700 at 1-4.

In contrast to Dr. Hassoun's deficient analysis, Intel presented evidence that the accused circuits do not have a delay "for causing" simultaneous activation or "so that" the precharge transistor is activated during a minor portion of the evaluation clock phase. *See, e.g.*, 5/4/17 Trial Tr. 1444:4-1450:4 (Subramanian). Dr. Subramanian explained that, in the claimed invention, the delay is for causing simultaneous activation. *Id.* 1402:19-1403:22. But the accused circuits have precisely the opposite function: if the accused delay circuitry were removed, "[t]he consequence is you will have a large period in which both transistors, namely the precharge and the read wordline transistor, will be on." *Id.* 1449:7-15. Thus, the delays in the accused circuitry "actually reduce or minimize or even eliminate simultaneous activation." *Id.* 1449:16-23. Mr. Kreitzer and Mr. Shchupak similarly testified that the accused delay circuitry is not "for causing" simultaneous activation but is for avoiding or reducing contention. *See, e.g.*, 5/4/17 Trial Tr. 1207:17-1208:21 (Kreitzer); *id.* 1314:2-20, 1356:17-1358:3 (Shchupak). Structure that is for reducing overlap—even if the reduction is not complete, and some contention remains—cannot meet the "for causing" and "so that" limitations. Indeed,

10

AVM's invalidity expert, Dr. Wolfe, conceded that "for causing" claim language "would not be met with something that reduces overlap. It has to cause them to be on at the same time." 5/5/17 Trial Tr. 1693:17-1694:4.

For method claim 21, AVM has also failed to prove that Intel performed the step of "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase" for all of the accused products in the United States. Dr. Hassoun testified that Intel tests chips in the United States and that Intel tests "every single chip." *See* 5/2/2017 Trial Tr. 569:2-21 (Hassoun). He did not, however, testify that Intel has in fact tested every accused chip in the United States—to the contrary, he testified only that "at least three of the families are tested and assembled and tested in the United States." *Id.* 567:11-16. He did not identify which of the three families are tested in the United States or the number of each chips within those families that are tested in the United States (as opposed to abroad)—let alone how many times such tests have occurred. Nor did AVM put in any evidence to establish that Intel has tested any particular accused chips (let alone all of the accused chips) in the United States. Based on this record, no reasonable jury could find that Intel has used all of the accused chips in a way that infringes method claim 21.

In sum, no reasonable jury could find that Intel's accused products literally satisfy the "a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors" and "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase" limitations. The Court should therefore enter judgment as a matter of law of no infringement for claims 1, 2, 4, 5, 6, 7, 9, and 21 of the '547 patent.

11

**B.     The Court should enter JMOL of no infringement under the RDOE.**

The reverse doctrine of equivalents provides that, even if a patentee establishes that the accused product falls within the literal scope of the asserted claims, an accused product still does not infringe if it is "so far changed in principle" from the patented invention "that it performs the same or similar function in a substantially different way."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1124 (Fed. Cir. 1985) (en banc).  "When a patentee establishes literal infringement, the accused infringer may undertake the burden of going forward to establish the fact of non-infringement under the reverse doctrine of equivalents."  *Id.* at 1123-1124.  "If the accused infringer makes a prima facie case, the patentee, who retains the burden of persuasion on infringement, must rebut that prima facie case."  *Id.* at 1124.  Here, even if it were the case that AVM met its burden of proving literal infringement by a preponderance of the evidence—and it has not—every reasonable factfinder would need to conclude that Intel has established a prima facie case that the accused products do not infringe under the RDOE, and AVM has failed to rebut that prima facie case.  The Court should thus grant JMOL that the accused products do not infringe under the RDOE.

Intel presented evidence demonstrating that the circuitry accused of satisfying the claim elements "a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors" (claims 1, 2, 4, 5, 6, 7 and 9) and "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase" (claim 21) is so far changed in principle from the '547 patent that, even if it were found to fall within the literal scope of the claims, it performs the same or similar function in a substantially different way.  Dr. Subramanian explained that the '547 patent's clear principle for these claim elements is to use a delay to cause overlap, and in contrast the accused structure operates on the opposite principle and in a substantially different way:  reducing

overlap. 5/4/17 Trial Tr. 1451:2-13. Thus, the accused circuitry operates according to "[d]ifferent principles specifically in relation to this delay element" and "perform[s] in a substantially different way than the approach of the '547 claims." *Id.* 1451:14-1452:2. Intel engineers Kurt Kreitzer and George Shchupak similarly testified that the accused circuitry operates on that different principle of reducing contention. *See, e.g.*, 5/4/17 Trial Tr. 1207:17-1208:21 (Kreitzer); *id.* 1314:2-20, 1356:17-1358:3 (Shchupak).

AVM failed to rebut Intel's prima facie case of non-infringement under the RDOE. AVM's only witness on this topic, Dr. Hassoun, did not apply the correct legal standard. He simply repeated his opinion that the accused products literally perform the same function as the claim element—which is assumed for purposes of the RDOE. *See* 5/5/17 Trial Tr. 1734:20-1735:12 (asserting that the accused delay circuitry "has the same exact function" as what is claimed); *id.* 1737:21-4 ("You have to look at the structure, does the structure do that, then it infringes.").

Furthermore, no reasonable jury could find that Intel gains any benefit from the '547 patent. *Cf. Precision Metal Fabricators, Inc. v. Jetstream Systems Co., Division of Oerlikon Motch Corp.*, 693 F. Supp. 814, 819 (N.D. Cal. 1988) ("This appears to be a case where defendants are not gaining the benefit of plaintiff's patents, but their equipment could fall within the literal language of the patents."); *Leesona Corp. v. United States*, 530 F.2d 896, 906 (Ct. Cl. 1976) (finding that, under the RDOE, "incidental and entirely insignificant" infringement does not create liability for patent infringement). *Id.* at 906. Dr. Hassoun identified three alleged benefits to Intel: charge sharing (reliability) benefits, voltage (power) benefits, and speed benefits. *See, e.g.*, 5/2/17 Tr. 513 7-19 (Hassoun); PDX208. The evidence, however,

demonstrates that any simultaneous activation provides no benefit to the accused products—and to the contrary, only has downsides.

Dr. Subramanian, Mr. Kreitzer, and Mr. Shchupak all explained that the accused circuits may have some small amounts of charge-sharing, but not enough to cause a problem (*i.e.*, a potential error in the output of the circuits). *See, e.g.*, 5/4/17 Trial Tr. 1179:12-20 (Kreitzer); *id.* 1320:1-1322:20, 1329:4-20 (Shchupak); *id.* 1415:13-1428:13 (Subramanian). If the amount of charge-sharing is not enough to cause a problem, then there is no benefit to reducing it further. *Id.* 1428:1-13 (Subramanian). Dr. Hassoun did not dispute this testimony, and in fact conceded that the Intel engineers would know better than him whether the amount of charge-sharing in the accused circuits would ever be sufficient to potentially cause a problem. 5/2/17 Trial Tr. 686:1-12 ("Q. … [W]ho would know better whether there was an actual charge sharing problem in this circuit, you or the Intel engineers who work on it? A. Oh, the Intel engineers. Again, you have to look at all the data."). There is thus no basis to find that the accused circuits gain any benefit from the purported reduction in charge-sharing that Dr. Hassoun attributes to simultaneous activation.

Nor is there any evidence that Intel gains any speed or power benefit—rather, contention slows the circuit and wastes power. First, the patent makes clear that the alleged benefits related to speed and power are attributable to the prior art design that allegedly was not practical to use without the '547 patent due to an alleged charge-sharing problem. *See, e.g.*, PTX0001 at 2:32-35 ("[T]he circuit of FIG. 2 is generally considered a poor design because charge-sharing between the logic block and the precharge node during the evaluation phase can cause the precharge node to undesirably go low."). Second, the evidence overwhelmingly demonstrates that causing contention reduces speed, wastes power, and also impairs reliability. *See, e.g.*, 5/4/17 Tr.

14

1177:24-1186:23 (Kreitzer); *id.* 1314:2-20, 1322:21-1329:20 (Shchupak); *id.* 1427:15-1436:7 (Subramanian).[2] Indeed, co-inventor Mark Acuff admitted that his own simulations showed that circuits featuring a delay for causing simultaneous activation were sometimes slower and sometimes used more power than the prior art circuits. 5/5/17 Trial Tr. 1531:17-1538:2; DTX1163; DTX1252; DTX1256; DTX1257; PTX0893. Therefore, even if the accused products were found to fall within the literal scope of the asserted claims, any simultaneous activation in the accused circuits "do[es] not enhance the operation of" Intel's accused products and Intel is "not gaining the benefit of" the '547 patent. *See Precision Metal Fabricators*, 693 F. Supp. at 819.

For the reasons set forth above, no reasonable jury could find that AVM rebutted Intel's prima facie case that the accused products do not infringe under the RDOE. The Court should therefore enter judgment as a matter of law of no infringement under the RDOE for claims 1, 2, 4, 5, 6, 7, 9, and 21 of the '547 patent.

### III. The Court should enter JMOL on damages and instruct the jury that it may not return a verdict greater than $5 million.

It is AVM's burden to prove a damages amount, supported by evidence, that correlates a reasonable royalty to the value of the invention. Here, the only damages amount that could potentially satisfy that burden is Ms. Davis's opinion that a reasonable royalty would be a "one-time lump-sum payment" between $3.4 and $5 million. 5/3/2017 Trial Tr. 814:19-815:1 ("My opinion is that the damages would be in the range from $3.4 million to $5 million. … It would

---

[2] In light of the Court's *Daubert* ruling, AVM presented no evidence that any speed or power benefit in individual circuits would translate to a speed or power benefit to the overall microprocessor. *See, e.g.*, 5/2/17 Trial Tr. 605:16-608:4 (Dr. Hassoun explaining that he demonstrated an alleged speed and power benefit only with respect to the individual circuits that he simulated).

15

be a one-time lump-sum payment."); *id*. 793:20-24, 838:23-839:2.[3]  For the reasons set forth in Intel's previous Rule 50(a) motion, the Court should enter JMOL against AVM with respect to any claim for damages beyond this range and instruct the jury that it may not award damages greater than $5 million should it find infringement of a valid claim.  *See* D.I. 700 at 4-15.

Respectfully submitted,

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

Dated:  May 7, 2017
515422342223

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com

*Attorneys for Defendant and Counterclaimant Intel Corporation*

---

[3]  As noted above, AVM has failed to prove the number of times method claim 21 was practiced (if infringement and validity were found for claim 21).