## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.  15-33-RGA |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| INTEL CORPORATION, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

## PARTIES' JOINT PROPOSED FINAL PRETRIAL ORDER

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
bschladweiler@ramllp.com
nmozal@famllp.com

OF COUNSEL:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
Tel:  (202) 237-2727

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Tel:  (310) 752-2400

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY  10504
Tel:  (914) 749-8200

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
Tel:  (310) 203-7096

*Attorneys for Plaintiff*
*AVM Technologies, LLC*

Dated:  April 14, 2017
5074646 / 42223

 Public Version Dated: May 19, 2017

Tel: (202) 663-6000

*Attorneys for Defendant*
*Intel Corporation*

## TABLE OF CONTENTS

I.      NATURE OF THE ACTION AND THE PLEADINGS.................................................... 1

II.     FEDERAL JURISDICTION ................................................................................. 3

III.    PARTIES' JOINT STATEMENT OF ADMITTED FACTS............................................ 3

THE PARTIES.................................................................................................................... 3

      A.     Plaintiff ................................................................................................... 3

      B.     Defendant ................................................................................................ 4

JURISDICTION AND VENUE ........................................................................................ 4

THE PATENT ................................................................................................................... 4

THE ACCUSED INTEL PRODUCTS............................................................................. 4

IV.     PARTIES' JOINT STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED.... 5

V.      PARTIES' JOINT STATEMENT OF ISSUES OF LAW THAT REMAIN
        TO BE LITIGATED ................................................................................................ 5

VI.     PARTIES' PRE-MARKED EXHIBITS ................................................................... 5

VII.    WITNESSES................................................................................................................ 10

      A.     List of Witnesses to be Called ................................................................ 10

      B.     Testimony by Deposition........................................................................ 10

      C.     Disclosure of Witnesses ......................................................................... 12

VIII.   PARTIES' BRIEF STATEMENT OF INTENDED PROOFS ....................................... 13

IX.     MOTIONS IN LIMINE ............................................................................................. 13

X.      JURY TRIAL............................................................................................................. 13

XI.     LENGTH OF TRIAL.................................................................................................. 13

XII.    AMENDMENTS TO THE PLEADINGS ...................................................................... 13

XIII.   SETTLEMENT CERTIFICATION............................................................................... 14

XIV.    ORDER TO CONTROL COURSE OF ACTION ........................................................... 14

On April 21, 2017, at 2:00 p.m., counsel for AVM Technology, LLC ("AVM" or "Plaintiff") and Defendant Intel Corporation ("Intel" or "Defendant") will participate in a pretrial conference before this Court pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.3.

Pursuant to this Court's Scheduling Order (D.I. 252), a jury trial will take place beginning on May 1, 2017.  The trial will address AVM's claim that Intel infringes claims 1-7, 9, 12-14, 16, and 18-21 ("Asserted Claims") of U.S. Patent No. 5,859,547 ("the '547 Patent" or "the AVM Patent") and AVM's request for damages, as well as Intel's defenses and counterclaims, to the extent they are to be tried to a jury.

The following matters as to the conduct of the trial have been stipulated by the parties and are hereby ordered by the Court:

# I.    NATURE OF THE ACTION AND THE PLEADINGS

1.    On January 12, 2015, AVM filed its Complaint for Patent Infringement (D.I. 1), in which it alleged that Intel infringes the '547 Patent, which relates generally to dynamic logic circuits.  AVM sought a judgment of infringement, willful infringement, injunctive relief, and damages.  AVM no longer seeks injunctive relief.

2.    On March 9, 2015, Intel filed its Answer, Defenses, and Counterclaims to Plaintiff's Complaint (D.I. 9), in which it denied infringing the '547 Patent and asserted defenses of non-infringement, invalidity, preclusion (including claim preclusion, issue preclusion, and the *Kessler* doctrine), equitable estoppel, laches, waiver, unclean hands, and the statutory limitation on damages occurring more than six years before the filing of the complaint.  Intel also counter-claimed, seeking declaratory judgments that the claims of the '547 Patent are not infringed, and are invalid.  On March 27, 2015, Intel filed its First Amended Answer, Defenses, and

Counterclaims to Plaintiff's Complaint (D.I. 12), in which it further addressed its defenses of claim preclusion, issue preclusion, and the *Kessler* doctrine.

3.       Both AVM and Intel demanded a jury trial.

4.       On April 8, 2015, AVM moved to strike Intel's preclusion defenses (D.I. 17). After briefing and argument on the issue, the Court granted AVM's motion to strike Intel's claim preclusion defense for two accused products (the Ivy Bridge and Haswell lines of processors), but denied the motion with respect to the Sandy Bridge line of processors. The Court also denied AVM's motion to strike Intel's *Kessler* doctrine and issue preclusion defenses. (D.I. 30).

5.       On December 11, 2015, Intel moved to amend its Answer to plead non-infringement under the reverse doctrine of equivalents and invalidity under 35 U.S.C. § 101 (D.I. 131). AVM opposed Intel's motion with respect to invalidity under 35 U.S.C. § 101 (D.I. 147). Following briefing on the issue, the Court granted Intel's motion to amend (D.I. 168).

6.       The Court's August 22, 2016 Claim Construction Order sets forth the Court's claim constructions. (D.I. 344).

7.       On January 27, 2017, both parties moved for summary judgment on a variety of issues. AVM moved for partial summary judgment on: Intel's reverse doctrine of equivalents defense (D.I. 404); Intel's utility defense under 35 U.S.C. § 101 (D.I. 407); Intel's issue preclusion defense (D.I. 409); and that Intel's P6 processor did not anticipate the '547 Patent (D.I. 433). Intel moved for: summary judgment of invalidity under 35 U.S.C. § 112 (D.I. 415); partial summary judgment of non-infringement (D.I. 417); summary judgment of no damages based on issue preclusion (D.I. 419); summary judgment that AVM's claims are barred by the *Kessler* doctrine and claim preclusion (D.I. 430); and summary judgment of no willful

infringement and no enhanced damages (D.I. 421).  These motions are fully briefed and awaiting decision by the Court.

8. On January 27, 2017, both parties also filed several motions to exclude expert testimony.  AVM moved to exclude expert testimony regarding Intel patents (D.I. 402); to exclude portions of Dr. Hitt's expert testimony (D.I. 411); to exclude portions of the expert testimony of Dr. Shih and Dr. Colwell in their November 14, 2016 reports (D.I. 413); to strike unreliable testimony on utility (D.I. 407); to preclude portions of testimony from Dr. Ivey on Intel's P6 processor (D.I. 433); to exclude portions of the expert testimony of Ms. Davis (D.I. 435); and to exclude portions of the expert testimony of Dr. Subramanian (D.I. 437).  Intel moved to exclude certain expert testimony of Dr. Knittel (D.I. 423), Dr. Hatch (D.I. 426), and Dr. Hassoun (D.I. 429).  These motions are fully briefed and awaiting decision by the Court.

9. On March 27, 2017, Intel moved the Court to sanction AVM for taking inconsistent legal positions with respect to its infringement contentions.  D.I. 578.  AVM filed its response on April 10, 2017.  (D.I. 605, 606.)  Intel's reply is due on April 17, 2017.

## II.  FEDERAL JURISDICTION

10. This is a civil action arising under the Patent Laws of the United States, 35 U.S.C. §§ 271 and 281-285.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## III.  PARTIES' JOINT STATEMENT OF ADMITTED FACTS

### THE PARTIES

#### A.  Plaintiff

11. Plaintiff AVM Technologies, LLC ("AVM") is a Delaware limited liability company and has its principal place of business at 14244 SW Koven Court, Tigard, Oregon, 97224.

**B.  Defendant**

12.     Defendant Intel Corporation ("Intel") is a Delaware corporation and has its principal place of business at 2200 Mission College Blvd., Santa Clara, California, 95054.

## JURISDICTION AND VENUE

13.     This is civil action arising under the Patent Laws of the United States, 35 U.S.C. §§ 271 and 281-285.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.     The Court has personal jurisdiction over Intel because Intel is a corporation incorporated in the State of Delaware.

15.     Intel is doing business in this judicial district and the Court has personal jurisdiction for this additional reason.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391.

## THE PATENT

17.     The '547 Patent was issued on January 12, 1999, and is titled "Dynamic Logic Circuit."  The priority filing date claimed by the '547 Patent is December 20, 1996.  Dzung Joseph Tran and Mark Warren Acuff are the named inventors.  AVM is the owner by assignment of the '547 Patent.  [**Intel Proposal**:  The '547 patent expired on December 20, 2016.][1]

## THE ACCUSED INTEL PRODUCTS

18.     AVM accuses products falling within the Sandy Bridge, Ivy Bridge, Haswell, and Broadwell microarchitectures ("Accused Products").  The Accused Products include those identified in **Exhibit 1**.  Intel has made, used, sold, and/or offered to sell in the United States the

---

[1]     Where the parties have differing proposals regarding language, the proposals are indicated as "AVM Proposal" and "Intel Proposal."  Where one party has proposed language to which the other objects and seeks the deletion of the proposed language, the disputed language is indicated as either "AVM Proposal" or "Intel Proposal."

Accused Products, and/or imported the Accused Products into the United States, which AVM

contends infringe, or the use of which infringes, the '547 Patent.

## IV.   PARTIES' JOINT STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED

19.    AVM's Statement of Issues of Fact That Remain To Be Litigated is attached as

**Exhibit 2.**

20.    Intel's Statement of Issues of Fact That Remain To Be Litigated is attached as

**Exhibit 3.**

21.    If the Court determines that any issue identified in a party's statement of

contested issues of fact is more properly considered an issue of law, it should be so considered.

22.    Intel will not introduce into evidence and is not relying upon an opinion of

counsel letter for any purpose in this case.

## V.    PARTIES' JOINT STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

23.    AVM's Statement of Issues of Law That Remain To Be Litigated is attached as

**Exhibit 4**.

24.    Intel's Statement of Issues of Law That Remain To Be Litigated is attached as

**Exhibit 5.**

25.    If the Court determines that any issue identified in a party's statement of issues of

law is more properly considered an issue of fact, it should be so considered.

## VI.   PARTIES' PRE-MARKED EXHIBITS

26.    AVM's list of exhibits it may offer at trial in its case-in-chief is attached as

**Exhibit 6.**

27.     Intel's list of exhibits it may offer at trial in its case-in-chief is attached as

**Exhibit 7.**

28.     AVM's trial exhibits will be identified with PTX numbers, starting with PTX1.

AVM's demonstrative exhibits will be identified with PDX numbers, starting at PDX1.  AVM's

physical trial exhibits will be identified with PPX numbers, starting with PPX1.  Intel's trial

exhibits will be identified with DTX numbers, starting with DTX1.  Intel's demonstrative

exhibits will be identified with DDX numbers, starting with DDX1.  Intel's physical trial exhibits

will be identified with DPX numbers, starting with DPX1.  Joint trial exhibits will be identified

with JTX numbers, starting with JTX1.  Joint physical trial exhibits will be identified with JPX

numbers, starting with JPX1.

29.     A party's failure to introduce any exhibit appearing on its list shall not be

commented on during trial.

30.     Each party may use an exhibit that is listed on the other party's exhibit list, to the

same effect as though it were listed on its own exhibit list, subject to evidentiary objections.  Any

exhibit, once admitted, may be used equally by each party.  The listing of an exhibit by a party

on its exhibit list does not waive any evidentiary or other objections to that exhibit by the listing

party should the opposing party attempt to offer it into evidence.

31.     The parties agree that any date listed on the exhibit list is not evidence of nor an

admission of the date of the document, and that failing to list a date is neither evidence nor an

admission of whether the document is dated.

32.     Legible photocopies of the '547 Patent and its Patent Office file history may be

offered as evidence in lieu of certified copies thereof, subject to all other objections that might be

made to admissibility of certified copies.

6

33.     Legible photocopies of United States patents and the contents of their Patent Office file histories may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies. Legible photocopies of United States patent applications and the contents of their associated file histories may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

34.     Legible photocopies of documents may be offered and received in evidence in lieu of originals thereof, subject to all foundational requirements and other objections that might be made to the admissibility of originals, subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the photocopy.

35.     The parties have agreed that the demonstrative exhibits the parties intend to use at trial do not need to be included on their respective lists of trial exhibits attached as Exhibits 6 and 7 to this order.

36.     The parties shall make available for inspection physical exhibits to be used at trial, labeled with an exhibit number.

37.     Each party reserves the right to use exhibits not set forth in its exhibit list for purposes of impeachment.  Each party also reserves the right to add additional exhibits to its exhibit list, for good cause shown.

38.     The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document.

39.     The parties exchanged pre-marked electronic copies of exhibits on April 20, 2017.

40.     Subject to other provisions of this Order, no party may offer as evidence an exhibit not present on its exhibit list absent court order or by agreement of the parties.

41.     The parties agree to meet-and-confer in good faith regarding the authenticity and admissibility of the documents each party has produced.

42.     The parties shall identify and exchange trial exhibits and demonstrative exhibits that will be used in opening statements by 6:00 p.m.[2] on Saturday, April 29, 2017, shall exchange their objections to these trial exhibits and demonstrative exhibits by 3:00 p.m. on Sunday, April 30, 2017, and shall meet and confer on any objections at 5:00 p.m.

[**AVM Proposal:**  Each party shall identify and exchange demonstrative exhibits that will be used in its closing by the morning of the day in which it expects to present its closing; the parties shall promptly meet and confer on any objections.]

[**Intel Proposal:** Each party shall identify and exchange demonstrative exhibits that will be used in its closing statement by 7:00 p.m. the day before it expects to present its closing statement, and shall meet and confer on any objections at 8:30 p.m.]

43.     Each party shall identify the witnesses it intends to call to testify, whether it intends to do so in person or by deposition, and the order in which they are to be called [**AVM proposal**:  in its case-in-chief], by 12:00 p.m. two days before the trial day during which that witness is expected to testify.

44.     For each such witness that is called [**AVM proposal**:  as part of a party's case-in-chief], the party who is calling the witness shall identify trial exhibits and exchange demonstrative exhibits that it expects to use with that witness by 12:00 p.m. two days before the trial day on which that witness is expected to testify.  [**Intel Proposal:** The other party shall

---

[2]     All times herein Eastern Time.

identify for each witness the trial exhibits and demonstratives that it expects to use on cross-examination by 9:00 a.m. the day before the direct examination is expected to take place.  The parties agree that documents that will be used during cross-examination only for impeachment purposes do not need to be identified as part of this disclosure, but that any documents or things a party intends to introduce into evidence during cross-examination will be included.]  The parties shall exchange their objections to the exchanged trial exhibits and demonstrative exhibits by 7:00 p.m. on the evening before that trial day, and the parties shall meet and confer on any such objections at 8:30 p.m.  If the parties cannot resolve their objections during the meet and confer, they will submit the issue to the Court before trial starts each day.

45.     At the start of each day that a party is presenting its case, its counsel shall provide to counsel for the other party an estimate of when it expects to finish its presentation of evidence.

46.     The parties agree that notice of a party's intended use of blow-ups (enlargements) of trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, etc. of such exhibits and/or deposition testimony need not be given (and need not be exchanged as a demonstrative exhibit), as long as the party has identified its intent to use the trial exhibit and/or deposition testimony according to the provisions of this Order.

47.     The parties agree to follow the provisions in the Protective Order entered in this case regarding the confidentiality of exhibits used at trial.  Exhibits marked "Confidential," "Outside Counsel's Eyes Only" or "Outside Counsel's Eyes Only – Computer Source Code"– including Intel's circuit schematics, source code, and other sensitive materials describing the accused products as well as the parties' confidential financial data – may be displayed on monitors visible to the Court, the jury, and the parties, but will not otherwise be displayed in the courtroom during trial and will not be filed publicly.  Unless otherwise permitted by the

Protective Order, Intel's in-house legal counsel and AVM's corporate representative Joseph Tran

may view exhibits containing the opposing party's confidential information that are subject to

the protective order when shown in the courtroom during trial.

## VII.   WITNESSES

### A.  List of Witnesses to be Called

48.    The witnesses AVM may call in person or by deposition at trial are attached at

**Exhibit 8.**  Intel's objections to AVM's witness list are attached at **Exhibit 8A**.

49.    The witnesses Intel may call in person or by deposition at trial are attached at

**Exhibit 9.**  AVM's objections to Intel's witness list are attached at **Exhibit 9A**.

50.    The listing of a witness on a party's witness list does not require that party to call

that witness to testify, either live or by deposition.

### B.  Testimony by Deposition

51.    The deposition testimony that AVM may offer into evidence is identified in

**Exhibit 10**.  Also included in **Exhibit 10** are Intel's objections and counter-designations to the

offered testimony and AVM's objections to Intel's counter-designations.

52.    The deposition testimony that Intel may offer into evidence is identified in

**Exhibit 11**.  Also included in **Exhibit 11** are AVM's objections and counter-designations to the

offered testimony and Intel's objections to AVM's counter-designations.

53.    With respect to those witnesses who will not be called to testify at trial, each party

has designated the specific pages and lines of transcript that it may read or play during trial.  No

deposition testimony not previously designated pursuant to this Order, whether designated as

affirmative or defensive designations, may be later added for these witnesses, absent good cause

shown.

54.     As set forth in Paragraph 43, the parties will identify witnesses expected to testify by deposition [**AVM proposal**:  in their case-in-chief] by 12:00 p.m. two days before the day during which that deposition testimony is expected to be read or played in court.  At the same time, the calling party shall identify the specific pages and lines of transcript from the witness's deposition as set forth in this Pre-Trial Order that it expects to read or play during trial as well as any trial exhibits to be offered through that witness's deposition testimony.  The other party shall identify for each such witness its objections to the identified testimony and counter-designations as set forth in this Pre-Trial Order to the identified testimony, any objections to the identified trial exhibits, and any trial exhibits to be offered through that witness's counter-designated deposition testimony by 9:00 a.m. the day before the deposition testimony is expected to be read or played in court.  By 7:00 p.m. the day before the deposition testimony is expected to be read or played in court, the first party shall identify its objections to the counter-designated testimony and any objections to the trial exhibits to be offered through that witness's counter-designated deposition testimony.  At 8:30 p.m. the day before the deposition testimony is expected to be read or played in court, the parties shall meet and confer in an attempt to resolve any objections to designated deposition testimony and identified trial exhibits.  If good faith efforts to resolve the objections fail, the objecting party will raise the objections with the Court no later than the morning of the day the testimony will be offered, before trial begins or resumes.

55.     If a party designates deposition testimony, and the other party counter-designates, then the designations and counter-designations will be read or played in chronological order.  Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designations and counter-designations.

56.     All irrelevant and redundant material such as objections and colloquy between counsel will be eliminated when the deposition is read or viewed at trial.

57.     Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

58.     The parties may offer some or all of the deposition testimony set forth herein at trial.  A party's decision not to introduce some or all of the testimony of a witness designated herein shall not be commented upon at trial.

59.     Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

## C.  Disclosure of Witnesses

60.     As stated in Paragraph 43, the parties will identify witnesses expected to testify live [**AVM proposal**:  in its case-in-chief] by 12:00 p.m. two days before the trial day during which the direct examination is expected to take place and the order in which the witnesses are to be examined.  Except as the Court may order, the calling party may not call a live witness at trial unless identified in accordance with the procedures herein.

61.     As stated in Paragraphs 43 and 54, the parties will identify witnesses expected to testify by deposition [**AVM proposal**:  in its case-in-chief] by 12:00 p.m. two days before the trial day during which the deposition testimony is expected to be read or played in court.

62.     Before they testify, fact witnesses shall be barred from hearing the testimony of other witnesses.  However, in accordance with Fed. R. Evid. 615(b), this exclusion rule will not apply to the person(s) designated by each party as its representative.  Expert witnesses are not excluded from the courtroom for either fact or expert testimony.

## VIII.   PARTIES' BRIEF STATEMENT OF INTENDED PROOFS

63.   AVM's Statement of Intended Proofs is attached as **Exhibit 12.**

64.   Intel's Statement of Intended Proofs is attached as **Exhibit 13.**

## IX.   MOTIONS IN LIMINE

65.   AVM's Motions in Limine are attached as **Exhibit 14**.  Intel's oppositions to AVM's Motions in Limine are attached as **Exhibit 14A** and AVM's replies are attached as **Exhibit 14B**.

66.   Intel's Motions in Limine are attached as **Exhibit 15**.  AVM's oppositions to AVM's Motions in Limine are attached as **Exhibit 15A** and Intel's replies are attached as **Exhibit 15B**.

## X.   JURY TRIAL

67.   This is a jury trial.

## XI.   LENGTH OF TRIAL

68.    This case is currently scheduled for a five-day trial beginning at 9:30 a.m. on May 1, with subsequent trial days beginning at 9:30 a.m. and the jury excused each day at 5:00 p.m.  The trial will be timed, as the Court will allocate to counsel for each party a number of hours in which to present their respective cases, including time for opening statements and closing statements, but not including time for voir dire.

## XII.   AMENDMENTS TO THE PLEADINGS

69.   Neither AVM nor Intel presently request any amendment to the pleadings, except to conform to the evidence ultimately elicited at trial.

70.   This Court's rulings and decisions on pending motions may significantly resolve or affect the issues otherwise to be tried in this case.  The parties therefore reserve their

13

respective rights to amend, or seek amendment of, the pleadings, so that they conform with and are consistent with the Court's decisions and rules on the summary judgment motion and the evidence presented at trial.

## XIII.   SETTLEMENT CERTIFICATION

71.     The parties hereby certify that they have engaged in a good faith effort to explore resolution of the controversy by settlement, including by mediation.  The parties, through their respective counsel, have considered the possibility of settlement.  It was determined that the matter could not be resolved at this juncture by settlement.

## XIV.   ORDER TO CONTROL COURSE OF ACTION

72.     This Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

73.     The parties reserve the right to seek leave to supplement or amend this final pre-trial order based on subsequent events or by agreement.

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
bschladweiler@ramllp.com
nmozal@famllp.com

OF COUNSEL:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
Tel:  (202) 237-2727

*/s/ Bindu A. Palapura*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
   AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher

14

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Tel:  (310) 752-2400

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY  10504
Tel:  (914) 749-8200

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
Tel:  (310) 203-7096

*Attorneys for Plaintiff*
*AVM Technologies, LLC*

Dated:  April 14, 2017
5074646 / 42223

Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

*Attorneys for Defendant*
*Intel Corporation*

SO ORDERED this _____ day of _____, 2017

_____
Hon. Richard D. Andrews
United States District Judge

# Exhibit 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-0033-RGA-MPT |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | **CONFIDENTIAL VERSION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## AVM's Statement of Issues of Fact That Remain to Be Litigated

Plaintiff AVM Technologies, LLC ("AVM" or "Plaintiff") respectfully submits the following Statement of Issues of Fact That Remain to be Litigated based on AVM's current understanding of the defenses and counterclaims of Defendant Intel Corporation ("Intel" or "Defendant"), which is based on the proceedings to date in this action.

To the extent that AVM's Statement of Issues of Law to be Litigated at Trial set forth in Exhibit 4 contains issues of fact, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified in this Exhibit is more appropriately considered an issue of law, AVM incorporates such issues by reference into Exhibit 4. By including a fact herein, AVM does not assume the burden of proof or production with regard to that fact. AVM reserves the right to revise this statement in light of the Court's rulings.

## I.   INFRINGEMENT

a.  Whether all models of Intel's Sandy Bridge microarchitecture infringed Claims 1-7, 9, 12-14, 16, and 18-21 ("Asserted Claims") of the '547 Patent.  The Sandy Bridge models include those identified in **Exhibit 1**.

b.  Whether all models of Intel's Ivy Bridge microarchitecture infringed the Asserted Claims of the '547 Patent.  The Ivy Bridge models include those identified in **Exhibit 1.**

c.  Whether all models of Intel's Haswell microarchitecture infringed the Asserted Claims of the '547 Patent.  The Haswell models include those identified in **Exhibit 1.**

d.  Whether all models of Intel's Broadwell microarchitecture infringed the Asserted Claims of the '547 Patent.  The Broadwell models include those identified in **Exhibit 1.**

    e.   Whether Intel has induced infringement of the Asserted Claims of the '547 Patent.

    f.   Whether Intel has contributed to infringement of the Asserted Claims of the '547 Patent.

    g.   Whether Intel willfully infringed the Asserted Claims of the '547 Patent.

II.    **VALIDITY**

    a.   Whether Intel has carried its burden of establishing, by clear and convincing evidence, that the Asserted Claims of the '547 Patent are invalid under 35 U.S.C. §§101, 102, 103, or 112.

III.    **UNENFORCEABILITY AND PRECLUSION**

    a.   Whether Intel has carried its burden of establishing that any of AVM's claims are barred by claim preclusion, issue preclusion, and/or the *Kessler* doctrine.

    b.   Whether Intel has preserved its unenforceability defenses for this case, and if so whether it has carried its burden of establishing that the '547 patent is unenforceable.

IV.    **RELIEF AND DAMAGES**

    a.   Whether AVM is entitled to a judgment that Intel infringed, induced others to infringe, and/or contributed to infringement of one or more claims of the '547 Patent.

    b.   The amount of a reasonable royalty for past infringement to which AVM is entitled due to Intel's infringement of one or more claims of AVM's '547 Patent, said amount to be determined by the jury.[1]

    c.   Whether AVM is entitled to prejudgment and post judgment interest.

---

[1] The transactional financial data produced by Intel cut off in April 2016.  An accounting for subsequent sales of the Accused Products will be required after trial.

d.  Whether AVM is entitled to enhanced damages and attorneys' fees due to, *inter alia*, Intel's willful infringement of the Asserted Claims of the '547 Patent.

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-0033-RGA-MPT |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**Intel's Statement of Issues of Fact That Remain To Be Litigated**

Defendant Intel Corporation ("Intel") respectfully submits the following Statement of Issues of Fact That Remain To Be Litigated based on Intel's current understanding of the claims and counterclaim defenses of Plaintiff AVM Technologies, LLC ("AVM").

To the extent Intel's Statement of Issues of Law That Remain To Be Litigated set forth in Exhibit 5 contains issues of fact, those issues are incorporated herein by reference.  Likewise, should the Court determine that any issue identified in this Exhibit is more appropriately considered an issue of law, Intel incorporates such issue by reference into Exhibit 5.  By including a fact herein, Intel does not assume the burden of proof or production with regard to that fact.  Intel reserves the right to revise this statement in light of the Court's rulings.

## I.  INFRINGEMENT

    A.    Whether Intel has directly infringed claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent by making, using, selling, and/or offering for sale in the United States Intel's Sandy Bridge, Ivy Bridge, Haswell, and Broadwell microprocessors.

        1.    Whether Intel has literally infringed claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent.

        2.    Whether Intel has infringed claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent under the doctrine of equivalents.

        3.    Whether AVM's proposed scope of equivalency under the doctrine of equivalents for claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent ensnares the prior art.

        4.    Whether Intel does not infringe claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent under the reverse doctrine of equivalents.

    B.    Whether Intel has induced infringement of claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent.

1

C.      Whether Intel has contributed to infringement of claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent.

## II.    INVALIDITY

A.      Whether claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

B.      Whether claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent are invalid as obvious in view of the prior art under 35 U.S.C. § 103.

C.      Whether claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent are invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112, ¶ 1.

D.      Whether claims 1-7, 9, and 19-21 of the '547 patent are invalid for failure to satisfy the definiteness requirement of 35 U.S.C. § 112, ¶ 2.

E.      Whether claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent are invalid for failure to satisfy the utility requirement of 35 U.S.C. § 101.

## III.    PRECLUSION

A.      Whether AVM's infringement claims are barred by claim preclusion.

B.      Whether AVM's infringement claims are barred by the *Kessler* doctrine.

C.      Whether AVM's damages claim is barred by issue preclusion.

## IV.    UNENFORCEABILITY

A.      Whether AVM and Joseph Tran are equitably estopped from enforcing the '547 patent against Intel.

B.      Whether AVM and Joseph Tran have waived the right to enforce the '547 patent against Intel.

C.      Whether AVM and Joseph Tran are barred from enforcing the '547 patent against

Intel because AVM, Mr. Tran, and/or TransLogic Technology, Inc. acted with

unclean hands.

## V.      AVM'S REQUEST FOR RELIEF

A.      If Intel is found to infringe one or more valid claims of the '547 patent, the

amount of a reasonable royalty, if any, to which AVM is entitled as damages.[1]

B.      If Intel is found to infringe one or more valid claims of the '547 patent, the

amount of pre-judgment interest, if any, to which AVM is entitled.

C.      If Intel is found to infringe one or more valid claims of the '547 patent, the

amount of enhanced damages, if any, to which AVM is entitled pursuant to 35

U.S.C. § 284.

## VI.     INTEL'S REQUEST FOR RELIEF

A.      Whether Intel is entitled to attorney's fees pursuant to 35 U.S.C. § 285.

---

[1]      AVM contends that the transactional financial data produced by Intel cut off in April 2016, and that therefore an accounting for subsequent sales of the Accused Products will be required after trial.  However, to the extent the jury awards a lump-sum that compensates for both past and future infringement, no such accounting would be required.

# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-0033-RGA-MPT |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | **CONFIDENTIAL VERSION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**AVM's Statement of Issues of Law That Remain to Be Litigated**

**Table of Contents**

I.    ISSUES ON WHICH PLAINTIFF BEARS THE BURDEN OF PROOF .................. 5

    a.    Direct Infringement ........................................................................................ 5

        i.    Literal Infringement .................................................................................. 6

        ii.    Infringement Under The Doctrine of Equivalents .............................................. 7

    b.    Indirect Infringement ........................................................................................ 8

        i.    Induced Infringement ............................................................................... 8

        ii.    Contributory Infringement ....................................................................... 10

    c.    Willfulness ................................................................................................... 11

    d.    Damages ...................................................................................................... 12

II.    THE REVERSE DOCTRINE OF EQUIVALENTS ............................................. 16

III.    ISSUES ON WHICH DEFENDANT BEARS THE BURDEN OF PROOF ......... 17

    a.    Validity........................................................................................................ 17

        i.    Anticipation Under 35 U.S.C. § 102 ............................................................ 19

        **ii.**    Obviousness Under 35 U.S.C. § 103 ............................................................ 23

        iii.    Written Description ................................................................................ 26

        iv.    Definiteness ........................................................................................ 27

        v.    Utility ................................................................................................. 28

    b.    Preclusion ..................................................................................................... 29

        i.    Claim Preclusion..................................................................................... 29

        ii.    The Kessler Doctrine ............................................................................... 30

    iii.   Issue Preclusion ............................................................................................... 32

c.    Unenforceability ................................................................................................... 32

    i.   Equitable Estoppel ........................................................................................... 33

    ii.   Waiver ............................................................................................................. 33

    iii.   Unclean Hands ................................................................................................. 33

Plaintiff AVM Technologies, LLC ("AVM" or "Plaintiff") respectfully submits the following Statement of Issues of Law That Remain to be Litigated based on AVM's current understanding of the defenses and counterclaims of Defendant Intel Corporation ("Intel" or "Defendant"), which is based on the proceedings to date in this action.

To the extent that AVM's Statement of Issues of Fact to be Litigated at Trial set forth in Exhibit 2 contains issues of law, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified in this Exhibit is more appropriately considered an issue of fact, AVM incorporates such issues by reference into Exhibit 2. By including a fact herein, AVM does not assume the burden of proof or production with regard to that fact. AVM reserves the right to revise this statement in light of the Court's rulings.

## I.  ISSUES ON WHICH PLAINTIFF BEARS THE BURDEN OF PROOF

### a.  Direct Infringement

Whether AVM can prove by a preponderance of the evidence that Intel's Accused Products infringe claims 1-7, 9, 12-14, 16, and 18-21 of the '547 Patent ("Asserted Claims"), literally or under the doctrine of equivalents.

35 U.S.C. § 271(a) states:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

AVM bears the burden of proving infringement by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988). A determination of infringement under 35 U.S.C. § 271(a) requires a two-step analysis.  First, the Court construes the claims at issue to define their scope. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc), *abrogated on other grounds*, *Teva Pharms.*

*USA, Inc. v. Sandoz, Inc.*, --- U.S. ----, 135 S. Ct. 831 (2015).   Second, the fact-finder examines the evidence to determine whether the accused device infringes the claims as construed by the Court. *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997). "To prove infringement, the patentee must show that the accused device contains each limitation of the asserted claim, or an equivalent of each limitation." *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003); *see also Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). "A patent is infringed if any claim is infringed, . . . for each claim is a separate statement of the patented invention." *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1220 (Fed. Cir. 1995) (citation omitted).

### i.  Literal Infringement

To establish literal infringement, the patentee must prove, by a preponderance of the evidence, that "all of the elements [or steps] of the claim, as correctly construed, [are] present in the accused system." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

A patentee may prove infringement by 'any method of analysis that is probative of the fact of infringement,' and circumstantial evidence may be sufficient." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009); *see also Liquid Dynamics Corp.* v. *Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) ("There is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable *per se*.").

"[I]ntent is not an element of direct infringement. . . .  Infringement is, and should remain, a strict liability offense." *Hilton Davis Chem. Co. v. Warner- Jenkinson Co.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) (en banc), *rev'd on other grounds by Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).

6

### ii.   Infringement Under The Doctrine of Equivalents

"[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements [or steps] of the accused product or process and the claimed elements [or steps] of the patented invention."   *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997). "Infringement under the doctrine of equivalents may be found where those limitations of a claim not found exactly in the accused device are met equivalently."   *Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1568 (Fed. Cir. 1996).   To prove infringement under the doctrine of equivalents, Plaintiff must prove by a preponderance of the evidence that "the accused device contains an equivalent for each limitation not literally satisfied."   *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002); *see also Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001) ("To infringe a claim under the doctrine of equivalents, an accused device must include an equivalent for each literally absent claim limitation."). To prove such equivalence, Plaintiff must "show[] that the difference between the claimed invention and the accused product [is] insubstantial."   *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007).   "One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each limitation of the patented product." *Id.* " Infringement under the doctrine of equivalents is an equitable doctrine devised for situations where there is no literal infringement but [where] liability is nevertheless appropriate to prevent what is in essence a pirating of the patentee's invention."   *Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc.,* 906 F.2d 698, 702 (Fed. Cir. 1990) (internal quotations omitted).   "An appropriate range of equivalents may extend to post-invention advances in the art in an

7

appropriate case." *Varco, L.P. v. Pason Sys. USA Corp.*, 436 F.3d 1368, 1376 (Fed. Cir. 2006) (quoting *Am. Hosp. Supply Corp. v. Travenol Labs., Inc.*, 745 F.2d 1, 9 (Fed. Cir. 1984)). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson,* 520 U.S. at 29.

### b.  Indirect Infringement

#### i.  *Induced Infringement*

AVM must prove, by a preponderance of the evidence, that Intel actively induced with specific intent under 35 U.S.C. § 271(b) direct infringement of the asserted claims of the '547 patent by third-party manufacturers, distributors, importers and/or consumers that purchase or sell any of Intel's products accused of infringing the '547 patent.

"'In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement,' and 'second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)). "[A] finding of inducement requires a threshold finding of direct infringement— either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009). "The existence of a substantial non-infringing use does not preclude a finding of inducement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012).

To prove induced infringement, AVM must show that Intel "took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent

infringement." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015). "The inducement knowledge requirement may be satisfied by a showing of actual knowledge or willful blindness." *Id.* Willful blindness requires that Intel "(1) subjectively believe that there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact." *Id.* This requires more than "merely a 'known risk' that the induced acts are infringing" or "'deliberate indifference' to that risk . . . ." *Global-Tech.*, 131 S.Ct. at 2071. Rather, the patentee must demonstrate "active efforts by an inducer to avoid knowing about the infringing nature of the activities." *Id.* "The mere existence of direct infringement . . . , while necessary to find liability for induced infringement, is not sufficient for inducement." *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015).

"[L]iability for active inducement may be found 'where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement.'" *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008). "[E]vidence of active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1059 (Fed. Cir. 2010). "But such instructions need to evidence 'intent to *encourage* infringement.'" *Id.* at 631 (citation omitted).

Intel's "role as the designer and manufacturer of the [accused products] in question may evidence an intent sufficiently specific to support a finding of inducement." *Ricoh*, 550 F.3d at 1343. Specific intent may be inferred "from a defendant's knowledge of the patent and control over the design or manufacturing of the product used for direct infringement." *Id.* AVM "may still prove the intent element through circumstantial evidence, just as with direct

infringement." *Lucent Techs.*, 580 F.3d at 1322; *see also Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary [to show induced infringement], direct evidence is not required; rather, circumstantial evidence may suffice."). A good-faith belief in the patent's invalidity is not a defense to induced infringement. *Commil USA, LLC v. Cisco Sys.*, --- U.S. ----, 135 S. Ct. 1920, 1928 (2015).

### ii.   Contributory Infringement

A party is liable for contributory infringement if it: (1) knew about the patent; (2) sold, offered to sell, or imported a material component of a composition for use in a patented method; (3) knew that the component would be used in an infringing manner; (4) the component was not a staple article or commodity of commerce suitable for substantial noninfringing use; and (5) the component was used in an infringing manner.  35 U.S.C. § 271(c);  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).  "The Federal Circuit has explained that this form of infringement is premised on the idea that a defendant who displays sufficient culpability should be held liable as an infringer, even though he did not technically make, use, or sell a patented invention."  *ArthroCare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 656 (D. Del. 2004), *aff'd in part, vacated on other grounds*, 406 F.3d 1365 (Fed. Cir. 2005).

When an article has no meaningful use other than to infringe the claims of a patent, patent infringement liability cannot be avoided under the "substantial noninfringing use" exception of § 271(c).  *See Golden Blount, Inc.*, 438 F.3d at 1363 (holding that showing of substantial noninfringing use requires proof that a device was "actually used" in a noninfringing way); *Hodosh v. Block Drug Co.*, 833 F.2d 1575 (Fed. Cir. 1987) (method claims infringed by use of a product containing the claimed ingredient because the ingredient had no substantial noninfringing uses in the product).  "Furthermore, the occasional and aberrant use of these

products, [even] where they are clearly designed to be used in a system specified in the claims of a patent, does not rise to the level of a staple article or commodity of commerce suitable for substantial non-infringing use." *ArthroCare Corp.*, 310 F. Supp. 2d at 657 (citations and quotations omitted).

Hypothetical uses that are not actually used do not satisfy the "substantial noninfringing use" exception. *See Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Pollock v. Thunderline-Z, Inc.*, 215 F.3d 1351 (Fed. Cir. 1999). Intermittent, accidental uses do not constitute a "substantial noninfringing use." *See Mendenhall v. Astec Indus., Inc.*, 891 F.2d 299, 1989 WL 136774 at *1 (Fed. Cir. 1989). A contributory infringer cannot escape liability merely by bundling a component that has no substantial noninfringing use with some separate additional feature. *See Ricoh*, 550 F.3d at 1337-38 (*citing Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. at 919-24).

### c. Willfulness

Whether AVM has met its burden to prove by a preponderance of the evidence that Intel willfully infringed any of the Asserted Claims of the '547 patent.

Willful infringement is an issue of fact for the jury. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). AVM has the burden to prove willfulness, along with entitlement to enhanced damages, by a preponderance of the evidence. *Halo*, 136 S. Ct. at 1934. Knowledge of the asserted patent is a prerequisite to willfulness. *WBIP*, 829 F.3d at 1341. Conduct that is "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, or flagrant" may justify the award of enhanced damages. *Halo*, 136 S. Ct. at 1932. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. An example

11

of subjective willfulness is a defendant who acted "despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer . . . .'" *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (citation omitted).

### d. Damages

There are three primary damages issues.  First, determining the amount of compensation, including but not limited to, a reasonable royalty, to which AVM is entitled should the jury find that Intel infringed the '547 patent.  Second, the amount of enhanced damages to which AVM is entitled should the jury find that Intel willfully infringed the '547 patent.  Lastly, whether the preponderance of the evidence shows that this is an exceptional case for which Intel must pay AVM's attorneys' fees as provided by 35 U.S.C. § 285.

35 U.S.C § 284 states in relevant part as follows:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. . . . The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

For purposes of compensatory damages, the Federal Circuit has noted that whether the claim limitations recite conventional (i.e., known in the prior art), or unconventional features (i.e., novel), it is appropriate to value the entire invention, as claimed. *See, e.g., AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338-40 (Fed. Cir. 2015) ("It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages."); *Univ. of Pittsburgh v. Varian Medical Systems, Inc.*, 561 Fed. Appx. 934, 947-51 (Fed. Cir. 2014) (finding that a plaintiff must "separate or apportion damages attributable to the patented features  contained in the accused device to the exclusion

12

of any damages attributable to unpatented features," but is not required to apportion damages attributable to patented features even if they are conventional elements).

"[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). Depending on the circumstances of the case, compensatory damages may take the form of (1) lost profits, (2) an established royalty, or (3) a reasonable royalty. *Id.* at 1167 & n.5; *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983). A reasonable royalty may take the form of a lump sum royalty, where the patentee receives an upfront payment or a running royalty, "where the patentee collects ongoing per-unit or percentage payments." *Wordtech Sys. Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).

In *Summit 6*, the Federal Circuit held "[t]his court has recognized that estimating a reasonable royalty is not an exact science. The record may support a range of reasonable royalties, rather than a single value. Likewise, there may be more than one reliable method for estimating a reasonable royalty." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "All approaches have certain strengths and weaknesses, and, depending upon the facts, one or all may produce admissible testimony in a particular case. Because each case presents unique circumstances and facts, it is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses of each approach may be exposed at trial or attacked during cross-examination. That one approach may better account for one aspect of a royalty estimation does not make other approaches inadmissible." *Id.*

13

Fundamentally, a reasonable royalty must be tied to the particular facts of the case, including the claimed invention and the accused products. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) ("[A reasonable royalty] must be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time.").

A reasonable royalty is usually determined by considering the outcome of a hypothetical negotiation between a willing licensor and licensee just before infringement began. *Lucent Techs.*, 580 F.3d at 1324–25. In other words, the reasonable royalty is "the royalty upon which the parties would have agreed had they successfully negotiated an agreement" at that time. *Id.* But later events can also be considered under the "Book of Wisdom" approach. "[T]he Supreme Court recognized that factual developments occurring after the date of the hypothetical negotiation can inform the damages calculation." *Id.* at 1333 (citing *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698, 53 S.Ct. 736, (1933)). And Federal Circuit "case law affirms the availability of post-infringement evidence as probative in certain circumstances." *Id.* "[P]arties in a hypothetical negotiation are presumed to have perfect knowledge of all facts and circumstances, some of which were unknown during the actual patent negotiations and acquisition." *Intellectual Ventures I LLC v. Check Point Software*, C.A. Nos. 10-1067-LPS, 12-1581-LPS, D.I. 579 at *11 (D. Del. Mar. 31, 33 (citing *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994)). In applying the construct of the hypothetical negotiation, the fact-finder must assume that the patent-in-suit is valid, enforceable, and infringed. *Lucent Techs.,* 580 F.3d at 1324–25.

The fact-finder considers a variety of factors in determining the reasonable royalty that the parties would have agreed to in the "hypothetical negotiation," outlined in *Georgia-Pacific Corp. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). The Federal Circuit has approved the use of the *Georgia-Pacific* factors in numerous decisions. *See, e.g.*, *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008). However, the *Georgia-Pacific* factors are non-exclusive. *Energy Transp. Gp., Inc. v. Sonic Innovations, Inc.*, C.A. No. 05-422 (GMS), 2011 WL 2222066, at *21 n.29 (D. Del. June 7, 2011).

Additionally, the "court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. "That language contains no explicit limit or condition, and we have emphasized that the word 'may' clearly connotes discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931, 195 L. Ed. 2d 278 (2016) (internal citations omitted).

"[P]atent-infringement litigation has always been governed by a preponderance of the evidence standard. Enhanced damages are no exception." *Id.* Section 285 states that "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "This text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases. *Octane Fitness, LLC v. ICON Health & Fitness*, Inc., 134 S. Ct. 1749, 1755–56, 188 L. Ed. 2d 816 (2014). An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. A "district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—

is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1757.  Entitlement to fees under Section 285 is established by the preponderance of the evidence.  *Id.* at 1758. .

## II.        THE REVERSE DOCTRINE OF EQUIVALENTS

This is a non-infringement defense raised by Intel that is for the judge, not jury, to decide.  *Ciena Corp. v. Corvis Corp.*, No. 00-662-JJF, 2004 WL 253481, at *2 (D. Del. Feb. 6, 2004) (reverse DOE is grounded in equity and does not require trial to a jury); *see also Izumi Prod. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 598 n.2 (D. Del. 2004) (Robinson, J.) (citing *Ciena Corp.* for the proposition that "a reverse doctrine of equivalents defense is grounded in the rules of equity and is not required to be submitted to a jury for decision."), *aff'd*, 140 F. App'x 236 (Fed. Cir. 2005).

The reverse doctrine of equivalents provides that, even if the patentee establishes that the accused product falls within the literal scope of the asserted claims, the accused product still does not infringe if it is "so far changed in principle" from the patented invention "that it performs the same or similar function in a substantially different way."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1124 (Fed. Cir. 1985) (en banc).  "The reverse doctrine of equivalents, like the doctrine of equivalents, is applied to individual limitations of a claim."  *DePuy Spine, Inc.*, 567 F.3d at 1338.

"While the patentee bears the burden of proving infringement, if the patentee establishes literal infringement, the burden shifts to the accused infringer to set forth a prima facie case of non-infringement under the reverse doctrine of equivalents.  If the accused infringer is successful in making a prima facie case, the patentee must then rebut that prima facie case."  *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377-1378 (Fed. Cir. 2008) (citation omitted).  Non-

infringement under the reverse doctrine of equivalents is a question of fact. *Hartness Int'l Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1110 (Fed. Cir. 1987).

## III.   ISSUES ON WHICH DEFENDANT BEARS THE BURDEN OF PROOF

### a.   Validity

Whether Intel can prove by clear and convincing evidence that each of the Asserted Claims of Plaintiff's '547 Patent are invalid.

All patents are presumed valid. *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013) ("It is black-letter law that a patent is presumed valid."). Intel bears the burden of proving its invalidity defenses by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 S. Ct. 2238, 2242 (2011); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003). Intel bears this burden throughout the entirety of the litigation. *Novo Nordisk*, 719 F.3d at 1352 ("[B]ecause the presumption of validity remains intact . . . throughout the litigation, the burden of persuasion never shifts to the patentee . . . .").

"[T]he burden of persuasion is and remains always upon the party asserting invalidity." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984) (citation and emphasis omitted). "It is not necessary that the court hold a patent valid; it is only necessary that it hold that the patent challenger has failed to carry its burden." *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, No. 95-218-SLR, 1996 U.S. Dist. LEXIS 15988, at *20 (D. Del. Oct. 21, 1996) (citing *Jones v. Hardy*, 727 F.2d 1524, 1529 n.3 (Fed. Cir. 1984)), *aff'd*, 228 F.3d 1338 (Fed. Cir. 2000). "[W]here the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

Pre-AIA 35 U.S.C. §§ 102(a), (b), and (e) define the scope of prior art for the purposes of anticipation and obviousness in this case.  Pre-AIA § 102 states:

A person shall be entitled to a patent unless –

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

. . . .

(e) the invention was described in – (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for the purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

35 U.S.C. § 102.

Whether Intel has met its burden under the Federal Rules of Evidence to show that the documents or products it intends to assert as prior art, are authentic, are not inadmissible hearsay, and were publicly available or on sale before the relevant patent priority dates to qualify as prior art under 35 U.S.C. § 102. Fed. R. Evid. 901 and 803; 35 U.S.C. § 102. To establish that a document is prior at, it is Intel's burden to present sufficient evidence to establish that the document was publicly known or published by "a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and

ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1350 (Fed. Cir. 2008).

To establish that an alleged prior art product was "on sale" or in "public use," it is Intel's burden to prove the prior art was "in public use ... in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2006). To decide whether a prior use constitutes an invalidating "public use," the Federal Circuit asks "whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1359 (Fed. Cir. 2013)(quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed.Cir.2005). "[F]actors that may be helpful in analyzing the question of public use, include[e] 'the nature of the activity that occurred in public; the public access to and knowledge of the public use; [and] whether there was any confidentiality obligation imposed on persons who observed the use.'" *Id.* (quoting *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004)). *See also Black & Decker Inc. v. Robert Bosch Tool Corp.*, 476 F. Supp. 2d 887, 894 (N.D. Ill. 2007) (finding evidence of military use insufficient to show public use); *Rem-Cru Titanium, Inc. v. Watson*, 152 F. Supp. 282, 285 (D.D.C. 1957) (finding that the mere submission of report to a government agency is insufficient to show prior knowledge or use under § 102). The development of products for another's own secret, personal use does not trigger § 102. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1361–62 (Fed. Cir. 2010). The mere shipment of a product is insufficient to show "use" or "sale" under § 102. *Minn. Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002).

> i.  *Anticipation Under 35 U.S.C. § 102*

Claimed subject matter is 'anticipated' when it is not new; that is, when it was previously known." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008). Anticipation requires that "every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in possession of the invention." Id. at 1082. "A patent claim is invalid due to anticipation if, within 'the four corners of a single, prior art document ... every element of the claimed invention [is described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation.'" *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (citing *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

"Because the hallmark of anticipation is prior invention, the prior art reference . . . must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'" *NetMoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008). There also "must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic & Res. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991), *clarified on denial of reconsideration by* 1991 WL 523489 (Fed. Cir. Apr. 30, 1991).

In order to anticipate, a reference must disclose the claimed limitations either expressly or inherently. *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006) (overturning district court finding of inherent anticipation). Although a prior art reference may anticipate without explicitly disclosing a feature of the claimed invention, if that missing characteristic is inherently present in the single anticipating reference, that inherent limitation must be one that is

"necessarily present" and not one that may be established by "probabilities or possibilities." *See Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268-69 (Fed. Cir. 1991); *see also Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1350 (Fed. Cir. 2013). To establish inherency, extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." *Cont'l Can Co. USA,* 948 F.2d. at 1268. That is, "[t]he mere fact that a certain thing *may* result from a given set of circumstances is not sufficient." *Id.* at 1269 (emphasis in original) (citations omitted); *see also Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011). Similarly, a reference cannot anticipate if the person of ordinary skill must resort to guessing, assuming, picking, or choosing various disclosures. *Air Prods. and Chems., Inc. v. Chas. S. Tanner Co.*, 1983 WL 51915, *8 (D. S.C. May 2, 1983)("a prior art reference which contains a broad general disclosure requiring guessing, testing, speculation or 'picking and choosing' from an encyclopedic disclosure will not anticipate.") (citing In re Arkley, 59 C.C.P.A. 804, 455 F.2d 586 (Cust. & Pat. App. 972)); *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 89 (Fed. Cir. 2008). ("[The] reference must clearly and unequivocally disclose the claimed [invention] or direct those skilled in the art to the [invention] without any need for picking, choosing, or combining various disclosures not directly related to each other by the teachings of the cited reference."); *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361 (Fed. Cir. 2000) (picking and choosing from disparate parts of a reference is not permitted in an anticipation analysis).

When determining the content of the prior art, patent drawings cannot be relied on for critical dimensions and relationships, absent confirmatory texts in the specification. *See Nystrom v. TREX Co*., 424 F.3d 1136, 1149 (Fed. Cir. 2005) ("'Absent any written description in the

specification of quantitative values, arguments based on measurements of a drawing are of little value.'") (quoting *In re Wright*, 569 F.2d 1124, 1127 (C.C.P.A. 1977)); *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000) ("[I]t is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue."); *Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F.Supp.2d 366, 374 n. 9 (D. Del. 2005) (rejecting defendant's argument that foreign patent drawing disclosed certain claim limitations, because to do so would "require making precise measurements without a special indication that such measurements were part of the invention").

In addition to showing that a prior art reference meets all the limitations of a patent claim (identity requirement), to constitute an anticipation the reference must include a description that enables a person of ordinary skill to make the claimed invention without undue experimentation, *i.e.*, the reference must enable that which it is asserted to anticipate. *See, e.g.*, *Elan Pharms., Inc. v. Mayo Found. for Med. Educ. And Research*, 346 F.3d 1051 (Fed. Cir. 2003); *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002); *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001) ("To anticipate, the reference must also enable one of skill in the art to make and use the claimed invention."). The disclosure in the reference must be adequate to enable possession of the desired subject matter. *Elan Pharms.*, 346 F.3d at 1055.

Enablement is a question of fact and is determined as of the date of the allegedly anticipating reference. *See, e.g.*, *Elan Pharms,* 346 F.3d at 1054; *In re Omeprazole Patent Litig.*, 490 F. Supp. 2d 381 (S.D.N.Y. 2007) ("An invention is placed in the possession of the public only where 1) the reference meets the identity requirement such that 2) the person of ordinary

skill in the art would have been able to make it *as of that* time based on his knowledge and the teaching of the publication."). The standard for undue experimentation is set out in *In re Wands*, 858 F.2d 731 (Fed. Cir. 1988). The court set out eight factors for determining whether a disclosure requires undue experimentation: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

Anticipation requires that the reference must disclose the invention "without *any* need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference." *In re Arkley*, 455 F.2d 586, 587-88 (C.C.P.A 1972) ("Such picking and choosing may be entirely proper in the making of a 103, obviousness rejection, where the applicant must be afforded an opportunity to rebut with objective evidence any inference of obviousness which may arise from the *similarity* of the subject matter which he claims to the prior art, but it has no place in the making of a 102, anticipation rejection.").

### ii. Obviousness Under 35 U.S.C. § 103

A patent is invalid as obvious under § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. *See also Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010).

Against this background, the obviousness of the subject matter is determined. Objective indicia of nonobviousness as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject

matter sought to be patented. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406, 127 S. Ct. 1727, 1734 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). Before finding a patent claim invalid for obviousness, a court must consider all of these factors. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000). "[A] patent composed of several elements is not proved obvious merely by demonstrating that each element was, independently, known in the prior art." *KSR Int'l Co.*, 550 U.S. at 418. Rather, there must be some evidence of a reason to combine the references. *Id.* at 415, 419. "[O]bviousness is a matter of law based on findings of underlying fact." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008), *cert. denied*, 130 S. Ct. 493 (2009).

### 1.   Intel Must Make a Prima Facie Case of Obviousness

Intel, as the patent challenger, must establish by clear and convincing evidence that the claimed invention would have been prima facie obvious. *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 974-75 (Fed. Cir. 1986). Failure to show prima facie obviousness means the claims are not invalid for obviousness, ending the inquiry. *Yamanouchi Pharma. Co., Ltd. v. Danbury Pharma., Inc.*, 231 F.3d 1339, 1345 (Fed. Cir. 2000).

"Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *KSR¸* 550 U.S. at 418–19. Further, a person of ordinary skill must

have a reasonable expectation of success that making a modification to the prior art would successfully result in the claimed element. *Id.*

"What a prior art reference teaches and whether a skilled artisan would have been motivated to combine references are questions of fact." *Apple Inc. v. Samsung Elecs. Co.*, No. 2015-1171, --- F.3d ----, 2016 WL 5864573, at *11 (Fed. Cir. Oct. 7, 2016) (citing *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196–97 (Fed. Cir. 2014)).   The person of ordinary skill in the art is a "hypothetical person who is presumed to be aware of all the pertinent prior art." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985

"Obviousness cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013); *In re NTP, Inc.*, 654 F.3d 1279, 1299 (Fed. Cir. 2011) ("Care must be taken to avoid hindsight reconstruction by using 'the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.'"). "[W]hen the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." *KSR*, 550 U.S at 416. "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant. The degree of teaching away will of course depend on the particular facts; in general, a reference will teach away if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009)

25

("An inference of nonobviousness is especially strong where the prior art's teachings undermine the very reason being proffered as to why a person of ordinary skill would have combined the known elements.").

### 2. The Fact Finder Must Also Consider Objective Indicia of Nonobviousness

The patent holder "may rebut a prima facie showing of obviousness with objective indicia of nonobviousness." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) ("If all of the factual disputes regarding the objective evidence resolve in favor of [plaintiff], it has presented a strong basis for rebutting the prima facie case [of obviousness]."). The objective indicia of non-obviousness should be considered to guard against hindsight bias.   Such factors include: (i) copying; (ii) long felt but unresolved need; (iii) failure of others to develop the invention; (iv) licenses showing industry respect for the invention; (v) commercial success; (vi) unexpected results created by the claimed invention; (vii) whether the claimed invention was praised by others in the field; and skepticism of skilled artisans before the invention. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013); *Cross Med. Prods.*, 424 F.3d at 1322–23; *Ormco*, 463 F.3d at 1311.  This list is not exhaustive, however, and may also include additional factors related to obviousness or non-obviousness.  *Graham*, 383 U.S. at 17–18. "Objective indicia of nonobviousness must be considered in every case where present." *Apple*, 2016 WL 5864573, at *8 (*citing Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012)).

### iii.   Written Description

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  35 U.S.C. § 112.  The written description must reasonably convey "to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).  In determining whether a specification contains an adequate written description, "one must make an 'objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.'"  *Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) (citing *Ariad*, 598 F.3d at 1351). However, a claim will not be invalidated simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language. *Hynix Semiconductor Inc. v. Rambus Inc.*, C-00-20905 RMW, 2009 WL 230039 (N.D. Cal. Jan. 27, 2009) *aff'd*, 645 F.3d 1336 (Fed. Cir. 2011) (citing *LizardTech, Inc. v. Earth Resource Mapping, Inc.,* 424 F.3d 1336, 1345 (Fed.Cir.2005)). Indeed, it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention. . . ." *LizardTech* 424 F.3d at 1345 (Fed. Cir. 2005).  "Original claims are part of the specification and in many cases will satisfy the written description requirement." *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373 1380 (Fed. Cir. 2011); *see also Union Oil Co. of Cal. v. Atlantic Richfield Co.*, 208 F.3d 989, 998 n.4 (Fed. Cir. 2000) ("disclosure in an originally filed claim satisfies the written description requirement") (citation omitted).

  *iv.  Definiteness*

Definiteness is a question of law based on underlying fact determinations.  *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010).   A patent is invalid for indefiniteness "if its claims, read in light of the specification delineating the patent,

and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

### v. Utility

To satisfy the utility requirement, a patent need "only be useful to some extent and in certain applications: [T]he fact that an invention has only limited utility and is only operable in certain applications is not grounds for finding lack of utility." *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1180 (Fed. Cir. 1991) (*citing Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 762 (Fed. Cir. 1984)). Thus, Intel, as the party challenging utility, must show by clear and convincing evidence that that the claimed invention is "*totally incapable* of achieving a useful result." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1571 (Fed. Cir. 1992) (emphasis added); *see also CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1339 (Fed. Cir. 2003) (the party claiming a patent is not useful "must show that all disclosed alternatives are inoperative or not enabled"). "An invention is 'useful' under 101 if it is capable of providing some identifiable benefit." *Juicy Whip, Inc. v. Orange Bang, Inc.*, 185 F.3d 1364, 1366 (Fed.Cir.1999).

The fact that an invention may have drawbacks does not mean it lacks utility. *Decca, Ltd. v. U.S.*, 544 F.2d 1070, 1077 (Ct. Cl.1976) ("The mere fact that the system has some drawbacks, or that under certain postulated conditions it may not work . . . does not detract from the operability of the disclosed equipment to perform its described function."); *In re Holmes*, 63 F.2d 642, 643 (1933) ("[I]f an invention be useful in itself, it is immaterial upon the question of patentability whether the invention be of greater or less usefulness than like devices or products shown in the prior art"); *see also Seymour v. Osborne*, 78 U.S. 516, 549 (1870) ("the law does

not require that it should be of such general utility as to supersede all other inventions in practice to accomplish the same object."); *Hildreth v. Mastoras*, 257 U.S. 27, 34 (1921); *Imperial Chem. Indus., PLC v. Henkel Corp.*, 545 F. Supp. 635, 645 (D. Del. 1982) (there is no requirement that the claimed invention be the "victor in the competition of the marketplace").

### b. Preclusion

Intel bears the burden of proving its defenses of preclusion under claim preclusion, the *Kessler* doctrine, and issue preclusion.

#### i. Claim Preclusion

In patent cases, claim preclusion "encompass[es] only the particular infringing acts or products that are accused in the first action." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,* 672 F.3d 1335, 1343 (Fed. Cir. 2012). Each sale of an accused product is a discrete infringing act and is thus akin to "discrete tortious" conduct. *Id.* at 1342. Even for accused products, "[i]t is well-established that, as to claims for continuing conduct after the complaint is filed, each period constitutes a separate claim." *Dow Chem. Co. v. Nova Chems. Corp.*, 803 F.3d 620, 626 (Fed. Cir. 2015). "[I]t is clear that claim preclusion also does not apply to damages accruing [for the accused products] after the filing of the complaint and not the subject of the first judgment." *Id.* at 627.

For similar reasons, "res judicata does not bar the assertion of 'new rights acquired during [a prior] action which might have been, but were not, litigated.'" *Aspex*, 672 F.3d at 1345 (quoting *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010)). "A plaintiff may seek leave to file a supplemental pleading to assert those claims, but the doctrine of res judicata does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." *Gillig*, 602 F.3d at 1363 (internal quotation and citation omitted). Products that are

"made or sold during the pendency" of a prior action create discrete, after-acquired claims for patent infringement that a patentee may, but is not required to, litigate in a first-filed suit. *See Aspex*, 672 F.3d at 1345. If the patentee does not elect to include those claims in the initial action, claim preclusion does not bar them in a later-filed suit. *See id.* This rule applies even if "the design of those [post-filing] products is essentially the same as the design of the products that were the subjects of the" earlier-filed action. *See id.* at 1342.

Similarly, suits against post-judgment conduct cannot be barred by claim preclusion, even when a second suit involves "essentially the same course of wrongful conduct" litigated in an earlier case. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955). More recently, the Third Circuit adopted a bright-line rule that claim preclusion "does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Morgan v. Covington Twp.*, 648 F.3d 172, 178 (3d Cir. 2011).

### ii.   The Kessler Doctrine

Announced "in the heyday of the federal mutuality of estoppel rule," the original function of the *Kessler* doctrine was to "bar[ ] a patent infringement action against a customer of a seller who ha[d] previously prevailed against the patentee because of invalidity or noninfringement of the patent." *See MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 733-34 (Fed. Cir. 1987). "The *Kessler* doctrine 'bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee *because of* invalidity or noninfringement of the patent.'" *Speedtrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1323 (Fed. Cir. 2015) (quoting *MGA*, 827 F.2d at 734) (emphasis added). The *Kessler* doctrine is no longer limited to a seller's customers, but can be invoked by the seller itself for devices that have acquired non-infringing status. *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d at 1057-58. Yet the *Kessler* doctrine applies

*only* to *particular products* that have been *demonstrated* to be non-infringing in previous litigation, or where a patent has been found to be invalid. *See id.* at 1058 ("[B]y virtue of gaining a *final judgment of noninfringement* in the first suit . . . the accused devices acquired a status as noninfringing devices[.]") (emphasis added); *MGA*, 827 F.2d at 734 ("The *Kessler* doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee *because of invalidity or noninfringement of the patent*[.]") (emphasis added).A dismissal with prejudice is not the trigger for the *Kessler* doctrine. *Mentor Graphics Corp. v. EVE-USA, Inc.*, No. 2015-1470, 2017 WL 1024502, at **14, 16 (Fed. Cir. March 16, 2017). Rather, there must be an adjudication of non-infringement or invalidity. *See id.* at *16. In every Supreme Court and Federal Circuit case that has applied *Kessler,* there was a prior substantive judicial finding that the asserted claims did not read on a product or were invalid. *See Speedtrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1320 (Fed. Cir. 2015) (non-infringement because device lacked "category description" claim limitation); *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1050 (Fed. Cir. 2014) (non-infringement because device lacked the claimed analog-to-digital conversion); *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 731 (Fed. Cir. 1987) (in action for royalties, state court found that manufacturer's machine not covered by patent license agreement and, by implication, not "covered by the relevant claims of MGA's '656 patent"); *Eldred v. Kessler*, 106 F. 509, 518 (7th Cir. 1900) (finding the accused lighter lacked the claimed "pivoted arm carrying at its upper end the electrode") (underlying decision relied on by *Kessler v. Eldred*, 206 U.S. 285 (1907)); *Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co.*, 232 U.S. 413 (1914) (claims held invalid).

At least one district court has held that even a judgment *of non-infringement* in a prior infringement action will not necessarily trigger *Kessler*. In *Mirror Worlds Techs., LLC v. Apple,*

*Inc.*, NO. 6:13–CV–419, 2015 WL 6750306, at **4-6 (E.D. Tex. July 7, 2005), the court held that *Kessler* did not apply because the prior judgment of non-infringement was based on a failure of proof that customers had used the accused product, not that the claims did not read on the product. *Id.* And another court refused to apply *Kessler* where there had been a dismissal with prejudice, because defendant "is not an adjudged non-infringer." *See also Ryan Data Exchange v. Graco, Inc.*, No. 4:14-cv-00198-JEG, 2015 WL 12516158, at *7 & *8 n.7 (S.D. Iowa Jan. 20, 2015).

### iii.  Issue Preclusion

The doctrine of issue preclusion bars the re-litigation of an issue of fact or law that has been litigated and decided. The Third Circuit and Federal Circuit apply the same four-factor test: (1) the issue must be identical to an issue previously adjudicated, (2) the issue must have been actually litigated, (3) the determination of the issue must have been necessary to the prior judgment, and (4) the party against whom preclusion is being asserted must have had a full and fair opportunity to litigate the issue. *See Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001); *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). "The requirement that the issue have been actually decided is generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it." *In re Freeman*, 30 F.3d at 1466.  "If a judgment does not depend on a given determination, relitigation of that determination is not precluded." *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (citing Restatement (Second) of Judgments § 27, comment h (1980) ).   Stated another way, "[a] determination ranks as necessary or essential only when the final outcome hinges on it."  556 U.S. at 835.

### c.  Unenforceability

AVM disputes that Intel has adequately raised and preserved these defenses.

### i. Equitable Estoppel

Intel bears the burden to establish three elements:

(1)    The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak.

(2)    The alleged infringer relies on that conduct.

(3)    Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).

Even where the three elements of equitable estoppel are established, the Court must take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit. *Id.* at 1043.

### ii. Waiver

Intel's basis for seeking a waiver is unclear. *Qualcomm* involved, among other things, the breach of a patent disclosure duty, as well as conduct so inconsistent with an intent to enforce rights so as to induce a reasonable belief that the right had been relinquished. *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020-21 (Fed. Cir. 2008). Another variation of waiver involves implied licenses, which is inapplicable here. *Wang Labs., Inc. v. Mitsubishi Elecs. Am.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997). .

### iii. Unclean Hands

Intel bears the burden of establishing unclean hands with clear and convincing evidence. *In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1374 (Fed. Cir. 2007).  Intel's basis for its unclean hands defense is unclear.  A type of unclean hands defense is inequitable conduct, which is not part of this case.  Other types involve egregious misconduct, such as perjury, the manufacture of false evidence, or suppression of evidence.  T*herasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc).  The Supreme Court unclean hands cases "all involved 'deliberately planned and carefully executed scheme[s] to defraud' not only the PTO but also the courts."  *Id.*

# Exhibit 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 15-33-RGA-MPT |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**Intel's Statement of Issues of Law That Remain To Be Litigated**

Defendant Intel Corporation ("Intel") respectfully submits the following Statement of Issues of Law That Remain To Be Litigated based on Intel's current understanding of the claims and counterclaim defenses of Plaintiff AVM Technologies, LLC ("AVM").

To the extent Intel's Statement of Issues of Fact That Remain To Be Litigated set forth in Exhibit 3 contains issues of law, those issues are incorporated herein by reference.  Likewise, should the Court determine that any issue identified in this Exhibit is more appropriately considered an issue of fact, Intel incorporates such issue by reference into Exhibit 3.  By including a fact herein, Intel does not assume the burden of proof or production with regard to that fact.  Intel reserves the right to revise this statement in light of the Court's rulings.

## ISSUES ON WHICH PLAINTIFF AVM BEARS THE BURDEN

## I.      INFRINGEMENT

Issue:  Although infringement is a question of fact, limitations on the applicability of the doctrine of equivalents—including whether a patentee is estopped from asserting the doctrine of equivalents based on statements or amendments made during prosecution, whether a finding of equivalence would vitiate a claim limitation, and whether a finding of equivalence would ensnare the prior art—are questions of law.  Intel contends that AVM is not entitled to rely on the doctrine of equivalents due to estoppel, vitiation, or ensnarement for the following claim limitations of the asserted claims of the '547 patent: "dynamic logic circuit"; "logic block"; "evaluation transistor"; "clock signal"; "clock signal node"; "a clock signal node coupled to the gates of the precharge and evaluation transistors for receiving a clock signal having precharge and evaluation phases for switching the precharge transistor between an active state during the precharge phase and an inactive state during a major portion of the evaluation phase and for switching the evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase"; "an evaluation transistor between the

1

dynamic logic block and the precharge transistor"; and "an evaluation transistor having a source-to-drain path and a gate terminal, the source-to-drain path coupled between the logic-block output note and the precharge node, the gate terminal coupled to a clock signal node."[1]

### A.     Direct Infringement

The patentee bears the burden of proving infringement by a preponderance of the evidence.  *Centricut, LLC v. Esab Group, Inc*., 390 F.3d 1361, 1367 (Fed. Cir. 2004).  Section 271(a) of the Patent Act defines the acts that constitute direct infringement of a patent:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a); *NTP, Inc. v. Research in Motion, Ltd*., 418 F.3d 1282, 1313 (Fed. Cir. 2005).

The determination of infringement is a two-part analysis.  "The court must first interpret the claims to determine their scope and meaning.  It must then compare the properly construed claims to the allegedly infringing device [or process]."  *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc*., 355 F.3d 1353, 1357 (Fed. Cir. 2004) (citation omitted).  "To show infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim."  *Seal-Flex, Inc. v. Athletic Track & Court Const*., 172 F.3d 836, 842 (Fed. Cir. 1999).  The patentee fails to carry its burden "when two scenarios are equally likely" because

---

[1]     AVM does not allege infringement under the doctrine of equivalents for the following claim limitations:  "a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors"; "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase"; "the precharge and evaluation transistors are activated simultaneously for a period of time"; "wherein the precharge transistor is active during a period of time at a beginning of the evaluation clock phase sufficient for charging the dynamic logic block"; and "a dynamic logic block having a plurality of input transistors, the arrangement of the input transistors determining the logic function of the circuit."

"no jury could determine which one was more likely than not." *Mosel Vitelic Corp. v. Micron Tech., Inc.*, No. 98-449-GMS, 2000 WL 1728346, at *2 (D. Del. Mar. 14, 2000).

### 1.    Literal Infringement

Literal infringement requires the presence of each limitation, exactly as written in the claim. *See DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, *i.e.*, when the properly construed claim reads on the accused device exactly." (internal quotation marks omitted)).

### 2.    Infringement Under the Doctrine of Equivalents

To prove infringement under the doctrine of equivalents, the patentee must prove that "the accused device [or process] contains an equivalent for each limitation not literally satisfied." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002); *see also Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001) ("To infringe a claim under the doctrine of equivalents, an accused device must include an equivalent for each literally absent claim limitation."). To prove equivalence, the patentee must "show[] that the difference between the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007). "One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result" as the corresponding limitation claimed in the patent. *Id.* The doctrine of equivalents must be applied to each individual element of a claim, not to the invention as a whole. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). A patentee must present "particularized testimony and linking argument" to support a theory of infringement under the doctrine of

3

equivalents.  *Am. Calcar, Inc. v. Am. Honda Motor Co*., 651 F.3d 1318, 1338-1339 (Fed. Cir. 2011).

Prosecution history estoppel stands "as a legal limitation on the doctrine of equivalents." *Warner-Jenkinson*, 520 U.S. at 30.  Prosecution history estoppel may bar the patentee from relying on the doctrine of equivalents if, during prosecution, the patentee made a narrowing amendment to satisfy any requirement of the Patent Act.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co*., 344 F.3d 1359, 1365 (Fed. Cir. 2003) (en banc).  "[A] narrowing amendment made for a reason of patentability" creates a presumption that the patentee has "surrender[ed] the entire territory between the original claim limitation and the amended claim limitation."  *Id.*  The patentee may overcome that presumption only by demonstrating that "the equivalent [would] have been unforeseeable at the time of the [amendment]," "the rationale underlying the amendment [bore] no more than a tangential relation to the equivalent in question," or "there [was] some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question."  *Id.*  (alterations in original).

Similarly, a patentee may be barred from relying on the doctrine of equivalents if, during prosecution, the patentee made arguments that effectively narrowed the scope of the patent claims.  "[A]rguments made during prosecution without amendments to claim language—if sufficient to evince a clear and unmistakable surrender of subject matter—may estop an applicant from recapturing that surrendered matter under the doctrine of equivalents." *Sextant Avionique, S.A. v. Analog Devices, Inc*., 172 F.3d 817, 828 n.3 (Fed. Cir. 1999); *see also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997)  ("Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel."); *Hoganas AB v. Dresser Indus., Inc*., 9

F.3d 948, 951-952 (Fed. Cir. 1993) ("The essence of prosecution history estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents, coverage of subject matter that was relinquished during prosecution to procure issuance of the patent.").

The doctrine of equivalents also may not be relied on if a finding of infringement by equivalents "would entirely vitiate a particular claim element." *Warner-Jenkinson*, 520 U.S. at 39 n.8; *see also Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (explaining that "all claim limitations are not entitled to an equal scope of equivalents [and] many limitations warrant little, if any, range of equivalents" and holding that allowing a "minority … to be equivalent to a majority would vitiate the ['majority'] requirement"); *Impulse Tech. Ltd. v. Microsoft Corp.*, C.A. No. 11-586-RGA, 2015 WL 5568616, at *3 (D. Del. Sept. 22, 2015) (applying claim vitiation where "[t]he accused product operates in essentially the opposite fashion of that described in the claims").

Additionally, the doctrine of "[e]nsnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009). If a hypothetical patent claim, constructed on the basis of the patentee's doctrine of equivalents theory to literally cover the accused device, would be unpatentable as anticipated or obvious, then "the patentee has overreached, and the accused device is noninfringing as a matter of law." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001). "[T]he burden of persuasion that the hypothetical claim does not ensnare the prior art remains with the patentee." *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 983 (Fed. Cir. 1999). Ensnarement is a question of law to be decided by the Court, not the jury. *DePuy Spine, Inc.*, 567 F.3d at 1324-1324.

### 3.     Non-Infringement Under the Reverse Doctrine of Equivalents

The reverse doctrine of equivalents provides that, even if the patentee establishes that the accused product falls within the literal scope of the asserted claims, the accused product still does not infringe if it is "so far changed in principle" from the patented invention "that it performs the same or similar function in a substantially different way." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1124 (Fed. Cir. 1985) (en banc). "The reverse doctrine of equivalents, like the doctrine of equivalents, is applied to individual limitations of a claim." *DePuy Spine, Inc.*, 567 F.3d at 1338. The purpose of the reverse doctrine of equivalents "is to prevent the unwarranted extension" of a patent's claims "beyond a fair scope of the patentee's invention." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1581 (Fed. Cir. 1991), *overruled in part on other grounds by Abbot Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009). The reverse doctrine of equivalents has been found to apply, for example, "where defendants are not gaining the benefit of plaintiff's patents, but their equipment could fall within the literal language of the patents." *Precision Metal Fabricators, Inc. v. Jetstream Sys. Co., Div. of Oerlikon Motch Corp.*, 693 F. Supp. 814, 819 (N.D. Cal. 1988). "[I]nfringement under the doctrine of equivalents is an issue of fact to be submitted to the jury in a jury trial with proper instructions, and to be decided by the judge in a bench trial." *Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc.*, 62 F.3d 1512, 1522 (Fed. Cir. 1995), *reversed on other grounds,* 520 U.S. 17 (1997); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) ("The wholesome realism of this doctrine is not always applied in favor of a patentee but is sometimes used against him."); *SRI Int'l*, 775 F.2d at 1123–24 ("It is precisely the role of a trial to apply the test in light of all the live testimony and physical evidence adduced."); *DePuy Spine, Inc.*, 567 F.3d at 1336.

"While the patentee bears the burden of proving infringement, if the patentee establishes literal infringement, the burden shifts to the accused infringer to set forth a prima facie case of non-infringement under the reverse doctrine of equivalents.  If the accused infringer is successful in making a prima facie case, the patentee must then rebut that prima facie case." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377-1378 (Fed. Cir. 2008) (citation omitted).  Non-infringement under the reverse doctrine of equivalents is a question of fact.  *Hartness Int'l Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1110 (Fed. Cir. 1987).

### B.  Indirect Infringement

#### 1.  Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement."  *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990).  Induced infringement requires proof of actual infringement.  Thus, "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  *Minn. Mining & Mfg. Co. v. Chemque, Inc*., 303 F.3d 1294, 1304-1305 (Fed. Cir. 2002) (citation omitted).  This requires showing that the alleged infringer had "knowledge that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015) (explaining that indirect infringement "requires proof the defendant knew the [accused] acts were infringing").  "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) (citing

*Metro- Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764, 2780 (2005)).  "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer … intended to induce infringement of the patent."  35 U.S.C. § 298.

### 2.    Contributory Infringement

35 U.S.C. § 271(c) defines the acts that constitute contributory infringement as the sale, offer to sell, or import of a product that can be used in a patented method if the product is "not a staple article or commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. § 271(c).  To establish liability for contributory infringement, a patentee must prove the following four elements:  (1) the accused infringer sold or offered to sell in the United States, or imported into the United States, a component of a patented device or composition, or a material or apparatus that is a component for use in practicing a patented process; (2) the component is a material part of the invention; (3) the accused party knew that the component was especially made or adapted for use in a manner that would infringe the patent when the party sold, offered or imported the component; and (4) the component is not a staple article of commerce capable of substantial non-infringing use.  *See Fujitsu Ltd. v. Netgear Inc*., 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Contributory infringement requires proof of direct infringement and also requires that the accused product have "no use except through practice of the patented method."  *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) ("Unless a commodity has no use except through practice of the patented method, the patentee has no right to claim that its distribution constitutes contributory infringement." (citation and internal quotation marks omitted)).  "[A]

8

violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing.'"  *Global-Tech,* 563 U.S. at 763 (quoting *Aro Mfg. Co. v. Covertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

## II.     AVM'S REQUEST FOR RELIEF

<u>Issue</u>:  If Intel is found to infringe one or more valid claims of the '547 patent, whether AVM is entitled to damages and the amount of any such damages.

### A.     Reasonable Royalty Damages

The patentee bears the burden of proving any damages by a preponderance of the evidence.  *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002).

Where the patentee does not make or sell products, it is not entitled to recover lost profits damages.  Instead, the patentee may recover only reasonable royalty damages.  A reasonable royalty is the amount that the defendant would have paid for a license to the asserted patents if the parties had negotiated a license at the time of first alleged infringement.  *See LaserDynamics v. Quanta*, 694 F.3d 51, 60 & n.2 (Fed. Cir. 2012).  This is often referred to as the "hypothetical negotiation."  In *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120-1121 (S.D.N.Y. 1970), *modified and aff'd*, 446 F. 2d 295 (2d Cir. 1971), the court identified fifteen factors that may be considered to the extent that they are relevant to the evidence before the jury.  *See Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014).  The Federal Circuit Bar Association's model jury instructions identify the following factors that may be considered:

> (1) The value that the claimed invention contributes to the accused product.
>
> (2) The value that factors other than the claimed invention contribute to the accused product.
>
> (3) Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

9

Federal Circuit Bar Association Model Patent Jury Instructions § 6.7 (January 2016).

A patentee must "must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 869 (Fed. Cir. 2010); *see also id.* ("[E]vidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute."); *Ericsson*, 773 F.3d at 1226 ("What is taken from the owner of a utility patent (for purposes of assessing damages under § 284) is only the patented technology, and so the value to be measured is only the value of the infringing features of an accused product.").

"When the accused infringing products have both patented and unpatented features, measuring [the value of the patented technology] requires a determination of the value added by such features. … The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson*, 773 F.3d at 1226. "No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). "In each case, district courts must assess the extent to which the proffered testimony, evidence, and arguments would skew unfairly the jury's ability to apportion the damages to account only for the value attributable to the infringing features." *Ericsson*, 773 F.3d at 1228.

The patentee therefore may not use the defendant's total revenues from sales of the accused products to calculate damages unless the patentee satisfies the "Entire Market Value Rule" by proving that the patented feature is "the basis" for customer demand for the accused products. *See Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Uniloc*, 632 F.3d at 1318; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1332-1333, 1336 (Fed. Cir. 2009). There is no

10

exception to this requirement where an accused product is the "smallest saleable unit":  the patentee "must in every case" give evidence to apportion damages between the patented feature and other unpatented features in the accused product unless the Entire Market Value Rule is satisfied.  *Garretson*, 111 U.S. at 121; *see also Uniloc*, 632 F.3d at 1318; *Lucent*, 580 F.3d at 1337.

"[U]sing sufficiently comparable licenses is a generally reliable method of estimating the value of a patent."  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1325 (Fed. Cir. 2014) *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).  "Prior licenses … are almost never perfectly analogous to the infringement action" and "allegedly comparable licenses may cover more patents than are at issue in the action."  *Ericsson*, 773 F.3d at 1227; *see also VirnetX*, 767 F.3d at 1330 ("[W]e have never required identity of circumstances" for a license to be "sufficiently comparable to the hypothetical license at issue in suit."  (internal quotation marks omitted)).  Actual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace.  *LaserDynamics*, 694 F.3d at 79.  Likewise, a patentee's license proposals "should carry considerable weight in calculating a reasonable royalty rate."  *Unisplay S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995). That is particularly true where the proposal involves the same parties and the same patent.  *See Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303-1304 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2530 (2016).  Evidence of what the parties actually did when negotiating a license for the patent-in-suit "may be the most effective method of estimating the asserted patent's value."  *See id.*; *see also Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1121 (N.D. Cal. 2011) (patentee's prior offer was a "real-

world comparable close on point" and should be the "starting point" for the hypothetical negotiation); *Wright v. United* States, 53 Fed. Cl. 466, 475 (2002) ("[T]he Court is swayed by the fact that an actual proffer by Plaintiff constitutes credible evidence of a ceiling on a hypothetical royalty rate.").

The use of prior settlement agreements to establish a reasonable royalty is disfavored because they are tainted by the coercive environment of patent litigation.  *LaserDynamics*, 694 F.3d at 77; *Rude v. Westcott*, 130 U.S. 152, 164 (1889); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-1079 (Fed. Cir. 1983).  Non-litigation settlement agreements are "far more reliable indicators of what willing parties would agree to in a hypothetical negotiation." *LaserDynamics*, 694 F.3d at 78.

A patent holder is not entitled to damages that are remote or speculative.  *Lucent*, 580 F.3d at 1335 (vacating damages award where the "jury's damages award [was] not supported by substantial evidence, but is based mainly on speculation or guesswork").

A lump-sum damages award compensates for past and future infringement through the life of the patent, and a patent holder who receives a lump sum award is not entitled to an ongoing royalty.  *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1300-1301 (Fed. Cir. 2015) ("[T]he district court properly denied Summit's request for an ongoing royalty because the [lump-sum] jury award compensated Summit for both past and future infringement through the life of the patent."); *see also Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 2017 WL 877221, at *12-13 (Fed. Cir. Mar. 6, 2017) (upholding district court's denial of an ongoing royalty where district court determined that damages award was for a "fully paid license" for "past, present, and future infringement," and where the evidence was "that a

hypothetical negotiation would likely have resulted in a one-time payment for a life-of-patent license").

## III.   ENHANCEMENT UNDER 35 U.S.C. § 284

<u>Issue</u>:  If Intel is found to infringe one or more valid claims of the '547 patent, whether AVM is entitled to enhanced damages pursuant to 35 U.S.C. § 284.

Upon a finding of infringement, "the court may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  As the Supreme Court recently clarified in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), the only sort of "willful misconduct" that can warrant enhanced damages is conduct that is "egregious"—for example, "the 'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business."  *Id.* at 1932, 1934; *see also id.* at 1932 (explaining that enhanced damages are "not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior").

"Courts consider several factors when determining whether an infringer has acted in bad faith and whether damages should be increased.  They include:  '(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; ... (3) the infringer's behavior as a party to the litigation;' (4) 'defendant's size and financial condition;' (5) 'closeness of the case;' (6) 'duration of defendant's misconduct;' (7) 'remedial action by the defendant;' (8) 'defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.'"  *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (quoting *Read Corp. v.*

*Portec. Inc.*, 970 F.2d 816, 826–27 (Fed. Cir. 1992), *superseded on other grounds as recognized in Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996)).

Whether an accused infringer has reasonable litigation defenses is relevant to whether or not its conduct is "egregious" enough to enhance damages. *WesternGeco LLC v. ION Geophysical Corp.*, 837 F.3d 1358, 1363 (Fed. Cir. 2016) (observing that, after *Halo*, "objective reasonableness is one of the relevant factors" in determining whether to enhance damages); *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988-1989 (2016) (in exercising discretion to award attorney's fees under the Copyright Act, a district court should give "substantial weight" to the reasonableness of the defendant's litigation positions).

To show willfulness, a patentee must prove that the alleged infringer acted without a "reasonable basis for believing it had a right to do the acts." *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1565 (Fed. Cir. 1983) ("[M]ore is necessary to support a finding of 'willfulness' than that the infringing acts were not inadvertent. The court must determine that the infringer acted in disregard of the patent, that is, that the infringer had no reasonable basis for believing it had a right to do the acts."); *see also Vulcan Eng'g Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002) ("The tort of willful infringement arises upon deliberate disregard for the property rights of the patentee. … When it is found that the infringer acted without a reasonable belief that its actions would avoid infringement, the patentee has established willful infringement, which may be accompanied by enhanced damages."); *Read*, 970 F.2d at 826 ("[T]his court has approved such awards where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful."). Reasonable defenses that were known to the accused infringer at the time of the alleged culpable conduct are thus highly relevant to assessing an accused infringer's subjective intent. *See Greatbatch Ltd. v. AVX Corp.*,

14

C.A. No. 13-723-LPS, 2016 WL 7217625, at *4 (D. Del. Dec. 13, 2016) (holding that

"reasonable defenses … known to [the accused infringer] at the time of the challenged, culpable

conduct" are "pertinent to assessing … subjective intent").  Beyond that, relevant factors include

whether the alleged infringer acted consistently "with the standards of commerce for its

industry," "made a good-faith effort to avoid infringing the patent," or "tried to cover up its

infringement."  *WesternGeco*, 837 F.3d at 1363 n.2.  "[A] party's pre-suit knowledge of a patent

is not sufficient, by itself, to find 'willful misconduct' of the type that may warrant an award of

enhanced damages."  *Vehicle IP, LLC v. AT&T Mobility LLC*, C.A. No. 09-1007-LPS, 2016 WL

7647522, at *8 (D. Del. Dec. 30, 2016); *see also Norian Corp. v. Stryker Corp.*, 363 F.3d 1321,

1332 (Fed. Cir. 2004) ("Willful infringement is not established by the simple fact of

infringement, even though [the defendant] stipulated that it had knowledge of [the plaintiff's]

patents.  The patentee must present threshold evidence of culpable behavior."  (citation

omitted)).

A finding of willful infringement does not require that damages be enhanced.  *See Halo*,

136 S. Ct. at 1933 ("[N]one of this is to say that enhanced damages must follow a finding of

egregious misconduct."); *WBIP, LLC v. Kohler Co*., 829 F.3d 1317, 1341 n.13 (Fed. Cir. 2016)

("[T]his is not to say that a jury verdict of willful infringement ought to result in enhanced

damages.").  Indeed, as *Halo* indicates, willfulness is, at most, a factor the Court may consider

when deciding whether to exercise its discretion to award enhanced damages under 35 U.S.C.

§ 284.  *See Halo*, 136 S. Ct. at 1931-1932 (Section 284 "contains no explicit limit or condition"

on a district court's discretion except that enhanced damages are "reserved for egregious cases of

culpable behavior"); *see also Trustees of Boston Univ. v. Everlight Elecs. Co.*, C.A. No. 12-

11935-PBS, 2016 WL 3976617, at *2 (D. Mass. July 22, 2016) ("[T]he touchstone for awarding enhanced damages after *Halo* is egregiousness.").

"The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent …." 35 U.S.C. § 298. "Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit. Exercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) (citation omitted).

The Supreme Court's decision in *Halo* makes clear that "willfulness" is no longer a separate claim but is just one factor for the Court to consider in deciding whether to enhance damages under § 284. *Id.* at 1933. This is apparent from *Halo*'s unitary abuse-of-discretion standard for reviewing enhanced damages determinations, which leaves no room for "substantial evidence" review of a jury's verdict. *See id.* at 1934.[2] This is the same system the Supreme Court adopted for exceptional case findings under 35 U.S.C. § 285—a system that gives the jury no role. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014). Evidence of Intel's allegedly "willful" infringement conduct is therefore not relevant to any issue that the jury must decide.

**ISSUES ON WHICH DEFENDANT INTEL BEARS THE BURDEN**

---

[2]   In *WBIP, LLC v. Kohler Co.*, the Federal Circuit "[did] not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury." 829 F.3d at 1341. But the court did not consider *Halo*'s new, unitary standard of review.

# IV.    INVALIDITY

Issue:  Whether the asserted claims of the '547 patent are invalid.

Under § 282 of the Patent Act, patents are presumed valid and a party challenging the

validity of a patent must prove invalidity by clear and convincing evidence.  35 U.S.C. § 282(a);

*Chiron Corp. v. Genetech, Inc.*, 363 F.3d 1247, 1258-1259 (Fed. Cir. 2004).  The presumption of

validity and the clear and convincing burden of proof are "static and in reality different

expressions of the same thing—a single hurdle to be cleared."  *Id.* at 1258 (quoting *Am. Hoist &*

*Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984)).  Thus, the presumption

of validity "does not constitute 'evidence' to be weighed against the challenger's evidence."  *Id.*

at 1258-1259.

While § 282 requires an invalidity defense to be proven by clear and convincing

evidence, that burden of proof becomes easier to satisfy when a party relies on prior art not

before the Patent Office during prosecution.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110

(2011); *see SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355-1356 (Fed.

Cir. 2000) (explaining that "[w]hile the presentation at trial of a reference that was not before the

examiner does not change the presumption of validity, the alleged infringer's burden may be

more easily carried because of this additional reference").  The Supreme Court has recognized

that "if the PTO did not have all material facts before it, its considered judgment may lose

significant force."  *Microsoft*, 564 U.S. at 110.

"[C]orroborating evidence [of invalidity] can include documents and testimonial

evidence ….  Circumstantial evidence can be sufficient."  *TransWeb, LLC v. 3M Innovative*

*Props. Co.*, 812 F.3d 1295, 1301 (Fed. Cir. 2016); *see also Netscape Commc'ns Corp. v.*

*ValueClick, Inc.*, 704 F. Supp. 2d 544, 555 (E.D. Va. 2010) ("An inventor's testimony may be

corroborated by other testimony, and thus invalidity may be determined even in the absence of

documentary evidence.").

## A.     Anticipation

Section 102 of the Patent Act provides, in relevant part, as follows:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or ….

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent ….

35 U.S.C. § 102(a), (b), (e).  Anticipation requires a showing "that each element of the claim in

issue is found, either expressly or under principles of inherency, in a single prior art reference, or

that the claimed invention was previously known or embodied in a single prior art device or

practice."  *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559,

1565 (Fed. Cir. 1992).  "Under the principles of inherency, if the prior art necessarily functions

in accordance with, or includes, the claims limitations, it anticipates."  *Leggett & Platt, Inc. v.*

*VUTEk, Inc*., 537 F.3d 1349, 1354 (Fed. Cir. 2008) (internal quotation marks omitted).  "The

disclosure in an assertedly anticipating reference must be adequate to enable possession of the

desired subject matter."  *Elan Pharm., Inc. v. Mayo Found. for Med. Educ. & Research*, 346 F.3d

1051, 1055 (Fed. Cir. 2003).  "For a prior-art reference to be enabling, it need not enable the

claim in its entirety, but instead the reference need only enable a single embodiment of the

claim." *In re Morsa*, 803 F.3d 1374, 1377 (Fed. Cir. 2015).  "[B]oth claimed and unclaimed

materials disclosed in a [prior art] patent are presumptively enabling."  *In re Antor Media Corp.*,

689 F.3d 1282, 1288 (Fed. Cir. 2012).

Under the on-sale bar of § 102(b), "[i]f a product that is offered for sale inherently

possesses each of the limitations of the claims, then the invention is on sale, whether or not the

parties to the transaction recognize that the product possesses the claimed characteristics."

*Abbott Labs. v. Geneva Pharm.*, 182 F.3d 1315, 1319 (Fed. Cir. 1999); *Scaltech, Inc. v.

Retec/Tetra, LLC*, 269 F.3d 1321, 1330 (Fed. Cir. 2001) ("If the process that was offered for sale

inherently possessed each of the claim limitations, then the process was on sale, whether or not

the seller recognized that his process possessed the claimed characteristics."  (internal quotation

marks omitted)); *see also Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1356

(Fed. Cir. 2008) ("[O]ur precedent holds that the question is not whether the sale, even a third

party sale, 'discloses' the invention at the time of the sale, but whether the sale relates to a device

that *embodies* the invention." (internal quotation marks omitted)).  In the on-sale context, "there

is no requirement for an enablement-type inquiry."  *In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir.

1994).

### B.    Obviousness

Section 103 of the Patent Act provides:

> A patent may not be obtained though the invention is not identically
> disclosed or described as set forth in section 102 of this title, if the
> differences between the subject matter sought to be patented and the prior
> art are such that the subject matter as a whole would have been obvious at
> the time the invention was made to a person having ordinary skill in the art
> to which said subject matter pertains.

35 U.S.C. § 103(a).  "[O]bviousness is a matter of law based on findings of underlying fact."

*Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008).

19

In *KSR International Co. v. Teleflex Inc.*, the Supreme Court stated:

> Under § 103, the scope and content of the prior art are to be determined;
> differences between the prior art and the claims at issue are to be
> ascertained and the level of ordinary skill in the pertinent art resolved.
> Against this background, the obviousness or nonobviousness of the subject
> matter is determined.  Such secondary considerations as commercial
> success, long felt but unsolved needs, failure of others, etc., might be
> utilized to give light to the circumstances surrounding the origin of the
> subject matter sought to be patented.

550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18

(1966)).  Obviousness can be established by noting that "there existed at the time of invention a

known problem for which there was an obvious solution encompassed by the patent's claims."

*Id.* at 420.  Furthermore, it is not only the specific problem motivating the patentee which is

relevant, but rather "any need or problem known in the field of endeavor at the time of invention

and addressed by the patent can provide a reason for combining the elements in the manner

claimed."  *Id.*  In addition, because "[a] person of ordinary skill is also a person of ordinary

creativity," he will be able to "fit the teachings of multiple patents together like pieces of a

puzzle," regardless of whether each piece of prior art was designed to solve the problem at hand.

*Id.* at 421; *see also Leapfrog Enterprises, Inc. v. Fischer-Price, Inc.*, 485 F.3d 1157, 1161-1162

(Fed. Cir. 2007).

Because obviousness is to be judged under "an expansive and flexible approach" driven

by "common sense," an award of patentability requires "more than the predictable use of prior

art elements according to their established functions."  *KSR*, 550 U.S. at 415-418.  This flexible

standard expands the obviousness analysis beyond just "published articles and the explicit

content of issued patents."  *Id.* at 419.  As the Supreme Court has articulated, a patent that merely

combines "familiar elements according to known methods is likely to be obvious when it does no

more than yield predictable results."  *Id.* at 416 (recognizing that when a patent claims a structure

20

already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result).  Similarly, where a person of ordinary skill in the art simply pursues "known options" from a "finite number of identified, predictable solutions," obviousness under § 103 results.  *Id.*  at 421.

The question of obviousness also requires consideration of objective indicia of non-obviousness, such as commercial success, licensing, praise, long-felt need, failure of others, unexpected results, teaching away, and copying.  *See KSR*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17-18 ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.")).  In order for these objective indicia of nonobviousness "to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention."  *SIBIA Neurosciences*, 225 F.3d at 1359 (quoting *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995).

Obviousness is judged from the perspective of a person of ordinary having skill in the art at the time the alleged invention was made.  *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1354-1355 (Fed. Cir. 2007) ("An invention is not patentable, inter alia, 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art'" (quoting 35 U.S.C. § 103(a))).  A person of ordinary skill is a hypothetical person who is "presumed to be aware of all the pertinent prior art."  *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).

### C.    Written Description

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  Section 112 of the Patent Act provides that "[t]he specification shall

contain a written description of the invention, and of the manner and process of making and

using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art ...

to make and use the same." 35 U.S.C. § 112, ¶ 1. The written description must reasonably

convey "to those skilled in the art that the inventor had possession of the claimed subject matter

as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir.

2010) (en banc). Specifically, the written description must "clearly allow persons of ordinary

skill in the art to recognize that [the inventor] invented what is claimed." *Id.* at 1563 (citing *In re

Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989)); *see also LizardTech, Inc. v. Earth Resource

Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) ("[The written description] must describe

the invention sufficiently to convey to a person of skill in the art that the patentee had possession

of the claimed invention at the time of the application, *i.e.*, that the patentee invented what is

claimed."). In determining whether a specification contains an adequate written description,

"one must make an 'objective inquiry into the four corners of the specification from the

perspective of a person of ordinary skill in the art.'" *Boston Scientific Corp. v. Johnson &

Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) (citing *Ariad*, 598 F.3d at 1351). "A broad claim

is invalid [for lack of adequate written description] when the entirety of the specification clearly

indicates that the invention is of a much narrower scope." *Carnegie Mellon*, 541 F.3d at 1127

(quoting *Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir.

2002); *see also Atlantic Res. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1354-1355 (Fed. Cir. 2011)

(invalidating claims covering gun accessory without "receiver sleeve attachment point" because

specification disclosed only accessory with such an attachment point); *ICU Med., Inc. v. Alaris

Med. Sys., Inc.*, 558 F.3d 1368, 1378 (Fed. Cir. 2009) ("[A] person of skill in the art would not

understand the inventor … to have invented a spikeless medical valve."); *LizardTech*, 424 F.3d

at 1345 (invalidating a claim that was "directed to creating a seamless array of DWT coefficients generically" because the specification taught only "a particular method" of creating such a seamless array).  Whether a patent claim satisfies the written description requirement is a question of fact.  *Ariad*, 598 F.3d at 1351.

The mere fact that a claim is "an original claim[] does not necessarily satisfy [the written description] requirement."  *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968 (Fed. Cir. 2002); *see also Mentor Graphics*, No. 15-1470, at 34.  Where "a purported description of an invention does not meet the requirements of the statute, the fact that it appears as an original claim or in the specification does not save it. A claim does not become more descriptive by its repetition, or its longevity."  *Id*. at 968-969.

### D.     Indefiniteness

The Patent Act requires that a patent claim "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2.  This definiteness requirement is intended to provide notice to the public of the precise bounds of the patent rights claimed by the patentee.  If a claim fails to inform those skilled in the art of the scope of the invention with reasonable certainty, the claim is invalid.  *ePlus, Inc. v. Lawson Software, Inc*., 700 F.3d 509, 519 (Fed. Cir. 2012); *see also Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938) ("The inventor must inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not."  (internal quotation marks omitted)).  The test for determining whether the claims are sufficiently definite is whether the "patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v.*

*Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014).  "Indefiniteness is a question of law."

*Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*, 803 F.3d 620, 625 (Fed. Cir. 2015).

### E.    Utility

A patent is invalid under 35 U.S.C. § 101 if it fails to provide a well-defined and real-world benefit to the public.  *In re Fisher*, 421 F.3d 1365, 1371-1372 (Fed. Cir. 2005); *see also Brenner v. Manson*, 383 U.S. 519, 535 (1966) ("The basic quid pro quo contemplated by the Constitution and the Congress for granting a patent monopoly is the benefit derived by the public from an invention with substantial utility.").  The Federal Circuit has emphasized that the benefit must be "specific" and "substantial," and that a substantial benefit is one that provides "practical utility" and "real world" utility.  *Fisher*, 421 F.3d at 1371.  "Simply put, to satisfy the 'substantial' utility requirement, an asserted use must show that the claimed invention has a significant and presently available benefit to the public."  *Id*.

## V.    UNENFORCEABILITY

### A.    Equitable Estoppel

<u>Issue</u>:  Whether AVM and Joseph Tran are equitably estopped from enforcing the '547 patent against Intel.

Equitable estoppel is an equitable defense "committed to the sound discretion of the trial judge."  *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013) (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co*., 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc)).  Under the doctrine of equitable estoppel, the owner of a patent may forfeit its right to any relief from an alleged infringer where:  (1) the patent holder communicates something in a misleading way to the alleged infringer about the lack of infringement or about not being sued; (2) the alleged infringer relies upon the misleading communication from the patent holder; and (3) the alleged infringer will be materially harmed if the patent holder is allowed to assert a claim

relating to the issue that is inconsistent with the patent holder's prior misleading communication. *Id.* The patentee's misleading communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence and such conduct may include action or inaction. *A.C. Aukerman*, 960 F.2d at 1028. The defendant bears the burden of proving each of the elements of equitable estoppel by a preponderance of the evidence. *Id.* at 1046.

### B.    Waiver

Issue: Whether AVM and Joseph Tran have waived the right to enforce the '547 patent against Intel.

Waiver is an equitable defense that the alleged infringer must prove by clear and convincing evidence. *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008). A patent is not enforceable when the patent holder intentionally relinquishes its rights to enforce the patent or its conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished. *Id.* "Any language used by the owner of the patent or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license, and a defense to an action for a tort." *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927).

### C.    Unclean Hands

Issue: Whether AVM and Joseph Tran are barred from enforcing the '547 patent against Intel because AVM, Mr. Tran, and/or TransLogic Technology, Inc. acted with unclean hands.

Unclean hands is an equitable defense. Under this doctrine, a patentee may be barred from enforcing a patent against an alleged infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully toward the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit. *Keystone Driller Co.*

25

*v. Gen. Excavator Co.*, 290 U.S. 240, 244-245 (1933).  An alleged infringer bears the burden of

proving unclean hands by clear and convincing evidence.  *In re Omeprazole Patent Litig.*, 483

F.3d 1364, 1374 (Fed. Cir. 2007).

## VI.    PRECLUSION

### A.    Claim Preclusion

Issue:  Whether AVM's infringement claims are barred by the doctrine of claim

preclusion.

Under the doctrine of claim preclusion, "a final judgment on the merits bars further

claims by parties or their privies based on the same cause of action."  *Montana v. United States*,

440 U.S. 147, 153 (1979); *see also Senju Pharm., Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed.

Cir. 2014) ("Claim preclusion will generally apply when a patentee seeks to assert the same

patent against the same party and same subject matter.").  "The question of whether prior

litigation results in claim preclusion in a later suit is a question of law."  *Hallco Mfg. Co. v.

Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001).

Generally, regional circuit law applies in determining whether claim preclusion bars a

later suit, even in patent infringement actions. *See Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 477

n.7 (Fed. Cir. 1991).  In the Third Circuit, three elements must be met for a claim to be barred

under the doctrine of claim preclusion:  "(1) a final judgment on the merits in a prior suit

involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same

cause of action."  *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

"Dismissal with prejudice constitutes an adjudication of the merits as fully and completely as if

the order had been entered after trial."  *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972).

The third factor, which requires that two patent infringement claims arise from the "same

cause of action," is an issue particular to patent law and therefore requires application of Federal

Circuit precedent.  *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008).  To

satisfy the third factor, the accused products in the two suits must be "essentially the same."

*Foster*, 947 F.2d at 479-480; *see also Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999)

("A determination of whether two lawsuits are based on the same cause of action turn[s] on the

essential similarity of the underlying events giving rise to the various legal claims." (internal

quotation marks omitted)).  Subsequent versions of previously accused products are "essentially

the same" so long as any changes made to the new products are immaterial to the claim

limitations at issue, even if the changes may be material in other respects.  *Nystrom v. Trex Co.*,

580 F.3d 1281, 1285-1286 (Fed. Cir. 2009); *see also Acumed*, 525 F.3d at 1324; *Roche*, 531 F.3d

at 1379; *Foster*, 947 F.2d at 480.  "The party asserting claim preclusion has the burden of

showing that the accused devices are essentially the same."  *Acumed*, 525 F.3d at 1324.

     Although this Court previously held that for claim preclusion to apply the accused

products in the second action must predate the complaint in the earlier action (D.I. 32 at 44-45),

the Federal Circuit recently clarified in *Mentor Graphics Corp. v. Eve-USA, Inc.*, No. 15-1470,

2017 WL 1024502 (Fed. Cir. Mar. 16, 2017), that application of claim preclusion is limited only

as to "infringement claims for acts of infringement occurring after the final judgment in a

previous case" (*id.* at *16).  This holding by the Federal Circuit supports Intel's position that so

long as accused products in two suits are "essentially the same," a patentee is barred from

alleging infringement by those products for any acts that pre-date final judgment in the prior

litigation.  *Mentor Graphics* is also consistent with prior Federal Circuit decisions holding that

claim preclusion bars a second action when accused devices are essentially the same as those

accused in a prior action even when the devices accused in the second action are first produced

or sold during the pendency of the first action.  *Nystrom*, 580 F.3d at 1284; *Acumed*, 525 F.3d at

27

1325-1327; *Foster*, 947 F.2d at 472, 479-480; *see also Adaptix, Inc. v. Amazon.com, Inc.*, 2015 WL 4999944, at *7 (N.D. Cal. Aug. 21, 2015). *Mentor Graphics* further clarified that the holdings of *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012), and *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045 (Fed. Cir. 2014) finding that claim preclusion did not apply were limited to the issue of whether a patentee could bring new infringement allegations based on "conduct occurring after a previous litigation ended." 2017 WL 1024502, at *16.

## B.   The *Kessler* Doctrine

Issue:  Whether AVM's infringement claims are barred by the *Kessler* doctrine.

In *Kessler v. Eldred*, 206 U.S. 285 (1907), the Supreme Court explained that an accused infringer who obtains a final judgment in his favor "settle[s] finally and everywhere" that, as against the patentee, he "ha[s] the right to manufacture, use, and sell the" accused product. *Id.* at 288; *see also Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 418 (1914) ("Under [*Kessler*], the respondent—by reason of the final adjudication in its favor—was entitled to make and sell the Grant structure[.]"); *Molinaro v. AT&T Co.*, 460 F. Supp. 673, 676 (E.D. Pa. 1978) ("[T]he judgment of dismissal in plaintiffs' first suit bars a second action … , even though the merits of plaintiffs' infringement claims were never actually litigated."), *aff'd*, 620 F.2d 288 (3d Cir. 1980).

The *Kessler* doctrine "precludes some claims that are not otherwise barred by claim or issue preclusion." *Brain Life*, 746 F.3d at 1055-1056; *see also id.* at 1056 ("The *Kessler* Doctrine fills the gap between these preclusion doctrines, … allowing an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result."); *Kessler v. Eldred*, 206 U.S. 285, 288-289 (1907). Under *Kessler*, following a final judgment adverse to a patentee, the patentee is estopped

28

from accusing subsequent products if those products are "essentially the same" as the products accused in the prior action. *Brain Life*, 746 F.3d at 1057-1058 (under *Kessler*, when the newly accused products "are 'essentially the same,' the 'new' product(s) also acquire[] the status of a noninfringing device vis-à-vis the same accusing party"). In other words, the *Kessler* doctrine "permits an adjudicated non-infringer to 'continue the same activity in which it engaged prior to the infringement allegations.'" *Mentor Graphics*, No. 15-1470, at 41 (quoting *Brain Life*, 746 F.3d at 1056).

"Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Acumed*, 525 F.3d at 1324; *see also Roche*, 531 F.3d at 1379. The "essentially the same" element under the *Kessler* doctrine is the same element applicable to claim preclusion and is analogous to the standard for determining whether modified products are subject to contempt proceedings, *i.e.*, whether the products are "colorably different" from one another with respect to the claim limitations at issue. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (en banc); *see also Foster*, 947 F.2d at 480 ("Colorable changes in an infringing device or changes unrelated to limitations in the claim of the patent would not present a new cause of action.").

### C.    Issue Preclusion

Issue:  Whether AVM's claim for damages is barred by the doctrine of issue preclusion.

Issue preclusion applies when:  "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (internal quotation marks omitted).  "The party asserting issue preclusion … bear[s] the burden of proving its applicability to the case at hand." *Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d

139, 147 (3d Cir. 2007). "[A] party may be precluded under the doctrine of collateral estoppel from attempting a second time to prove a fact that he sought unsuccessfully to prove in a prior action." *Yates v. United States*, 354 U.S. 298, 336 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978). "A judgment that a party has failed to carry their burden of proof may preclude that party, under the doctrine of collateral estoppel, from attempting to prove the same issue in a later adjudication." *Union Tel. Co. v. Qwest Corp.*, 495 F.3d 1187, 1195 (10th Cir. 2007); *see also Uintah Ute Indians of Utah v. United States*, 28 Fed. Cl. 768, 781 (1993) ("Issue preclusion … bar[s] relitigating issues, even if they are presented later as wholly new theories or causes of action."). "[I]ssue preclusion presents a mixed question of law and fact for the Court to decide." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 678 (D. Del. 2010).

If a party recovers a lump-sum royalty to compensate it for past and future infringement, it cannot seek double recovery in a later suit. *See, e.g., Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 2017 WL 877221, at *12-13 (Fed. Cir. Mar. 6, 2017) (upholding district court's denial of an ongoing royalty where district court determined that damages award was for a "fully paid license" for "past, present, and future infringement," and where the evidence was "that a hypothetical negotiation would likely have resulted in a one-time payment for a life-of-patent license"); *Innogenetics N.V. v. Abbott Labs.*, 512 F.3d 1363, 1380 (Fed. Cir. 2008) (vacating injunction where damages award included lump-sum component that "contemplates or is based upon future sales"); *Personal Audio, LLC v. Apple Inc.*, C.A. No. 09-111, 2011 WL 3269330, at *1, 13 (E.D. Tex. July 29, 2011) (barring patentee that obtained fully paid-up, lump-sum award from seeking additional damages for infringement of the same patent by other products). Even where infringement of a different patent is asserted in a second case, issue

preclusion prevents a patentee from using a second lawsuit to recover damages that overlap with those it sought but failed to prove in an earlier litigation.  *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 623, 630-633 (D. Del. 2008) (precluding patentee from pursuing lost profits in second case after failing to prove lost profits in prior case involving overlapping sales).

## ISSUES ON WHICH PREVAILING PARTY BEARS THE BURDEN

## VII.   ATTORNEYS' FEES UNDER 35 U.S.C. § 285

Issue:  Whether the prevailing party is entitled costs, expenses, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  A prevailing party must establish its entitlement to fees under Section 285 by a preponderance of the evidence.  *Id.* at 1758.

31

# Exhibit 6

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit 7

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-0033-RGA-MPT |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AVM's Witness List**

1

Plaintiff AVM Technologies, LLC ("AVM" or "Plaintiff") respectfully tentatively identifies the following witnesses AVM may call at trial for live testimony during its case-in-chief, in support of the issues on which AVM bears the burden of proof.

AVM reserves the right to call rebuttal witnesses, either live or through deposition testimony, who are not listed below, in response to the testimony offered by Defendant Intel Corporation ("Defendant") and to any defenses or issues on which Defendant bears the burden of proof.

AVM further reserves the right to call additional witnesses, either live or through deposition testimony, to provide foundation testimony should any party contest the authenticity or admissibility of any material proffered at trial.  After the parties exchange objections to such materials, AVM will address this issue with the Defendant and/or the Court, and will provide notice of any additional witnesses it will or may call to establish the authenticity and admissibility of materials to be proffered at trial.

AVM's listing of potential witnesses for its case-in-chief is made to comply with the Court's Order and the parties' agreements and to preserve its rights, based on the present status of the case.  AVM and Intel will exchange objections and motions in limine and otherwise present to the Court disputes regarding the issues and evidence to be presented to the jury and the relevancy and admissibility of certain testimony and exhibits.  AVM's listing of the following potential witnesses does not waive AVM's rights to object to certain categories of evidence as irrelevant or otherwise inadmissible, and does not waive its right to pursue motions in limine. Until the Court addresses and rules on such disputes, AVM reserves its rights to make final decisions regarding what witnesses to call, and what exhibits to proffer.  The listing of a witness on AVM's list of potential witnesses does not represent or otherwise require that AVM call that

witness to testify, does not constitute a representation that AVM will bring a designated potential witness to trial, and does not mean that AVM has the power to compel the attendance or live testimony of that potential witness.

AVM's listing of potential witnesses and designations of deposition testimony for its case-in-chief is also made based on AVM's present understanding of the trial date, the availability of potential witnesses, and the issues.  In the event that an individual whom AVM designated as a potential witness is not available for trial or otherwise cannot give live testimony, AVM may designate a replacement witness to testify either live or by designation, and will provide reasonable notice to Defendants.

After the parties complete their pretrial exchanges and the Court rules on motions or other disputes that are presented during pretrial, AVM reserves the right to further clarify the witness it will call and whether the respective witnesses will provide their testimony.

The following witnesses are those AVM current expects will be called to testify live at trial (listed in alphabetical order):

1.  Mark Chandler, Radnor, Pennsylvania

2.  Marwan Hassoun, Austin, Texas

3.  John Hatch, Austin, Texas

4.  Christopher Knittel, Cambridge, Massachusetts

5.  Dzung Joseph Tran, Tigard, Oregon

6.  Andrew Wolfe, Los Gatos, California

The following witnesses are those AVM currently expects may be called to testimony live at trial (listed in alphabetical order):

1.  Mark Acuff, Hillsboro, Oregon

3

2.  Adam Gill (to the extent the Court finds funding arrangements and investments associated with the patent admissible), Chicago, Illinois

3.  Intel witness pursuant to FRCP 30(b)(6) regarding document retention and production

4.  Joseph McAlexander (to the extent the Court finds his testimony from *AVM1* admissible)  Richardson, Texas

5.  Robert Weaver, Vancouver, Washington

For witnesses whose testimony will or may be presented via deposition designation by AVM, AVM responds to the extent it offers the testimony of the following witnesses, it will do so by deposition designations, except that, AVM reserves the right to question such witnesses fully, and to call them in its rebuttal case, should Intel call such witnesses to testify live at trial (listed in alphabetical order):

1.  Tom Garrison

2.  Larissa Goffman

3.  Dana Hayter

4.  Adam King

5.  James Kovacs

6.  Kurt Kreitzer

7.  Arun Krishnamoorthy

8.  Supriya Madan

9.  Randy Ohara

10. Clifford Ong

11. George Shchupak

4

12. Todd Smith

13. Randy Steck

14. Jim Tschanz

15. Sapumal Wijeratne

AVM further states that for the following witnesses listed on its "may call" list, AVM has designated deposition testimony and, should the witness(es) not appear live at trial, AVM reserves the right to present their testimony via deposition:

1. Mark Acuff

2. Robert Weaver

AVM reserves the right to call live or by deposition any of the witnesses Intel calls live or designates by deposition.

# Exhibit 8A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  15-33-RGA |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>Intel's Objections to AVM's Witness List</u>**

Intel objects to AVM's proposed witness list as follows:

1.      Intel objects to AVM calling an "Intel witness pursuant to FRCP 30(b)(6) regarding document retention and production."  *See* AVM Witness List at 4.  Federal Rule of Civil Procedure Rule 30(b)(6) relates only to discovery, specifically depositions, not trial.  It allows a party to name an organization "as ***the deponent***" when issuing a notice or subpoena for a deposition.  Fed. R. Civ. P. 30(b)(6) (emphasis added).  It does not permit AVM to summons to trial a previously undisclosed and unnamed Intel representative.  To the contrary, the Local Rules require that AVM disclose "[t]he ***names*** of all witnesses [it] intends to call to testify."  L.R. 16.3(7) (emphasis added).  AVM's request for a witness "regarding document retention and production" also suggests that—as discussed in Intel's Motion in Limine Number 2—AVM intends to make arguments to the jury regarding Intel's non-production of data that are inconsistent with the Court's prior rulings.  Furthermore, it is unreasonable and burdensome for AVM to attempt to force Intel to identify and prepare another fact witness to testify only weeks before trial.  For all these reasons, AVM should not be permitted to call an Intel "30(b)(6) witness" at trial and Intel does not agree to identify any such witness.

2.      Intel further objects to AVM's proposed witness list on the grounds that AVM attempts to reserve the right to call additional witnesses (other than rebuttal witnesses) that it has not identified on its witness list, including witnesses to "provide foundation testimony," witnesses to "establish the authenticity and admissibility of materials to be proffered at trial," and "replacement" witnesses.  *See* AVM Witness List at 2-3.  AVM is required to identify "all witnesses" it intends to call.  L.R. 16.3(7).  It should not be permitted to call at trial any witness that it has not identified on its witness list for any purpose other than rebuttal.

3.     Finally, Intel objects to AVM calling in its case-in-chief any Intel witness who has not been specifically identified on AVM's witness list.

# Exhibit 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  15-33-RGA |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>Intel's Witness List</u>**

Defendant Intel Corporation ("Intel") provides the following witness list identifying those witnesses it expects it will call, or may call, at trial.

| Witnesses Intel Will Call In Person | Witnesses Intel May Call In Person | Witnesses Intel May Call By Deposition Only |
|---|---|---|
| 1.   Julie Davis | 1.   Robert Colwell | 1.   Mark Acuff |
| 2.   Thomas Garrison | 2.   Adam Gerchen | 2.   Larry Evans |
| 3.   Lorin Hitt | 3.   Adam Gill | 3.   Joseph McAlexander |
| 4.   Peter Ivey | 4.   Larisa Goffman | 4.   Dzung Joseph Tran |
| 5.   Kurt Kreitzer | 5.   Ashley Keller | 5.   Robert Weaver |
| 6.   Randy Ohara | 6.   James Kovacs | |
| 7.   George Shchupak | 7.   Arun Krishnamoorthy | |
| 8.   Willy Shih | 8.   Travis Lenkner | |
| 9.   Randy Steck | | |
| 10.   Vivek Subramanian | | |

# Exhibit 9A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 15-0033-RGA-MPT |
| ) | |
| v. ) | |
| ) | |
| INTEL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**AVM's Objections to Intel's Revised Witness List**

1

Plaintiff AVM Technologies, LLC ("AVM" or "Plaintiff") provides the following response and objections to the witness list promulgated by Defendant Intel Corporation ("Intel").

AVM's objections are subject to, and incorporate by reference, its previously-asserted objections and reservations of rights, including without limitation its pending motions *in limine* and pending *Daubert* and summary judgment motions.

- AVM objects to the presentation by Intel of testimony by Joseph Tran by deposition.  Mr. Tran will be present at trial, and any testimony sought from Mr. Tran should be elicited and presented in person.

- AVM objects to the inclusion of Joseph McAlexander and Larry Evans on Intel's list of witnesses whose deposition testimony Intel plans to introduce. (See AVM MIL No. 1.) As expert witnesses rather than fact witnesses, their statements are not party admissions. As explained in AVM's motion *in limine*, Intel identifies irrelevant testimony, and their testimony is likely to confuse the jury, cause a sideshow at trial, and be unduly prejudicial.

- AVM objects to the inclusion of Adam Gerchen, Adam Gill, Ashley Keller, and Travis Lenkner on Intel's "may call" witness list. In AVM's pending motion to exclude the testimony of Intel's damages expert (Ms. Davis), AVM explains that Ms. Davis's reliance on investments in AVM is irrelevant to her damages opinion, confusing, and prejudicial. (D.I. 436.) To the extent investments in AVM or this litigation—which occurred well after the hypothetical negotiation date—are relevant, Ms. Davis's use of them is unreliable, and Intel's intended use of them will confuse the jury and unfairly prejudice AVM.

2

- AVM objects to the inclusion by Intel of ten witnesses on its "will call" list and eight witnesses on its "may call" list.  A list of 18 witnesses for a timed trial of one week is excessive and indicates a failure to exercise a good faith effort to cull Intel's potential witness list.

- AVM reserves its right to object to the scope and admissibility of any witness's testimony.

# Exhibit 10

**AVM Deposition Designation**

| Code | Objection |
|------|-----------|
| ARG | **Lawyer Argument or Colloquy** (Intel objects to this deposition designation because it is lawyer argument and not testimony of the witness.) |
| CM | **Cumulative** (Intel objects to this deposition designation on the ground that it is duplicative and/or cumulative of other designations.) |
| DOC | **Document Speaks For Itself** (Intel objects to this deposition designation because the question asks the witness to offer testimony on a document that speaks for itself.) |
| F | **Foundation** (Intel objects to this deposition designation on the ground that the foundation necessary for its admission has not been laid under Fed. R. Evid. 602.) |
| FORM | **Form** (Intel objects to this deposition designation because the question asked is compound, argumentative, or has some other defect in form.) |
| H | **Hearsay** (Intel objects to this deposition designation because it constitutes or contains hearsay under Fed. R. Evid. 801-802.) |
| IC | **Improper Compilation of Unrelated Documents, all objections reserved** (Intel objects to this deposition designation because the question asks the witness to offer testimony on a document that that consists of different or unrelated documents.) |
| IMP | **Improper** use of expert testimony. (Intel objects to this deposition designation because it constitutes improper use of expert testimony.) |
| INC | **Remainder of or Related Writings or Recorded Statements** (Intel objects to this deposition designation because it is incomplete, or it asks the witness to offer testimony on a document where the remainder of the document should fairly be considered.  (Fed. R. Evid. 106).) |
| IR | **Not Relevant** (Intel objects to this deposition designation because it is not relevant to any issue to be decided in this case under Fed. R. Evid. 401-402.) |
| LC | **Calls for Legal Conclusion** (Intel objects to this deposition designation because it contains conclusions of law.) |
| LEADING | **Leading** (Intel objects to this deposition designation because the question asked is leading the witness.) |
| LO | **Lay Opinion** (Intel objects to this deposition designation because it constitutes or contains improper opinion by a lay witness under Fed. R. Evid. 701-702.) |

1

| Code | Objection |
|------|-----------|
| M | **Mischaracterization** (Intel objects to this deposition designation because the question asked mischaracterizes the witness's prior testimony and/or the question asked (or the testimony provided) mischaracterizes the document being shown to the witness.) |
| MIL | **Subject to either (1) motion in limine issue or (2) in limine agreement between the parties** (Intel objects to this deposition designation because it falls within the scope of Intel's pending motions *in limine* or an agreement between the parties concerning motions *in limine*.) |
| NP | **Not Produced / Produced Untimely / Subject to Motion to Strike** (Intel objects to this deposition designation because the question asks the witness to offer testimony on a document that was not produced during the course of discovery.) |
| NR | **Non-Responsive Testimony** (Intel objects to this deposition designation because it includes statements that are not responsive to the question asked.) |
| PRIV | **Negative inference based on redacted privileged information** (Intel objects to this deposition designation because it seeks communications or information protected from disclosure by the attorney-client privilege, work product doctrine, common interest, joint defense, and/or other privilege.) |
| S | **Speculative** (Intel objects to this deposition designation because it includes statements that are speculative as to matters of fact or law.) |
| SCOPE | **Beyond Scope of 30(b)(6) Notice or Topics or Scope of Expert Opinion** (Intel objects to this deposition designation because it is outside the scope of the topics on which the witness was designated as a corporate representative or for which the witness has offered expert opinion.) |
| VA | **Vague and Ambiguous** (Intel objects to this deposition designation because it includes vague and indefinite statements.) |
| 403 | **Prejudice Exceeds Probative Value** (Intel objects to this deposition designation because its probative value is outweighed by unfair prejudice and/or confusion of the issues under Fed. R. Evid. 403.) |
| 901 | **Authentication** (Intel objects to this deposition designation because it contains testimony on a document that has not been properly authenticated under Fed. R. Evid. 901.) |

Witness:  Mark Acuff (2012)[1]

| AVM's Designations (Acuff 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 8:9 | 8:10 | | 8:11 | 8:19 | NC; MIL; REL; 403 |
| 8:22 | 9:5 | | 8:20 9:10 | 8:21 9:11 | |
| 10:6 | 10:15 | | | | |
| 28:13 | 28:19 | | 28:2 28:20 | 28:12 28:23 | |
| 28:24 | 29:3 | | 29:4 | 29:11 | NC; REL; 403 |
| 29:20 | 29:25 | | 30:1 33:9 | 30:6 33:23 | NC; REL; 403 |
| 37:12 | 38:7 | | 30:23 31:17 | 31:12 31:20 | NC; REL; 403 |
| 38:12 | 38:17 | | 19:10 19:22 38:18 | 19:19 20:7 38:21 | NC; 403; REL |
| 38:24 | 39:5 | | | | |
| 41:7 | 41:15 | | 34:1 34:21 40:20 41:20 44:1 48:9 52:16 53:15 163:2 166:18 187:10 190:3 191:11 195:22 211:15 212:5 213:9 213:14 | 34:12 34:24 41:6 42:5 44:7 48:11 52:18 53:21 165:24 168:23 187:20 190:19 191:25 196:19 212:2 212:6 213:11 213:17 | NC; REL; 403; KN; SP; CP; H; EXP |

[1] AVM objects to Intel's counter-designations as unreasonable because they are not needed for completeness and instead are simply a wholesale importation of Intel's affirmative designations.  AVM's counterdesignations to Intel's affirmative designations are incorporated herein by reference.

| AVM's Designations (Acuff 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| | | | 213:20 | 213:21 | |
| 43:15 | 43:25 | H | Same as Above | Same as Above | Same as Above |
| 47:13 | 47:24 | | | | |
| 47:25 | 48:8 | | 48:9<br>48:23<br>50:2 | 48:11<br>48:25<br>50:7 | NC; 403; REL; H; CP |
| 61:6 | 61:14 | H | 58:18<br>60:22<br>61:1<br>68:18<br>70:25<br>71:21<br>72:23<br>75:2<br>75:12<br>75:18<br>76:4<br>76:10<br>77:7<br>77:15<br>78:5<br>78:24<br>79:4<br>79:7<br>79:11<br>79:22<br>80:25<br>82:9<br>84:10<br>84:22<br>86:6<br>87:5<br>88:8<br>88:13<br>96:16<br>96:21<br>96:24 | 58:20<br>60:23<br>61:5<br>70:11<br>71:14<br>72:4<br>74:1<br>75:9<br>75:15<br>75:25<br>76:7<br>77:3<br>77:12<br>78:2<br>78:6<br>79:1<br>79:5<br>79:8<br>79:12<br>80:16<br>81:2<br>83:14<br>84:12<br>85:10<br>86:8<br>87:8<br>88:10<br>88:17<br>96:18<br>96:22<br>96:25 | |

| AVM's Designations (Acuff 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| | | | 97:3 | 97:7 | |
| | | | 97:12 | 97:14 | |
| | | | 97:17 | 97:20 | |
| | | | 97:23 | 97:24 | |
| | | | 100:2 | 100:5 | |
| | | | 100:8 | 100:10 | |
| | | | 100:16 | 101:16 | |
| | | | 101:19 | 103:4 | |
| | | | 104:23 | 105:5 | |
| | | | 105:20 | 105:23 | |
| | | | 106:1 | 106:2 | |
| | | | 107:15 | 108:9 | |
| | | | 108:12 | 108:17 | |
| | | | 109:1 | 109:4 | |
| | | | 109:7 | 109:9 | |
| | | | 110:18 | 110:25 | |
| | | | 111:3 | 111:7 | |
| | | | 111:10 | 111:21 | |
| | | | 112:20 | 113:9 | |
| | | | 114:4 | 114:7 | |
| | | | 130:25 | 131:2 | |
| | | | 149:12 | 150:6 | |
| | | | 151:1 | 151:7 | |
| | | | 151:12 | 152:18 | |
| | | | 153:18 | 153:21 | |
| | | | 154:1 | 155:1 | |
| | | | 156:9 | 158:4 | |
| | | | 158:7 | 158:19 | |
| | | | 160:4 | 160:23 | |
| | | | 161:1 | 161:5 | |
| | | | 161:8 | 161:11 | |
| | | | 161:14 | 161:14 | |
| | | | 171:2 | 171:13 | |
| | | | 172:10 | 172:11 | |
| | | | 172:14 | 172:15 | |
| | | | 172:20 | 172:25 | |
| | | | 175:18 | 176:11 | |
| | | | 176:14 | 176:20 | |
| 61:15 | 61:21 | H | Same as | Same as | Same as above. |

| AVM's Designations (Acuff 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| | | | Above | Above | |
| 61:22 | 62:2 | H | Same as Above | Same as Above | Same as Above |
| 64:10 | 64:22 | H | Same as Above | Same as Above | Same as Above |
| 111:22 | 112:19 | | Same as Above | Same as Above | Same as Above |
| 118:5 | 119:11 | | 22:19 23:12 24:19 25:17 26:6 26:13 27:12 119:12 119:16 120:4 120:14 | 22:24 23:22 25:2 26:3 26:10 27:9 28:1 119:13 119:20 120:11 120:16 | NC; REL; 403; KN; SP; H; CP; EXP |
| 119:21 | 120:3 | | Same as Above | Same as Above | Same as Above |
| 120:17 | 121:2 | | Same as Above | Same as Above | Same as Above |
| 121:16 | 123:4 | | 130:25 132:8 136:8 137:1 138:11 142:12 143:6 147:19 148:6 149:12 151:1 151:12 153:18 154:1 156:9 158:7 | 131:2 133:11 136:11 138:7 139:14 142:15 144:1 148:3 148:19 150:6 151:1 152:18 153:24 155:17 158:4 158:19 | NC; REL; 403; KN; SP; H; CP; EXP |
| 134:3 | 134:24 | | Same as | Same as | Same as Above |

| AVM's Designations (Acuff 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| | | | above | above | |
| 138:24 | 139:3 | | Same as above | Same as above | Same as Above |
| 142:25 | 144:17 | | Same as above | Same as above | Same as Above |
| 147:5 | 147:18 | | Same as above | Same as above | Same as Above |

**Witness:  Tom Garrison (2016)**

| AVM's Designations (Garrison 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 6:6 | 6:12 | | 7:22 | 14:7 | REL; CU; NC |
| 7:8 | 7:21 | | | | |
| 16:18 | 17:13 | | 17:22 | 18:17 | REL; CU; NC |
| 23:1 | 24:17 | | | | |
| 35:21 | 36:12 | | | | |
| 36:21 | 38:23 | F, FORM | 38:24 | 39:10 | H; FO; NC |
| 39:18 | 42:24 | F, FORM, VA | | | |
| 43:5 | 44:23 | | | | |
| 45:7 | 45:25 | | | | |
| 46:14 | 46:17 | F, VA | | | |
| 46:19 | 46:19 | | | | |
| 47:24 | 48:5 | F | | | |
| 48:7 | 48:14 | F, VA | | | |
| 48:19 | 49:10 | | | | |
| 49:20 | 50:4 | FORM | | | |
| 50:6 | 50:11 | F, FORM, S | | | |
| 50:14 | 52:22 | F, FORM, S | 52:23 | 53:3 | REL; CU; NC |
| 53:4 | 54:25 | F. FORM, VA, S | 131:12 | 131:15 | CU; NC; L |
| 55:24 | 64:4 | F, FORM, S, IR | 55:20 | 55:23 | REL; NC |
| 64:8 | 64:12 | F | 65:12 65:17 66:5 66:10 | 65:15 65:18 66:8 66:20 | KN; FO; NC; SPC |
| 67:8 | 67:12 | F, FORM, S | | | |
| 67:20 | 68:13 | F, FORM, S | | | |
| 68:19 | 72:5 | F, FORM | 72:6 131:12 | 72:21 131:15 | REL; KN; SPC; CU; NC; L |
| 74:7 | 74:18 | F | | | |
| 74:23 | 75:12 | F, DOC | | | |
| 75:17 | 76:11 | F, DOC | 76:12 131:12 | 76:22 131:15 | REL; CU; NC; L |
| 76:23 | 77:7 | F, DOC | | | |
| 77:17 | 78:23 | F, DOC | | | |
| 79:9 | 80:3 | F, IR | 80:4 131:12 | 80:7 131:15 | REL; CU; NC; L |

| AVM's Designations (Garrison 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 81:2 | 82:12 | F, FORM, VA | 80:15 82:16 | 80:19 82:20 | CU; NC; REL; NR |
| 83:2 | 85:21 | F, FORM, VA, IR, S | 90:18 91:5 131:12 | 91:1 91:5 131:15 | REL; CU; NC; L |
| 87:4 | 87:12 | F | 86:25 | 87:3 | REL; CU; NC |
| 91:6 | 92:3 | F | 92:4 92:9 131:12 | 92:7 92:9 131:15 | CU; NC; L |
| 92:10 | 92:22 | F, DOC | | | |
| 93:17 | 93:24 | F, FORM | 93:25 94:5 95:3 | 94:3 94:5 96:3 | CU; NC |
| 96:9 | 97:18 | F | 131:12 | 131:15 | CU; NC; L |
| 97:21 | 98:5 | F, DOC | | | |
| 98:15 | 99:20 | F, DOC | | | |
| 99:22 | 101:14 | F, DOC | | | |
| 101:22 | 102:3 | F, DOC | | | |
| 102:5 | 103:1 | F, DOC | 109:11 109:20 113:22 114:6 | 109:18 109:22 114:3 114:17 | CU; NC; NR; IA |
| 103:4 | 103:5 | F, DOC | 103:6 | 103:17 | CU; NC; NR |
| 104:6 | 105:11 | F, FORM, DOC | 105:22 | 105:25 | REL; CU; NC |
| 106:1 | 109:2 | F, FORM, DOC | | | |
| 116:13 | 117:10 | FORM | | | |
| 117:13 | 119:4 | FORM | | | |
| 119:19 | 121:8 | F | 131:16 | 131:19 | CU; NC; L |
| 121:16 | 121:19 | F | | | |
| 121:22 | 122:2 | F | | | |
| 122:4 | 122:15 | F | | | |
| 122:17 | 122:22 | F | | | |
| 123:19 | 124:22 | | | | |
| 126:2 | 128:4 | F, FORM | 131:16 | 131:19 | CU; NC; L |
| 128:10 | 128:14 | FORM | | | |
| 128:25 | 130:7 | F. DOC | 131:16 | 131:19 | CU; NC; L |
| 133:3 | 133:11 | | 132:22 | 132:25 | CU; NC; L |

| AVM's Designations (Garrison 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 133:15 | 134:3 | | | | |

Witness:  Larissa Goffman (2016)

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 6:8 | 6:25 | | 310:19 317:20 320:13 | 315:8 319:11 322:23 | NC; 403; CO; KN; EXP; SPC; Waiver; SC |
| 8:9 | 10:2 | | 10:5 310:19 317:20 320:13 | 10:12 315:8 319:11 322:23 | NC; 403; CO; KN; EXP; SPC; Waiver; SC |
| 10:22 | 10:25 | F, VA, INC | | | |
| 12:17 | 13:5 | VA | 13:6 13:24 | 13:15 14:9 | NC; 403; REL; |
| 19:13 | 19:25 | INC | 19:5 20:6 20:11 | 19:7 20:9 20:11 | NC; 403; REL; IA |
| 20:12 | 20:17 | VA, FORM | | | |
| 21:3 | 21:7 | FORM | | | |
| 21:13 | 21:15 | VA, FORM, INC | 21:12 | 21:15 | NC; 403; CU |
| 23:15 | 24:5 | VA, FORM | 24:21 | 25:4 | NC; 403; REL; |
| 26:22 | 27:10 | VA, FORM | 26:16 27:11 | 26:21 27:19 | |
| 28:5 | 28:10 | FORM | | | |
| 28:20 | 29:7 | F, VA, FORM | | | |
| 31:21 | 31:24 | F, VA | | | |
| 36:3 | 36:13 | F, VA, FORM | 35:21 | 35:23 | NC; 403; REL |
| 37:9 | 37:11 | F, FORM | 37:8 | 37:8 | |
| 37:18 | 39:25 | VA, FORM, S | | | |
| 40:11 | 40:21 | F, FORM, S | | | |
| 41:16 | 41:22 | F, FORM, VA | | | |
| 42:4 | 42:9 | VA. FORM | 41:23 | 41:25 | |
| 42:15 | 42:22 | VA, FORM | | | |
| 43:19 | 43:22 | VA, FORM, IR | 43:23 | 44:11 | NC; 403; REL |
| 47:14 | 47:25 | F, VA, FORM | 46:4 48:1 | 46:17 49:2 | NC; 403; REL |
| 48:21 | 49:2 | FORM, F, VA | | | |
| 49:11 | 50:15 | | 50:16 | 50:21 | |
| 51:5 | 51:15 | | 51:1 | 51:4 | |

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| | | | 51:16 | 51:20 | |
| 51:21 | 52:9 | | 52:10 310:19 | 52:13 310:24 | NC; 403; REL |
| 54:3 | 54:6 | | 53:1 54:7 54:21 310:25 | 54:2 54:14 55:1 311:4 | NC; 403; REL |
| 55:2 | 55:19 | | | | |
| 56:2 | 56:18 | | 55:23 | 56:1 | |
| 56:21 | 56:25 | F, FORM | | | |
| 58:9 | 58:16 | | 57:22 | 58:8 | NC; 403; REL |
| 58:21 | 58:23 | | 59:5 | 59:7 | NC; 403; REL |
| 59:8 | 59:19 | | | | |
| 63:11 | 63:18 | | 63:15 64:6 64:10 | 63:18 64:8 64:12 | CU; 403; REL; NC |
| 65:1 | 65:9 | VA, FORM, IR | | | |
| 72:12 | 72:18 | F, VA, FORM, SCOPE, 403 | 72:7 72:10 310:19 | 72:8 72:11 315:8 | NC; 403; REL; CO; KN; EXP; SPC; Waiver; SC |
| 74:4 | 74:13 | | | | |
| 75:21 | 76:12 | F, VA, FORM, M | 76:12 311:20 311:24 312:12 312:24 313:9 313:14 | 76:16 311:22 312:10 312:22 313:7 313:12 313:15 | NC; CO; KN; EXP; SPC; Waiver; SC |
| 76:17 | 77:10 | F, VA, FORM | 76:12 | 76:16 | NC; 403; REL |
| 77:20 | 78:6 | | | | |
| 79:17 | 79:25 | | | | |
| 80:9 | 81:3 | VA, FORM | | | |
| 81:13 | 81:23 | VA, S | | | |
| 82:1 | 83:2 | F, VA, FORM | 83:3 | 84:8 | NC; 403; REL; CO; |
| 85:6 | 85:11 | F, VA | 84:20 | 85:4 | |
| 87:16 | 88:6 | F, VA, FORM, S | 87:1 88:7 | 87:4 88:10 | NC; CP; NT |

12

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 89:6 | 89:9 | F, VA, FORM | 89:10 | 89:21 | CU |
| 89:15 | 89:21 | VA, FORM | 89:12 | 89:13 | |
| 90:2 | 90:9 | VA, FORM | 90:10 | 91:5 | CU; NC; 403; REL |
| 90:13 | 90:20 | VA, FORM | 90:21 | 91:5 | NC; 403; REL |
| 92:13 | 92:23 | | 91:16 311:5 | 92:2 313:15 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 93:1 | 93:20 | | 91:16 311:5 | 92:2 313:15 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 94:3 | 94:14 | F, VA, FORM | 93:21 94:1 94:15 94:19 | 93:24 94:2 94:17 94:24 | NC; REL; 403; |
| 94:25 | 101:12 | F, VA, FORM, S, IR, 403 | 94:15 94:19 101:13 311:20 311:24 312:12 312:24 313:9 313:14 | 94:17 94:24 103:5 311:22 312:10 312:22 313:7 313:12 313:15 | NC; 403; REL; KN; EXP; SPC; WAIVER Counter:[2] 278:5-279:11; 281:7-283:4 |
| 105:6 | 105:13 | VA, FORM, INC | 105:15 | 105:20 | NC; 403; REL |
| 105:21 | 105:24 | INC, IR | 106:1 | 106:4 | |
| 106:1 | 107:2 | F, VA, FORM | 107:3 | 107:5 | NC; 403; REL |
| 107:11 | 107:24 | F, VA, FORM | | | |
| 108:3 | 109:2 | F, VA, FORM, S | 109:3 | 109:22 | NC; 403; REL |
| 109:23 | 114:21 | F, VA, FORM, S, IR, 403 | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 113:12 | 113:17 | Duplicative of | 113:19 | 113:19 | NC; 403; REL; |

[2] AVM includes limited counter-designations as a result of the late change in schedule that eliminated rounds of counter-designations.

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| | | above F, VA, FORM, S, CM | 311:5 | 315:8 | KN; EXP; SPC; WAIVER |
| 115:3 | 115:10 | IR, 403 | 115:11 | 115:21 | CU |
| 115:14 | 115:18 | | 115:20 | 115:21 | NC |
| 115:22 | 115:24 | | 115:25 | 116:2 | NC |
| 116:3 | 116:19 | FORM, VA, IR, 403 | 116:25 | 117:20 | CU; NC; REL; 403 |
| 116:25 | 117:6 | F, FORM | 117:7 | 117:20 | NC; REL; 403 |
| 118:19 | 118:21 | VA, FORM | | | |
| 121:1 | 121:8 | FORM | 120:14 121:9 | 120:25 121:13 | NC; REL; 403 |
| 122:22 | 123:9 | F, FORM, S | 122:13 | 122:21 | NC; REL; 403 |
| 123:18 | 123:23 | INC | 123:15 | 123:17 | NC; REL; 403 |
| 124:8 | 126:24 | F, VA, FORM, LC, S, IR | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 128:7 | 128:20 | F, VA, FORM, IR, 403 | | | |
| 129:13 | 129:18 | F, VA, FORM, S, LC, IR 403 | 129:19 | 130:20 | NC; CO; REL; 403 |
| 130:11 | 131:20 | F, VA, FORM, S | 131:22 | 131:23 | CU |
| 131:22 | 131:25 | F, VA, FORM, INC | 131:19 132:2 | 131:20 132:3 | CU |
| 132:2 | 133:3 | F, VA, FORM | 131:24 | 131:25 | CU |
| 133:17 | 134:16 | F, VA, FORM | 133:12 311:5 | 133:16 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 134:22 | 135:7 | F, VA, FORM, LC, S | | | |
| 135:10 | 135:20 | F, VA, FORM | | | |
| 135:24 | 136:22 | F, VA, FORM, S | | | |
| 137:22 | 1385 | VA, FORM | 137:9 | 137:21 | NC; REL; 403 |
| 138:16 | 138:19 | VA, FORM | | | |
| 138:22 | 139:13 | VA, IR, LC, 403 | 139:14 139:25 | 139:24 140:13 | NC; REL; 403; CU |

14

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 140:6 | 140:25 | F, VA, FORM, IR | 141:1 141:23 | 141:9 143:25 | NC; REL; 403; CU |
| 143:18 | 144:9 | VA, FORM | 143:15 144:12 | 143:17 144:15 | NC; REL; 403 |
| 144:16 | 145:1 | F, VA, FORM, S | | | |
| 145:24 | 145:25 | VA, FORM, S | 146:1 | 146:6 | |
| 146:7 | 147:1 | FORM, IR, 403, S, F | | | |
| 147:19 | 147:24 | FORM, IR, 403, S, F | 147:25 | 148:10 | NC; REL; 403 |
| 148:17 | 148:24 | VA | 148:25 | 149:10 | NC; REL; 403 |
| 153:10 | 153:21 | VA, IR, 403 | 153:22 | 155:8 | NC; REL; 403; CU |
| 154:20 | 155:3 | F, VA, FORM | 155:4 | 155:8 | NC; REL; 403 |
| 155:9 | 155:23 | F | 155:24 156:9 | 156:5 156:12 | NC; REL; 403 |
| 156:25 | 157:5 | | 157:6 | 157:24 | NC; REL; 403 |
| 158:21 | 159:6 | | | | |
| 160:23 | 161:3 | VA | 160:8 | 160:22 | NC; 403 |
| 161:13 | 162:1 | | | | |
| 162:12 | 163:5 | | | | |
| 163:6 | 167:25 | F, FORM, VA, S, IR, 403 | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 168:20 | 169:25 | F, FORM | 168:10 | 168:19 | NC; REL; 403 |
| 170:8 | 170:14 | F, IR, 403 | 170:16 311:5 | 170:17 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 171:8 | 171:15 | VA, FORM, IR, 403 | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 171:19 | 172:15 | F, FORM | | | |
| 176:24 | 177:25 | F, FORM, IR, 403, S | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 178:5 | 178:23 | F, VA, FORM, S, IR, 403 | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 178:24 | 181:13 | F, VA, FORM, CM, IR, 403, S | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 181:21 | 182:1 | FORM, INC, 403, IR, S, F | 181:16 182:3 311:5 | 181:20 182:17 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 182:3 | 182:14 | F, FORM, M, INC, 403, IR, S, F | 181:21 182:15 311:5 | 182:1 182:17 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 182:22 | 183:9 | FORM, 403, IR, S, F | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 183:25 | 184:16 | | | | |
| 191:22 | 191:2 | VA, FORM | 191:23 | 192:22 | |
| 193:25 | 194:5 | | | | |
| 195:8 | 195:25 | VA, FORM | | | |
| 196:2 | 196:4 | LC, IR, 403 | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 197:20 | 198:18 | IR, INC, 403, F | 197:17 264:2 | 197:19 264:6 | NC; REL; 403 |
| 205:18 | 206:4 | FORM | 205:13 | 205:17 | NC |
| 208:2 | 208:11 | FORM | 210:3 210:12 | 210:7 211:2 | NC |
| 212:18 | 213:6 | | 210:3 210:12 311:5 317:20 | 210:7 211:2 315:8 319:11 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 213:19 | 213:25 | FORM | 311:5 317:20 | 315:8 319:11 | NC; 403; REL; KN; EXP; |

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| | | | | | SPC; WAIVER |
| 214:1 | 214:6 | INC | | | |
| 216:22 | 216:25 | INC | | | |
| 223:1 | 223:9 | F, VA | | | |
| 226:1 | 226:10 | F, VA, FORM, INC | 229:7 | 229:10 | NC; NR; IA |
| 231:22 | 232:5 | FORM, IR, 403, F | 226:11 264:2 | 226:15 264:6 | NC; IA; NR |
| 232:13 | 233:15 | F, VA, FORM, IR, 403, S | 233:16 | 234:3 | SPEC; NC |
| 238:17 | 239:2 | F, FORM, LC, IR, 403, S | 239:3 239:6 239:13 239:16 311:5 | 239:4 239:8 239:14 240:1 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 243:13 | 243:25 | FORM, IR, 403, F, S | 242:21 | 243:12 | IA; NC |
| 249:6 | 249:10 | | 248:19 | 249:5 | NC; REL; 403 |
| 249:14 | 249:17 | VA, FORM | 249:13 | 249:13 | NC; REL; 403 |
| 250:1 | 250:4 | F, S, IR, 403 | 250:5 250:7 250:13 | 250:5 250:11 250:14 | |
| 256:10 | 256:15 | F, VA, FORM, S, IR, 403 | 257:3 | 257:11 | NC |
| 260:20 | 260:24 | F, FORM | | | |
| 265:24 | 271:7 | F, INC, FORM, VA, M, S, IR, 403 | | | |
| 271:21 | 271:24 | | | | |
| 272:15 | 272:18 | | 273:5 | 273:7 | CU |
| 273:5 | 273:7 | | | | |
| 273:11 | 273:25 | | 274:1 | 274:14 | CU; |
| 274:10 | 275:1 | F, S, IR, 403 | 274:3 275:2 311:5 | 274:5 275:14 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER Counter: 278:5-279:11; 281:7-283:4 |

17

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 279:12 | 280:11 | FORM, VA, 403 | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 280:19 | 281:6 | F, FORM | 311:5 | 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 283:17 | 284:22 | VA, FORM, S | 311:5 319:12 | 313:15 320:12 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 285:23 | 286:25 | F, FORM, VA | 311:5 319:12 | 313:15 320:12 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 287:17 | 287:25 | | | | |
| 288:11 | 288:23 | FORM, IR, 403 | 288:5 289:8 | 288:10 289:10 | NC; REL; IA; 403 |
| 289:13 | 289:23 | FORM, IR, 403 | 289:8 | 289:10 | NC; REL; 403; IA |
| 291:11 | 292:10 | FORM, LC, IR, 403 | 292:20 311:5 | 293:1 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 293:2 | 293:23 | FORM, M, LC, IR, 403 | 293:24 311:5 | 294:1 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 294:2 | 295:21 | FORM, M, VA, LC, IR, 403 | 296:9 296:18 297:2 311:5 | 296:13 296:20 297:2 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 297:3 | 298:12 | FORM, VA, LC, IR, 403 | 298:13 311:5 | 299:2 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 298:17 | 300:6 | FORM, VA, LC, IR, 403 | 311:5 | 315:8 | NC; 403; REL; KN; EXP; |

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| | | | | | SPC; WAIVER |
| 301:12 | 302:9 | FORM, F, IR, 403 | 300:10 300:20 302:10 | 300:12 301:2 302:23 | NC; |
| 303:17 | 303:24 | FORM | 303:25 311:5 315:6 315:8 | 304:12 315:4 315:6 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 309:16 | 310:1 | | | | |
| 311:15 | 311:19 | | 311:20 311:24 312:12 312:24 313:9 313:14 | 311:22 312:10 312:22 313:7 313:12 315:8 | NC; 403; REL; KN; EXP; SPC; WAIVER |
| 315:19 | 315:24 | | 315:8 315:25 316:4 316:12 317:7 317:11 | 315:18 316:2 316:10 317:1 317:9 317:19 | NC; 403; EXP; SPC |
| 318:1 | 318:4 | | 317:20 318:5 318:14 319:4 319:11 | 317:25 318:12 319:2 319:9 319:11 | NC; CP; IA; 403 |
| 319:17 | 319:21 | | 319:22 327:4 327:13 | 320:12 327:11 327:18 | NC; CP; IA; 403; CU |
| 320:4 | 320:8 | | 320:9 | 320:12 | |
| 322:16 | 322:23 | | 320:13 321:4 321:23 322:4 | 321:1 321:21 322:2 322:15 | CU; NC; |
| 323:6 | 323:21 | F, FORM, IR, 403, LC | | | |
| 324:15 | 324:25 | FORM, M, IR, 403, LC | | | |

19

| AVM's Designations (Goffman 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 325:3 | 325:7 | FORM, M, F, IR, 403 | | | |
| 326:11 | 326:13 | CM, IR 403 | | | |
| 326:15 | 326:20 | FORM, CM | | | |
| 328:6 | 328:14 | S | 327:4 328:15 | 328:5 329:1 | NC; REL; |
| 329:8 | 329:20 | | 329:7 330:19 | 329:7 330:22 | |
| 331:22 | 331:25 | | | | |
| 332:6 | 334:14 | FORM, M, VA, INC | 334:16 | 334:18 | |
| 334:24 | 338:3 | FORM, VA, M, IR, 403, F, S | 319:12 | 322:23 | NC; CU |
| 334:16 | 335:19 | FORM, VA, M, IR, 403 | 319:12 | 322:23 | NC; CU |

**Witness:  Dana Hayter (2012)**

| AVM's Designations (Hayter 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 5:12 | 5:14 | | | | |
| 5:20 | 6:5 | IR | 6:6 | 6:25 | NC; REL |
| 7:18 | 8:1 | | | | |
| 8:2 | 9:22 | IR, PRIV | | | |
| 9:23 | 10:11 | IR, PRIV | | | |
| 21:7 | 21:16 | | 19:5 19:22 20:12 21:1 | 19:16 19:24 20:21 21:6 | NC; REL |
| 21:24 | 22:10 | | 21:21 22:11 | 21:23 22:14 | NC |
| 22:15 | 22:19 | | 22:20 | 22:24 | NC |
| 23:18 | 24:2 | | | | |
| 24:3 | 24:10 | | 25:7 25:21 | 25:19 26:4 | NC; CO |
| 26:5 | 26:8 | | | | |
| 27:4 | 27:14 | | | | |
| 28:8 | 28:12 | | 28:4 | 28:7 | NC; REL |
| 28:13 | 28:25 | FORM, S | | | |
| 30:4 | 30:15 | FORM, SCOPE | 34:14 | 34:20 | 403; NC; REL; SPEC; KN |
| 38:17 | 39:4 | FORM | 12:17 39:5 | 13:13 39:7 | 403; NC; CU |
| 39:8 | 40:17 | | 40:18 | 40:19 | NC; NT |
| 40:20 | 41:4 | | | | |
| 47:2 | 47:15 | H | | | |
| 47:16 | 47:18 | H, IR | | | |
| 48:1 | 48:24 | F, FORM, H, SCOPE | 48:25 49:5 | 49:2 49:8 | 403; NC; REL; SPEC; KN |
| 51:16 | 52:12 | FORM | | | |

| AVM's Designations (Hayter 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 53:1 | 53:15 | FORM | 45:3<br>54:1<br>54:7<br>55:21<br>56:10<br>57:9<br>57:23<br>70:23<br>71:10<br>106:13 | 45:6<br>54:5<br>54:24<br>55:24<br>56:16<br>57:20<br>57:25<br>71:2<br>71:14<br>106:17 | 403; NC; REL; SPEC; KN |
| 94:16 | 96:1 | FORM | 99:3<br>99:14 | 99:4<br>99:21 | 403; NC; AR; REL |
| 96:9 | 96:25 | F, S | | | |
| 97:7 | 97:12 | F, FORM, S | | | |
| 97:13 | 97:17 | F, FORM, S | | | |
| 98:2 | 98:12 | F, FORM, S | | | |
| 102:20 | 102:25 | F, FORM, S | | | |
| 104:4 | 104:21 | F, FORM | | | |
| 106:22 | 107:10 | SCOPE | | | |

22

**Witness:  Adam King (2016)**

| AVM's Designations (King 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 7:18 | 7:20 | | | | |
| 8:19 | 9:15 | | 201:9 | 203:15 | NC, CU |
| 10:1 | 10:11 | | 201:9 | 203:15 | NC, CU |
| 11:1 | 11:8 | | 201:9 | 203:15 | NC, CU |
| 11:17 | 11:20 | | 201:9 | 203:15 | NC, CU |
| 12:9 | 12:14 | | 201:9 | 203:15 | NC, CU |
| 12:21 | 13:3 | | 201:9 | 203:15 | NC, CU |
| 18:24 | 19:10 | | | | |
| 19:11 | 19:25 | | | | |
| 20:1 | 20:24 | FORM, VA | | | |
| 20:25 | 21:5 | | | | |
| 21:6 | 22:8 | FORM, S | | | |
| 22:16 | 26:6 | INC, FORM, S | 202:12 | 212:17 | 403, NC, CU |
| 23:12 | 23:20 | CM, S | 203:16 207:24 | 205:19 208:6 | 403, NC, CU |
| 24:10 | 26:2 | CM, FORM, S | 202:12 | 212:17 | 403, NC, CU |
| 26:3 | 26:6 | CM | 202:12 | 212:17 | 403, NC, CU |
| 26:12 | 26:19 | IR, 403 | | | |
| 26:20 | 26:24 | | | | |
| 26:25 | 27:13 | FORM | | | |
| 27:14 | 27:19 | | | | |
| 27:20 | 28:1 | FORM | | | |
| 28:2 | 28:14 | DOC, IR, 403 | 29:17 80:15 202:12 | 29:25 81:13 212:17 | 403, NC, CU, NR |
| 28:15 | 29:8 | DOC, IR, 403 | 29:17 80:15 202:12 | 29:25 81:13 212:17 | 403, NC, CU, NR |
| 29:9 | 29:16 | FORM | | | |
| 30:12 | 31:6 | DOC, IR, 403 | 29:17 80:15 202:12 | 29:25 81:13 212:17 | 403, NC, CU, NR |

| AVM's Designations (King 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 31:16 | 32:11 | DOC, INC, IR, 403 | 29:17 32:12 80:15 202:12 | 29:25 32:22 81:13 212:17 | 403, NC, CU, NR |
| 33:3 | 33:9 | IR, 403 | | | |
| 33:13 | 33:16 | | | | |
| 33:25 | 34:8 | M | | | |
| 34:8 | 34:21 | INC | | | |
| 34:22 | 35:2 | DOC | | | |
| 35:3 | 35:20 | DOC, IR, 403 | 35:21 80:15 202:12 | 36:8 81:13 212:17 | 403, NC, CU, NR |
| 36:12 | 36:20 | FORM | 202:12 | 212:17 | 403, NC, CU |
| 36:21 | 37:5 | F, DOC, IR, 403 | 80:15 202:12 | 81:13 212:17 | 403, NC, CU, NR |
| 37:19 | 37:24 | IR, 403 | | | |
| 38:6 | 38:19 | | | | |
| 38:20 | 39:3 | DOC | | | |
| 39:4 | 39:25 | DOC, F, IR, 403 | 80:15 202:12 | 81:13 212:17 | 403, NC, CU, NR |
| 40:1 | 40:11 | F, FORM, IR, 403 | 47:2 202:12 | 47:22 212:17 | 403, NC, CU, NR |
| 40:12 | 40:22 | IR, 403 | 47:2 80:15 202:12 | 47:22 81:13 212:17 | 403, NC, CU, NR |
| 41:1 | 43:20 | DOC, F, FORM, IR, 403 | 47:2 80:15 202:12 | 47:22 81:13 212:17 | 403, NC, CU, NR |
| 48:17 | 49:20 | DOC, F, FORM, IR, 403 | 47:2 80:15 202:12 | 47:22 81:13 212:17 | 403, NC, CU, NR |

| AVM's Designations (King 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 49:21 | 51:9 | DOC, F, FORM, IR, 403 | 47:2 80:15 202:12 | 47:22 81:13 212:17 | 403, NC, CU, NR |
| 51:19 | 52:1 | FORM | 52:2 | 53:1 | NC, CO |
| 53:4 | 53:8 | IR, 403 | 80:15 202:12 | 81:13 212:17 | 403, NC, CU, NR |
| 53:22 | 54:16 | DOC, F, IR, 403 | 80:15 202:12 | 81:13 212:17 | 403, NC, CU, NR |
| 54:18 | 55:19 | DOC, F, FORM, IR, 403 | 80:15 202:12 | 81:13 212:17 | 403, NC, CU, NR |
| 55:20 | 56:1 | DOC, IR, 403 | 80:15 202:12 | 81:13 212:17 | 403, NC, CU, NR |
| 56:3 | 56:13 | DOC, IR, 403 | 80:15 202:12 | 81:13 212:17 | 403, NC, CU, NR |
| 56:14 | 56:25 | F, FORM, IR, 403 | 80:15 202:12 | 81:13 212:17 | 403, NC, CU, NR |
| 57:1 | 57:9 | DOC, IR, 403 | 54:18 80:15 202:12 | 55:19 81:13 212:17 | 403, NC, CU, NR |
| 57:11 | 57:20 | DOC, F, S, IR, 403 | 54:18 80:15 202:12 | 55:19 81:13 212:17 | 403, NC, CU, NR |
| 58:2 | 58:22 | FORM | | | |
| 59:20 | 60:8 | | | | |
| 60:9 | 60:16 | | | | |
| 61:1 | 61:11 | DOC | 202:12 | 212:17 | 403, NC, CU |

| AVM's Designations (King 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 61:12 | 62:12 | DOC, F, FORM | 54:18 62:13 80:15 202:12 | 55:19 62:23 81:13 212:17 | 403, NC, CU, NR |
| 63:2 | 63:6 | DOC | | | |
| 63:7 | 64:4 | DOC, F | 54:18 62:13 80:15 202:12 | 55:19 62:23 81:13 212:17 | 403, NC, CU, NR |
| 64:8 | 65:5 | DOC | 62:13 80:15 202:12 | 62:23 81:13 212:17 | 403, NC, CU, NR |
| 65:7 | 65:22 | DOC, F, FORM | 62:13 80:15 202:12 | 62:23 81:13 212:17 | 403, NC, CU, NR |
| 65:23 | 66:6 | DOC, F, FORM | 62:13 80:15 202:12 | 62:23 81:13 212:17 | 403, NC, CU, NR |
| 66:15 | 68:12 | DOC, F, FORM | 62:13 80:15 202:12 | 62:23 81:13 212:17 | 403, NC, CU, NR |
| 68:14 | 70:4 | DOC, F, FORM, S | 62:13 80:15 202:12 | 62:23 81:13 212:17 | 403, NC, CU, NR |
| 70:7 | 70:11 | | | | |
| 71:9 | 71:15 | VA | | | |
| 72:8 | 73:5 | DOC, F, FORM, M, VA | 73:6 202:12 | 73:11 212:17 | 403, NC, CU |
| 73:14 | 73:17 | | 202:12 | 212:17 | 403, NC, CU |
| 82:2 | 90:25 | F, FORM | 81:21 202:12 | 81:23 212:17 | 403, NC, CU, NR |
| 92:8 | 92:23 | FORM | | | |
| 92:24 | 94:13 | | 94:14 | 98:20 | 403, NC, CU |
| 103:9 | 104:7 | | | | |
| 104:8 | 104:24 | | | | |
| 105:23 | 106:10 | | 105:11 106:11 | 105:22 106:21 | NC |

| AVM's Designations (King 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 106:23 | 107:18 | FORM | | | |
| 108:4 | 108:16 | FORM, VA, 403 | | | |
| 108:25 | 109:8 | CM, FORM | | | |
| 108:25 | 127:24 | CM, DOC, S, FORM, VA | 202:12 | 212:17 | 403, NC, CU |
| 111:24 | 127:24 | CM, DOC, S, FORM, VA | 202:12 | 212:17 | 403, NC, CU |
| 111:24 | 113:10 | CM, DOC | 202:12 | 212:17 | 403, NC, CU |
| 116:5 | 116:10 | CM, DOC | 202:12 | 212:17 | 403, NC, CU |
| 119:5 | 120:6 | CM, INC | | | |
| 122:19 | 124:11 | CM, S | | | |
| 124:12 | 124:23 | CM, FORM, S | 202:12 | 212:17 | 403, NC, CU |
| 113:18 | 114:21 | CM | 208:7 | 210:20 | 403, NC, CU |
| 126:5 | 127:24 | CM, FORM, | 127:25 202:12 | 130:3 212:17 | 403, NC, CU, REL |
| 132:4 | 132:7 | | | | |
| 132:19 | 132:23 | | | | |
| 136:9 | 136:14 | | | | |
| 136:15 | 137:2 | | | | |
| 137:6 | 137:9 | CM | | | |
| 137:25 | 138:10 | INC | | | |
| 146:6 | 147:9 | FORM | | | |
| 148:20 | 149:1 | FORM, F | | | |
| 149:2 | 149:8 | | | | |
| 149:23 | 150:5 | FORM | | | |
| 199:16 | 200:21 | FORM, S | | | |
| 201:9 | 202:6 | | 201:9 | 212:17 | 403, NC, CU |
| 202:7 | 202:11 | | 201:9 | 212:17 | 403, NC, CU |
| 203:16 | 203:22 | | 201:9 | 212:17 | 403, NC, CU |
| 204:1 | 204:25 | INC | 201:9 | 212:17 | 403, NC, CU |
| 205:24 | 206:11 | | 201:9 | 212:17 | 403, NC, CU |
| 206:12 | 206:15 | | 201:9 | 212:17 | 403, NC, CU |
| 206:17 | 207:1 | | 201:9 | 212:17 | 403, NC, CU |
| 207:9 | 207:19 | | 201:9 | 212:17 | 403, NC, CU |

27

| AVM's Designations (King 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 216:6 | 216:18 | | 201:9 | 212:17 | 403, NC, CU |
| 217:7 | 217:12 | | 201:9 | 212:17 | 403, NC, CU |
| 217:17 | 217:20 | | 201:9 | 212:17 | 403, NC, CU |
| 218:16 | 219:3 | FORM | 201:9 | 212:17 | 403, NC, CU |

**Witness:  James Kovacs (2016)**

| AVM's Designations (Kovacs 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 7:7 | 7:9 | Not testimony | | | |
| 9:11 | 9:13 | | | | |
| 9:22 | 10:3 | | 172:11 | 173:11 | NC, CU |
| 11:15 | 11:17 | | 172:11 | 173:11 | NC, CU |
| 17:9 | 17:10 | | 17:11 17:21 | 17:16 18:4 | 403, H, NC, CU |
| 17:17 | 17:20 | | 17:11 17:21 | 17:16 18:4 | 403, H, NC, CU |
| 18:17 | 18:24 | F, IR, H | | | |
| 20:7 | 20:15 | F, IR, H | | | |
| 21:14 | 22:6 | H | | | |
| 23:9 | 24:12 | H | 24:13 | 25:12 | H, NC |
| 25:13 | 25:15 | | | | |
| 25:20 | 26:4 | H | | | |
| 26:19 | 26:23 | H | | | |
| 27:10 | 27:11 | | | | |
| 27:14 | 28:4 | H | | | |
| 29:4 | 29:8 | | | | |
| 29:12 | 29:18 | H | | | |
| 30:1 | 30:5 | | | | |
| 30:6 | 30:14 | H | | | |
| 30:15 | 31:7 | H | | | |
| 31:11 | 31:23 | H | 31:24 | 32:13 | H, NC |
| 32:21 | 33:15 | H | 33:20 | 34:13 | H, NC |
| 34:14 | 35:5 | H | 35:11 | 35:18 | H, NC |
| 35:19 | 36:1 | H | 35:11 | 35:18 | H, NC |
| 36:2 | 36:16 | | 173:4 | 177:11 | 403, NC |
| 36:23 | 37:2 | | 173:4 | 177:11 | 403, NC |
| 45:13 | 45:24 | IR, S, SCOPE, 403 | | | |
| 46:6 | 46:18 | | 47:19 49:24 | 47:23 50:15 | 403, NC, CO |

29

| AVM's Designations (Kovacs 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 46:21 | 47:5 | | 47:19 49:24 | 47:23 50:15 | 403, NC, CO |
| 47:6 | 47:11 | | 47:19 49:24 | 47:23 50:15 | 403, NC, CO |
| 47:24 | 49:23 | H | 47:19 49:24 | 47:23 50:15 | 403, NC, CO, H |
| 48:21 | 49:13 | CM, H | | | |
| 55:7 | 55:21 | | 173:4 | 177:11 | 403, NC |
| 55:25 | 56:12 | | 56:13 173:4 | 57:20 177:11 | 403, NC |
| 58:19 | 59:4 | | 59:5 173:4 | 59:20 177:11 | 403, NC |
| 62:3 | 64:9 | F, FORM, S, VA | 173:4 | 177:11 | 403, NC |
| 64:13 | 64:22 | | 64:23 | 65:14 | NC, CU |
| 66:9 | 68:10 | | 68:11 173:4 | 68:14 177:11 | 403, NC |
| 73:25 | 74:21 | IR, 403 | 69:23 72:23 173:4 | 71:15 73:24 177:11 | 403, NC |
| 74:24 | 75:8 | IR, 403 | 72:23 | 73:24 | 403, NC, NR |
| 75:9 | 75:13 | IR, 403 | 72:23 | 73:24 | 403, NC, NR |
| 75:17 | 75:21 | INC, IR, 403 | 72:23 | 73:24 | 403, NC, NR |
| 77:15 | 77:18 | | 77:24 173:4 | 79:17 177:11 | 403, NC |
| 81:16 | 81:25 | | 52:11 | 52:23 | 403, NC, REL |
| 82:8 | 82:20 | | | | |
| 82:21 | 83:12 | S, H | | | |
| 83:13 | 83:18 | S | | | |
| 83:23 | 84:8 | | | | |
| 85:5 | 85:10 | | | | |
| 86:13 | 86:22 | | | | |
| 86:23 | 87:3 | | | | |
| 87:4 | 88:1 | H | 52:11 | 52:23 | 403, NC, REL |
| 88:2 | 88:5 | S, H | 88:6 | 88:10 | NC, H |
| 91:6 | 91:20 | FORM, M, S | | | |
| 91:21 | 92:6 | LC, SCOPE | | | |

| AVM's Designations (Kovacs 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 92:17 | 93:1 | | | | |
| 93:12 | 93:18 | H | | | |
| 93:19 | 94:2 | H, LC | 94:3 | 94:14 | 403, NC, H, KN |
| 97:22 | 98:9 | | | | |
| 98:10 | 98:18 | | | | |
| 98:22 | 99:9 | | | | |
| 99:19 | 99:22 | | | | |
| 100:14 | 100:24 | H | | | |
| 101:23 | 102:8 | | | | |
| 102:14 | 102:19 | INC | | | |
| 103:3 | 103:23 | | | | |
| 103:25 | 104:20 | S | | | |
| 104:21 | 105:1 | | | | |
| 105:2 | 105:25 | DOC | | | |
| 106:23 | 107:2 | F | | | |
| 107:3 | 107:9 | | | | |
| 108:23 | 109:2 | | | | |
| 109:21 | 110:12 | | | | |
| 110:16 | 111:1 | IR | | | |
| 111:16 | 111:22 | IR | | | |
| 112:10 | 112:17 | H, IR, LC | | | |
| 112:18 | 112:24 | IR | | | |
| 114:2 | 114:16 | IR | | | |
| 114:25 | 115:10 | | | | |
| 115:22 | 116:23 | | 116:24 118:22 | 117:20 120:7 | 403, NC, H, KN |
| 120:12 | 120:20 | H | | | |
| 123:5 | 123:12 | H, IR | | | |
| 123:24 | 124:11 | | | | |
| 124:15 | 124:24 | H | 124:12 | 124:14 | 403, NC, H, KN |
| 124:25 | 125:9 | H | | | |
| 125:19 | 125:23 | H | 125:15 125:24 | 125:18 126:3 | 403, NC, H, KN |
| 126:4 | 126:16 | H | 126:17 | 126:24 | 403, NC, H, KN |
| 128:6 | 128:15 | | | | |

| AVM's Designations (Kovacs 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 128:16 | 128:23 | | 52:11 | 52:23 | NC, REL |
| 128:24 | 129:7 | H | 129:8 | 129:15 | NC, H, KN |
| 129:16 | 129:20 | H | | | |
| 129:24 | 130:5 | H, S | 130:9 | 130:14 | NC, H, KN |
| 131:23 | 132:6 | H | | | |
| 132:8 | 132:19 | | 132:20 | 132:22 | NC |
| 132:23 | 133:3 | | | | |
| 133:4 | 133:7 | H | 133:23 | 134:4 | NC, H, KN, SPC |
| 134:19 | 135:4 | H | | | |
| 135:6 | 135:18 | | | | |
| 136:1 | 136:15 | DOC | | | |
| 136:16 | 136:23 | | | | |
| 140:23 | 141:1 | | | | |
| 141:3 | 141:5 | LC | 141:6 | 141:13 | NC, H, KN, SPC |
| 141:17 | 141:22 | INC, H | | | |
| 141:25 | 142:11 | | 142:12 | 142:15 | NC, H, KN, REL |
| 142:22 | 143:11 | | | | |
| 144:8 | 144:14 | H | | | |
| 144:18 | 145:1 | | | | |
| 145:2 | 145:9 | | | | |
| 145:24 | 146:5 | | | | |
| 146:6 | 146:8 | H | | | |
| 146:9 | 146:13 | | | | |
| 147:20 | 148:9 | | | | |
| 148:10 | 148:13 | | 148:14 | 148:19 | NC, H, KN, SPC, REL |
| 148:20 | 149:12 | | | | |
| 149:13 | 150:3 | | | | |
| 150:4 | 150:11 | | | | |
| 150:12 | 150:15 | | | | |
| 150:25 | 151:3 | | | | |
| 151:10 | 151:22 | H | | | |
| 151:23 | 152:5 | H | 152:6 | 152:11 | NC, H, KN |
| 152:17 | 152:20 | H | | | |
| 154:4 | 154:17 | H | | | |

| AVM's Designations (Kovacs 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 154:18 | 155:7 | | | | |
| 155:10 | 156:4 | | | | |
| 157:8 | 157:15 | H | | | |
| 157:16 | 157:18 | H | | | |
| 161:13 | 161:25 | | | | |
| 162:9 | 162:14 | | | | |
| 162:15 | 162:22 | H | 162:23 | 162:25 | 403, NC, H, KN, SPC |
| 166:17 | 166:22 | | | | |
| 166:23 | 167:6 | H | | | |
| 168:4 | 168:12 | IR, LC, SCOPE | | | |
| 168:13 | 169:7 | H | | | |
| 169:24 | 170:10 | FORM, F | 172:11 | 177:11 | 403, NC |
| 177:17 | 178:15 | | 172:11 | 177:11 | 403, NC |

**Witness:  Kurt Kreitzer (2012)**

| AVM's Designations (Kreitzer 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 5:8 | 5:14 | | | | |
| 6:14 | 6:17 | | 6:18 | 6:22 | |
| 6:23 | 7:3 | | 7:4 | 7:5 | |
| 7:6 | 7:25 | | 8:4 | 8:8 | |
| 8:19 | 10:6 | | 8:9 | 8:18 | |
| 10:9 | 12:3 | M | | | |
| 14:9 | 14:22 | | 15:8 | 15:17 | |
| 17:10 | 17:13 | VA, F, FORM , MIL#2 | 16:13 28:10 | 17:9 28:23 | NC; REL; |
| 17:15 | 18:6 | VA, F, FORM, MIL#2 | 18:7 18:10 | 18:8 18:10 | |
| 18:18 | 19:6 | S, F, FORM, MIL | 82:3 82:5 | 82:3 82:10 | NC; REL; |
| 20:11 | 20:22 | F, FORM, VA | 20:23 | 21:1 | |
| 21:15 | 21:18 | F, FORM, VA | | | |
| 22:11 | 22:22 | | | | |
| 25:3 | 25:12 | | 130:14 | 132:22 | NC; REL; |
| 26:8 | 26:22 | | Same as Above | Same as Above | NC; REL; |
| 27:1 | 27:10 | | Same as Above | Same as Above | NC; REL |
| 27:13 | 27:17 | | Same as Above | Same as Above | NC; REL |
| 29:15 | 30:3 | M, F, IR, VA | | | |
| 30:8 | 30:15 | IR, 403 | | | |
| 30:24 | 30:25 | | 36:4 39:15 40:23 | 36:18 40:18 40:24 | NC; REL; |
| 32:16 | 32:17 | | | | |
| 32:23 | 33:3 | | | | |
| 33:15 | 34:5 | | 33:7 34:6 | 33:14 34:9 | |
| 38:19 | 39:7 | | 38:2 | 38:18 | |
| 39:12 | 39:14 | | 36:4 39:15 40:23 | 36:18 40:18 40:24 | NC; REL |
| 41:17 | 41:22 | IR | 41:9 | 41:11 | |

| AVM's Designations (Kreitzer 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 44:5 | 45:6 | IR, VA, S | 45:22 | 46:3 | |
| 50:25 | 51:8 | IR, 403 | 50:21 | 50:24 | |
| 51:13 | 53:12 | FORM, SCOPE, S, F, IR, 403 | 93:13 | 93:23 | NC; REL; |
| 53:22 | 54:2 | FORM, SCOPE, S, F, IR 403 | 53:15 | 53:21 | |
| 56:17 | 57:3 | | 58:9 | 58:12 | |
| 63:13 | 63:18 | IR, F, SCOPE, 403 | 64:7 | 64:8 | |
| 67:21 | 71:2 | FORM, F, VA, M, SCOPE, S, IR, 403 | 58:9 | 58:12 | |
| 72:5 | 72:20 | FORM, INC, DOC, VA, MIL#2 | 71:3 71:23 72:21 | 71:5 72:4 73:2 | |
| 73:3 | 73:6 | INC, DOC, VA, MIL | 73:7 74:20 | 73:11 74:25 | |
| 74:4 | 74:19 | FORM, F, S, VA, INC, MIL#2 | | | |
| 77:8 | 78:2 | FORM, F, VA, INC, MIL#2, 403 | 78:3 78:19 | 78:12 79:5 | |
| 80:9 | 80:16 | FORM, VA | 80:17 | 80:21 | |
| 81:3 | 81:6 | FORM, VA, M | 81:7 | 81:9 | |
| 81:16 | 82:2 | | 81:10 82:3 82:5 | 81:15 82:3 82:10 | |
| 84:9 | 84:11 | INC, IR, VA, MIL, 403 | 84:12 | 85:5 | |
| 85:10 | 85:14 | INC, IR, VA, MIL, 403 | | | |
| 85:19 | 92:4 | INC, IR, VA, FORM, F, 403, M, MIL #2 | 93:13 | 93:23 | |
| 92:11 | 93:12 | FORM, 403, MIL#2 | Same as Above | Same as Above | |
| 94:2 | 94:25 | FORM, F, 403, MIL#2 | 93:13 95:3 | 93:23 95:10 | |
| 97:18 | 98:4 | F, IR | | | |

| AVM's Designations (Kreitzer 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 98:13 | 100:2 | M, VA, FORM, F, MIL#2 | | | |
| 100:8 | 102:2 | VA, FORM, F, SCOPE, LO, 403, MIL#2 | | | |
| 102:16 | 103:4 | VA, FORM, F, SCOPE, LO, 403, MIL#2 | | | |
| 103:24 | 104:22 | VA, FORM, F, SCOPE, LO, 403, MIL#2 | | | |
| 105:4 | 105:9 | M, 403, FORM, MIL#2 | 105:10 | 105:19 | |
| 105:20 | 107:16 | FORM, M, 403, VA, SCOPE, LO, MIL#2 | | | |
| 109:19 | 109:23 | INC | 109:15 | 109:18 | |
| 110:19 | 111:9 | 403, ARG, FORM, S, IR, MIL#2 | | | |
| 114:4 | 114:16 | FORM, S, VA, MIL#2 | | | |
| 115:2 | 118:3 | FORM, M, F, S, 403, IR, MIL#2 | 95:3 | 95:10 | NC; REL |
| 119:3 | 119:10 | FORM, M, F, S, 403, IR | | | |
| 119:18 | 119:19 | IR, 403 | | | |
| 121:2 | 122:20 | FORM, F, S, 403, DOC | 95:3 | 95:10 | NC; REL |
| 123:7 | 123:20 | FORM, DOC | | | |
| 125:18 | 126:15 | FORM, S, F, VA, 403 | | | |
| 128:19 | 130:11 | F, FORM, DOC, M | 130:14 | 132:22 | |
| 133:2 | 133:14 | FORM, S, VA, 403 | | | |
| 134:22 | 134:24 | S, MIL#2 | | | |
| 135:8 | 135:19 | M, FORM | 135:20 | 136:10 | |
| 136:11 | 137:7 | FORM, M | 137:24 | 137:25 | |

| AVM's Designations (Kreitzer 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| | | | 138:2 138:22 140:1 | 138:20 138:24 140:10 | |
| 140:11 | 141:16 | F, FORM, VA, S | | | |
| 142:14 | 142:16 | | | | |
| 143:22 | 144:8 | INC, VA, S, 403 | | | |
| 144:14 | 144:21 | M, 403 | | | |
| 145:5 | 148:5 | FORM, DOC, VA, S, INC, | 95:3 | 95:10 | NC; REL |
| 149:13 | 149:16 | F, S, DOC, VA | | | |
| 150:5 | 150:15 | F, S, DOC, VA | | | |
| 151:3 | 151:8 | F, S, DOC, VA, INC | | | |
| 151:18 | 151:22 | F, S | | | |
| 152:4 | 152:7 | | | | |
| 153:7 | 154:10 | F, VA | | | |
| 155:21 | 156:19 | S | | | |

**Witness:  Kurt Kreitzer (2016)**

| AVM's Designations (Kreitzer 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 7:1 | 7:19 | | | | |
| 9:8 | 9:24 | | | | |
| 10:4 | 10:16 | | 10:20 358:4 | 11:1 359:11 | |
| 11:2 | 11:19 | | 11:22 358:4 | 12:10 359:11 | CU |
| 13:6 | 15:23 | | 15:24 358:4 | 16:9 359:11 | CU |
| 16:21 | 17:23 | M, INC | 17:24 | 18:11 | |
| 22:17 | 23:23 | ARG | | | |
| 24:23 | 26:5 | VA, FORM, F, IR, SCOPE | | | |
| 26:11 | 28:11 | F, VA, IR, SCOPE | 26:6 | 26:10 | |
| 28:14 | 29:21 | F, VA, IR, SCOPE | | | |
| 30:24 | 31:19 | F, VA, IR, SCOPE | | | |
| 32:7 | 32:18 | F, VA, SCOPE | | | |
| 33:6 | 33:22 | M, F, VA, SCOPE | | | |
| 34:2 | 38:25 | M, S, SCOPE, VA, FORM | 361:1 | 361:17 | NC; 403; REL; LD |
| 44:8 | 45:7 | F, IR, VA, 403 | | | |
| 46:22 | 50:15 | F, VA, S, SCOPE, 403, IR | | | |
| 50:25 | 51:17 | VA, F, 403, SCOPE, IR | 50:19 | 50:22 | NC |
| 53:3 | 53:20 | F, VA, SCOPE | | | |
| 54:14 | 56:14 | F, VA, S, FOUND, IR, 403, M | 56:15 | 56:20 | NC |
| 57:1 | 57:16 | F, VA, S, IR, 403 | | | |
| 60:6 | 60:23 | F, VA, IR | | | |
| 67:18 | 69:20 | F, VA, 403 | | | |
| 70:14 | 75:4 | VA, LC, F, FORM, SCOPE | 70:10 | 70:13 | |
| 75:13 | 78:20 | VA, F, FORM, LC, SCOPE, MIL#2, IR, 403 | 75:5 | 75:12 | |

| AVM's Designations (Kreitzer 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 78:24 | 80:12 | VA, F, FORM, LC, SCOPE, S, M, ARG, MIL#2, IR, 403 | 80:13 | 80:24 | NC; REL; 403 |
| 81:16 | 82:10 | F, VA, INC, SCOPE, S, FORM, LC | 84:15 | 85:6 | NC; REL; 403 |
| 82:18 | 83:3 | F, VA, INC, SCOPE, S, FORM, LC | 84:15 | 85:6 | CU; NC; REL; 403 |
| 83:8 | 84:12 | F, VA, INC, SCOPE, S, FORM, LC | 84:15 | 85:6 | CU; NC; REL; 403 |
| 85:7 | 90:10 | F, LC, S, INC, M, SCOPE, VA, FORM, MIL#2, IR, 403 | 84:15 361:1 | 85:6 361:17 | CU; NC; REL; 403; LD |
| 90:16 | 91:18 | VA, F, M, SCOPE, FORM, LC, MIL#2, IR, 403 | | | |
| 91:24 | 92:8 | VA, F, FORM | | | |
| 93:11 | 93:15 | F, VA | 93:16 | 93:19 | |
| 93:20 | 94:5 | F, VA | | | |
| 95:17 | 96:23 | F, VA | 97:24 | 98:3 | |
| 97:19 | 97:23 | F, VA | 97:24 | 98:3 | |
| 98:6 | 99:4 | F, VA | 99:5 | 99:11 | |
| 99:20 | 103:24 | VA, LC,  INC, S, SCOPE, MIL#2, IR, 403 | | | |
| 102:16 | 103:4 | Duplicative of above testimony VA, LC, INC, S SCOPE, MIL#2, IR, 403 | | | |
| 105:2 | 105:5 | | 104:3 104:16 | 104:4 105:1 | |
| 105:18 | 105:24 | | 105:6 104:25 | 105:17 106:4 | |
| 106:5 | 106:24 | VA, M | | | |

| AVM's Designations (Kreitzer 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 107:7 | 107:17 | VA, DOC | | | |
| 108:16 | 109:13 | F, VA, S, LC, DOC | | | |
| 110:13 | 111:25 | DOC, VA, MIL#2, IR, 403 | 112:1 | 112:7 | |
| 113:3 | 113:19 | F, VA, MIL#2, IR, 403 | 113:20 | 114:9 | NC; |
| 114:10 | 114:23 | VA, DOC, MIL#2, IR, 403 | | | |
| 115:9 | 119:20 | VA, LC, F, DOC, MIL#2, IR, 403 | | | |
| 122:5 | 122:16 | VA, F, INC, DOC, MIL#2, IR, 403 | | | |
| 123:20 | 124:20 | VA, F, LC, DOC, MIL#2, IR, 403 | 123:17 127:8 | 123:19 127:14 | |
| 131:11 | 131:16 | DOC, VA, F, MIL#2, IR, 403 | 131:17 | 132:4 | NC; |
| 135:8 | 136:20 | F, VA, MIL#2, IR, 403 | 133:6 | 134:9 | NC |
| 139:16 | 139:21 | M, VA, F, MIL#2, IR, 403 | 139:24 | 139:24 | |
| 142:5 | 143:1 | F, VA, S, INC, MIL#2, IR, 403 | 143:19 | 144:2 | NC |
| 148:12 | 148:21 | F, VA, INC, S, MIL#2, IR, 403 | | | |
| 148:24 | 151:20 | VA, INC, F, S, MIL#2, IR, 403 | | | |
| 150:2 | 151:20 | Duplicative of Above, INC, MIL#2, IR, 403 | | | |
| 152:11 | 153:14 | VA, INC, MIL#2, IR, 403 | 153:15 | 153:15 | |
| 154:17 | 155:20 | VA, F, LC, INC, MIL#2, IR, 403 | | | |
| 155:25 | 157:23 | VA, F, INC, S, MIL#2, IR, 403 | | | |
| 158:16 | 158:20 | VA, F, MIL#2, IR, 403 | | | |

40

| AVM's Designations (Kreitzer 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 158:24 | 162:4 | VA, F, M, 403, ARG, MIL#2, IR, 403 | | | |
| 166:8 | 168:11 | F, VA, S, MIL#2, IR, 403 | | | |
| 173:6 | 173:11 | | 172:25 173:12 | 173:5 173:14 | |
| 174:15 | 178:4 | VA, F, INC, MIL#2, IR, 403 | 174:8 | 174:14 | |
| 178:7 | 179:21 | VA | | | |
| 179:22 | 181:6 | VA | | | |
| 181:22 | 184:4 | VA | | | |
| 184:10 | 185:8 | IR | | | |
| 185:23 | 186:20 | LC, IR | 186:21 | 187:11 | NC |
| 188:7 | 188:11 | | | | |
| 188:12 | 191:20 | | | | |
| 191:24 | 192:16 | F, IR, 403 | | | |
| 195:2 | 196:12 | F, MIL#2, IR, 403 | | | |
| 197:11 | 197:19 | F, S, MIL#2, IR, 403 | | | |
| 201:8 | 202:19 | F, LC, FORM, MIL#2, IR, 403 | | | |
| 203:8 | 203:25 | F, INC, S, MIL#2, IR, 403 | | | |
| 205:4 | 205:20 | F, VA, IR, 403 | 204:10 | 204:15 | NC; 403; REL |
| 206:2 | 207:24 | VA, SCOPE, LC, F, MIL#2, IR, 403 | | | |
| 208:5 | 209:8 | VA, SCOPE, LC, F, MIL#2, IR, 403 | | | |
| 209:18 | 209:23 | VA, F, LC, MIL#2, IR, 403 | | | |
| 210:14 | 211:22 | VA, F, IR, 403 | | | |
| 212:21 | 213:9 | F, VA, MIL#2, IR, 403 | 212:19 | 212:20 | |
| 213:21 | 215:1 | F, VA, LC, INC | 215:2 | 215:4 | |
| 215:22 | 216:2 | F, VA, INC | | | |
| 218:8 | 219:7 | F, VA, LC | | | |

| AVM's Designations (Kreitzer 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 219:17 | 223:3 | F, VA, LC, M, S, CM, FORM | 223:4 | 223:13 | NC |
| 223:24 | 225:14 | F, VA, LC, CM, S, FORM | | | |
| 225:25 | 227:17 | F, VA, S | | | |
| 229:5 | 230:20 | F, VA, INC, S | 230:21 | 230:24 | |
| 230:25 | 231:4 | F, VA, S | | | |
| 231:14 | 233:6 | F, VA, S, LC, CM, FORM | | | |
| 235:23 | 236:20 | F, VA, S, FORM | 236:21 | 237:1 | |
| 237:2 | 237:4 | F, VA, S | | | |
| 237:19 | 238:16 | F, VA, IR, FORM | | | |
| 241:7 | 241:9 | F, VA, S | | | |
| 241:25 | 242:23 | F, VA, S, FORM | 243:3 | 243:13 | NC; REL |
| 243:20 | 243:24 | F, VA, S | | | |
| 244:19 | 248:12 | F, VA, INC, S, CM, FORM | 243:24 | 244:11 | |
| 248:16 | 249:23 | F, VA, INC, S, FORM | 249:25 | 250:8 | IA; |
| 250:12 | 251:20 | F, VA, S, FORM | | | |
| 253:9 | 257:15 | F, VA, S, FORM, M | | | |
| 257:10 | 258:15 | Overlap with above designation, F, VA, S, FORM, CM | | | |
| 258:16 | 260:4 | F, VA, S | | | |
| 262:20 | 264:3 | F, VA, S, INC, FORM | | | |
| 265:11 | 267:6 | F, VA, S, INC, FORM, M | 267:13 | 267:15 | |
| 268:7 | 268:14 | F, VA | | | |
| 268:18 | 268:22 | IR, MIL#2, IR, 403 | | | |
| 268:23 | 269:9 | | | | |
| 269:10 | 271:4 | F, S, VA, FORM, MIL#2, IR, 403 | | | |
| 271:9 | 277:8 | F, VA, FORM, S, MIL#2, IR, 403 | | | |

| AVM's Designations (Kreitzer 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 274:24 | 279:5 | Overlap with above designation CM, F, VA, FORM, M | | | |
| 276:6 | 281:11 | Overlap with above designation CM, F, VA, FORM, M, S | | | |
| 281:18 | 283:6 | F, VA, S, FORM, INC | | | |
| 284:12 | 285:7 | F, VA, SCOPE, FORM, S | | | |
| 285:20 | 287:19 | F, VA, FORM, IR, 403 | | | |
| 290:8 | 290:18 | F, VA, FORM, S | | | |
| 290:19 | 292:7 | F, VA, FORM | | | |
| 292:11 | 293:10 | F, VA, FORM | | | |
| 294:15 | 295:4 | F, VA, FORM, IR | 295:5 | 295:7 | |
| 295:11 | 295:18 | F | | | |
| 297:9 | 297:11 | F | | | |
| 299:4 | 299:13 | F, VA, FORM, S | 298:25 299:14 | 299:3 299:20 | |
| 302:13 | 302:21 | F, VA, IR, FORM | | | |
| 304:9 | 304:11 | F | 304:12 | 304:15 | NC; REL; 403 |
| 305:18 | 305:19 | | | | |
| 306:6 | 307:23 | F, VA | | | |
| 308:13 | 310:7 | F, S, M | 310:8 | 310:14 | |
| 310:15 | 310:23 | F, VA | | | |
| 311:8 | 312:7 | F, VA | | | |
| 312:19 | 313:1 | F, VA, FORM, IR, 403 | 312:12 | 312:18 | NC; REL; 403 |
| 313:20 | 313:25 | F, VA, IR | | | |
| 314:8 | 315:14 | F, VA, IR, S | | | |
| 320:19 | 321:4 | F, VA, FORM | | | |
| 323:11 | 323:22 | F, VA, FORM, S | | | |
| 326:3 | 327:4 | F, VA, FORM, S | 327:5 | 327:20 | |
| 327:25 | 330:6 | M, FORM | | | |

| AVM's Designations (Kreitzer 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 329:12 | 331:11 | Overlaps with above M, FORM, CM | | | |
| 331:13 | 333:1 | | | | |
| 333:2 | 334:16 | F, VA, M, FORM | | | |
| 334:17 | 336:20 | F, VA, S, MIL#2, IR, 403 | | | |
| 336:21 | 338:6 | M, FORM, MIL#2, IR, 403 | | | |
| 338:7 | 338:11 | F | 337:3 | 337:14 | NC; REL; 403 |
| 339:9 | 339:16 | F, MIL#2, IR, 403 | | | |
| 339:17 | 339:20 | F, MIL#2, IR, 403 | | | |
| 340:7 | 341:25 | F, FORM, MIL#2, IR, 403 | 342:1 | 342:4 | |
| 343:5 | 344:17 | F, VA, FORM, IR | | | |
| 344:24 | 346:16 | F, VA, FORM, S | | | |
| 346:17 | 347:3 | F, VA | | | |
| 347:7 | 347:9 | MIL#2, IR, 403 | 347:10 | 347:12 | |
| 348:3 | 348:14 | F, VA | | | |
| 348:25 | 349:8 | F, VA | | | |
| 353:10 | 353:24 | F, VA | 353:25 | 354:8 | |
| 359:12 | 359:21 | | 359:6 359:22 | 359:11 360:8 | NC; 403; CO; KN; EXP; SPC; Waiver; SC |
| 360:9 | 360:25 | | 361:1 | 361:17 | NC; AA; |
| 362:5 | 362:12 | MIL#2, IR, 403 | 361:20 361:25 | 361:21 362:4 | |
| 362:18 | 365:20 | F, VA, FORM, MIL#2, IR, 403 | | | |
| 365:21 | 367:1 | F, VA, ARG, MIL#2, IR, 403 | | | |
| 367:2 | 367:11 | F, VA, ARG, MIL#2, IR, 403 | | | |
| 367:16 | 368:11 | F, VA | | | |

**Witness:  Arun Krishnamoorthy (2016)**

| AVM's Designations (Krishnamoorthy 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 6:3 | 6:15 | | 229:11-231:16 | | NC; REL; 403 |
| 7:16 | 7:21 | | 229:11-231:16 | | NC; REL; 403; CU |
| 8:3 | 9:24 | FORM | 229:11-231:16 | | NC; REL; 403; CU |
| 10:10 | 13:6 | IR, ARG | | | |
| 22:19 | 23:11 | F, SCOPE | | | |
| 26:17 | 27:10 | FORM, INC, IR, M, MIL, 403 | 14:14-14:21 16:25-17:5 17:9-17:12 18:1-19:9 26:4-26:16 | | NC; REL; 403 |
| 28:1 | 28:6 | F, FORM, INC, IR, M, MIL, 403 | 14:14-14:21 16:25-17:5 17:9-17:12 18:1-19:9 26:4-26:16 28:7-28:11 | | NC; REL; 403; CU |
| 28:12 | 29:4 | F, FORM, INC, IR, M, MIL, 403 | 14:14-14:21 16:25-17:5 17:9-17:12 18:1-19:9 26:4-26:16 28:7-28:11 | | NC; REL; 403; CU |
| 29:14 | 29:20 | F, FORM, INC, IR, M, MIL, 403 | 14:14-14:21 16:25-17:5 17:9-17:12 18:1-19:9 26:4-26:16 28:7-28:11 | | NC; REL; 403; CU |
| 30:1 | 33:25 | F, FORM, INC, IR, M, MIL, 403 | 14:14-14:21 16:25-17:5 17:9-17:12 18:1-19:9 26:4-26:16 28:7-28:11 34:1-36:19 | | NC; REL; 403; CU |

| AVM's Designations (Krishnamoorthy 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 36:20 | 37:13 | F, SCOPE | 34:4-36:19 37:14-16 | | IA; NC; REL; 403 |
| 39:8 | 44:11 | F, FORM, INC, IR, M, MIL, VA, 403 | 14:14-14:21 16:25-17:5 17:9-17:12 18:1-19:9 26:4-26:16 28:7-28:11 34:4-36:19 | | NC; REL; 403; CU |
| 44:17 | 45:12 | IR | | | |
| 50:7 | 50:17 | F, FORM, INC, IR, M, VA | 45:15-46:6 47:6-48:17 48:25-50:1 50:18-50:21 51:3-51:5 | | NC; REL; 403; |
| 51:6 | 51:20 | F, FORM, INC, IR, M, VA | 51:21-52:8 | | NC; REL; 403; |
| 54:4 | 55:11 | NR, IR, 403 | | | |
| 56:18 | 56:24 | INC | 56:25-57:16 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 57:22 | 58:20 | F, IR | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 60:7 | 61:25 | FORM, INC, M, VA | 59:23-60:6 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 62:12 | 63:12 | FORM, INC, IR, M, MIL, VA, 403 | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 64:24 | 65:2 | | | | |
| 65:12 | 65:14 | FORM, INC, IR, M, MIL, VA, 403 | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 66:1 | 67:25 | FORM, INC, VA | 83:5-83:11 87:21-88:4 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |

46

| AVM's Designations (Krishnamoorthy 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 71:5 | 72:3 | F, FORM, INC, IR, M, VA | 72:4-72:16 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 72:19 | 73:24 | F, FORM, INC, IR, M, MIL, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 75:1 | 80:25 | DOC, F, FORM, INC, IR, M, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 83:18 | 83:23 | F, FORM, IR, M, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 84:7 | 84:23 | F, FORM, IR, M, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 90:11 | 92:17 | DOC, F, FORM, INC, IR, M, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 93:1 | 94:5 | F, FORM, INC, IR, M, MIL, S, VA, 403 | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 94:13 | 94:19 | F, FORM, INC, IR, M, MIL, S, VA, 403 | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 94:25 | 98:14 | F, FORM, INC, IR, M, MIL, S, VA, 403 | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 99:10 | 99:16 | INC | 98:24-99:9 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 100:19 | 106:1 | DOC, F, FORM, INC, IR, M, S, VA | 106:2-106:7 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 106:16 | 107:5 | DOC, F, FORM, IR, M, S, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |

| AVM's Designations (Krishnamoorthy 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 109:12 | 109:25 | | 110:1-111:2 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 111:14 | 112:18 | INC, M | 111:13 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 121:4 | 121:14 | FORM, INC, IR, M, S, VA | 121:15-121:25 122:3-122:20 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 123:19 | 125:16 | FORM, INC, IR, M, S, VA | 125:25-126:3 126:6-127:18 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 129:11 | 132:10 | ARG, F, FORM, INC, IR, M, S, VA, 403 | 127:10 – 129:10 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 133:1 | 133:20 | DOC, FORM, INC, IR | 231:17-234:7 234:23-252:5 | | NC; REL; 403; FO; LD; CO; |
| 135:11 | 136:11 | DOC, FORM, INC, IR, M, S, VA | 132:17 – 132:25 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 137:13 | 140:24 | ARG, DOC, F, FORM, INC, IR, M, S, VA | 231:17-234:7 234:23-252:5 | | NC; REL; 403; FO; LD; CO; |
| 140:25 | 141:8 | INC | 141:9-16 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 142:13 | 142:16 | INC | 142:17-142:21 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 143:5 | 144:16 | INC | 144:17-144:20 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 144:25 | 146:14 | | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |

48

| AVM's Designations (Krishnamoorthy 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 146:22 | 147:14 | INC, IR | 146:19-146:21 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 148:11 | 149:24 | INC, IR, M | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 150:25 | 151:17 | INC, IR, M | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 156:1 | 159:2 | INC, IR, M, S, VA | 155:19-155:25 162:7-162:13 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 159:3 | 159:9 | IR, M, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 162:24 | 163:8 | F, SCOPE | 231:17-234:7 234:23-252:5 | | NC; REL; 403; FO; LD; CO; |
| 163:18 | 164:6 | INC, M, VA | 163:17 164:7-164:24 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 164:25 | 166:6 | F, SCOPE, Auth | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 167:16 | 168:7 | F, SCOPE, Auth | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 169:11 | 170:25 | F, INC, SCOPE, Auth | 171:1-171:19 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 174:1 | 175:9 | INC | 173:17-173:25 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 175:19 | 176:5 | INC | 185:6-186:1 191:19-192:8 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 178:9 | 178:19 | ARG, F, FORM, INC, IR, M, S, VA, 403 | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 188:13 | 188:16 | | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |

49

| AVM's Designations (Krishnamoorthy 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 192:23 | 193:12 | | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 193:20 | 195:3 | ARG, F, FORM, INC, IR, M, S, VA, 403 | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 197:3 | 197:4 | ARG, FORM, INC, M, VA, 403 | 195:4-197:2 199:9-199:25 200:12-200:25 201:9-201:12 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 200:3 | 203:1 | ARG, F, FORM, INC, IR, M, MIL, S, VA, 403 | 203:24-204:1 206:22-207:15 208:2-15 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 203:2 | 203:19 | ARG, FORM, INC, IR, M, S, VA, 403 | 203:24-204:1 206:22-207:15 208:2-15 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 204:2 | 206:21 | ARG, FORM, INC, IR, M, MIL, S, VA, 403 | 203:24-204:1 206:22-207:15 208:2-208:15 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 208:16 | 219:24 | FORM, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 226:22 | 227:20 | FORM, INC, IR, M, MIL, S, VA, 403 | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 229:11 | 231:17 | INC | 231:17-233:4 | | NC; REL; 403; FO; LD; CO; |
| 233:14 | 233:19 | | | | |
| 233:5 | 234:7 | | | | |
| 234:23 | 238:11 | | | | |
| 237:1 | 240:25 | INC | 241:1-242:9 | | IA; NC; |
| 240:1 | 240:25 | INC | 241:1-242:9 | | IA; NC |

| AVM's Designations (Krishnamoorthy 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 242:1 | 244:25 | INC | 240:24-241:25 | | NC; |
| 244:1 | 245:25 | INC | 246:1-251:5 | | NC; IA |
| 251:6 | 252:5 | | | | |
| 253:11 | 255:18 | FORM, INC, M, S, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 258:24 | 260:23 | FORM, INC, M, S, VA | 231:17-234:7 234:8-252:5 | | NC; REL; 403; FO; LD; CO; |
| 261:18 | 263:9 | ARG, FORM, INC, M, S, VA | 231:17-234:7 234:8-252:5 263:10-263:20 | | NC; REL; 403; FO; LD; CO; |
| 264:1 | 269:25 | ARG, FORM, IR, INC, M, MIL, S, VA, 403 | 231:17-234:7 234:8-252:5 274:9-24 | | NC; REL; 403; FO; LD; CO; |
| 268:16 | 269:11 | ARG, FORM, IR, INC, M, MIL, S, VA, 403 | 231:17-234:7 234:8-252:5 274:9-24 | | NC; REL; 403; FO; LD; CO; |
| 269:25 | 271:6 | ARG, FORM, INC, M, MIL, VA, 403 | 231:17-234:7 234:8-252:5 272:2-272:9 274:9-24 | | NC; REL; 403; FO; LD; CO; |

**Witness:  Supriya Madan (2012)**

| AVM's Designations (Madan 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 6:10 | 7:16 | INC | 7:11 | 7:19 | |
| 7:23 | 8:9 | | | | |
| 13:8 | 15:11 | IR, INC, 403 | 11:7 | 13:6 | |
| 17:2 | 17:20 | IR, 403 | | | |
| 18:2 | 22:10 | IR, 403, F, M | | | |
| 22:15 | 23:15 | IR, 403 | | | |
| 29:3 | 29:16 | INC, IR, 403 | | | |
| 32:13 | 36:17 | IR, M, FORM, ARG, S, V, 403 | | | |
| 38:6 | 38:11 | IR, 403 | | | |
| 39:4 | 39:7 | IR, 403 | | | |
| 41:10 | 41:23 | IR, 403, F, SCOPE | | | |
| 47:7 | 47:15 | IR, M, 403 | | | |
| 48:12 | 48:18 | INC, IR, 403 | | | |
| 50:18 | 51:1 | IR, 403, INC | | | |
| 53:18 | 54:2 | INC, M, IR, 403 | 82:2 | 83:13 | NC; REL |
| 54:14 | 55:10 | INC, VA, IR, 403 | | | |
| 58:23 | 61:17 | IR, 403 | 61:18 | 61:20 | |
| 66:22 | 67:1 | INC, IR, 403 | 65:19 | 66:21 | |
| 75:16 | 81:1 | INC, FORM, IR, 403, MIL#2 | 75:7 81:2 144:22 148:10 149:14 152:13 164:21 167:24 170:8 171:20 | 75:15 81:20 147:10 148:17 149:22 153:24 166:20 168:11 170:20 174:24 | NC; REL; 403; |

| AVM's Designations (Madan 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 81:21 | 82:1 | | 75:7<br>81:2<br>82:2 | 75:18<br>81:20<br>83:13 | |
| 83:21 | 84:5 | IR, SCOPE, F | | | |
| 86:9 | 86:12 | IR, VA, 403, SCOPE, MIL#2 | 86:13 | 86:20 | |
| 87:2 | 90:22 | F, SCOPE, IR, FORM, 403, LC, MIL#2 | 86:23<br>90:24<br>139:6 | 87:1<br>91:10<br>140:1 | NC; REL; |
| 91:11 | 92:9 | SCOPE, IR, FORM, VA, LC, 403, MIL#2 | 139:6 | 140:1 | NC; REL |
| 93:24 | 95:3 | F, INC, IR, 403 | 82:2<br>92:11 | 83:13<br>93:23 | |
| 96:10 | 97:7 | FORM, INC, IR, 403, MIL#2 | 75:7<br>81:2<br>96:2<br>97:9<br>144:22<br>148:10<br>149:14<br>152:13<br>164:21<br>167:24<br>170:8<br>171:20 | 75:18<br>81:20<br>96:9<br>98:10<br>147:10<br>148:17<br>149:22<br>153:24<br>166:20<br>168:11<br>170:20<br>174:24 | NC; REL; 403 |
| 98:11 | 100:2 | FORM, INC, IR, 403, MIL#2 | 100:3 | 100:8 | |

| AVM's Designations (Madan 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 106:11 | 107:24 | FORM, INC, M, IR, 403, MIL#2 | 75:7<br>81:2<br>107:25<br>144:22<br>148:10<br>149:14<br>152:13<br>164:21<br>167:24<br>170:8<br>171:20 | 75:18<br>81:20<br>109:1<br>147:10<br>148:17<br>149:22<br>153:24<br>166:20<br>168:11<br>170:20<br>174:24 | NC; REL; 403 |
| 119:23 | 124:6 | F, S, IR, INC, IR, 403 | 118:19 | 119:22 | |
| 125:16 | 126:17 | INC, VA, IR | 126:18<br>139:6 | 128:3<br>140:1 | NC; REL |
| 128:13 | 128:23 | M, INC, IR, 403 | 128:24 | 129:4 | |
| 129:16 | 132:5 | M, F, VA, INC, IR, 403 | | | |
| 132:23 | 133:10 | M, INC, IR, 403 | | | |
| 136:5 | 137:21 | INC, LC, VA, IR, 403, MIL#2 | 134:3<br>137:22 | 135:19<br>138:2 | |
| 141:20 | 143:12 | INC, LC, M, FORM, IR, 403, MIL#2 | 139:6<br>141:4 | 140:1<br>141:18 | |
| 160:13 | 160:23 | F, INC, IR, 403 | 157:18<br>158:23 | 157:24<br>159:13 | |
| 169:11 | 169:23 | ARG, FORM, H, IR, 403 | 164:21<br>167:24 | 166:20<br>168:11 | NC; REL |
| 188:6 | 188:24 | INC, SCOPE, F, IR, 403, MIL#2 | 188:25 | 189:14 | |
| 189:15 | 190:16 | FORM, LC, S, IR, 403, MIL#2 | 139:6<br>188:25 | 140:1<br>189:14 | NC; REL |

| AVM's Designations (Madan 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 194:16 | 195:3 | S, INC, IR, 403 | 194:3 | 194:15 | |
| 204:14 | 205:3 | F, LC, INC, IR, 403, MIL#2 | 200:17 201:8 204:8 209:10 | 201:3 201:10 204:13 209:16 | NC; REL; FRM; |
| 208:9 | 209:9 | INC, IR, 403 | 207:12 209:10 | 208:8 209:16 | |
| 223:16 | 223:23 | INC, IR, 403, MIL#2 | 224:24 | 225:5 | |
| 233:4 | 233:14 | INC, IR, 403 | 232:2 233:15 | 233:3 234:16 | |

Witness:  Randy O'Hara (2012)

| AVM's Designations (O'Hara 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 6:22 | 7:3 | FORM, INC, M | 7:4-7:6 | | CO; NT |
| 17:11 | 17:14 | | | | |
| 20:19 | 21:21 | INC, M | 19:20-20:1 22:17-22:23 23:3-23:15 | | NC; REL; 403; MIL; SPC; H COUNTERS: 20:10-18 |
| 24:10 | 25:4 | | | | |
| 25:15 | 25:24 | ARG, FORM, IR, M, S, 403 | | | |
| 26:2 | 26:24 | INC | 27:13-27:17 30:16-30:21 | | CU; NC; KN; SPC COUNTERS: 30:22-23 |
| 31:15 | 32:14 | ARG, FORM, M, S, VA, 403 | 36:22-37:6 | | 403; SPC; KN; AF |
| 32:16 | 32:16 | ARG, FORM, M, S, VA, 403 | 36:22-37:6 | | 403; SPC; KN; AF |
| 32:18 | 33:8 | ARG, FORM, M, S, SCOPE, VA, 403 | 36:22-37:6 | | 403; SPC; KN; AF |
| 34:15 | 34:20 | F, FORM, IR, M, S, SCOPE, VA, 403 | 36:22-37:6 | | 403; SPC; KN; AF |
| 34:23 | 34:23 | F, FORM, IR, M, S, SCOPE, VA, 403 | 36:22-37:6 | | 403; SPC; KN; AF |
| 36:16 | 36:18 | F, FORM, IR, M, S, SCOPE, VA, 403 | 36:22-37:6 | | 403; SPC; KN; AF |
| 36:20 | 36:20 | F, FORM, IR, M, S, SCOPE, VA, 403 | 36:22-37:6 | | 403; SPC; KN; AF |
| 45:1 | 45:8 | IR | | | |
| 48:25 | 49:11 | FORM, IR, | | | |

| AVM's Designations (O'Hara 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 55:17 | 56:2 | FORM, INC, S | | | |
| 57:15 | 57:21 | F, FORM, S | | | |
| 65:10 | 65:16 | F, FORM, VA | | | |
| 65:19 | 65:19 | FORM, VA | | | |
| 71:19 | 71:24 | | | | |
| 72:2 | 72:5 | F, FORM, IR, M, S, SCOPE, VA, 403 | | | |
| 72:12 | 72:17 | F, FORM, IR, M, S, SCOPE, VA, 403 | | | |
| 75:16 | 75:25 | F, FORM, IR, M, S, SCOPE, VA, 403 | | | |
| 76:5 | 76:5 | F, FORM, IR, M, S, SCOPE, VA, 403 | | | |
| 78:23 | 78:25 | F, FORM, IR, M, S, SCOPE, VA | | | |

**Witness:  Clifford Ong (2016)**

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 5:21 | 6:8 | | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 7:12 | 7:25 | | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 8:1 | 8:11 | | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 10:1 | 10:10 | | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 13:17 | 14:3 | IR, 403, S, F | | | |
| 14:10 | 15:22 | IR, 403 | | | |
| 16:4 | 19:22 | FORM, VA, | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 20:19 | 22:3 | F, VA, 403 | | | |
| 22:18 | 22:24 | FORM | | | |
| 25:1 | 26:9 | FORM, F | | | |
| 42:3 | 45:13 | CM, FORM, LO, IR, 403, MIL#2, LC | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 27:17 | 27:22 | | | | |
| 28:12 | 29:18 | INC | 29:19 255:3 | 29:21 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 33:14 | 33:21 | | | | |

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 35:19 | 38:3 | IR, VA, FORM, M, INC | 34:23 | 35:17 | |
| 39:25 | 40:16 | INC | 40:17 | 41:1 | |
| 41:15 | 42:2 | FORM, F, IR, 403 | | | |
| 42:8 | 43:1 | FORM, IR, LO, 403 | | | |
| 43:9 | 46:8 | FORM, 403, IR, LO, MIL#2, LC | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 47:4 | 48:1 | INC | 48:2 | 48:5 | |
| 48:6 | 48:16 | VA | 48:2 | 48:5 | |
| 48:22 | 50:8 | VA, FORM, IR, 403, F, S | | | |
| 50:17 | 51:8 | VA, IR, 403, F, S | | | |
| 51:23 | 52:8 | VA, IR, 403, F, S | | | |
| 52:16 | 53:22 | FORM, IR, 403 | 53:23 | 54:1 | |
| 55:23 | 56:16 | FORM, VA, IR, 403 | | | |
| 57:16 | 58:23 | FORM, IR, 403 | | | |
| 59:20 | 64:13 | FORM, INC, IR, 403 | 59:17 255:23 | 59:18 260:1 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 64:14 | 65:23 | FORM, IR, 403 | 255:23 | 260:1 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 67:5 | 67:23 | FORM, INC | | | |
| 70:24 | 71:10 | FORM, INC, VA, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 71:11 | 79:10 | ARG, FORM, M, VA, CM, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 79:25 | 80:16 | FORM, ARG, CM, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 80:17 | 81:18 | FORM, ARG, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 81:24 | 86:4 | FORM, CM, ARG, S, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 86:9 | 88:2 | ARG, FORM, F, IR, 403, CM | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 89:10 | 89:16 | FORM | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 90:2 | 90:25 | FORM, CM, IR, 403 | 81:6 98:22 255:3 | 81:18 99:5 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 92:21 | 95:9 | FORM, F, S, CM, M, IR, 403 | 81:6 98:22 255:3 | 81:18 99:5 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 95:25 | 97:2 | CM, ARG, IR, 403, VA | 95:19 255:3 | 95:24 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 97:16 | 97:23 | FORM | | | |
| 98:22 | 99:5 | FORM | | | |
| 99:11 | 100:11 | CM, FORM | | | |

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 101:15 | 102:6 | CM, FORM, IR, 403, INC | 102:7 255:3 | 102:17 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 102:18 | 102:24 | INC, ARG | | | |
| 104:19 | 105:3 | VA | 104:15 | 104:18 | |
| 105:10 | 105:16 | INC, FORM, 403 | 105:4 255:3 | 105:9 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 107:19 | 108:11 | FORM, INC | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 108:22 | 109:6 | VA, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 109:17 | 110:7 | INC, FORM, ARG, | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 110:16 | 110:19 | FORM, IR | 110:20 256:11 | 111:1 257:15 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 112:4 | 112:9 | FORM, INC | 112:10 257:23 | 112:16 258:22 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 113:16 | 114:7 | FORM, VA, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 114:11 | 115:5 | FORM, IR, 403 | | | |
| 115:25 | 116:4 | FORM, VA, IR, 403, S, F | | | |

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 116:14 | 116:25 | FORM, VA, IR, 403, S | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 117:19 | 117:23 | FORM, IR, 403 | 118:12 255:3 | 119:5 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 123:13 | 123:21 | IR, 403 | 125:6 126:7 127:22 255:3 | 125:19 127:4 128:14 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 124:22 | 125:5 | IR, VA, FORM, M, 403 | 125:6 126:7 127:22 255:3 | 125:19 127:4 128:14 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 127:5 | 127:7 | IR, 403 | 126:7 127:22 255:3 | 127:4 128:14 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 127:22 | 128:2 | IR, 403 | 127:23 255:3 | 128:14 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 128:15 | 129:13 | INC, 403 | 128:3 255:3 | 128:14 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 130:19 | 131:22 | FORM, LO, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 132:5 | 132:16 | CM, LO, FORM | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 132:17 | 132:24 | FORM, LO, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 134:3 | 135:1 | FORM, LO, VA, 403 | 135:3 255:3 | 135:6 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 135:1 | 136:8 | IR, 403, FORM, F, S, LO | 134:22 255:3 | 134:25 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 136:9 | 136:15 | FORM, IR, 403, F, S | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 138:2 | 139:23 | FORM, MIL, IR, 403, INC | 137:18 139:24 255:3 | 138:1 140:24 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 141:8 | 141:17 | MIL, FORM, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 141:19 | 143:2 | | | | |
| 143:10 | 143:14 | FORM, M, INC | 143:3 | 143:9 | |
| 144:21 | 145:22 | FORM, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 148:1 | 149:9 | FORM, IR, 403, M | 147:20 255:3 | 147:25 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 149:17 | 150:6 | FORM, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 152:12 | 153:14 | FORM, ARG, M, IR, 403, | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 153:19 | 154:13 | FORM, ARG, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 156:4 | 156:24 | ARG, FORM, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 161:2 | 163:19 | IR, FORM, F, IR, 403, CM | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 164:5 | 164:21 | | | | |
| 165:1 | 165:18 | IR, 403 | 165:19 166:12 | 166:1 166:19 | NC |
| 168:1 | 168:22 | FORM | | | |
| 169:8 | 169:11 | F, IR, 403 | 168:8 | 168:20 | |
| 170:19 | 170:23 | F, IR, 403 | 168:8 255:3 | 168:20 258:22 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 171:6 | 171:9 | F, FORM, IR, 403 | 168:8 170:19 255:3 | 168:20 170:20 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 171:25 | 172:15 | IR, 403 | 168:8 255:3 | 168:20 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 173:12 | 173:16 | FORM, IR, 403 | 168:8 170:19 255:3 | 168:20 170:20 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 173:24 | 174:16 | IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 174:18 | 176:8 | FORM, LC, MIL#2, IR, 403 | 176:9 190:13 255:3 | 177:23 191:3 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 178:22 | 179:4 | VA, FORM, MIL#2, IR, 403, LC | 176:22 177:24 179:5 190:13 | 177:15 178:3 180:13 191:3 | NC |
| 180:14 | 180:18 | IR, 403 | | | |
| 181:8 | 184:3 | MIL#2, FORM, S, ARG, IR, 403, M, LC | 176:2 176:22 177:24 190:13 | 176:8 177:15 178:3 191:3 | NC |
| 184:17 | 186:8 | FORM, LC, IR, 403, MIL#2 | 176:22 177:24 190:13 255:3 | 177:15 178:3 191:3 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 187:1 | 187:22 | FORM, IR, 403, LC, MIL#2 | 255:3 | 264:3 | |
| 187:23 | 189:23 | FORM, MIL#2, IR, 403, LC | 176:2 176:22 177:24 189:24 190:13 255:3 | 176:8 177:15 178:3 190:8 191:3 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 190:4 | 190:8 | FORM, LC, MIL | 190:13 | 191:3 | NC |
| 191:9 | 192:4 | IR, 403 | | | |
| 193:4 | 193:11 | M, FORM, 403 | 260:2 261:15 | 261:16 262:9 | NC; AA; |

65

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 193:12 | 197:17 | ARG, FORM, M, IR, 403, MIL, LC | 176:2 176:22 177:24 189:3 190:4 255:3 | 176:8 177:15 178:3 189:15 191:3 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 197:18 | 198:11 | FORM, IR, 403 | | | |
| 200:3 | 200:22 | IR, 403, F | | | |
| 200:23 | 201:12 | FORM, VA, IR, 403, F | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 201:13 | 202:12 | FORM, ARG, IR, 403, F | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 202:19 | 202:23 | IR, 403, FORM | | | |
| 203:12 | 203:21 | FORM, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 204:8 | 204:16 | FORM, IR, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 204:17 | 205:18 | FORM, IR 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 206:11 | 208:12 | FORM, M, IR, 403, LO, F, S | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |

66

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 208:13 | 212:22 | FORM, 403, IR, LC, MIL | 176:2 176:22 177:24 189:3 190:4 255:3 | 176:8 177:15 178:3 189:15 191:3 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 212:23 | 214:25 | FORM, LC, 403, IR, M, MIL#2 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 215:13 | 216:4 | FORM, 403, IR, MIL#2 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 218:24 | 219:15 | IR, 403 | | | |
| 219:16 | 221:10 | FORM, LC, MIL, IR, 403 | 189:3 190:4 212:15 | 189:15 191:3 212:22 | IA; NC; |
| 223:20 | 224:8 | INC, IR, 403, F, S | 224:9 | 224:15 | |
| 225:2 | 226:4 | FORM, F | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 227:17 | 228:4 | FORM, VA | 238:23 255:3 | 239:24 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 229:5 | 229:18 | FORM | 238:23 255:3 | 239:24 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 231:10 | 231:17 | FORM | 231:18 238:23 255:3 | 232:14 239:24 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 235:13 | 235:24 | FORM, ARG, F, | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 236:10 | 237:21 | FORM, ARG, CM | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 240:7 | 240:21 | IR, 403 | | | |
| 241:4 | 242:10 | INC, VA, FORM, | 240:7 242:11 255:3 | 241:3 243:6 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 246:23 | 247:9 | IR, 403 | | | |
| 247:13 | 248:24 | INC, FORM, F, S , IR, 403, LC | 246:23 255:3 | 247:12 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 249:5 | 249:13 | INC, IR, 403 | 249:14 255:3 | 250:12 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 255:23 | 255:25 | | | | |
| 256:7 | 256:10 | | | | |
| 257:11 | 257:15 | | | | |
| 263:19 | 263:23 | INC | 263:24 | 264:3 | NC; SPC; EXP |
| 265:21 | 266:5 | FORM, INC | 255:3 266:12 | 264:3 266:22 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 266:12 | 268:8 | ARG, M, FORM | 255:3 268:9 | 264:3 268:16 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 268:17 | 269:1 | FORM | 255:3 269:15 | 264:3 269:24 | NC; REL; 403; KN; EXP; SPC; WAIVER |

| AVM's Designations (Ong 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 269:9 | 269:14 | IR, 403 | | | |
| 270:6 | 270:17 | FORM, ARG | 255:3 269:15 | 264:3 269:24 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 272:6 | 272:24 | FORM, F | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 273:9 | 273:15 | FORM | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 274:11 | 274:16 | FORM | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 276:19 | 279:23 | FORM, M, VA, S, 403 | 255:3 | 264:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |

**Witness:  George Shchupack (2012)**

| AVM's Designations (Shchupak 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 5:6 | 5:22 | - | 4:17 | 4:23 | |
| 10:12 | 10:21 | SCOPE, IR | - | - | |
| 11:7 | 11:9 | SCOPE, IR | - | - | |
| 16:21 | 16:25 | - | - | - | |
| 17:22 | 19:8 | FORM, VA, LC | 20:4 | 20:8 | |
| 20:24 | 21:24 | FORM, VA, F | - | - | |
| 23:13 | 25:22 | FORM, VA, F | - | - | |
| 26:7 | 26:24 | F, M | - | - | |
| 27:13 | 27:20 | F, M | 27:21 | 28:1 | |
| 28:8 | 29:9 | FORM, VA, F | 34:1 | 34:17 | NC; REL; 403 |
| 29:19 | 33:25 | FORM, VA, M, F | 34:1 | 34:17 | NC; REL; 403 |
| 35:19 | 36:13 | VA, F, S | 34:1 | 34:17 | NC; REL; 403 |
| 37:11 | 37:15 | VA, INC | 37:16 | 37:21 | |
| 37:23 | 37:25 | VA | 37:16 38:2 38:14 | 37:21 38:9 38:21 | |
| 38:22 | 39:2 | INC, VA | 38:2 38:14 | 38:9 38:21 | |
| 43:5 | 43:9 | - | - | - | |
| 44:9 | 45:4 | FORM, VA, F | 131:24 | 132:5 | NC; REL; FRM |
| 48:20 | 48:24 | IR | - | - | |
| 53:2 | 53:11 | F, IR | - | - | |
| 54:12 | 54:16 | - | - | - | |
| 56:25 | 57:1 | - | - | - | |
| 57:16 | 57:19 | - | - | - | |
| 65:11 | 65:16 | VA | 65:1 65:17 | 65:10 65:23 | |
| 69:5 | 70:8 | FORM, VA, S | 225:20 | 227:4 | NC; REL; FRM |
| 72:10 | 72:16 | S | 72:17 225:20 | 72:21 227:4 | NC; REL; FRM |
| 95:22 | 96:12 | INC, FORM, VA, F, S | 225:20 | 227:4 | NC; REL; FRM |

| AVM's Designations (Shchupak 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 97:20 | 97:22 | S, F | 225:20 | 227:4 | NC; REL; FRM; |
| 98:8 | 98:15 | S, F | 225:20 | 227:4 | NC; REL; FRM |
| 100:7 | 100:14 | S | 20:19 100:15 | 20:23 101:4 | NC |
| 114:24 | 115:4 | FORM, LC, F, M, ARG, 403 | 115:5 | 115:13 | |
| 115:14 | 115:25 | FORM, LC, F, M, ARG, 403 | 115:5 | 115:13 | |
| 117:12 | 117:19 | INC, FORM, VA, M | 117:4 | 117:11 | |
| 131:14 | 132:21 | FORM, VA | - | - | |
| 137:16 | 138:21 | INC, VA | 136:22 | 137:15 | |
| 139:9 | 140:1 | INC, FORM, VA, F | 141:7 | 142:21 | |
| 141:7 | 141:16 | FORM, VA, F | 141:17 | 142:21 | |
| 144:24 | 145:14 | F | 144:3 145:15 | 144:18 146:2 | |
| 146:3 | 147:4 | - | 147:5 | 147:6 | |
| 150:4 | 150:15 | FORM, VA, S | 150:4 | 151:5 | |
| 161:20 | 162:2 | VA, S | 162:3 | 163:5 | |
| 163:16 | 164:13 | DOC, H | 164:14 | 165:4 | |
| 165:5 | 165:16 | DOC, S, H | - | - | |
| 170:3 | 170:13 | S | - | - | |
| 175:15 | 175:25 | FORM, VA, S | 176:1 | 176:18 | |
| 176:19 | 176:22 | VA | 176:1 | 176:18 | |
| 189:6 | 189:23 | SCOPE, FORM, VA | 185:6 185:22 | 185:11 186:2 | |
| 190:12 | 190:14 | FORM, VA | 18:2 190:15 | 18:5 191:3 | NC; |
| 194:6 | 194:22 | ARG | 194:23 | 195:5 | |
| 196:23 | 197:1 | VA, LC, S, F | 197:2 | 197:9 | |
| 200:23 | 202:9 | FORM, VA, S | 202:10 204:13 | 203:16 204:15 | |
| 204:16 | 204:21 | F, S, ARG, 403 | 202:10 204:13 | 203:16 204:15 | |

| AVM's Designations (Shchupak 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 208:3 | 208:10 | INC, ARG, FORM, VA | 116:4 117:4 | 116:17 117:11 | |
| 208:24 | 209:7 | FORM, VA, ARG, S | 116:4 117:4 | 116:17 117:11 | |
| 210:2 | 210:4 | - | - | - | |
| 216:7 | 217:7 | VA | 116:4 117:4 | 116:17 117:11 | |
| 222:24 | 223:3 | VA, LC | 225:20 | 227:4 | |
| 225:4 | 226:4 | SCOPE, FORM, VA, F | 225:20 | 227:4 | |
| 229:6 | 230:7 | SCOPE, FORM, VA, F, S | 225:20 | 227:4 | |
| 242:1 | 243:17 | SCOPE, INC FORM, VA, F, S | 243:10 251:24 | 243:17 253:6 | NC; REL |
| 244:14 | 246:17 | SCOPE, INC, FORM, VA, F, S | 243:10 251:24 | 243:17 253:6 | NC; REL; |

**Witness:  George Shchupack (2016)**

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 13:12 | 14:9 | IR, 403 | 14:12 467:18 | 15:1 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 16:1 | 17:20 | - | 467:18 | 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 18:6 | 18:19 | - | 467:18 | 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 19:1 | 21:12 | - | 467:18 | 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 22:4 | 22:20 | INC | 22:21 | 22:22 | |
| 23:1 | 33:9 | FORM, IR, S, F, VA, ARG | 33:10 477:11 | 33:12 478:6 | NC; AA |
| 33:13 | 38:1 | FORM, VA, F, S, ARG | 471:11 474:1 | 473:4 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 38:12 | 41:16 | IR, 403, ARG | - | - | |
| 45:14 | 47:14 | S, FORM, VA, IR | - | - | |
| 48:1 | 48:12 | FORM, S, F, VA, IR | - | - | |
| 49:13 | 50:19 | FORM, F, VA, ARG | 50:21-471:7 477:11 | 51:12 472:16 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 52:7 | 52:15 | S, LC, VA | 50:21-471:7 484:20 | 51:12 472:16 485:17 | NC; REL; 403; KN; EXP; SPC; WAIVER |

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 52:21 | 53:18 | FORM, VA, LC | 50:21-471:7 | 51:12 472:16 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 54:1 | 56:9 | LC, FORM, VA, INC | 56:10 84:12 | 56:18 85:10 | NC |
| 56:10 | 56:22 | LC, FORM, VA, INC | 56:8 84:12 | 56:9 85:10 | NC |
| 57:6 | 60:12 | FORM, VA | 471:11 474:1 | 473:4 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 61:2 | 61:20 | IR | 63:3 64:5 | 63:12 64:13 | NC |
| 62:10 | 62:12 | IR | 63:3 64:5 | 63:12 64:13 | NC |
| 65:1 | 69:7 | FORM, VA, LC, F | 64:5 69:8 | 64:22 70:15 | NC |
| 70:6 | 70:15 | INC, F, FORM, VA | 69:8 | 70:5 | NC |
| 71:18 | 77:25 | INC, FORM, VA, LC, F, ARG | 478:7 471:11 474:1 71:11 77:22 | 478:20 473:4 475:9 71:17 78:3 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 78:1 | 80:21 | INC, FORM, VA, LC, F | 81:3 | 81:12 | NC |
| 81:13 | 81:16 | VA, M | 81:3 | 81:12 | NC |
| 82:12 | 83:5 | M, ARG | 59:7 | 59:21 | NC |
| 83:15 | 84:11 | VA, LC | 84:12 66:7 68:1 | 84:16 66:18 68:19 | NC |
| 84:22 | 90:4 | FORM, VA, LC, S, F, ARG | 471:11 474:1 | 473:4 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER |

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 90:16 | 93:8 | F, ARG, M, RC | 471:11 474:1 | 473:4 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 93:22 | 94:4 | - | 471:11 474:1 94:5 | 473:4 475:9 95:11 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 94:12 | 94:19 | VA | 471:11 474:1 94:5 | 473:4 475:9 95:11 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 95:1 | 95:13 | VA | 95:14 | 96:3 | |
| 96:13 | 98:6 | F, M, S, ARG | 98:7 | 98:13 | |
| 98:14 | 98:14 | IC | - | - | |
| 99:5 | 100:3 | VA | 100:8 | 100:21 | |
| 100:8 | 100:21 | VA | - | - | |
| 102:14 | 104:10 | FORM, VA, S, DOC | 474:1 476:4 467:18 | 475:9 477:9 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |
| 104:18 | 105:4 | VA | 474:1 476:4 | 475:9 477:9 | NC; LD |
| 105:6 | 105:13 | VA | 474:1 476:4 | 475:9 477:9 | NC; LD |
| 106:1 | 107:21 | S, IR, 403 | 117:19 | 118:17 | NC |
| 108:7 | 110:9 | FORM, VA, S | 112:15 117:19 | 113:19 118:17 | NC |
| 111:12 | 111:20 | FORM, VA, S | - | - | |
| 113:20 | 115:3 | FORM, VA | 112:15 | 113:19 | |
| 116:2 | 116:6 | S, IR | 116:7 | 116:22 | |
| 119:4 | 119:14 | S, F | - | - | |
| 122:15 | 122:18 | - | - | - | |
| 123:6 | 123:8 | S, F | - | - | |
| 123:15 | 123:20 | S, F | - | - | |
| 124:1 | 125:5 | S, F, IR | | | |
| 126:19 | 128:6 | S, F, IR | 390:17 397:5 | 391:17 397:13 | NC; |

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 129:15 | 130:15 | S, F | - | - | |
| 135:5 | 135:14 | S, F, IR | 135:15 | 136:10 | |
| 136:21 | 137:20 | S, F, IR | - | - | |
| 138:6 | 138:10 | S, F, IR | - | - | |
| 147:16 | 158:11 | FORM, VA, M, ARG, S, F, IR | 474:1 471:11 467:18 | 475:9 473:4 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 160:19 | 162:15 | FORM, VA, ARG, S, F | 474:1 | 475:9 | NC; LD |
| 163:17 | 164:14 | FORM, VA, ARG, S, F | 164:16 474:1 | 164:21 475:9 | NC; LD |
| 165:19 | 167:9 | FORM, VA, ARG, S, F | 474:1 165:3 | 475:9 165:17 | NC; LD |
| 168:8 | 169:4 | IR, 403 | 169:5 | 169:7 | |
| 174:13 | 176:15 | VA, S, IR, 403 | 176:16 | 177:12 | |
| 177:13 | 180:12 | FORM, VA, S, IR, 403 | 175:13 183:11 | 177:12 183:22 | |
| 185:2 | 185:17 | FORM, VA, S, F, IR | 175:13 183:11 | 177:12 183:22 | |
| 189:4 | 189:8 | F | 189:9 | 189:22 | |
| 190:6 | 191:3 | F | 189:9 | 189:22 | |
| 192:12 | 193:18 | FORM, VA | 112:15 117:19 | 113:11 118:17 | NC; |
| 194:3 | 194:9 | VA, S, F, IR | - | - | |
| 194:16 | 194:20 | VA, S, F, IR, 403 | 195:5 | 195:10 | |
| 195:5 | 195:10 | VA, S, F, IR, 403 | - | - | |
| 204:9 | 205:1 | VA, INC, IR | 203:18 | 204:8 | |
| 215:6 | 215:8 | INC, IC | - | - | |
| 215:20 | 216:21 | INC, S, IC, IR | 221:7 247:3 | 222:15 249:19 | NC |
| 218:3 | 218:19 | S, IR, 403 | | | |
| 219:19 | 220:22 | S | 176:16 | 177:12 | NC |
| 225:1 | 226:3 | FORM, VA, S | - | - | |

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 227:10 | 227:20 | VA, INC, S | 24:5<br>247:3<br>256:18<br>221:17 | 25:17<br>249:19<br>257:13<br>222:15 | NC; |
| 228:3 | 228:17 | VA, INC, S, IR | 24:5<br>229:22<br>221:17 | 25:17<br>230:16<br>222:15 | NC |
| 229:13 | 229:20 | FORM, VA, IR, S | 229:22<br>221:17 | 230:16<br>222:15 | NC |
| 231:2 | 232:1 | FORM, VA, IR, S | 229:22<br>221:17 | 230:16<br>222:15 | NC |
| 233:3 | 233:20 | FORM, VA, IR, S | 229:22<br>221:17 | 230:16<br>222:15 | NC |
| 236:9 | 236:14 | S, IR | 112:15<br>117:19<br>241:1<br>256:18 | 113:11<br>118:17<br>242:7<br>257:13 | NC |
| 237:22 | 238:2 | IR | 238:3 | 238:9 | |
| 238:11 | 239:11 | FORM, M, ARG, S, F, IR | 238:3 | 238:9 | |
| 243:8 | 244:1 | S, IR, F | 241:1<br>112:15<br>117:19<br>247:3<br>221:17 | 242:7<br>113:11<br>118:17<br>249:19<br>222:15 | NC |
| 246:3 | 246:15 | S, IR, F | 241:1<br>244:2<br>247:3<br>256:18<br>221:17 | 242:7<br>244:16<br>249:19<br>257:13<br>222:15 | NC |
| 250:16 | 252:8 | FORM, F, S, ARG, 403, IR | 241:1<br>247:3<br>221:17 | 242:7<br>249:19<br>222:15 | NC |
| 254:9 | 255:12 | S, IR, F | 241:1<br>247:3<br>112:15<br>117:19<br>221:17 | 242:7<br>249:19<br>113:11<br>118:17<br>222:15 | |

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 256:7 | 256:17 | S, IR, INC, F | 241:1<br>247:3<br>112:15<br>117:19<br>221:17 | 242:7<br>249:19<br>113:11<br>118:17<br>222:15 | NC |
| 257:14 | 257:20 | FORM, S, F, IR | 256:18<br>221:17 | 257:13<br>222:15 | NC |
| 258:8 | 259:6 | S, F, IR, INC | 256:18<br>257:21<br>259:7<br>221:17 | 257:13<br>258:7<br>259:15<br>222:15 | NC |
| 259:20 | 260:6 | S, F, IR, ARG, 403 | 241:1<br>247:3<br>112:15<br>117:19<br>221:17 | 242:7<br>249:19<br>113:11<br>118:17<br>222:15 | NC |
| 260:14 | 265:7 | FORM, VA, F, S, ARG, 403, IR, M | 241:1<br>247:3<br>112:15<br>117:19<br>221:17 | 242:7<br>249:19<br>113:11<br>118:17<br>222:15 | NC |
| 265:21 | 266:20 | F, S, IR | 267:2 | 267:9 | |
| 267:14 | 267:19 | F, S, IR | 267:2 | 267:9 | |
| 268:1 | 268:5 | INC, FORM, VA | 112:15<br>117:19<br>267:2<br>177:5 | 113:11<br>118:17<br>267:9<br>177:12 | NC |
| 269:4 | 269:17 | S, IR | 112:15<br>117:19<br>267:2<br>177:5 | 113:11<br>118:17<br>267:9<br>177:12 | NC |
| 271:3 | 274:3 | S, IR, F, 403 | 267:2<br>267:2<br>177:5 | 267:5<br>267:9<br>177:12 | NC |
| 277:1 | 277:22 | S, F, 403 | 278:1<br>267:2<br>177:5 | 278:9<br>267:9<br>177:12 | NC |

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 281:14 | 281:19 | F, M, ARG, S, 403 | 280:17 267:2 177:5 | 281:13 267:9 177:12 | NC |
| 282:13 | 282:16 | - | 280:17 282:17 177:5 | 281:13 283:8 177:12 | NC |
| 283:19 | 284:3 | F, S | 284:4 177:5 | 284:7 177:12 | NC |
| 285:17 | 286:1 | F, S | 286:18 177:5 267:2 | 287:7 177:12 267:9 | NC |
| 288:2 | 290:18 | FORM, VA, F, S, IR, 403 | 286:18 290:19 291:20 267:2 177:5 | 287:7 291:7 292:10 267:9 177:12 | NC |
| 297:9 | 297:20 | - | 177:5 267:2 177:5 | 177:12 267:9 177:12 | NC |
| 298:8 | 300:3 | FORM, VA, F, S | 177:5 267:2 177:5 | 177:12 267:9 177:12 | NC |
| 301:1 | 301:18 | FORM, VA, F, S | 112:15 117:19 | 113:11 118:17 | NC |
| 302:19 | 303:3 | FORM, VA, F, S | 303:5 177:5 | 303:11 177:12 | NC |
| 304:4 | 304:6 | INC, IC | 304:12 | 305:10 | |
| 305:11 | 306:20 | FORM, VA, F, S | 306:22 304:4 | 307:4 305:10 | NC |
| 307:6 | 316:12 | FORM, VA, F, S, ARG, IR, 403 | 306:22 177:5 467:18 221:17 247:3 267:2 | 307:4 177:12 478:6 222:15 249:19 267:9 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 317:16 | 318:19 | FORM, VA, F, S | 316:14 318:21 | 317:15 319:17 | |

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 319:19 | 324:14 | FORM, VA, F, S, M, ARG | 467:18 | 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 325:3 | 330:9 | FORM, VA, F, S, M, ARG | 322:7 330:10 467:18 | 322:19 330:18 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 330:19 | 331:5 | FORM, VA, F | 330:10 331:6 390:12 | 330:18 333:4 392:11 | NC |
| 332:13 | 333:4 | FORM, VA, F | 331:6 | 332:12 | NC |
| 337:7 | 337:10 | - | 345:19 342:5 | 346:15 342:16 | NC |
| 338:19 | 340:12 | S | 340:13 342:5 | 340:20 342:16 | |
| 340:21 | 341:11 | - | 340:13 341:12 | 340:20 341:16 | |
| 348:12 | 350:22 | FORM, VA, S | 351:19 | 351:21 | |
| 351:22 | 352:12 | FORM, VA | 351:19 | 351:21 | |
| 354:1 | 354:11 | F, S | 354:12 | 354:21 | |
| 355:13 | 356:3 | F, S | 354:3 | 354: 21 | |
| 356:12 | 357:20 | F, S | 354:3 | 354: 21 | |
| 358:9 | 358:17 | F, S | 354:3 | 354: 21 | |
| 360:6 | 361:3 | FORM, ARG | - | - | |
| 361:7 | 361:12 | FORM, ARG | - | - | |
| 361:20 | 362:5 | FORM, ARG | - | - | |
| 363:18 | 363:20 | - | - | - | |
| 366:6 | 367:2 | F, S | - | - | |
| 367:8 | 367:13 | F, S | 367:14 | 367:20 | |
| 368:4 | 368:5 | F, S | - | - | |
| 368:17 | 369:3 | F, S, ARG | 366:6 | 366:8 | |
| 371:17 | 371:20 | FORM, VA | 369:21 | 370:20 | |
| 372:1 | 376:11 | FORM, VA, F, S | 369:21 371:17 376:12 467:18 | 370:20 371:22 376:17 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 377:20 | 378:3 | F, ARG | - | - | |

80

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 378:11 | 378:19 | F | - | - | |
| 379:15 | 379:21 | VA, S | - | - | |
| 380:14 | 381:17 | S, VA | 380:14 | 381:17 | |
| 382:8 | 383:13 | FORM, VA, F, S | 383:14 | 383:22 | |
| 384:1 | 384:4 | - | 390:12 | 392:11 | |
| 384:19 | 387:9 | FORM, F, S | 384:12 | 384:18 | |
| 389:1 | 389:2 | INC | - | - | |
| 390:12 | 401:9 | FORM, VA, M, ARG, S | 467:18 | 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 402:13 | 403:2 | S, IR | - | - | |
| 413:3 | 413:8 | INC | 413:9 | 413:9 | |
| 413:13 | 413:15 | S | - | - | |
| 416:2 | 416:12 | INC, VA | - | - | |
| 420:1 | 421:25 | VA | 419:10 | 419:22 | |
| 422:4 | 423:14 | SCOPE, S | - | - | |
| 427:20 | 428:3 | SCOPE | - | - | |
| 430:16 | 449:12 | M, FORM, VA, F, S, ARG, IR, 403 | - | - | |
| 454:11 | 454:17 | F, IR, 403 | 474:1 | 475:9 | NC; LD |
| 457:15 | 458:5 | S | - | - | |
| 458:14 | 459:8 | INC, S, F | 459:9 471:11 | 460:5 473:4 | NC; REL; 403; KN; EXP; SPC; WAIVER |
| 460:19 | 463:21 | F, S, VA, LC, IR | - | - | |
| 467:18 | 468:10 | - | - | - | |
| 469:8 | 478:6 | - | - | - | |
| 471:11 | 471:14 | - | 471:16 | 473:3 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 473:6 | 473:12 | - | 470:15 475:2 | 474:10 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |
| 473:19 | 473:22 | - | 470:15 475:2 | 474:10 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |
| 474:12 | 474:22 | - | 470:15 475:2 | 474:10 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |
| 478:7 | 478:20 | - | 470:15 475:2 | 474:10 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |
| 482:14 | 483:1 | LC, M, FORM, VA | 369:21 376:12 467:18 | 370:20 376:17 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |
| 483:12 | 486:1 | LC, M, F, S, FORM, VA | 470:15 475:2 | 474:10 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |
| 486:16 | 488:16 | SCOPE, M, ARG, FORM, VA | 470:15 475:2 | 474:10 475:9 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |

| AVM's Designations (Shchupak 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 489:5 | 490:18 | SCOPE, FORM, VA, ARG | 470:15 475:2 490:19 | 474:10 475:9 490:22 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |
| 491:2 | 491:10 | SCOPE, F, S, INC | 470:15 475:2 490:19 491:11 | 474:10 475:9 490:22 491:21 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |
| 495:20 | 499:8 | M, S, ARG, FORM, VA | 499:10 467:18 | 499:18 478:6 | NC; REL; 403; KN; EXP; SPC; WAIVER; LD |

**Witness:  Todd Smith (2016)**

| AVM's Designations (Smith 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 4:1 | 4:5 | Improper designation (Not Witness Testimony) | | | |
| 5:9 | 5:10 | | | | |
| 5:22 | 5:24 | | | | |
| 5:25 | 6:7 | F, INC, VA | 6:8-6:11 | | NT, CO |
| 6:12 | 6:20 | | | | |
| 6:12 | 6:20 | | | | |
| 7:10 | 7:11 | | | | |
| 7:12 | 9:1 | FORM | | | |
| 9:2 | 9:22 | | | | |
| 10:24 | 11:2 | | | | |
| 11:7 | 11:9 | | | | |
| 11:12 | 11:15 | | | | |
| 11:18 | 11:20 | | | | |
| 11:23 | 11:25 | | | | |
| 12:9 | 12:10 | | | | |
| 12:14 | 12:16 | | | | |
| 13:23 | 14:1 | | | | |
| 14:6 | 14:17 | FORM, IR, MIL, 403 | | | |
| 14:25 | 15:10 | FORM, IR, MIL, 403 | | | |
| 15:12 | 15:15 | IR, MIL, 403 | | | |
| 15:16 | 15:24 | IR, MIL, 403 | | | |
| 15:25 | 16:16 | IR, MIL, 403 | | | |
| 17:6 | 17:15 | IR, MIL, 403 | 16:17-17:5 | | NC, CO |
| 18:3 | 18:13 | IR, MIL, 403 | | | |
| 19:4 | 19:8 | IR, MIL, 403 | | | |
| 21:12 | 21:15 | IR, MIL, 403 | | | |
| 21:24 | 22:1 | IR, MIL, 403 | | | |
| 22:2 | 22:11 | FORM, IR, MIL, 403 | | | |
| 22:12 | 22:21 | IR, MIL, 403 | | | |
| 22:22 | 23:6 | IR, MIL, 403 | | | |

| AVM's Designations (Smith 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 23:13 | 24:1 | IR, MIL, 403 | | | |
| 24:14 | 25:6 | FORM, IR, MIL, 403 | | | |
| 25:7 | 25:15 | IR, MIL, 403 | | | |
| 25:16 | 25:20 | IR, MIL, 403 | 55:18-56:2 58:23-59:8 60:8-60:13 60:20-61:3 | | 403, NC, REL |
| 26:9 | 27:1 | IR, MIL, 403 | 34:14-18 | | 403, NC |
| 27:2 | 27:6 | IR, MIL, 403 | 34:14-18 | | 403, NC |
| 27:7 | 27:11 | IR, MIL, 403 | | | |
| 27:16 | 28:9 | IR, MIL, 403 | | | |
| 28:23 | 29:8 | FORM; IR, MIL, 403 | | | |
| 29:9 | 29:12 | IR, MIL, 403 | | | |
| 29:18 | 29:21 | IR, MIL, 403 | | | |
| 29:22 | 30:9 | F, FORM, IR, MIL, 403 | 34:14-18 | | 403, NC |
| 30:10 | 30:18 | FORM, IR, MIL, 403 | 34:14-18 | | 403, NC |
| 31:2 | 31:8 | IR, MIL, 403 | | | |
| 32:13 | 32:19 | FORM, VA, IR, MIL, M, 403 | | | |
| 34:14 | 34:18 | IR, MIL, 403 | | | |
| 34:24 | 35:8 | FORM, IR, MIL, 403 | | | |
| 35:10 | 35:11 | IR, MIL, 403 | | | |
| 35:12 | 35:16 | IR, MIL, 403 | | | |
| 35:17 | 35:23 | FORM, IR, MIL, 403 | | | |
| 36:18 | 36:21 | IR, MIL, 403 | | | |
| 37:1 | 37:11 | IR, MIL, 403 | | | |
| 37:23 | 38:8 | IR, MIL, 403 | | | |
| 38:19 | 39:1 | IR, MIL, 403 | | | |
| 39:2 | 39:10 | IR, MIL, 403 | | | |
| 39:15 | 40:2 | IR, MIL, 403 | | | |
| 41:25 | 44:14 | IR, MIL, 403 | | | |

| AVM's Designations (Smith 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 44:18 | 48:1 | FORM, IR, MIL, 403 | | | |
| 51:3 | 51:14 | FORM, IR, MIL, 403 | | | |
| 69:9 | 69:23 | IR, MIL, 403 | | | |
| 72:1 | 73:3 | FORM, INC, IR, MIL, 403 | 34:14-18 | | 403, NC |
| 73:16 | 73:24 | FORM, IR, MIL, 403 | 34:14-18 | | 403, NC |
| 75:9 | 75:19 | FORM | | | |
| 75:20 | 76:5 | | | | |
| 76:6 | 76:16 | | | | |
| 77:4 | 77:8 | | | | |
| 77:9 | 77:14 | | | | |
| 78:1 | 78:12 | | | | |
| 80:23 | 81:5 | | | | |
| 81:6 | 85:9 | | | | |
| 85:13 | 85:21 | | | | |
| 87:5 | 87:24 | | | | |
| 87:25 | 88:3 | | | | |
| 88:4 | 88:22 | | | | |
| 88:23 | 89:18 | | | | |
| 89:19 | 90:3 | | | | |
| 90:4 | 90:24 | | | | |
| 91:1 | 91:8 | | | | |
| 91:9 | 91:14 | | | | |
| 91:15 | 92:6 | FORM, IR (91:25-92:6) | 174:2-174:12 174:16-174:24 | | |
| 92:11 | 92:22 | | | | |
| 92:23 | 92:25 | | | | |
| 93:1 | 93:5 | | | | |
| 93:6 | 93:8 | | | | |
| 93:9 | 93:21 | IR | 175:14-175:20 175:21-175:23 | | |

86

| AVM's Designations (Smith 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 93:22 | 94:17 | | | | |
| 94:18 | 94:20 | | | | |
| 94:21 | 95:6 | | | | |
| 95:13 | 96:8 | | | | |
| 96:9 | 96:12 | | | | |
| 96:18 | 96:25 | | | | |
| 97:23 | 98:3 | | | | |
| 98:4 | 98:16 | | | | |
| 100:3 | 100:8 | | | | |
| 100:9 | 102:2 | IR (100:18-101:9) | | | |
| 102:3 | 103:4 | F, FORM, IR | | | |
| 103:8 | 103:13 | | | | |
| 103:19 | 103:21 | | | | |
| 104:10 | 104:18 | | | | |
| 106:11 | 106:23 | FORM | | | |
| 106:24 | 107:17 | | | | |
| 108:14 | 109:4 | | | | |
| 109:6 | 109:15 | | | | |
| 109:16 | 109:25 | | | | |
| 112:6 | 112:14 | | | | |
| 112:15 | 112:21 | | | | |
| 112:22 | 113:11 | FORM | | | |
| 113:12 | 113:14 | | | | |
| 113:15 | 114:3 | | | | |
| 114:4 | 114:10 | | | | |
| 114:11 | 115:21 | IR | 179:14-179:20 | | |
| 116:7 | 117:2 | | | | |
| 117:3 | 117:14 | | | | |
| 117:15 | 117:23 | | | | |
| 117:24 | 118:4 | F, FORM | | | |
| 118:5 | 118:18 | | | | |
| 118:19 | 119:12 | | | | |
| 119:13 | 120:5 | | | | |
| 123:19 | 124:3 | FORM | | | |
| 124:5 | 124:13 | FORM | | | |
| 124:14 | 125:3 | FORM | | | |

| AVM's Designations (Smith 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 125:21 | 126:10 | FORM, IR | | | |
| 127:24 | 128:16 | FORM | | | |
| 129:23 | 130:19 | | | | |
| 138:20 | 139:1 | | | | |
| 165:24 | 166:17 | | | | |
| 166:18 | 169:7 | | | | |
| 170:24 | 171:10 | | | | |
| 171:11 | 171:17 | | 171:18-171:22 172:8-172:16 | | NC |
| 174:2 | 174:12 | | 174:16-174:24 | | |
| 174:25 | 175:4 | | | | |
| 175:14 | 175:20 | | 175:21-175:23 | | NC |
| 176:11 | 177:1 | | 176:5-176:10 | | NC |
| 177:7 | 177:17 | | | | |
| 177:24 | 178:2 | | | | |
| 178:7 | 178:11 | | | | |
| 178:24 | 179:8 | | | | |
| 186:24 | 188:16 | FORM | | | |
| 188:17 | 188:23 | | | | |
| 189:3 | 189:6 | INC, IR | 189:7-189:12 | | NC |
| 193:6 | 193:20 | | | | |

**Witness:  Randy Steck (2016)**

| AVM's Designations (Steck 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 6:1 | 6:6 | - | - | - | |
| 8:7 | 8:11 | IR, LC, VA, 403 | 8:4 9:18 | 8:6 10:2 | |
| 10:3 | 11:9 | IR, LC, VA, 403 | 8:4 9:18 | 8:6 10:2 | |
| 12:20 | 12:23 | - | 11:20 21:7 | 12:2 21:13 | NC; REL |
| 18:2 | 18:18 | - | 19:19 21:7 | 20:12 21:13 | |
| 60:14 | 61:8 | IR, DOC, F, S | - | - | |
| 61:23 | 62:2 | IR, DOC, F, S | 62:3 | 62:8 | |
| 67:22 | 68:2 | IR, F, S | 19:19 96:7 72:22 | 20:12 97:15 73:14 | NC; REL; SPC; KN |
| 68:3 | 68:17 | IR, F, S | 19:19 96:7 72:22 | 20:12 97:15 73:14 | NC; REL; SPC; KN |
| 69:2 | 69:6 | IR, F, S | 19:19 96:7 72:22 | 20:12 97:15 73:14 | NC NC; REL; SPC; KN; REL; |
| 70:18 | 70:22 | IR, F, S | 69:7 72:22 | 70:1 73:14 | NC; REL; SPC; KN |
| 72:3 | 72:9 | IR, F, S | 71:3 72:10 | 72:1 72:21 | |
| 72:22 | 73:25 | IR, F, S | 69:7 72:22 72:10 | 70:1 73:14 72:21 | NC; REL; SPC; KN |
| 75:6 | 76:3 | FORM, IR, F, S, VA, LC | 76:4 72:22 | 76:14 73:14 | NC; REL; SPC; KN |
| 77:10 | 77:23 | IR, F, S | 19:19 96:7 72:22 | 20:12 97:15 73:14 | NC; REL; SPC; KN |
| 77:24 | 80:18 | FORM, IR, F, S, VA | 19:19 96:7 72:22 | 20:12 97:15 73:14 | NC; REL; SPC; KN |
| 81:20 | 82:2 | FORM, IR, F, S, VA | - | - | |

| AVM's Designations (Steck 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 82:9 | 82:14 | IR, F, S | 72:22 81:20 | 73:14 82:2 | NC; REL; SPC; KN |
| 88:21 | 109:23 | FORM, IR, M, INC, F, S, VA, 403, PRIV | 20:16 76:6 84:24 87:19 | 20:20 76:11 85:13 88:8 | |
| 95:24 | 96:6 | FORM, LC VA | 76:6 84:24 | 76:11 85:9 | |
| 106:16 | 106:24 | IR, VA, FORM | 104:17 108:24 | 106:15 109:23 | |
| 108:24 | 109:23 | FORM, S, VA, IR | 104:17 | 106:15 | |

**Witness:  Jim Tschanz (2016)**

| AVM's Designations (Tschanz 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 6:7 | 6:10 | | | | |
| 7:17 | 8:8 | | 8:25 14:16 15:13 88:16 | 9:4 14:25 15:22 89:13 | NC |
| 12:9 | 13:19 | F | | | |
| 13:20 | 14:11 | PRIV | 10:17 87:14 90:16 | 10:23 88:8 91:14 | NC; REL; 403; KN; EXP; FO; SPC; WAIVER |
| 15:23 | 16:14 | | 84:23 | 85:3 | NC; REL; 403; KN; SPC |
| 20:8 | 20:19 | FORM, F, IR | 20:20 21:4 59:5 59:9 88:19 | 20:22 21:16 59:7 59:12 89:13 | NC; FRM; FO |
| 36:10 | 36:15 | IR, 403, MIL | 36:16 | 37:4 | |
| 37:5 | 37:10 | IR, 403, MIL | | | |
| 38:10 | 38:24 | IR, 403, MIL | 38:25 39:15 | 39:13 39:16 | NC; REL |
| 39:17 | 43:4 | F, FORM, INC, IR, 403, MIL | 89:14 | 89:25 | NC; FO; KN; EXP; 403; SPC |
| 55:10 | 55:22 | F, IR, 403 | 49:22 50:1 | 49:24 50:2 | NC |
| 57:5 | 58:11 | FORM, IR, 403, MIL | 58:12 58:16 | 58:14 58:17 | |
| 59:13 | 64:2 | F, FORM, IR, 403, MIL | 65:17 88:19 | 66:9 89:13 | NC; FRM; CO; CP; FO |
| 66:21 | 67:11 | F, IR, 403, MIL | 66:11 88:19 | 66:20 89:13 | NC; FRM; FO; CP |
| 68:21 | 69:12 | FORM, IR, 403, MIL | 68:16 70:1 70:12 | 68:20 70:10 70:13 | |
| 71:11 | 71:15 | FORM | | | |

| AVM's Designations (Tschanz 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 72:9 | 72:14 | FORM, IR, 403, MIL | 71:16 72:4 | 72:2 72:8 | |
| 75:22 | 76:12 | IR | | | |
| 77:22 | 78:5 | FORM, IR | | | |
| 79:14 | 79:19 | IR | | | |
| 90:4 | 90:12 | | | | |

**Witness:  Robert Weaver (2012)**

| AVM's Designations (Weaver 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 7:13 | 7:14 | | | | |
| 9:8 | 9:14 | | | | |
| 13:9 | 14:8 | INC | | | |
| 17:19 | 18:4 | IR, 403 | | | |
| 21:6 | 21:18 | | 21:19 | 22:3 | REL; 403; NC |
| 28:6 | 28:12 | | 27:16 28:13 | 28:5 28:17 | REL; 403; NC; SPC; KN; L |
| 46:9 | 46:13 | | | | |
| 47:23 | 48:11 | INC | 48:12 | 48:18 | NC; CU COUNTER: 41:14-42:4 |
| 56:19 | 56:24 | | | | |
| 61:1 | 61:17 | F, S | 59:23 61:18 62:22 88:21 89:5 89:13 90:5 90:21 93:17 97:2 97:12 98:11 | 60:11 61:20 62:24 88:25 89:6 89:19 90:7 91:12 93:19 97:8 97:20 99:3 | REL; 403; CP; H; MIL; SPC; KN; LEG; L |
| 63:10 | 64:14 | F, H, S | 59:23 61:18 88:21 89:5 89:13 90:5 90:21 93:17 97:2 97:12 98:11 | 60:11 61:20 88:25 89:6 89:19 90:7 91:12 93:19 97:8 97:20 99:3 | REL; 403; CP; H; MIL; SPC; KN; LEG; L |

| AVM's Designations (Weaver 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 68:17 | 69:11 | FORM, H, INC, S | 59:23<br>61:18<br>69:12<br>88:21<br>89:5<br>89:13<br>90:5<br>90:21<br>93:17<br>97:2<br>97:12<br>98:11 | 60:11<br>61:20<br>69:15<br>88:25<br>89:6<br>89:19<br>90:7<br>91:12<br>93:19<br>97:8<br>97:20<br>99:3 | REL; 403; CP; H; MIL; SPC; KN; LEG; L |
| 70:5 | 70:9 | | 59:23<br>61:18<br>69:12<br>82:11<br>88:21<br>89:5<br>89:13<br>90:5<br>90:21<br>93:17<br>97:2<br>97:12<br>98:11 | 60:11<br>61:20<br>69:15<br>82:18<br>88:25<br>89:6<br>89:19<br>90:7<br>91:12<br>93:19<br>97:8<br>97:20<br>99:3 | REL; 403; CP; H; MIL; SPC; KN; LEG; L |
| 76:19 | 76:25 | | 76:16<br>77:15 | 76:18<br>77:18 | REL; 403; NC |
| 100:18 | 101:13 | 403 | 82:19 | 83:11 | H; REL; 403; NC |
| 103:11 | 103:17 | F, H | | | |
| 104:5 | 104:18 | F, H | 104:19 | 105:7 | H; RE;L 403; NC; MIL |
| 105:8 | 105:15 | | | | |

| AVM's Designations (Weaver 2012) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 113:4 | 113:22 | NR, S, FORM | 59:23<br>61:18<br>69:12<br>88:21<br>89:5<br>89:13<br>90:5<br>90:21<br>93:17<br>97:2<br>97:12<br>98:11<br>112:1<br>114:16 | 60:11<br>61:20<br>69:15<br>88:25<br>89:6<br>89:19<br>90:7<br>91:12<br>93:19<br>97:8<br>97:20<br>99:3<br>112:20<br>115:2 | REL; 403; CP; H; MIL; SPC; KN; LEG |
| 138:12 | 141:25 | | | | |
| 145: 19 | 146:11 | F, IR, SCOPE | | | |
| 147:15 | 149:1 | IR, SCOPE | 149:2 | 149:14 | CP; FO; REL; 403; MIL; SPC; KN |
| 151:7 | 151:23 | | | | |
| 154:12 | 154:15 | | | | |
| 155:4 | 155:16 | F, IR, FORM, S | | | |

**Witness:  Sapumal Wijeratne (2016)**

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 7:9 | 7:22 | | | | |
| 9:7 | 10:1 | INC | 314:1 | 314:22 | |
| 13:6 | 13:11 | INC | 13:12 | 14:3 | |
| 14:22 | 15:6 | VA, FORM, IR, INC | 16:2 | 16:15 | NC; REL |
| 16:25 | 17:20 | F | | | |
| 18:1 | 21:21 | INC, VA, M, F, IR, 403 | | | |
| 26:9 | 37:17 | INC, IR, 403, VA, F, M, FORM | | | |
| 38:5 | 38:15 | S, INC, F, IR, 40 | 38:16 | 38:24 | CO; NC |
| 42:25 | 43:9 | F, VA, S, IR, 403 | 125:10 296:2 | 125:13 296:5 | NC |
| 47:6 | 49:5 | INC, ARG, VA, S, F, IR, 403 | | | |
| 51:5 | 51:22 | VA, M, F | 51:23 | 51:25 | |
| 52:5 | 52:15 | INC | 51:23 | 51:25 | NC |
| 55:11 | 55:17 | F, IR, 403 | 54:4 55:5 | 54:10 55:10 | |
| 56:21 | 59:13 | | 56:3 | 56:20 | |
| 63:9 | 66:17 | F, M, FORM, IR | 55:5 | 55:10 | NC; REL |
| 67:4 | 68:3 | F, IR, 403 | 55:5 68:4 | 55:10 68:5 | NC; REL |
| 69:8 | 72:24 | FORM, M, F, IR, 403 | 55:5 329:15 330:18 | 55:10 330:13 331:5 | NC; REL; FRM; LD |
| 74:19 | 75:23 | F, M, FORM, IR, 403, MIL#2 | | | |
| 76:1 | 76:3 | F, M, IR, 403, MIL#2 | 317:5 318:14 | 317:12 319:20 | NC; REL; FRM; LD |
| 77:13 | 78:2 | IR, 403 | 55:5 78:3 | 55:10 78:25 | NC; REL |
| 79:1 | 79:4 | F, INC | 78:3 | 78:25 | |
| 79:17 | 80:2 | IR, 403 | 55:5 | 55:10 | NC; REL |
| 81:13 | 81:21 | F, INC | 318:14 | 319:9 | NC; REL; FRM; LD |

96

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 82:6 | 82:11 | VA, M, IR, 403, INC | 82:22 | 83:16 | |
| 83:17 | 84:12 | | | | |
| 92:22 | 93:3 | ARG, INC | 92:13 93:4 94:22 | 92:18 93:13 94:25 | |
| 95:1 | 95:4 | | | | |
| 97:6 | 97:14 | | | | |
| 99:25 | 100:12 | | | | |
| 102:17 | 107:2 | VA, M, FORM, F | | | |
| 107:14 | 107:22 | | 319:6 | 320:11 | NC; REL; LD; FRM |
| 108:9 | 109:10 | IR, 403 | 135:2 | 135:7 | |
| 109:22 | 110:16 | INC, M, VA, IR | | | |
| 111:11 | 111:14 | INC, VA, IR | | | |
| 112:3 | 112:11 | VA, IR, 403 | | | |
| 115:1 | 116:4 | F, M, VA, IR, 403, INC | | | |
| 117:12 | 118:12 | FORM, VA, 403, IR | | | |
| 119:13 | 119:21 | M, ARG, IR, 403 | | | |
| 120:5 | 120:20 | F, IR, 403 | | | |
| 121:7 | 121:18 | IR | | | |
| 123:4 | 123:6 | | | | |
| 124:5 | 124:23 | MIL#2, IR, 403, INC | | | |
| 125:5 | 125:9 | MIL#2, IR, 403 | 125:10 | 125:13 | |
| 126:13 | 126:16 | F, MIL#2, IR, 403 | | | |
| 127:8 | 127:25 | IR | | | |
| 130:7 | 130:12 | IR | | | |
| 131:7 | 131:15 | IR | | | |
| 132:20 | 133:12 | 403, IR | | | |
| 136:9 | 136:24 | F, 403, IR | 135:2 | 135:4 | |
| 138:15 | 139:12 | F, IR | | | |
| 140:7 | 140:19 | IR | | | |
| 142:9 | 143:7 | MIL#2, IR, 403 | | | |
| 144:15 | 144:23 | IR | | | |

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 149:10 | 149:15 | | 149:5 | 149:9 | |
| 149:20 | 150:17 | M | 354:5 354:18 | 354:8 355:2 | KN; SPC |
| 150:23 | 152:3 | INC, M, VA | 149:20 150:3 150:18 152:6 | 149:24 150:13 150:22 152:7 | NC |
| 152:14 | 152:17 | M, INC, VA | 150:23 152:6 | 150:24 152:13 | NC |
| 153:2 | 153:23 | IR, 403 | | | |
| 154:8 | 154:16 | IR, 403 | | | |
| 154:20 | 154:25 | F | | | |
| 156:13 | 156:23 | IR, 403 | | | |
| 158:1 | 158:2 | INC | 158:3 | 158:5 | |
| 158:15 | 159:5 | F, INC | 158:10 | 158:14 | |
| 160:13 | 160:16 | | | | |
| 160:20 | 161:22 | VA, M, 403 | | | |
| 162.2 | 163:18 | F, INC, IR, 403, VA | | | |
| 163:22 | 164:16 | IR | | | |
| 165:9 | 165:17 | IR | | | |
| 166:2 | 167:4 | INC, IR, 403 | | | |
| 168:2 | 168:19 | INC, IR, 403 | | | |
| 173:11 | 173:15 | IR, 403, VA | | | |
| 177:22 | 178:5 | IR, 403, VA | 324:18 | 324:25 | NC; REL; LD; |
| 179:6 | 179:11 | M, ARG, IR, #403, MIL#2 | 179:12 | 179:24 | |
| 179:25 | 180:6 | M, ARG | 179:16 | 179:24 | |
| 180:14 | 180:17 | | | | |
| 180:25 | 181:11 | MIL#1, IR, 403 | | | |
| 183:17 | 183:22 | MIL#1, IR, 403 | 183:3 333:1 | 183:13 335:8 | NC; REL; LD; EXP; WAIVER; SPEC |

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 184:2 | 184:17 | MIL#1, IR, 403 | 333:1 | 335:8 | NC; REL; LD; EXP; WAIVER; SPEC Counter: [3] 297:9-19 |
| 184:22 | 185:1 | MIL#1, IR, 403 | | | |
| 188:3 | 188:24 | MIL#1, ARG, IR, 403, CM | | | |
| 190:7 | 190:21 | MIL#1, IR, 403 | 190:22 333:1 | 191:17 335:8 | NC; REL; LD; EXP; WAIVER; SPEC |
| 191:18 | 191:21 | MIL#1, IR, 403, VA, S, INC, ARG | 333:1 | 335:8 | NC; REL; LD; EXP; WAIVER; SPEC Counter: 297:9-19 |
| 192:3 | 192:13 | MIL#1, IR, 403 | 333:1 | 335:8 | NC; REL; LD; EXP; WAIVER; SPEC Counter: 297:9-19 |
| 192:16 | 193:18 | MIL#1, IR, 403 | | | |
| 194:1 | 194:16 | MIL#1, IR, 403 | | | |
| 196:2 | 196:25 | MIL#1, IR, 403, INC, VA, S | 195:24 333:1 | 196:2 335:8 | NC; REL; LD; EXP; WAIVER; SPEC Counter: 297:9-19 |

---

[3] AVM includes limited counter-designations as a result of the late change in schedule that eliminated rounds of counter-designations.

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 197:25 | 199:10 | MIL#1, IR, 403, INC, | 197:11 333:1 | 197:24 335:8 | NC; REL; LD; EXP; WAIVER; SPEC Counter: 297:9-19 |
| 202:8 | 203:25 | MIL#1, IR, 403, MIL#2 | 201:3 333:1 | 201:10 335:8 | NC; REL; LD; EXP; WAIVER; SPEC Counter: 297:9-19 |
| 204:25 | 206:3 | MIL#1, IR, 403, | 150:23 | 150:24 | |
| | | | 151:4 | 151:9 | |
| | | | 183:6 | 183:7 | |
| | | | 333:1 | 335:8 | NC; REL; LD; EXP; WAIVER; SPEC Counter: 297:9-19 |
| 211:4 | 211:5 | MIL#1, IR, 403, NP, 901, F | 212:3 223:2 223:7 | 212:19 223:5 223:11 | NC; IA |
| 211:17 | 211:23 | MIL#1, IR, 403, NP, 901, F | 212:3 223:2 223:7 | 212:19 223:5 223:11 | NC; IA; |
| 212:24 | 213:10 | MIL#1, IR, 403, NP, 901, INC, MIL#2 | 212:3 213:11 223:2 223:7 | 212:19 213:24 223:5 223:11 | NC; IA; |
| 214:7 | 215:15 | MIL#1, IR, 403, NP, 901, MIL#2, INC | 212:3 213:18 215:16 223:2 223:7 | 212:19 213:24 216:7 223:5 223:11 | NC; IA |

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 219:4 | 220:25 | MIL#1, IR, 403, NP, 901, MIL#2 | 212:3 213:18 221:1 223:2 223:7 | 212:19 213:24 221:17 223:5 223:11 | NC; IA |
| 222:1 | 222:12 | MIL#1, IR, 403, NP, 901, | 212:3 213:18 221:18 223:2 223:7 333:1 | 212:19 213:24 221:25 223:5 223:11 335:8 | NC; IA

Counter: 297:9-19 |
| 223:12 | 224:23 | MIL#1, IR, 403, NP, 901 | 212:3 223:2 223:7 333:1 | 212:19 223:5 223:11 335:8 | NC; IA; REL; LD; EXP; WAIVER; SPEC

Counter: 297:9-19 |
| 225:2 | 227:11 | MIL#1, IR, 403, NP, 901, MIL#2 | 212:3 223:2 223:7 227:12 333:1 | 212:19 223:5 223:11 227:24 335:8 | REL; LD; EXP; WAIVER; SPEC; NC; IA

Counter: 297:9-19 |
| 228:14 | 228:24 | MIL#1, IR, 403, NP, 901, VA, ARG, FORM | 212:3 223:2 223:7 227:12 | 212:19 223:5 223:11 227:24 | NC; IA; |
| 229:3 | 229:7 | MIL#1, IR, 403, NP, 901, VA, FORM | 212:3 | 212:19 | |
| 229:13 | 229:21 | MIL#1, IR, 403, NP, 901, VA | 212:3 223:2 223:7 | 212:19 223:5 223:11 | NC; IA |

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 230:1 | 230:22 | MIL#1, IR, 403, NP, 901, VA, FORM | 150:23 151:4 183:6 231:8 237:24 333:1 | 150:24 151:9 183:7 231:12 238:3 335:8 | REL; LD; EXP; WAIVER; SPEC; NC; Counter: 297:9-19 |
| 231:23 | 231:25 | MIL#1, IR, 403, NP, 901 | 231:8 232:1 333:1 | 231:12 232:9 335:8 | REL; LD; EXP; WAIVER; SPEC; NC; Counter: 297:9-19 |
| 234:16 | 237:23 | MIL#1, IR, 403, VA, FORM, S, LO | 150:23 151:4 183:6 233:23 237:24 333:1 | 150:24 151:9 183:7 234:15 238:3 335:8 | REL; LD; EXP; WAIVER; SPEC; NC Counter: 297:9-19 |
| 238:4 | 251:9 | CM, FORM, VA, ARG, FORM, M, S, MIL#1, MIL#2, IR, 403 | 150:23 151:4 183:6 315:24 333:1 | 150:24 151:9 183:7 317:4 335:8 | REL; LD; EXP; WAIVER; SPEC; NC Counter: 297:9-19 |
| 251:20 | 252:17 | LC | | | |
| 253:23 | 254:7 | IR, 403 | 150:23 151:4 183:6 254:8 | 150:24 151:9 183:7 254:11 | NC; |
| 254:12 | 256:12 | IR, 403, S | 150:23 151:4 237:24 254:8 | 150:24 151:9 238:3 254:11 | NC |
| 257:8 | 257:13 | IR, 403, INC | | | |
| 258:1 | 258:7 | IR, 403, INC | | | |
| 261:3 | 261:7 | IR, 403 | | | |
| 274:11 | 275:3 | IR, 403, VA | | | |
| 275:8 | 275:12 | IR | | | |

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 275:16 | 276:1 | IR | | | |
| 276:21 | 277:22 | VA, IR, 403 | | | |
| 278:5 | 278:9 | MIL#2, IR, 403 | | | |
| 279:10 | 280:3 | M, IR, 403 | 150:23 151:4 183:6 | 150:24 151:9 183:7 | NC |
| 280:23 | 281:14 | MIL#1, IR, 403 | | | |
| 281:19 | 283:11 | IR, 403, F, MIL#1, MIL#2 | 325:6 | 325:10 | NC; REL; LD |
| 284:15 | 284:24 | IR, 403, MIL#2, FORM | 325:6 | 325:10 | NC; REL; LD |
| 285:8 | 285:17 | IR, 403, MIL#2, FORM | 325:6 | 325:10 | NC; REL; LD |
| 286:5 | 287:11 | M, MIL#2, IR, 403 | 325:6 | 325:10 | NC; REL; LD |
| 287:14 | 287:15 | | | | |
| 288:9 | 289:7 | IR, 403 | | | |
| 289:15 | 290:9 | IR, 403 | | | |
| 291:7 | 292:15 | INC | 290:20 331:3 | 291:1 331:9 | NC; LD; FRM Counter: 297:9-19 |
| 294:9 | 295:6 | VA | 295:15 296:2 331:3 | 295:18 296:5 331:9 | ND; LD; FRM Counter: 297:9-19 |
| 296:6 | 296:13 | FORM | 295:15 296:2 316:18 | 295:18 296:5 316:21 | IA; WAIVER; SPEC; NC; REL; |
| 296:16 | 297:8 | F | 331:10 | 332:4 | NC; LD; |
| 297:20 | 298:16 | FORM, M | 331:10 | 332:4 | NC; LD |
| 298:17 | 300:3 | FORM | 331:10 | 332:4 | NC; LD |
| 300:8 | 301:10 | F | | | |
| 301:23 | 304:23 | LC | 331:6 | 332:4 | NC; LD |
| 305:11 | 307:1 | VA, FORM, ARG | 326:25 | 327:23 | LD; EXP; NC; SPEC; |
| 307:22 | 309:14 | VA | 315:24 316:22 | 316:1 317:4 | LD; WAIVER; SPEC; EXP; NC; IA; REL; |

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 312:7 | 313:14 | VA, S | 316:22 | 317:4 | LD; WAIVER; SPEC; EXP; NC; IA; REL; |
| 315:6 | 315:14 | INC | 315:15 | 315:16 | |
| 315:17 | 315:19 | INC | 315:15 | 315:16 | |
| 316:3 | 317:4 | INC | 315:24 | 316:1 | |
| 321:4 | 321:11 | INC | 317:5 319:15 321:12 | 317:12 320:11 322:3 | |
| 322:1 | 322:3 | INC | 322:4 | 322:8 | |
| 324:4 | 324:12 | INC | 323:24 324:13 | 324:2 325:5 | |
| 325:1 | 325:5 | | | | |
| 326:9 | 326:23 | INC | 325:17 | 326:8 | NC; |
| 336:4 | 337:5 | INC, S | 337:6 | 337:9 | |
| 338:8 | 340:16 | INC, S, ARG, FORM, VA | 337:11 | 338:6 | NC; |
| 341:2 | 341:20 | VA, S, | 341:21 | 342:2 | |
| 342:3 | 342:5 | VA | 341:21 342:6 | 342:2 342:12 | |
| 343:12 | 343:25 | INC, VA | 342:6 342:22 | 342:12 343:11 | |
| 344:5 | 344:24 | MIL#2, IR, 403, FORM | 345:8 | 345:8 | IA; NC |
| 345:9 | 345:25 | MIL#2, IR, 403, INC | 345:22 345:8 | 345:24 345:8 | IA; NC |
| 346:5 | 347:18 | MIL#2, IR, 403, CM | 347:22 356:1 | 348:8 356:4 | |
| 348:11 | 349:1 | MIL#2, IR, 403, INC | 349:4 356:1 | 349:12 356:4 | |
| 350:19 | 350:23 | MIL#2, IR, 403 | 325:6 356:1 | 325:10 356:4 | |
| 351:21 | 353:6 | VA, S | 331:3 | 331:9 | Counter: 297:9-19 |
| 353:23 | 353:25 | IR, 403 | | | |
| 354:9 | 354:12 | F, S, INC | 354:5 354:18 | 354:8 355:2 | |
| 355:3 | 355:8 | IR, 403, S | | | |

| AVM's Designations (Wijeratne 2016) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 358:5 | 358:11 | VA, F, IR | | | |
| 358:21 | 359:6 | VA, F, IR, 403 | | | |

105

**Witness:  Robert Colwell (2017)**

| AVM's Designations (Colwell 2017) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 5:20 | 5:22 | H, IMP | 46:24 | 49:23 | NC; REL; 403 |
| 6:24 | 7:9 | H, IMP | 65:11 66:25 74:8 | 66:5 67:12 74:17 | NC; REL; 403; IA; |
| 163:7 | 163:19 | H, IMP, FORM, SCOPE | | | |
| 164:1 | 164:13 | H, IMP, FORM, SCOPE | 164:14 | 164:17 | |
| 167:15 | 168:8 | H, IMP | | | |
| 168:22 | 169:1 | H, IMP, FORM | 171:6 171:20 171:24 | 171:9 171:22 172:9 | NC; REL; 403; |
| 169:2 | 169:9 | H, IMP, FORM | 164:1 171:6 171:20 171:24 173:6 208:5 | 164:13 171:9 171:22 172:9 173:17 208:14 | NC; REL; 403 |
| 169:19 | 170:2 | H, IMP, FORM | 171:6 171:20 171:24 173:6 208:5 | 171:9 171:22 172:9 173:17 208:14 | NC; REL; 403 |
| 173:6 | 173:17 | H, IMP, F, FORM | 164:1 173:6 208:5 | 164:13 173:17 208:14 | CU; NC; REL; 403; |
| 174:12 | 175:6 | H, IMP, F, FORM | 164:1 173:6 208:5 | 164:13 173:17 208:14 | CU; NC; REL; 403 |
| 176:8 | 176:13 | H, IMP, FORM | 164:1 173:6 175:9 175:15 208:5 | 164:13 173:17 175:12 176:7 208:14 | CU; NC; REL; 403 |

| AVM's Designations (Colwell 2017) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 176:23 | 177:5 | H, IMP, FORM | | | |
| 177:8 | 177:15 | H, IMP, FORM | 177:16 | 178:12 | |
| 178:15 | 178:21 | H, IMP, F, FORM | | | |
| 178:22 | 179:25 | H, IMP, F, FORM | | | |
| 180:1 | 180:8 | H, IMP, FORM | 180:10 | 182:13 | NC; REL; 403 |
| 183:5 | 183:18 | H, IMP, FORM | | | |
| 184:4 | 184:11 | H, IMP, FORM | | | |
| 184:12 | 184:25 | H, IMP, FORM | | | |
| 185:5 | 185:19 | H, IMP, FORM, 403 | 27:1 185:20 | 27:24 185:24 | |
| 186:15 | 186:19 | H, IMP, FORM, 403 | | | |
| 186:23 | 187:5 | H, IMP, FORM, 403 | | | |
| 187:6 | 187:11 | H, IMP, 403 | | | |
| 187:21 | 187:25 | H, IMP, 403 | | | |
| 188:1 | 188:10 | H, IMP, FORM, 403 | | | |
| 189:4 | 189:11 | H, IMP, FORM | | | |
| 189:12 | 189:20 | H, IMP, 403 | | | |
| 190:4 | 190:12 | H, IMP, FORM, 403 | 192:22 | 193:3 | |
| 190:20 | 191:9 | H, IMP | | | |
| 193:14 | 194:4 | H, IMP, F, FORM, S | | | |
| 194:16 | 195:16 | H, IMP, FORM, DOC | | | |
| 195:17 | 196:2 | H, IMP, FORM | 196:11 196:17 | 196:14 196:19 | |

| AVM's Designations (Colwell 2017) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 196:22 | 197:6 | H, IMP, FORM | 196:11<br>196:17<br>197:11<br>198:5<br>198:14<br>198:24<br>199:5<br>200:9<br>200:16 | 196:14<br>196:19<br>198:3<br>198:11<br>198:15<br>199:3<br>199:7<br>200:13<br>201:6 | NC; REL; 403 |
| 199:8 | 199:16 | H, IMP, 403 | | | |
| 201:7 | 201:12 | H, IMP, F, FORM, S | | | |
| 203:20 | 204:11 | H, IMP, FORM | 201:13 | 201:24 | |
| 204:13 | 204:18 | H, IMP, | 204:19<br>205:3 | 205:1<br>205:9 | |
| 205:12 | 205:15 | H, IMP, | 205:16<br>205:20 | 205:17<br>205:23 | |
| 207:15 | 208:4 | H, IMP, F, FORM | 207:8<br>208:5 | 207:12<br>209:11 | |
| 209:12 | 209:23 | H, IMP, FORM | | | |
| 209:24 | 210:6 | H, IMP, | 210:7 | 211:4 | |
| 211:5 | 211:14 | H, IMP, F, FORM | 210:7 | 211:4 | |
| 211:20 | 212:3 | H, IMP, 403 | | | |
| 212:25 | 213:5 | H, IMP, | | | |
| 213:6 | 213:14 | H, IMP | 213:16 | 213:22 | |
| 213:23 | 213:25 | H, IMP, | | | |
| 215:1 | 215:11 | H, IMP, F, FORM | 214:1<br>215:12<br>216:6 | 214:25<br>216:3<br>216:10 | NC; REL; 403 |
| 216:19 | 217:11 | H, IMP, FORM | 214:11 | 214:16 | |
| 217:13 | 217:23 | H, IMP | | | |
| 218:12 | 219:20 | H, IMP, FORM, 403 | 201:13 | 201:24 | NC; REL; 403 |
| 219:21 | 220:3 | H, IMP, FORM | 201:13 | 201:24 | NC; REL; 403 |

| AVM's Designations (Colwell 2017) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| **From (Page:Line)** | **To (Page:Line)** | | **From (Page:Line)** | **To (Page:Line)** | |
| 221:18 | 221:23 | H, IMP, FORM | 220:22 | 221:16 | |
| 222:13 | 223:11 | H, IMP, 403 | | | |
| 223:14 | 224:10 | H, IMP, FORM | 164:1 173:6 208:5 | 164:13 173:17 208:14 | NC; REL; 403; CU |
| 224:16 | 224:23 | H, IMP, FORM | | | |
| 224:25 | 226:2 | H, IMP, 403 | | | |
| 226:3 | 226:7 | H, IMP, | 164:1 173:6 208:5 226:15 226:21 | 164:13 173:17 208:14 226:18 227:9 | NC; REL; 403; CU |
| 227:14 | 228:18 | H, IMP, INC, FORM | 164:1 173:6 208:5 | 164:13 173:17 208:14 | NC; REL; 403; CU |
| 228:20 | 230:20 | H, IMP, FORM, 403 | 164:1 173:6 208:5 | 164:13 173:17 208:14 | NC; REL; 403; CU |
| 230:21 | 230:25 | H, IMP, FORM | 231:1 | 231:21 | |
| 232:10 | 233:10 | H, IMP, FORM | 164:1 173:6 208:5 | 164:13 173:17 208:14 | NC; REL; 403; CU |
| 233:12 | 233:19 | H, IMP, | 234:15 236:1 | 235:15 236:12 | NC; REL; 403; |
| 236:20 | 238:5 | H, IMP, FORM | 234:15 236:1 | 235:15 236:12 | NC; REL; 403; |
| 238:7 | 238:23 | H, IMP, FORM, 403 | 238:24 | 239:8 | |
| 239:15 | 240:2 | H, IMP, FORM | | | |
| 240:3 | 240:19 | H, IMP, 403 | | | |
| 240:3 | 240:19 | H, IMP, 403, CM | | | |
| 242:22 | 243:4 | H, IMP, FORM | | | |
| 243:7 | 243:14 | H, IMP, | 244:1 | 245:20 | NC; REL; 403 |

| AVM's Designations (Colwell 2017) | | Intel's Objections | Intel's Counter-Designations | | AVM's Objections to Intel's Counter-Designations |
|---|---|---|---|---|---|
| From (Page:Line) | To (Page:Line) | | From (Page:Line) | To (Page:Line) | |
| 246:4 | 246:7 | H, IMP, 403 | 246:8 | 247:5 | |
| 247:6 | 247:21 | H, IMP, FORM | 246:8 | 247:5 | |
| 248:18 | 249:6 | H, IMP, 403 | 249:23 250:17 | 250:4 250:19 | |
| 250:5 | 250:16 | H, IMP, 403 | 250:17 | 250:19 | |
| 250:20 | 251:9 | H, IMP, F, FORM, S, SCOPE | | | |
| 258:8 | 259:9 | H, IMP, F, FORM, SCOPE | | | |
| 263:20 | 263:25 | H, IMP, F, FORM, SCOPE, S, 403 | | | |

# Exhibit 11

**Intel's Deposition Designations**

| Objection | Description | Rule |
|---|---|---|
| 403 | Probative value outweighed by unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or cumulative evidence | FRE 403 |
| AA | Asked and answered | |
| AF | Assuming facts not in evidence | FRE 611(a) |
| AR | Argumentative | |
| CHR | Improper character testimony | FRE 608 |
| CO | Contains colloquy, commentary or objection by counsel | |
| CU | Cumulative | FRE 403, 611(a) |
| CP | Rule of completeness; incomplete testimony | FRE 106, 403, 1003 |
| CQ | Compound question | |
| EXP | Improper expert testimony or opinion | FRE 702, 703, 704; FRCP 26(a)(2), 37(c)(1) |
| FO | Lack of foundation | FRE 602, 611(a) |
| FRM | Improper form (vague, compound, argumentative, mischaracterizes the evidence or testimony, misstates the record) | FRE 611(a) |
| H | Hearsay | FRE 801, 802 |
| HYP | Improper hypothetical | |
| IA | Incomplete answer | |
| KN | Lack of personal knowledge | FRE 602 |
| LD | Leading the witness | FRE 611(c) |
| LEG or LEGAL | Legal matter or calls for a legal conclusion | FRE 704 |
| LW | Improper opinion of a lay witness | FRE 701 |
| MIL | Subject of a pending motion *in limine* or other motion | |
| NR | Non-responsive | |
| NT | Not testimony | |
| ORD | Violates a court order or directive | |
| PR | Privileged (attorney-client communication, attorney work product, or other) | FRE 501 |
| REL | Lack of relevance | FRE 401, 402 |
| SC | Outside the scope of the witness' testimony or cross | FRE 611(b); FRCP 30(b)(6) |
| SET | Evidence of a compromise or settlement offer | FRE 408 |
| SPC | Speculation | FRE 602 |

| Code | Counter-Designation Objection |
|------|-------------------------------|
| **ARG** | **Lawyer Argument or Colloquy** (Intel objects to this deposition designation because it is lawyer argument and not testimony of the witness.) |
| **BSD** | **Beyond the Scope of the Designation** (Intel objects to this counter designation on the ground that it is beyond the scope of the initial designation) |
| **CM** | **Cumulative** (Intel objects to this deposition designation on the ground that it is duplicative and/or cumulative of other designations.) |
| **DOC** | **Document Speaks For Itself** (Intel objects to this deposition designation because the question asks the witness to offer testimony on a document that speaks for itself.) |
| **F** | **Foundation** (Intel objects to this deposition designation on the ground that the foundation necessary for its admission has not been laid under Fed. R. Evid. 602.) |
| **FORM** | **Form** (Intel objects to this deposition designation because the question asked is compound, argumentative, or has some other defect in form.) |
| **H** | **Hearsay** (Intel objects to this deposition designation because it constitutes or contains hearsay under Fed. R. Evid. 801-802.) |
| **IC** | **Improper Compilation of Unrelated Documents, all objections reserved** (Intel objects to this deposition designation because the question asks the witness to offer testimony on a document that that consists of different or unrelated documents.) |
| **INC** | **Remainder of or Related Writings or Recorded Statements** (Intel objects to this deposition designation because it is incomplete, or it asks the witness to offer testimony on a document where the remainder of the document should fairly be considered.  (Fed. R. Evid. 106).) |

2

| Code | Counter-Designation Objection |
|------|-------------------------------|
|      |                               |
| IR | **Not Relevant** (Intel objects to this deposition designation because it is not relevant to any issue to be decided in this case under Fed. R. Evid. 401-402.) |
| LC | **Calls for Legal Conclusion** (Intel objects to this deposition designation because it contains conclusions of law.) |
| LEADING | **Leading** (Intel objects to this deposition designation because the question asked is leading the witness.) |
| LO | **Lay Opinion** (Intel objects to this deposition designation because it constitutes or contains improper opinion by a lay witness under Fed. R. Evid. 701-702.) |
| M | **Mischaracterization** (Intel objects to this deposition designation because the question asked mischaracterizes the witness's prior testimony and/or the question asked (or the testimony provided) mischaracterizes the document being shown to the witness.) |
| MIL | **Subject to either (1) motion in limine issue or (2) in limine agreement between the parties** (Intel objects to this deposition designation because it falls within the scope of Intel's pending motions *in limine* or an agreement between the parties concerning motions *in limine*.) |
| NP | **Not Produced / Produced Untimely / Subject to Motion to Strike** (Intel objects to this deposition designation because the question asks the witness to offer testimony on a document that was not produced during the course of discovery.) |
| NR | **Non-Responsive Testimony** (Intel objects to this deposition designation because it includes statements that are not responsive to the question asked.) |

| Code | Counter-Designation Objection |
|---|---|
|  |  |
| **PRIV** | **Negative inference based on redacted privileged information** (Intel objects to this deposition designation because it seeks communications or information protected from disclosure by the attorney-client privilege, work product doctrine, common interest, joint defense, and/or other privilege.) |
| **S** | **Speculative** (Intel objects to this deposition designation because it includes statements that are speculative as to matters of fact or law.) |
| **SCOPE** | **Beyond Scope of 30(b)(6) Notice or Topics** (Intel objects to this deposition designation because it is outside the scope of the topics on which the witness was designated as a corporate representative.) |
| **VA** | **Vague and Ambiguous** (Intel objects to this deposition designation because it includes vague and indefinite statements.) |
| **403** | **Prejudice Exceeds Probative Value** (Intel objects to this deposition designation because its probative value is outweighed by unfair prejudice and/or confusion of the issues under Fed. R. Evid. 403.) |
| **901** | **Authentication** (Intel objects to this deposition designation because it contains testimony on a document that has not been properly authenticated under Fed. R. Evid. 901.) |

**Witness: Mark Acuff – February 21, 2012**

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 8:9 | 9:5 | H | 32:19 36:13 | 32:25 36:20 | BSD, IR |
| 9:10 | 9:11 | H | | | |
| 10:9 | 10:12 | H | | | |
| 19:10 | 19:19 | 403; REL; KN; SPC; MIL; H | | | |
| 19:22 | 20:7 | 403; REL; KN; SPC; MIL; H | | | |
| 22:19 | 22:24 | 403; REL; KN; SPC; CP; MIL; H | 22:25 | 23:11 | |
| 23:12 | 23:22 | 403; AF; FO; REL; KN; SPC; CP; MIL; H | 24:19 | 25:2 | |
| 24:19 | 25:2 | 403; AF; FO; REL; KN; SPC; MIL; H | | | |
| 25:17 | 26:3 | 403; AF; FO; REL; KN; SPC; MIL; H | | | |
| 26:6 | 26:10 | 403; AF; FO; REL; KN; SPC; MIL; H | | | |
| 26:13 | 27:9 | 403; AF; FO; REL; KN; SPC; H | | | |
| 27:12 | 28:1 | 403; REL; SPC; AF; FO; FRM; CP; H | 24:19 | 25:2 | |
| 30:23 | 31:3 | 403; REL; H | | | |
| 31:7 | 31:12 | 403; REL; H | | | |
| 31:17 | 31:20 | 403; REL; H | | | |
| 33:9 | 34:12 | 403; REL; CP; H | 33:1 | 33:8 | IR, INC |

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 34:21 | 34:24 | 403; AF; FO; REL; KN; SPC; CP; H | 34:25 | 35:6 | |
| 37:12 | 38:7 | H | | | |
| 38:16 | 38:21 | 403; REL; CP; H | 38:12 38:22 | 38:13 38:23 | |
| 40:20 | 41:6 | 403; REL; SPC; KN; FO; CP; H | 41:7 | 41:16 | |
| 41:20 | 42:5 | 403; REL; KN; SPC; CP; H | 41:7 48:23 49:18 | 41:16 49:15 50:1 | |
| 44:1 | 44:7 | 403; REL; CP; H | 43:15 | 43:25 | H, IR, S, F |
| 47:25 | 48:11 | 403; REL; CP; H | 47:13 | 47:24 | |
| 48:23 | 48:25 | 403; REL; CP; H | 41:16 49:1 49:18 | 41:19 49:15 50:1 | |
| 50:2 | 50:7 | 403; REL; CP; H | 41:16 49:1 49:18 | 41:19 49:15 50:1 | |
| 52:2 | 52:3 | 403; REL; H | | | |
| 52:16 | 52:18 | 403; REL; CP; H | 43:15 | 43:25 | H, IR, S, F |
| 53:15 | 53:21 | 403; REL; FRM; KN; SPC; CP; H | 53:5 53:10 | 53:7 53:11 | H, S, F |
| 58:18 | 58:20 | H | 58:21 | 58:22 | |
| 60:22 | 60:23 | 403; REL; CP; H | 61:6 | 61:7 | H, INC |
| 61:1 | 61:5 | 403; REL; FRM; LEG; LW; CP; H | 61:6 61:10 64:10 | 61:7 62:2 64:22 | H |
| 68:18 | 70:11 | 403; FRM; AA; SPC; EXP; FO; CP; H | 61:6 61:10 64:10 | 61:7 62:2 64:22 | H, BSD |
| 70:25 | 71:14 | 403; FRM; KN; SPC; EXP; CP; H | 61:6 61:10 64:10 | 61:7 62:2 64:22 | H, BSD |
| 71:21 | 72:4 | H | | | |

6

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 72:23 | 74:1 | 403; REL; KN; SPC; FRM; EXP; FO; CP; H | 61:6 61:10 64:10 | 61:7 62:2 64:22 | H, BSD |
| 75:2 | 75:9 | 403; FRM; KN; SPC; EXP; CP; H | 74:9 74:15 101:13 | 74:12 74:16 102:4 | |
| 75:12 | 75:15 | 403; REL; SPC; FRM; KN; EXP; FO; CP; H | 74:9 75:2 101:13 | 74:16 75:9 102:4 | |
| 75:18 | 75:25 | 403; REL; SPC; FRM; EXP; FO; NR; CP; H | 61:6 61:10 64:10 74:9 74:15 75:2 101:13 | 61:7 62:2 64:22 74:12 74:16 75:9 102:4 | H, BSD |
| 76:4 | 76:7 | 403; REL; SPC; FRM; EXP; FO; H | | | |
| 76:10 | 77:3 | 403; REL; SPC; FRM; EXP; FO; NR; CP; H | 61:6 61:10 64:10 74:9 74:15 75:2 101:13 | 61:7 62:2 64:22 74:12 74:16 75:9 102:4 | H, BSD |
| 77:7 | 77:12 | 403; REL; SPC; FRM; EXP; FO; H | | | |
| 77:15 | 78:2 | 403; REL; SPC; FRM; EXP; FO; NR; CP; H | 77:7 77:15 78:7 101:13 105:6 108:18 110:5 110:9 | 77:12 77:23 78:13 102:4 105:19 108:25 110:7 110:14 | INC, BSD |

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 78:5 | 78:6 | 403; REL; SPC; FRM; EXP; FO; NR; CP; H | 77:7<br>77:15<br>78:7<br>79:13<br>79:17<br>101:13<br>105:6<br>108:18<br>110:5<br>110:9 | 77:12<br>77:23<br>78:13<br>79:14<br>79:21<br>102:4<br>105:19<br>108:25<br>110:7<br>110:14 | INC, BSD |
| 78:14 | 78:16 | 403; REL; SPC; EXP; FO; FRM; CP; H | | | |
| 78:19 | 79:1 | 403; REL; SPC; FRM; EXP; FO; AF; CP; H | 77:7<br>77:15<br>78:7<br>79:13<br>79:17<br>101:13<br>105:6<br>108:18<br>110:5<br>110:9 | 77:12<br>77:23<br>78:13<br>79:14<br>79:21<br>102:4<br>105:6<br>108:25<br>110:7<br>110:14 | H, INC, BSD, IR, S |
| 79:4 | 79:5 | 403; REL; NR; H | 101:13 | 102:4 | |
| 79:7 | 79:8 | 403; REL; FRM; EXP; FO; H | | | |
| 79:11 | 79:12 | 403; REL; FRM; SPC; EXP; PK; FO; CP; H | 77:7<br>77:15<br>78:7<br>79:13<br>79:17<br>101:13<br>105:6<br>108:18<br>110:5<br>110:9 | 77:12<br>77:23<br>78:13<br>79:14<br>79:21<br>102:4<br>105:6<br>108:25<br>110:7<br>110:14 | H, INC, BSD, IR, S, F |
| 79:22 | 80:16 | 403; REL; FRM; EXP; FO; CP; H | 61:6<br>61:10<br>64:10 | 61:7<br>62:2<br>64:22 | H, BSD |

8

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 80:25 | 81:2 | 403; REL; FRM; EXP; FO; H | | | |
| 82:9 | 83:14 | 403; REL; FRM; EXP; SPC; AF; CP; H | 82:16 83:15 83:20 84:8 | 83:2 83:17 84:5 84:9 | |
| 84:10 | 84:12 | 403; REL; FO; PK; SPC | | | |
| 84:22 | 85:10 | 403; REL; FO; PK; NR; SPC; H | | | |
| 86:6 | 86:8 | 403; REL; EXP; SPC; CP; H | 61:6 61:10 64:10 82:16 | 61:7 62:2 64:22 83:2 | H, BSD |
| 87:5 | 87:8 | 403; REL; EXP; SPC; FRM; CP; H | 86:18 86:23 87:11 87:15 | 86:20 87:4 87:12 87:18 | |
| 88:8 | 88:10 | 403; REL; FRM; EXP; SPC; AF; CP; H | 86:18 86:23 87:23 88:2 | 86:20 87:4 87:24 88:4 | |
| 88:13 | 88:17 | 403; REL; FRM; EXP; SPC; CP; H | 86:18 86:23 87:23 88:2 | 86:20 87:4 87:24 88:4 | |
| 96:16 | 96:18 | 403; REL; FRM; EXP; SPC; AF; H | | | |
| 96:21 | 96:22 | 403; REL; FRM; EXP; SPC; NR; CP; H | 82:16 | 83:2 | |
| 96:24 | 96:25 | 403; FRM; AF; PK; SPC; EXP; H | | | |
| 97:3 | 97:7 | 403; FRM; AF; PK; SPC; EXP; H | 82:16 | 83:2 | |

9

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 97:10 | 97:14 | 403; FRM; AF; PK; SPC; EXP; H | 82:16 | 83:2 | |
| 97:17 | 97:20 | 403; FRM; NR; LEG; EXP; CP; H | 61:6 61:10 64:10 | 61:7 62:2 64:22 | H, BSD |
| 97:23 | 97:24 | 403; FRM; NR; LEG; EXP; CP; H | 61:6 61:10 64:10 | 61:7 62:2 64:22 | H, BSD |
| 100:2 | 100:5 | 403; REL; PK; EXP; FRM; AA; CP; MIL; H | 99:3 99:8 99:16 | 99:5 99:13 99:17 | |
| 100:8 | 100:10 | 403; REL; PK; EXP; FO; KN; SPC; CP; MIL; H | 61:6 61:10 64:10 99:3 99:8 99:16 | 61:7 62:2 64:22 99:5 99:13 99:17 | H, BSD |
| 100:16 | 101:16 | 403; REL; FRM; EXP; SPC; AF; LEG; H | | | |
| 101:19 | 103:4 | 403; REL; FRM; EXP; PK; SPC; NR; AF; LEG; CP; H | 61:6 61:10 64:10 74:9 74:15 75:2 77:7 77:15 78:7 82:16 83:15 83:20 84:8 87:15 101:13 105:6 108:18 110:5 110:9 | 61:7 62:2 64:22 74:12 74:16 75:9 77:12 77:23 78:13 83:2 83:17 84:5 84:9 87:18 102:4 105:19 108:25 110:7 110:14 | H, BSD, IR, S, F |

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 104:23 | 105:5 | 403; REL; PK; FRM; SPC; EXP; LEG; CP; H | 105:6 108:18 110:5 110:9 | 105:19 108:25 110:7 110:14 | H, BSD, IR, S, F |
| 105:20 | 105:23 | 403; REL; PK; FRM; SPC; EXP; LEG; CP; H | 105:6 108:18 110:5 110:9 | 105:19 108:25 110:7 110:14 | |
| 106:1 | 106:2 | 403; REL; PK; FRM; SPC; EXP; LEG; CP; H | 78:7 105:6 108:18 110:5 110:9 | 78:13 105:19 108:25 110:7 110:14 | H, BSD, IR, S, F |
| 107:15 | 108:9 | 403; REL; PK; FRM; SPC; EXP; LEG; CP; H | 78:7 105:6 108:18 110:5 110:9 | 78:13 105:19 108:25 110:7 110:14 | H, BSD, IR, S, F |
| 108:12 | 108:17 | 403; REL; PK; FRM; SPC; EXP; LEG; CP; H | 78:7 105:6 108:18 110:5 110:9 | 78:13 105:19 108:25 110:7 110:14 | H, BSD, IR, S, F |
| 109:1 | 109:4 | 403; REL; EXP; FRM; CP; H | 105:6 108:18 110:5 110:9 | 105:19 108:25 110:7 110:14 | H, BSD, IR, S, F |
| 109:7 | 109:9 | 403; REL; EXP; FRM; SPC; CP; H | 109:16 109:23 110:9 | 109:20 110:7 110:14 | H, BSD, IR, S, F |
| 110:18 | 110:25 | 403; REL; EXP; FRM; H | | | |
| 111:3 | 111:7 | 403; REL; FRM; PK; EXP; LEG; SPC; CP; H | 105:6 108:18 110:5 110:9 | 105:19 108:25 110:7 110:14 | H, BSD, IR, S, F |
| 111:10 | 111:21 | 403; REL; PK; EXP; H | | | |
| 112:10 | 113:9 | 403; REL; PK; LEG; EXP; CP; H | 111:22 | 112:9 | |

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 114:4 | 114:7 | 403; REL; PK; LEG; EXP; H | | | |
| 115:15 | 116:2 | 403; REL; PK; EXP; SPC; NR; CP; H | 114:24 115:10 116:6 | 115:7 115:14 116:12 | INC |
| 116:15 | 116:16 | 403; REL; PK; SPC; EXP; LEG; H | | | |
| 119:12 | 119:13 | 403; REL; CP; H | 118:5 119:25 | 119:11 120:3 | |
| 119:16 | 119:22 | 403; REL; CP; H | 118:5 119:25 | 119:11 120:3 | |
| 119:25 | 120:11 | 403; REL; CP | | | |
| 120:14 | 120:16 | 403; REL; PK; SPC; CP; H | 120:17 | 121:1 | |
| 121:19 | 121:22 | 403; REL; CP; H | 121:16 121:23 | 121:18 123:4 | |
| 122:17 | 123:2 | 403; REL; CP; H | 121:16 121:23 | 121:18 123:4 | |
| 130:25 | 131:2 | 403; REL; CP; H | | | |
| 132:8 | 133:6 | 403; REL; CP; H | 134:3 134:8 | 134:5 134:24 | |
| 136:8 | 136:11 | 403; REL; CP; H | 136:12 | 136:18 | |
| 137:1 | 138:**7** | 403; REL; EXP; SPC; FRM; CP; H | 109:16 109:23 110:9 | 109:20 110:7 110:14 | BSD |
| 138:11 | 139:14 | 403; REL; EXP; SPC; FRM; NR; CP; H | 109:16 109:23 110:9 136:12 | 109:20 110:7 110:14 136:18 | H, BSD, IR, S, F |
| 142:12 | 142:15 | 403; REL; CP; H | 142:25 | 143:10 | |
| 143:6 | 144:1 | 403; REL; CO; CP; H | 109:16 109:23 110:9 136:12 | 109:20 110:7 110:14 136:18 | H, BSD, IR, S, F |

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| | | | 142:25 | 143:5 | |
| | | | 144:2 | 144:17 | |
| | | | 146:1 | 146:4 | |
| | | | 146:7 | 146:10 | |
| 147:19 | 148:3 | 403; REL; EXP; PK; SPC; FRM; CP; H | 109:16 | 109:20 | H, BSD, IR, S, F |
| | | | 109:23 | 110:7 | |
| | | | 110:9 | 110:14 | |
| | | | 136:12 | 136:18 | |
| | | | 144:2 | 144:17 | |
| | | | 146:1 | 146:4 | |
| | | | 146:7 | 146:10 | |
| 148:6 | 148:19 | 403; REL; EXP; PK; SPC; FRM; NR; CP; H | 109:16 | 109:20 | H, BSD, IR, S, F |
| | | | 109:23 | 110:7 | |
| | | | 110:9 | 110:14 | |
| | | | 136:12 | 136:18 | |
| | | | 144:2 | 144:17 | |
| | | | 146:1 | 146:4 | |
| | | | 146:7 | 146:10 | |
| 149:12 | 150:6 | 403; REL; CO; CP; H | 150:17 | 150:25 | |
| 151:1 | 151:7 | 403; REL; EXP; SPC; AF; FRM; CP; H | 109:16 | 109:20 | H, BSD, IR, S, F |
| | | | 109:23 | 110:7 | |
| | | | 110:9 | 110:14 | |
| | | | 136:12 | 136:18 | |
| | | | 144:2 | 144:17 | |
| | | | 146:1 | 146:4 | |
| | | | 146:7 | 146:10 | |
| | | | 150:17 | 150:25 | |
| | | | 151:8 | 151:11 | |
| 151:12 | 152:18 | CO; 403; REL; CP; H | 152:3 | 152:5 | |
| 153:18 | 153:24 | 403; REL; CO; EXP; SPC; FRM; CP; H | 109:16 | 109:20 | H, BSD, IR, S, F |
| | | | 109:23 | 110:7 | |
| | | | 110:9 | 110:14 | |
| | | | 136:12 | 136:18 | |
| | | | 144:2 | 144:17 | |
| | | | 146:1 | 146:4 | |
| | | | 146:7 | 146:10 | |
| | | | 152:23 | 153:1 | |
| 154:1 | 155:17 | 403; REL; SPC; FRM; CP; H | 109:16 | 109:20 | H, BSD, IR, S, F |
| | | | 109:23 | 110:7 | |
| | | | 110:9 | 110:14 | |
| | | | 136:12 | 136:18 | |

| Defendant's Designations (Acuff - 2012) | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|
| | | 144:2 | 144:17 | |
| | | 146:1 | 146:4 | |
| | | 146:7 | 146:10 | |
| | | 155:15 | 155:24 | |
| 156:9 | 158:4 | 403; REL; EXP; SPC; FRM; CO; AF; CP; H | 82:16 83:2 | 83:2 83:17 | H, BSD, IR, S, F |
| | | | 83:15 | 83:17 | |
| | | | 83:20 | 84:5 | |
| | | | 84:8 | 84:9 | |
| | | | 109:16 | 109:20 | |
| | | | 109:23 | 110:7 | |
| | | | 110:9 | 110:14 | |
| | | | 136:12 | 136:18 | |
| | | | 144:2 | 144:17 | |
| | | | 146:1 | 146:4 | |
| | | | 146:7 | 146:10 | |
| | | | 155:15 | 155:24 | |
| 158:7 | 158:19 | 403; REL; EXP; SPC; FRM; AF; CP; H | 82:16 | 83:2:18 | H, BSD, IR, S, F |
| | | | 83:15 | 83:17 | |
| | | | 83:20 | 84:5 | |
| | | | 84:8 | 84:9 | |
| | | | 109:16 | 109:20 | |
| | | | 109:23 | 110:7 | |
| | | | 110:9 | 110:14 | |
| | | | 136:12 | 136:18 | |
| | | | 144:2 | 144:17 | |
| | | | 146:1 | 146:4 | |
| | | | 146:7 | 146:10 | |
| | | | 155:15 | 155:24 | |
| 160:4 | 160:23 | 403; PK; SPC; AA; FO; FRM; CP; H | 32:19 | 32:25 | BSD, IR |
| | | | 34:10 | 34:12 | |
| | | | 34:25 | 35:6 | |
| | | | 41:6 | 41:19 | |
| | | | 48:23 | 49:15 | |
| | | | 49:18 | 50:1 | |
| | | | 120:17 | 121:7 | |
| 161:1 | 161:5 | 403; REL; PK; SPC; AA; FRM; CP; H | 41:6 | 41:19 | |
| | | | 48:23 | 49:15 | |
| | | | 49:18 | 50:1 | |
| | | | 120:17 | 121:7 | |
| 161:8 | 161:11 | 403; REL; PK; SPC; AA; FRM; H | 41:6 | 41:19 | |
| | | | 48:23 | 49:15 | |
| | | | 49:18 | 50:1 | |
| | | | 120:17 | 121:7 | |

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 161:14 | 161:14 | 403; REL; FRM; PK; SPC; EXP; IA; CP; H | 32:19 34:10 34:25 | 32:25 34:12 35:6 | BSD, IR |
| 163:2 | 165:24 | 403; REL; FRM; PK; SPC; EXP; IA; CP; H | 166:3 166:15 166:23 | 166:13 166:17 167:7 | |
| 166:18 | 168:23 | 403; REL; FRM; PK; SPC; EXP; IA; CP; H | 166:3 166:15 | 166:13 166:17 | |
| 171:2 | 171:13 | 403; REL; CO; H | | | |
| 172:10 | 172:11 | 403; REL; LEG; H | | | |
| 172:14 | 172:15 | 403; REL; PK; SPC; LEG; CP; H | 172:16 | 172:19 | |
| 172:20 | 172:25 | 403; REL; PK; EXP; LEG; SPC; FRM; H | 172:16 | 172:19 | |
| 175:18 | 176:11 | 403; REL; LEG; PK; SPC; FRM; CP; H | 105:6 108:18 110:5 110:9 | 105:19 108:25 110:7 110:14 | H, BSD, IR, S, F |
| 176:14 | 176:20 | 403; REL; LEG; PK; SPC; FRM; CP; H | 105:6 108:18 110:5 110:9 176:21 177:10 | 105:19 108:25 110:7 110:14 177:8 177:15 | H, BSD, IR, S, F |
| 187:10 | 187:12 | 403; EXP; PK; SPC; AF; FO; CP; H | 32:19 | 32:25 | BSD, IR |
| 187:13 | 187:20 | 403; EXP; PK; SPC; FRM; AF; FO; CP; H | 32:19 | 32:25 | BSD, IR |

15

| Defendant's Designations (Acuff - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 190:3 | 190:19 | 403; REL; PK; SPC; FO; CP; H | 32:19 34:10 34:25 | 32:25 34:12 35:6 | BSD, IR |
| 191:11 | 191:25 | 403; REL; H | | | |
| 195:22 | 196:19 | 403; REL; SPC; FO; FRM; CP; H | 43:15 53:5 53:10 | 43:25 53:7 53:11 | |
| 211:15 | 212:2 | AA; 403; REL; PK; SPC; AF; FO; EXP; CP; H | | | |
| 212:5 | 212:6 | AA; 403; REL; PK; SPC; AF; FO; EXP; CP; H | | | |
| 213:9 | 213:11 | 403; REL; PK; SPEC; FO; CP; HYP; H | | | |
| 213:14 | 213:17 | 403; REL; PK; SPC; FO; CP; HYP | | | |
| 213:20 | 213:21 | 403; REL; PK; SPC; FO; EXP; CP; HYP; H | | | |

16

**Witness:  Larry W. Evans - July 10, 2012**

| Defendant's Designations (Evans - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 7:9 | 7:10 | 403; H; MIL; REL | | | |
| 7:14 | 7:16 | 403; H; MIL; REL | | | |
| 9:11 | 9:22 | 403; CP; H; MIL; REL | 9:23 | 10:6 | |
| 15:20 | 16:4 | 403; CP; H; MIL; REL | 16:5 | 17:20 | INC |
| 19:12 | 19:17 | 403; H; MIL; REL | | | |
| 24:14 | 25:9 | 403; FRM; H; MIL; REL | | | |
| 26:2 | 26:5 | 403; CP; H; MIL; REL | 25:10 | 25:25 | |
| 26:15 | 26:18 | 403; CP; H; MIL; REL | 26:6 | 26:14 | |
| 29:21 | 30:18 | 403; CP; H; MIL; REL | 30:19 | 31:23 | VA, 403 |
| 32:14 | 32:20 | 403; CP; H; MIL; REL | 30:8 | 31:23 | VA, 403 |
| 57:4 | 57:6 | 403; CP; H; MIL; REL | 10:4 22:15 | 10:6 22:23 | |
| 172:23 | 173:7 | 403; CP; H; MIL; REL | 163:22 168:19 171:24 172:19 173:8 | 164:25 169:8 172:6 172:22 173:10 | BSD, IR, INC, MIL, 403 |
| 255:1 | 255:21 | 403; H; MIL; REL | | | |
| 256:20 | 260:3 | 403; CP; EXP; FRM; H; MIL; NR; REL | 263:6 263:20 268:5 | 263:16 264:11 268:8 | IR, 403, MIL, F, S |
| 261:12 | 262:9 | 403; CP; H; MIL; REL | 262:10 | 263:5 | F, IR, 403 |

**Witness: Joseph C. McAlexander – July 17, 2012**

| Defendant's Designations (McAlexander - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 7:8 | 7:13 | REL; MIL | | | |
| 9:20 | 10:4 | REL; FRM;MIL | 10:5 10:17 | 10:7 10:20 | |
| 10:21 | 11:8 | REL; MIL; H | 23:18 25:5 25:9 | 23:20 25:8 25:11 | |
| 16:10 | 16:12 | REL; MIL; H | 15:23 16:13 | 16:9 16:15 | |
| 18:25 | 19:3 | REL; MIL; H | 19:4 | 20:1 | |
| 26:8 | 26:17 | REL; MIL; H | | | |
| 27:7 | 27:13 | REL; MIL; H | | | |
| 27:17 | 27:25 | REL; MIL;H | | | |
| 28:14 | 28:18 | REL; MIL; H; FRM; LEG; 403 | 28:24 33:9 | 29:5 34:14 | |
| 34:22 | 34:24 | REL; MIL: H | | | |
| 39:4 | 39:13 | REL; MIL; H: FRM; | | | |
| 40:14 | 40:15 | REL; MIL: H | | | |
| 40:17 | 40:19 | REL; MIL; H | 40:20 | 40:24 | |
| 40:25 | 41:1 | REL; MIL; H; NR; 403 | | | |
| 41:3 | 41:12 | REL; MIL; H; NR; 403 | | | |
| 41:15 | 42:21 | REL; MIL; H; NR: 403; KN | | | |
| 42:23 | 43:7 | REL; MIL; H; 403; FRM; KN | | | |
| 43:9 | 44:19 | REL; MIL; H; 403; FRM; LEG; KN; SPC | 51:12 | 53:4 | |
| 44:22 | 45:13 | REL; MIL; H; 403; FRM; LEG | 51:12 | 53:4 | |

---

| Defendant's Designations (McAlexander - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 45:15 | 46:11 | REL; MIL; H; 403; FRM; LEG | | | |
| 47:15 | 49:12 | REL; MIL; H; 403; FRM; LEG; CMP | 46:12 | 47:14 | |
| 49:14 | 49:17 | FRM | | | |
| 49:19 | 50:7 | REL; MIL; 403; H; FRM; LEG | | | |
| 50:10 | 50:17 | REL; MIL; 403; H; FRM; KN | | | |
| 50:19 | 51:1 | REL; MIL; 403; H; FRM; KN | | | |
| 51:3 | 51:11 | REL; MIL; 403; H; FRM; KN | | | |
| 53:5 | 53:7 | FRM | | | |
| 53:9 | 53:18 | REL; MIL; 403; H; FRM; LEG | | | |
| 53:20 | 53:25 | REL; MIL; 403; H; FRM; LEG | | | |
| 54:1 | 54:8 | REL; MIL; 403; H; FRM; LEG; KN | | | |
| 54:10 | 55:20 | REL; MIL; 403; H; FRM; LEG; HYP; KN; SPC | 51:12 | 53:4 | |
| 55:22 | 57:2 | REL; MIL; 403; H; FRM; LEG; HYP; KN; SPC | 51:12 | 53:4 | |
| 57:4 | 57:16 | REL; MIL; 403; H; | 51:12 57:19 | 53:4 58:6 | S, F |

19

| Defendant's Designations (McAlexander - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| | | FRM; LEG; HYP; KN; SPC | 58:21 | 59:4 | |
| 57:18 | 57:18 | REL; MIL; 403; H; FRM; LEG; HYP; KN; SPC | 51:12 57:19 58:21 | 53:4 58:6 59:4 | S, F |
| 58:7 | 58:14 | REL; MIL; 403; H; FRM; LEG; HYP; KN; SPC | 51:12 57:19 58:21 | 53:4 58:6 59:4 | S, F |
| 58:16 | 58:20 | REL; MIL; 403; H; FRM; LEG; HYP; KN; SPC | 51:12 57:19 58:21 | 53:4 58:6 59:4 | S, F |
| 59:5 | 59:25 | REL; MIL; 403; H; FRM; LEG; CMP | 60:1 | 63:1 | NR |
| 63:2 | 63:10 | REL; MIL; CMP; H | 63:11 | 63:21 | NR |
| 64:12 | 64:15 | REL; MIL; 403; FRM; H | | | |
| 66:2 | 66:7 | REL; MIL; 403; LEG; H; FRM | | | |
| 66:9 | 66:13 | REL; MIL; 403; LEG; H; FRM | | | |
| 66:15 | 66:15 | REL; MIL; 403; LEG; H | | | |
| 66:18 | 66:20 | REL; MIL; FRM | | | |
| 66:22 | 66:22 | REL; MIL; 403; LEG; H | | | |
| 66:23 | 67:2 | REL; MIL; FRM | | | |

| Defendant's Designations (McAlexander - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 67:7 | 67:14 | REL; MIL; H; 403; LEG; HYP; CMP; FRM | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, IR |
| 69:6 | 69:10 | REL; MIL; FRM | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, INC, IR |
| 69:12 | 69:13 | REL; MIL; FRM; H; 403; LEG; HYP; CMP | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, INC, IR |
| 70:4 | 70:6 | REL; MIL; FRM | | | |
| 70:8 | 70:12 | REL; MIL; FRM; H; 403; LEG; HYP; CMP | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, INC,  IR |
| 73:17 | 74:4 | REL; MIL; FRM; H; 403; LEG; CMP | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, INC, IR |

| Defendant's Designations (McAlexander - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 74:13 | 74:16 | REL; MIL; FRM; H; 403; LEG; CMP; SPC | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, INC, IR |
| 74:18 | 74:22 | REL; MIL; FRM; H; 403; LEG; CMP; SPC | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, INC, IR |
| 74:24 | 75:4 | REL; MIL; FRM; H; 403; LEG; CMP; SPC; HYP | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, INC, IR |
| 75:6 | 75:9 | REL; MIL; FRM; H; 403; LEG; CMP; SPC; HYP | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, INC, IR |
| 77:2 | 79:2 | REL; MIL; FRM; H; 403; LEG; CMP; SPC; HYP; NR | 67:15 69:14 70:18 71:12 73:8 74:6 75:10 76:4 | 69:5 70:12 71:5 72:19 73:16 74:11 75:20 77:1 | LC, NR, BSD, INC, IR |

| Defendant's Designations (McAlexander - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 107:16 | 107:19 | REL; MIL; 403; H; CMP | 96:2 102:8 108:5 110:6 115:24 | 96:14 104:20 109:7 111:12 116:2 | BSD, IR |
| 116:10 | 116:13 | REL; MIL | | | |
| 118:9 | 118:25 | REL; MIL; 403; H; CMP; FRM; SPC; KN | 117:16 | 118:8 | |
| 121:14 | 121:21 | REL; MIL | | | |
| 122:1 | 122:2 | REL; MIL | | | |
| 122:7 | 122:9 | REL; MIL; H; SPC; CMP; 403 | 122:10 | 122:14 | |
| 123:20 | 124:3 | REL; MIL; 403; H | | | |
| 129:22 | 130:4 | REL; MIL; 403; H; CMP | 129:13 130:12 136:14 142:18 143:15 | 129:21 130:19 141:17 142:23 143:23 | NR, BSD |
| 146:6 | 146:14 | REL; MIL; 403 | | | |
| 153:14 | 153:20 | REL; MIL; HYP; 403; H; CMP | 153:21 158:2 | 154:20 158:10 | NR, BSD, IR |
| 159:7 | 159:14 | REL; MIL; 403; SPC; KN; FRM; H | | | |
| 159:16 | 159:19 | REL; MIL; 403; SPC; KN; FRM: H | | | |
| 159:21 | 160:4 | REL; MIL; 403; SPC; KN; FRM; H | | | |
| 160:6 | 160:10 | REL; MIL; 403; SPC; KN; FRM; H | | | |
| 160:12 | 160:15 | REL; MIL; 403; SPC; KN; FRM; H | | | |

23

| Defendant's Designations (McAlexander - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 160:17 | 160:24 | REL; MIL; 403; SPC; KN; FRM; H | | | |
| 178:8 | 180:7 | REL; MIL; 403; H; CMP; LEG | 180:8 181:8 184:8 | 180:16 182:18 184:20 | BSD, IR |
| 180:17 | 181:7 | REL; MIL; 403; H; CMP; LEG | 180:8 181:8 184:8 | 180:16 182:18 184:20 | BSD, IR |
| 202:1 | 202:14 | REL; MIL; 403; H; CMP; LEG; FRM | | | |
| 203:6 | 203:9 | REL; MIL; 403; H; CMP; LEG; FRM | 203:10 206:3 208:23 | 205:21 207:25 209:18 | BSD, IR |
| 205:22 | 206:2 | REL; MIL; 403; H; CMP; LEG; FRM | 203:10 206:3 208:23 | 205:21 207:25 209:18 | BSD, IR |
| 208:1 | 208:7 | REL; MIL; 403; H; CMP; LEG; FRM | 203:10 206:3 208:23 | 205:21 207:25 209:18 | BSD, IR |
| 210:17 | 211:3 | REL; MIL; 403; H; CMP; LEG; FRM | 203:10 206:3 208:23 210:4 212:15 | 205:21 207:25 209:18 210:8 213:13 | BSD, IR |
| 226:20 | 229:3 | REL; MIL; 403; H; CMP; LEG; FRM | 229:4 | 232:16 | |
| 232:17 | 234:16 | REL; MIL; 403; H; CMP; LEG; FRM | 229:4 | 232:16 | BSD, IR |
| 234:19 | 235:1 | REL; MIL; 403; H; CMP; LEG; FRM | | | |

| Defendant's Designations (McAlexander - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 235:23 | 237:12 | REL; MIL; 403; H; CMP; LEG; FRM | 237:17 | 246:22 | |
| 247:2 | 249:2 | REL; MIL; 403; H; CMP; LEG; FRM | 249:20 257:18 | 256:5 257:23 | |
| 258:14 | 260:1 | REL; MIL; 403; H; CMP; LEG; FRM | 249:20 257:18 260:2 | 256:5 257:23 260:16 | |
| 260:17 | 261:10 | REL; MIL; 403; H; CMP; LEG; FRM | 260:2 261:11 262:13 | 260:16 262:6 262:18 | |
| 262:7 | 262:12 | REL; MIL; 403; H; CMP; LEG; FRM | 260:2 261:11 262:13 | 260:16 262:6 262:18 | |
| 264:4 | 264:6 | REL; MIL; 403; KN; SPC; | | | |
| 264:12 | 264:14 | REL; MIL; 403; KN; SPC; LEG | | | |

25

**Witness: Dzung Joseph Tran, Volume I - December 14, 2011**

| Defendant's Designations (Tran Vol. I - 2011) | | Plaintiff's[1] Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 6:14 | 6:15 | | | | |
| 6:20 | 6:21 | | | | |
| 6:25 | 7:4 | | | | |
| 8:19 | 8:20 | | | | |
| 9:3 | 9:5 | | | | |
| 9:8 | 9:13 | | | | |
| 12:3 | 12:8 | REL; 403; MIL | | | |
| 12:20 | 12:24 | REL; 403; MIL | | | |
| 14:25 | 15:19 | REL; 403; MIL | | | |
| 17:18 | 18:6 | REL; 403; MIL | | | |
| 19:11 | 19:19 | REL; 403; MIL | | | |
| 22:17 | 22:22 | REL; 403; MIL | 22:23 | 23:3 | NR; IR; 403 |
| 23:25 | 24:4 | | | | |
| 37:15 | 37:15 | | | | |
| 37:19 | 39:13 | | | | |
| 40:2 | 41:12 | | | | |
| 41:22 | 42:18 | | | | |
| 63:1 | 63:8 | | 64:16 64:23 | 64:18 65:1 | BSD; INC; IR; 403 |
| 75:11 | 75:17 | | | | |
| 77:21 | 78:1 | | | | |
| 78:10 | 78:25 | | | | |
| 80:18 | 82:5 | REL; 403; MIL | 80:2 84:12 | 80:17 84:23 | BSD |
| 82:14 | 82:20 | | | | |
| 83:10 | 83:24 | | | | |
| 84:12 | 84:14 | | | | |
| 84:24 | 85:25 | REL; 403; MIL | | | |
| 89:3 | 89:12 | | | | |

---

[1] AVM objects to the playing by video of any testimony of Joseph Tran.

| Defendant's Designations (Tran Vol. I - 2011) | | Plaintiff's[1] Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 91:9 | 92:3 | REL; 403; MIL | | | |
| 94:5 | 95:7 | REL; 403; MIL | | | |
| 95:12 | 95:19 | | | | |
| 96:10 | 96:20 | | 96:23 97:2 97:17 | 96:24 97:3 97:22 | BSD; INC; IR; 403 |
| 98:3 | 98:5 | | | | |
| 98:7 | 98:8 | | | | |
| 98:10 | 98:24 | | | | |
| 99:20 | 99:25 | | 102:21 | 102:24 | BSD |
| 103:2 | 103:20 | | 104:6 | 104:8 | BSD; IR; 403 |
| 107:17 | 110:4 | | | | |
| 110:9 | 110:20 | | 110:21 | 111:19 | BSD |
| 115:8 | 115:20 | | | | |
| 116:24 | 118:13 | REL; 403; MIL | | | |
| 119:4 | 120:2 | | | | |
| 124:4 | 126:16 | REL; 403; MIL | | | |
| 127:2 | 127:9 | | | | |
| 128:11 | 129:12 | | | | |
| 129:19 | 130:13 | REL; 403; MIL | | | |
| 130:22 | 131:2 | REL; 403; MIL | | | |
| 131:6 | 131:9 | REL; 403; MIL | | | |
| 132:12 | 132:19 | REL; 403; MIL | | | |
| 132:23 | 133:8 | REL; 403; MIL; 403; | | | |
| 133:14 | 133:19 | REL; 403; MIL | | | |
| 133:24 | 134:4 | REL; 403; MIL | | | |
| 135:3 | 135:9 | REL; 403; MIL | | | |
| 136:3 | 136:5 | REL; 403; MIL | 136:7 | 136:17 | INC |

| Defendant's Designations (Tran Vol. I - 2011) | | Plaintiff's[1] Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 137:2 | 137:13 | REL; 403; MIL | | | |
| 138:2 | 139:14 | REL; 403; MIL | | | |
| 141:6 | 141:9 | REL; 403; MIL | 141:10 | 142:9 | |
| 142:10 | 143:9 | REL; 403; MIL | | | |
| 144:5 | 144:11 | REL; 403; MIL | | | |
| 146:15 | 147:23 | REL; SET; 403; MIL | | | |
| 148:5 | 148:11 | REL; SET; 403; MIL | | | |
| 148:17 | 148:24 | REL; SET; 403; MIL | 148:25 | 149:17 | BSD |
| 154:9 | 155:24 | REL; SET; 403; MIL | | | |
| 156:1 | 157:23 | REL; SET; 403; MIL | | | |
| 161:3 | 161:9 | REL; SET; 403; MIL | | | |
| 161:13 | 162:1 | REL; SET; 403; MIL | | | |
| 164:5 | 164:21 | REL; SET; 403; MIL | 164:22 | 165:1 | INC; H; IR; 403; MIL |
| 165:4 | 165:6 | REL; SET; 403; MIL | 165:7 166:6 | 165:10 166:8 | BSD |
| 171:24 | 172:6 | REL; SET; 403; MIL | 172:7 | 172:13 | BSD; INC; MIL |
| 172:13 | 173:3 | REL; SET; 403; MIL | 173:4 | 173:21 | H; MIL |
| 173:22 | 175:18 | REL; SET; 403; MIL | 175:19 | 176:19 | H; MIL |
| 176:20 | 176:22 | REL; SET; 403; MIL; | | | |
| 176:25 | 177:11 | REL; SET; 403; MIL | 177:12 | 178:2 | ARG |
| 185:11 | 185:14 | REL; SET; 403; MIL | | | |
| 185:16 | 186:12 | REL; SET; 403; MIL | 186:12 | 187:19 | INC; H; MIL; ARG |

28

| Defendant's Designations (Tran Vol. I - 2011) | | Plaintiff's[1] Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 188:4 | 188:16 | REL; SET; 403; MIL | | | |
| 190:13 | 190:18 | REL; SET; 403; MIL | 190:5 190:19 | 190:12 190:24 | SPEC; H; BSD; MIL |
| 192:13 | 193:1 | REL; SET; 403; MIL | 197:3 | 197:25 | SPEC; H; BSD; MIL |
| 199:22 | 201:9 | REL; 403 | 201:20 | 201:21 | BSD; IR; 403 |
| 202:17 | 203:6 | REL; 403 | 202:1 204:6 | 202:15 206:1 | BSD; IR; 403; H; SPEC; MIL |
| 206:20 | 207:4 | REL; 403 | 208:2 | 209:1 | BSD; INC; MIL |
| 211:7 | 211:12 | REL; 403 | | | |
| 213:18 | 214:8 | REL; 403 | | | |
| 215:10 | 216:5 | REL; 403 | 215:4 | 215:9 | BSD |
| 216:23 | 217:5 | REL; 403 | 217:3 | 217:9 | BSD; IR; 403 |
| 220:4 | 220:14 | REL; 403 | | | |
| 220:25 | 221:4 | REL; 403 | | | |
| 221:13 | 221:15 | REL; 403 | | | |
| 221:21 | 222:3 | REL; 403 | | | |
| 223:13 | 223:17 | REL; 403 | | | |
| 223:19 | 224:5 | REL; 403 | | | |
| 225:19 | 226:2 | REL; 403 | | | |
| 228:13 | 228:13 | | | | |
| 229:12 | 229:16 | REL; 403 | | | |
| 233:15 | 233:24 | | | | |
| 234:10 | 234:15 | REL; 403 | | | |
| 234:22 | 235:19 | REL; 403 | 235:20 | 237:1 | |
| 237:2 | 237:22 | REL; 403 | 237:23 | 239:6 | BSD |
| 243:8 | 244:17 | | | | |
| 246:21 | 247:5 | REL; 403 | | | |
| 250:1 | 250:5 | REL; 403 | 250:6 | 250:20 | |
| 250:21 | 250:25 | REL; 403 | | | |
| 252:11 | 252:20 | REL; 403 | 255:8 | 256:4 | BSD |
| 256:5 | 256:13 | REL; 403 | | | |
| 256:15 | 256:21 | REL; 403 | | | |
| 257:5 | 257:23 | REL; 403 | | | |
| 258:5 | 259:18 | REL; 403 | 259:19 | 259:23 | |
| 259:24 | 260:2 | REL; 403 | 284:20 285:19 295:25 | 285:11 286:13 296:13 | BSD; H; SPEC; IR; 403; LC; MIL; ARG |
| 296:24 | 297:24 | REL; 403; MIL | | | |

| Defendant's Designations (Tran Vol. I - 2011) | | Plaintiff's[1] Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 299:17 | 299:17 | REL; 403; MIL | | | |
| 299:22 | 301:6 | REL; 403; MIL | | | |
| 301:20 | 302:12 | REL; 403; MIL | | | |
| 309:12 | 309:14 | REL; 403; MIL | | | |
| 312:1 | 312:7 | REL; 403; MIL | | | |
| 312:10 | 312:12 | | | | |
| 312:15 | 312:16 | | | | |
| 312:19 | 312:20 | | | | |
| 314:2 | 314:10 | REL; 403; MIL | | | |
| 315:3 | 316:2 | REL; 403; MIL | | | |
| 322:9 | 323:3 | REL; 403; MIL | | | |
| 323:9 | 323:13 | REL; 403; MIL | | | |
| 323:17 | 325:12 | REL; 403; MIL | | | |
| 325:21 | 326:16 | REL; 403; MIL | | | |
| 327:5 | 327:10 | REL; 403; MIL | | | |
| 328:5 | 328:11 | REL; 403; MIL | | | |
| 328:18 | 328:23 | REL; 403; MIL | 329:3 | 330:1 | BSD; H; SPEC; IR; 403 |
| 330:2 | 330:9 | REL; 403; MIL | | | |
| 333:10 | 333:21 | REL; 403; MIL | | | |
| 338:19 | 339:10 | REL; 403; MIL | | | |
| 340:13 | 340:21 | REL; 403; MIL | 342:16 | 342:21 | F; IR; 403; MIL |
| 345:2 | 345:11 | REL; 403; MIL | 345:12 | 345:15 | F; IR; 403; MIL |

**Witness: Dzung Joseph Tran, Volume III - March 28, 2012**

| Defendant's Designations (Tran Vol. III – 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 373:21 | 373:22 | | | | |
| 373:25 | 375:21 | | | | |
| 376:10 | 377:6 | | | | |
| 377:24 | 378:11 | | | | |
| 379:9 | 379:12 | | 380:3 380:15 381:4 | 380:6 380:20 381:8 | BSD; VA; 403 |
| 381:9 | 381:12 | | 383:12 | 384:22 | BSD; INC |
| 384:21 | 384:22 | | | | |
| 384:24 | 385:2 | | 385:3 | 385:24 | INC |
| 385:5 | 385:7 | | | | |
| 385:9 | 385:12 | | | | |
| 385:15 | 385:16 | LEGAL | 386:22 | 387:15 | BSD; 403; LC |
| 387:16 | 388:2 | LEGAL | 388:3 | 389:1 | NR; ARG |
| 389:2 | 389:4 | | | | |
| 389:11 | 389:15 | | | | |
| 389:25 | 390:3 | | 390:4 390:13 391:9 | 390:12 391:1 391:20 | BSD; NR; LC; SPEC |
| 392:6 | 392:20 | | 392:20 | 392:25 | INC |
| 392:23 | 393:5 | | 393:5 | 400:20 | BSD; INC; NR; LC; SPEC |
| 393:15 | 393:20 | | | | |
| 394:11 | 394:16 | | | | |
| 397:10 | 397:16 | | | | |
| 398:16 | 398:24 | | | | |
| 401:3 | 401:25 | | 402:1 | 402:15 | NR; VA |
| 402:16 | 403:17 | | 403:18 | 404:14 | LC |
| 404:15 | 405:2 | | 405:3 | 405:15 | BSD |
| 405:16 | 406:3 | LEGAL | | | |
| 406:6 | 406:11 | | 406:12 | 408:2 | BSD |
| 408:3 | 408:10 | | 408:10 | 411:11 | ARG |
| 408:23 | 409:22 | | | | |
| 412:15 | 413:15 | | | | |
| 413:17 | 414:6 | | 414:14 | 415:22 | INC |
| 422:18 | 423:23 | | 417:19 419:18 | 418:3 420:14 | |
| 423:25 | 424:15 | | 421:23 | 422:7 | INC |

| Defendant's Designations (Tran Vol. III – 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 426:23 | 427:20 | | 423:11 | 423:17 | |
| 431:2 | 431:4 | | 430:6 | 431:1 | |
| 431:6 | 431:13 | | | | |
| 432:17 | 433:8 | | 432:2 | 433:24 | INC |
| 434:11 | 434:23 | | 434:24 | 435:6 | |
| 436:19 | 436:22 | | | | |
| 436:24 | 436:25 | | | | |
| 439:14 | 439:24 | | | | |
| 445:18 | 446:20 | | 443:18 446:21 | 444:17 447:25 | BSD; INC; SPEC; LC; NR |
| 447:18 | 448:11 | | 448:11 | 458:7 | BSD; INC; ARG; NR; SPEC; LC |
| 449:2 | 449:14 | | | | |
| 450:12 | 451:13 | | | | |
| 453:9 | 453:13 | | | | |
| 457:6 | 457:11 | | | | |
| 463:1 | 463:4 | | 463:4 | 467:24 | BSD; INC; ARG |
| 464:19 | 464:23 | | | | |
| 467:24 | 468:19 | 403; REL | | | |
| 469:12 | 469:17 | 403; REL | | | |
| 469:19 | 469:19 | 403; REL | 469:20 | 470:21 | BSD; NR; LC |
| 476:24 | 477:8 | 403; REL; LEGAL | 476:11 | 476:23 | BSD; NR; SPEC |
| 477:14 | 478:8 | 403; REL; LEGAL | 477:14 | 482:25 | ARG; SPEC; MIL |
| 481:17 | 482:1 | 403; REL; LEGAL | | | |
| 482:22 | 482:25 | 403; REL; LEGAL | 483:7 | 490:6 | H; SPEC; MIL; ARG |
| 483:7 | 483:21 | 403; REL; LEGAL | | | |
| 484:6 | 484:13 | 403; REL; LEGAL | | | |
| 484:23 | 485:6 | 403; REL; LEGAL | | | |
| 487:6 | 487:11 | 403; REL; LEGAL | | | |
| 489:23 | 490:5 | 403; REL; LEGAL | | | |

| Defendant's Designations (Tran Vol. III – 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 490:7 | 490:18 | 403; REL; LEGAL | 493:7 | 493:24 | NR; SPEC; DOC; INC |
| 495:17 | 495:19 | 403; REL; LEGAL | | | |
| 495:21 | 495:22 | 403; REL; LEGAL | | | |
| 498:19 | 498:25 | 403; REL; LEGAL | | | |
| 510:25 | 511:7 | 403; REL; LEGAL | | | |
| 550:20 | 551:17 | 403; REL | | | |
| 558:12 | 558:20 | 403; REL | | | |
| 559:7 | 560:9 | 403; REL | | | |
| 561:10 | 561:21 | 403; REL | | | |
| 562:5 | 562:19 | 403; REL | | | |
| 565:18 | 566:15 | 403; REL | | | |
| 566:19 | 566:24 | 403; REL | | | |
| 567:10 | 567:18 | 403; REL | | | |
| 567:22 | 568:13 | 403; REL | | | |
| 568:18 | 569:13 | 403; REL | | | |
| 570:4 | 570:10 | 403; REL | | | |
| 570:19 | 571:2 | 403; REL | | | |
| 571:12 | 571:22 | 403; REL | 571:2 | 573:24 | INC |
| 574:1 | 574:17 | 403; REL | | | |
| 578:4 | 578:11 | 403; REL | | | |
| 578:19 | 578:24 | 403; REL | | | |
| 579:22 | 580:11 | 403; REL | | | |
| 580:13 | 580:15 | 403; REL | | | |
| 580:23 | 581:15 | 403; REL | | | |
| 582:20 | 583:1 | 403; REL | 583:2 | 583:4 | |
| 609:20 | 611:4 | | 613:7 | 615:25 | NR; ARG |
| 615:7 | 616:1 | | | | |
| 616:6 | 617:18 | | 617:19 | 618:10 | NR |
| 618:11 | 619:3 | | 619:4 | 619:23 | NR |
| 619:24 | 621:5 | | | | |
| 621:18 | 621:24 | | 621:6-17 | 621:17 | NR |
| 622:10 | 622:25 | | | | |
| 623:9 | 623:15 | | 623:19 | 625:22 | |
| 626:14 | 626:22 | | | | |

| Defendant's Designations (Tran Vol. III – 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 627:8 | 627:11 | | 627:18 | 628:8 | |
| 628:17 | 628:25 | | 629:1 | 629:21 | |
| 648:24 | 649:1 | | 648:1 | 648:23 | LC |
| 650:10 | 650:12 | | 650:13 | 651:15 | NR; LC |
| 652:3 | 652:7 | | | | |
| 653:21 | 653:25 | | 653:10 653:1 656:9 658:1 | 653:20 655:1 656:9 658:14 | NR; LC; SPEC; INC; ARG |
| 662:23 | 663:4 | 403; REL | 664:4 | 661:1 | INC; BSD; NR |
| 665:14 | 667:22 | 403; REL | | | |
| 676:2 | 676:15 | 403; REL | | | |
| 676:17 | 677:17 | 403; REL | | | |
| 679:8 | 679:12 | | 677:23 | 678:19 | NR; INC |
| 680:7 | 680:25 | 403; REL | 679:22 | 680:5 | NR; SPEC |
| 681:2 | 681:3 | 403; REL | 680:22 | 681:4 | INC; ARG |
| 681:22 | 682:20 | 403; REL | | | |
| 682:25 | 683:3 | 403; REL | | | |
| 683:18 | 683:20 | 403; REL | | | |
| 685:1 | 685:16 | 403; REL | | | |
| 686:2 | 686:11 | 403; REL | 686:23 | 687:7 | SPEC; LC; INC |
| 689:16 | 689:23 | 403; REL | | | |
| 691:4 | 691:10 | 403; REL | | | |
| 691:19 | 691:24 | 403; REL | | | |
| 692:1 | 692:11 | 403; REL | | | |
| 692:18 | 692:21 | 403; REL | | | |
| 693:3 | 693:6 | 403; REL | | | |

**Witness: Dzung Joseph Tran, Volume I - June 9, 2016**

| Defendant's Designations (Tran Vol. I – 2016) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 5:18 | 5:21 | | | | |
| 5:25 | 6:2 | | | | |
| 6:5 | 6:9 | | | | |
| 10:12 | 10:17 | | | | |
| 11:1 | 11:4 | | | | |
| 11:9 | 11:11 | | | | |
| 31:6 | 31:23 | 403; REL | | | |
| 35:17 | 35:18 | 403; REL | | | |
| 35:21 | 35:24 | 403; REL | | | |
| 36:2 | 36:8 | 403; REL | | | |
| 41:15 | 42:2 | 403; REL | 42:12 42:23 61:5 62:17 62:25 | 42:19 43:13 61:9 62:21 63:18 | INC |
| 98:3 | 98:10 | 403; REL | | | |
| 99:17 | 99:18 | 403; REL | | | |
| 99:20 | 99:20 | 403; REL | | | |
| 99:24 | 100:4 | 403; REL | | | |
| 104:23 | 104:25 | 403; REL | | | |
| 126:13 | 126:20 | | | | |
| 127:1 | 127:9 | 403; REL | 149:11 | 149:20 | BSD |
| 149:3 | 149:10 | 403; REL | | | |
| 149:21 | 150:8 | 403; REL | 150:9 152:25 153:23 | 150:15 153:5 154:1 | INC |
| 153:6 | 153:16 | 403; REL | 155:22 | 155:23 | |
| 155:13 | 155:18 | 403; REL | 156:14 | 156:14 | |
| 156:8 | 156:13 | | | | |
| 157:12 | 157:15 | 403; REL | | | |
| 158:21 | 158:24 | 403; REL | | | |
| 159:3 | 159:9 | 403; REL | 168:3 168:22 | 168:17 169:5 | VA; H; INC |
| 161:15 | 162:1 | | | | |
| 166:11 | 166:25 | | | | |
| 167:11 | 167:23 | | | | |
| 168:18 | 168:21 | 403; REL | 169:6 169:20 | 169:19 170:7 | VA; H; INC |

| Defendant's Designations (Tran Vol. I – 2016) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 170:12 | 170:15 | | | | |
| 170:19 | 171:16 | 403; REL | 174:18 175:22 195:5 196:18 218:24 | 175:21 176:14 196:2 198:15 219:14 | BSD; H; NR; VA; SPEC; MIL; LC; INC; ARG |
| 177:20 | 177:25 | | | | |
| 179:20 | 180:2 | | | | |
| 180:13 | 180:16 | | | | |
| 185:14 | 185:16 | | | | |
| 186:22 | 187:2 | | | | |
| 187:9 | 187:10 | | | | |
| 187:12 | 187:25 | | | | |
| 189:8 | 189:10 | | | | |
| 189:12 | 189:13 | | | | |
| 189:15 | 189:23 | | | | |
| 194:22 | 195:4 | | | | |
| 218:17 | 218:23 | 403; REL | 219:15 221:8 235:19 243:3 | 221:7 222:6 236:19 243:23 | BSD; H; SPEC; NR; INC; ARG |
| 236:10 | 236:14 | | | | |
| 241:19 | 241:24 | | | | |
| 242:22 | 243:2 | | | | |
| 243:24 | 244:12 | | | | |
| 244:15 | 244:16 | | | | |
| 244:18 | 244:22 | | | | |
| 247:15 | 248:1 | 403; REL | | | |
| 248:11 | 248:13 | | | | |
| 249:17 | 250:19 | 403; REL | 251:10 | 251:12 | INC |
| 259:11 | 259:20 | 403; REL | 268:21 | 268:24 | NR; SPEC; F |
| 268:18 | 268:21 | | | | |
| 269:8 | 269:18 | | | | |
| 287:15 | 287:21 | 403; REL | | | |

36

**Witness: Dzung Joseph Tran, Volume 2 - June 10, 2016**

| Defendant's Designations (Tran Vol. 2 – 2016) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 11:3 | 11:5 | | 11:6 | 11:13 | VA |
| 16:17 | 16:24 | 403; REL | 16:25 17:23 | 17:10 18:17 | INC |
| 22:7 | 22:17 | | 22:21 | 23:5 | NR; SPEC |
| 33:8 | 34:6 | 403; REL | 34:7 37:24 | 35:4 38:12 | |
| 41:7 | 41:8 | | | | |
| 41:10 | 41:13 | | | | |
| 46:15 | 47:5 | | | | |
| 48:24 | 49:8 | | | | |
| 49:17 | 49:22 | | | | |
| 50:24 | 51:22 | | 50:3 51:23 56:20 | 50:16 53:4 58:9 | INC |
| 59:24 | 60:13 | | 58:22 61:6 | 59:21 61:12 | INC |
| 63:23 | 64:6 | | | | |
| 64:18 | 65:10 | | | | |
| 65:17 | 66:7 | | | | |
| 92:18 | 93:1 | | 91:16 93:2 | 92:17 93:22 | NR; VA; INC; ARG |
| 97:15 | 97:21 | | 96:4 | 97:14 | |
| 107:13 | 108:23 | | 106:25 | 107:12 | |
| 117:22 | 118:15 | | 118:16 | 120:24 | |
| 157:14 | 158:18 | | 185:19 | 159:1 | (Assume designation should be 158:19-159:1, otherwise INC) NR |
| 159:16 | 159:20 | | | | |
| 159:22 | 160:18 | | | | |
| 162:3 | 162:16 | 403; REL; LEG | 163:1 | 163:6 | |
| 163:7 | 163:11 | | | | |
| 170:6 | 170:21 | | 170:22 | 172:6 | |
| 172:19 | 174:8 | | 172:13 174:11 175:14 | 172:18 175:13 177:3 | INC |
| 180:10 | 180:11 | | | | |

| Defendant's Designations (Tran Vol. 2 – 2016) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 180:13 | 181:14 | 403; REL; LEG | 181:25 187:5 | 184:7 188:10 | |
| 189:8 | 189:18 | 403; REL; LEG; MIL | | | |
| 190:5 | 190:6 | 403; REL; LEG; MIL | | | |
| 190:10 | 191:11 | 403; REL; LEG; MIL | | | |
| 193:3 | 193:4 | | | | |
| 193:6 | 193:8 | | | | |
| 193:15 | 194:7 | 403; REL; LEG | 194:7 195:25 | 195:21 197:12 | INC; LC |
| 195:22 | 195:24 | 403; REL; LEG | | | |
| 232:11 | 232:19 | 403; REL; LEG | 232:20 | 232:13 | INC |
| 291:2 | 291:3 | | 292:22 | 295:3 | LC |
| 291:5 | 291:14 | | | | |
| 292:5 | 292:21 | 403; REL; LEG | 295:16 | 295:22 | LC; NR |
| 295:2 | 295:10 | 403; REL; LEG | | | |
| 296:3 | 296:9 | 403; REL; LEG | 297:24 | 298:7 | INC |
| 297:6 | 297:24 | 403; REL; LEG | 299:3 | 299:9 | |
| 301:1 | 301:6 | 403; REL; LEG | 300:22 301:7 | 300:25 301:23 | LC |
| 301:24 | 302:8 | 403; REL; LEG | 302:9 303:2 303:12 304:11 306:4 306:25 | 302:19 303:9 303:18 304:18 306:7 307:9 | INC; VA; H; NR |

**Witness:  Robert R. Weaver – February 29, 2012**

| Defendant's Designations (Weaver - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 7:13 | 7:14 | | | | |
| 13:12 | 14:8 | REL | 13:9 | 13:11 | INC |
| 17:19 | 17:20 | CP; REL | 17:21 | 17:25 | IR, 403 |
| 18:1 | 18:4 | CP; REL | 21:6 | 21:18 | |
| 28:18 | 28:20 | CP; LEG; REL; 403 | | | |
| 40:21 | 41:13 | SPC; H; CP; REL | 41:14 | 42:4 | H |
| 42:5 | 42:17 | CP; REL; 403 | | | |
| 47:23 | 48:18 | H; CP; REL; 403 | | | |
| 49:5 | 49:25 | H; CP; REL; 403 | | | |
| 51:4 | 51:10 | CP; REL; 403 | | | |
| 51:13 | 51:20 | SPC; REL; 403 | | | |
| 52:5 | 52:22 | REL; 403; CP | | | |
| 56:19 | 56:24 | REL; 403; CP; KNL SPC | 61:1 63:10 68:12 70:5 | 61:17 64:14 69:11 70:9 | BSD, FORM, F, H, S |
| 88:1 | 88:25 | REL; 403; CP; MIL; SPC; KN | | | |
| 90:21 | 91:15 | REL; 403; CP; MIL; SPC; KN; LEG | 91:16 | 91:19 | |
| 91:20 | 92:2 | REL; 403; CP; MIL | 91:21 | 93:4 | CM, INC |
| 92:3 | 92:20 | REL; 403; CP; MIL; SPC; KN; LEG | | | |
| 93:5 | 93:13 | REL; 403; CP; MIL | | | |

| Defendant's Designations (Weaver - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 97:2 | 97:6 | REL; 403; CP; H; MIL | | | |
| 98:11 | 100:7 | REL; 403; CP; MIL | 100:18 | 105:15 | BSD, H, 403 |
| 109:24 | 110:11 | REL; 403; CP; MIL | | | |
| 118:9 | 122:2 | SPC; KN; REL; 403; FO | | | |
| 123:7 | 123:15 | SPC; KN; REL; 403; FO | | | |
| 127:2 | 127:7 | FO; SPC; KN; REL; 403 | | | |
| 127:12 | 127:22 | FO; SPC; KN; REL; 403; CP; MIL | | | |
| 128:10 | 128:14 | FO; SPC; KN; REL; 403; H; MIL | | | |
| 128:24 | 129:6 | FO; SPC; KN; REL; 403; L; MIL | 129:7 | 130:1 | F, H |
| 130:2 | 130:5 | FO; SPC; KN; REL; 403; L; MIL | 130:6 | 130:13 | |
| 130:22 | 131:14 | H; CP; FO; REL; 403; MIL; L | 131:15 | 131:22 | |
| 131:23 | 132:16 | H; CP; FO; REL; 403; MIL; L | | | |
| 133:1 | 133:2 | H; CP; FO; REL; 403; MIL | | | |
| 136:6 | 136:12 | CP; 403; REL; MIL | | | |
| 136:16 | 137:5 | CP; 403; REL; MIL | | | |
| 138:24 | 139:17 | H; CP; FO; REL; 403; MIL; L | 138:12 | 138:23 | |

| Defendant's Designations (Weaver - 2012) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| 139:21 | 140:15 | H; CP; FO; REL; 403; MIL; SPC; KN | 140:16 | 141:10 | |
| 141:11 | 141:25 | H; CP; FO; REL; 403; MIL; SPC; KN; L | | | |
| 144:7 | 144:11 | CP; FO; REL; 403; MIL; SPC; KN; L | 144:4 | 144:6 | |
| 149:2 | 149:7 | CP; FO; REL; 403; MIL; SPC; KN | | | |
| 149:12 | 149:14 | CP; FO; REL; 403; MIL; SPC; KN; H | | | |

# Exhibit 12

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AVM TECHNOLOGIES, LLC,            )
                                  )
                  Plaintiff,      )          C.A. No. 15-0033-RGA-MPT
                                  )
        vs.                       )
                                  )
INTEL CORPORATION,                )          **CONFIDENTIAL VERSION**
                                  )
                  Defendant.      )
_____)

### AVM's Statement of Intended Proofs

Plaintiff AVM Technologies, LLC ("AVM" or "Plaintiff") respectfully submits its statement of what AVM expects to prove in support of its claims, including information regarding its claims for relief. AVM's statement is limited to its expected proof with regard to its claims, and does not address the proof that AVM may choose to present in response to the defenses and counterclaims that Defendant Intel Corporation ("Intel" or "Defendant") may present at trial. AVM's statement is based upon the current status of the case and the Court's current rulings. AVM reserves the right to revise this statement in light of any further decisions or orders of the Court, including without limitation any rulings on pending motions.

During the trial of this action, AVM intends to establish that that the Intel Accused Products (*see* **Exhibit** 1) infringe the '547 Patent. AVM intends to establish that it is entitled to a reasonable royalty for Intel's unauthorized use, in an amount to be determined by the jury.[1]  It also intends to establish that it is entitled to prejudgment and post judgment interest. Furthermore, AVM intends to establish that Intel willfully infringed the '547 patent.

AVM also intends to rebut any defenses that Intel may offer.

---

[1]  The transactional financial data produced by Intel cut off in April 2016.  An accounting for subsequent sales of the Accused Products will be required after trial.

3

# Exhibit 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-0033-RGA-MPT |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**<u>Intel's Statement of Intended Proofs</u>**

Defendant Intel Corporation ("Intel") respectfully submits its statement of what Intel expects to prove in support of its claims and defenses.  Intel reserves the right to revise this statement in light of any further decisions or orders of the Court, including any rulings on pending motions.

## I. INFRINGEMENT

A. Intel intends to establish that Plaintiff AVM Technologies, LLC ("AVM") has not carried its burden of establishing, by a preponderance of the evidence, that Intel has directly infringed claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent by making, using, selling, and/or offering for sale in the United States certain models of Intel's Sandy Bridge, Ivy Bridge, Haswell, and Broadwell microprocessors.

B. Intel intends to establish that AVM has not carried its burden of establishing, by a preponderance of the evidence, that Intel has induced infringement of claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent.

C. Intel intends to establish that AVM has not carried its burden of establishing, by a preponderance of the evidence, that Intel has contributed to infringement of claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent.

D. Intel intends to establish that AVM has not carried its burden of establishing, by a preponderance of the evidence, that Intel has willfully infringed the '547 patent.

## II. INVALIDITY

A. Intel intends to establish, by clear and convincing evidence, that claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

1

B.  Intel intends to establish, by clear and convincing evidence, that claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent are invalid as obvious in view of the prior art under 35 U.S.C. § 103.

C.  Intel intends to establish, by clear and convincing evidence, that claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent are invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112, ¶ 1.

D.  Intel intends to establish, by clear and convincing evidence, that claims 1-7, 9, and 19-21 of the '547 patent are invalid for failure to satisfy the definiteness requirement of 35 U.S.C. § 112, ¶ 2.

E.  Intel intends to establish, by clear and convincing evidence, that claims 1-7, 9, 12-14, 16, and 18-21 of the '547 patent are invalid for failure to satisfy the utility requirement of 35 U.S.C. § 101.

## III.  UNENFORCEABILITY

A.  Intel intends to establish, by a preponderance of the evidence, that AVM and Joseph Tran are equitably estopped from enforcing the '547 patent against Intel.

B.  Intel intends to establish, by clear and convincing evidence, that AVM and Joseph Tran have waived the right to enforce the '547 patent against Intel.

C.  Intel intends to establish, by a preponderance of the evidence, that AVM and Joseph Tran are barred from enforcing the '547 patent against Intel because AVM, Mr. Tran, and/or TransLogic Technology, Inc. acted with unclean hands.

IV.     **PRECLUSION**

    A.     Intel intends to establish, by a preponderance of the evidence, that AVM's infringement claims with respect to products that predate the judgment in the prior litigation are barred by claim preclusion.[1]

    B.     Intel intends to establish, by a preponderance of the evidence, that AVM's infringement claims are barred by the *Kessler* doctrine.

    C.     Intel intends to establish, by a preponderance of the evidence, that AVM's claim for damages is barred by issue preclusion.

V.     **AVM's REQUEST FOR RELIEF**

    A.     Intel intends to establish that AVM has not carried its burden of establishing, by a preponderance of the evidence, that AVM is entitled to any damages from Intel.

    B.     Intel intends to establish that AVM has not carried its burden of establishing, by a preponderance of the evidence, that AVM is entitled to any pre-judgment interest from Intel.

    C.     Intel intends to establish that AVM has not carried its burden of establishing, by a preponderance of the evidence, that AVM is entitled to enhanced damages from Intel.

    D.     Intel intends to establish that AVM has not carried its burden of establishing, by a preponderance of the evidence, that AVM is entitled to attorney's fees from Intel.

---

[1]     Intel acknowledges that the Court previously ruled that claim preclusion applies only to products that predated the complaint in the prior litigation (D.I. 32 at 44-46).  However, as noted in its Notice of Subsequent Authority (D.I. 567 at 1-2) and to preserve its appellate rights, Intel submits that claim preclusion should apply to products that predated the judgment in the prior litigation.

## VI.    INTEL'S REQUEST FOR RELIEF

A.    Intel intends to establish, by a preponderance of the evidence, that Intel is entitled

to attorney's fees from AVM.

# Exhibit 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| AVM TECHNOLOGIES, LLC,        ) | |
|          ) | |
|        Plaintiff,  ) | C.A. No. 15-0033-RGA-MPT |
|          ) | |
|    v.      ) | **JURY TRIAL DEMANDED** |
|          ) | |
| INTEL CORPORATION,      ) | **FILED UNDER SEAL** |
|          ) | **HIGHLY CONFIDENTIAL** |
|      Defendant.  ) | **ATTORNEYS' EYES ONLY** |

**PLAINTIFF AVM'S MOTION IN LIMINE NO. 1 TO EXCLUDE
<u>REFERENCES TO AND EXPERT TESTIMONY FROM PRIOR LITIGATIONS</u>**

OF COUNSEL:
D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
jsheasby@irell.com

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC.*

Dated:  March 31, 2017

AVM moves to exclude from the jury trial:  (1) references to any decisions, orders, or outcomes in *AVM1* and in Translogic's prior lawsuit against Hitachi; and (2) the use of expert testimony from *AVM1*.  Intel admits that its three preclusion defenses—which relate to *AVM1*— are tried to the judge, not the jury.  Its attempt to surreptitiously inject these defenses and other confusing and prejudicial decisions and testimony from *AVM1* into the jury trial is inappropriate and should be excluded under FREs 401-403.  The same holds for events involving Translogic and Hitachi, which relates to a completely different patent and completely unrelated products.

Intel experts intend to provide significant testimony relating to the previous litigation between AVM and Intel (*AVM1*) as well as a previous lawsuit between Translogic (the company that originally owned the '597 patent) and Hitachi over a completely different patent, as part of its jury case.  (*See, e.g.*, D.I. 436 at 7-9, (citing D.I. 439, JA9 at 159:3-161:12, 162:2-3, 173:11-174:12, D.I. 439, JA8 at 58).)  For example, Intel's damages expert plans to "criticize" AVM's expert by pointing out that AVM was unsuccessful in seeking damages in *AVM1*, even though she admits she has no idea regarding the basis for the lack of success, (JA9 at 173:11-23, 174:14-175:2).  Her report also suggests that Intel will cross-examine the inventor on the '597 patent about the fact that an unrelated patent that resulted in a very large jury verdict against Hitachi was ultimately invalided by the PTO.  (D.I. 439, JA8 at 58; D.I. 439, JA9 at 159:3-161:12, 162:2-162:13.)  This subject matter is both inappropriate for expert testimony (*see* D.I. 436 and 527), and should not be the subject of any witness cross-examination at trial.

The Court has broad discretion to exclude irrelevant or prejudicial evidence.  *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*., No. 04-1371, 2006 WL 2435083, at *1 (D. Del. Aug. 22, 2006).  Courts routinely exclude evidence of prior lawsuits due to the risk of juror confusion or

prejudice.  *See Cordis Corp. v. Medtronic Vascular, Inc*., No. 97-550, 2005 WL 885381, at *4

(D. Del. Feb. 28, 2005) (preventing references to prior rulings or verdicts in prior patent cases),

*rev'd in part on other grounds sub nom. Cordis Corp. v. Medtronic Ave, Inc*., 511 F.3d 1157

(Fed. Cir. 2008); *Lucent Techs. Inc. v. Gateway, Inc*., No. 02-2060, 2007 WL 1306539, at *1

(S.D. Cal. Apr. 30, 2007) (precluding parties from mentioning earlier cases).

In the *Hitachi* case, TransLogic sued Hitachi for infringement of U.S. Patent No.

5,162,666, winning a verdict for $86.5 million.  That verdict was reversed on appeal.

*TransLogic Tech., Inc. v. Hitachi, Ltd*., 250 F. App'x 988 (Fed. Cir. 2007).  The *Hitachi* case is

irrelevant here.  It involved a different patent, different products, and different parties.  It could

improperly suggest to the jury that, because Mr. Tran lost before, he should lose now.  To

minimize the prejudice, AVM would be required to conduct a mini-trial explaining the

differences.  *See World Wide Stationery Mfg., Co. v. Bensons Int'l Sys., Inc*., No. 3:11-523, 2012

WL 12894226, at *2 (N.D. Ohio Sept. 12, 2012) (excluding reference to prior patent litigation

since it would risk confusing the jury and require mini-trials to explain).

Further, the Court's orders in *AVM1* are irrelevant.  Among other things, the Court

excluded AVM's damages expert and its fact witness from testifying about damages, resulting in

a grant of summary judgment of no damages.  (*See AVM1*, D.I. 284; *AVM1*, D.I. 294.)[1]  The

Court did not rule on infringement or invalidity, or make findings about any of AVM's current

experts.  Reference to *AVM1* is likely to confuse the jury regarding the effect of that case on the

current case, improperly suggest that AVM's loss is indicative of the proper outcome here, and

---

[1] Intel and AVM both admit that the hypothetical negotiation in this case is at a different time
and involves different facts than *AVM1*.  AVM's damages calculus in this case uses an entirely
different methodology to analyze a different hypothetical negotiation for different Accused
Products.  This is discussed at length in AVM's motion for summary judgment on issue
preclusion.  D.I. 410, 482, 523.

risks prejudicing the jury to believe that AVM's expert's current methodology is inadequate.  *See Prism Techs., LLC v. Sprint Spectrum L.P.*, No. 8:12-123, 2015 WL 3606222, at *1 (D. Neb. June 8, 2015) (preventing references to whether an expert was excluded in prior cases).

Intel and its experts improperly rely upon two AVM experts from *AVM1* that offer no opinions for this trial.  Because the experts are not agents of AVM, their testimony is not a party admission.  *See Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995); *Pfizer, Inc. v. Ranbaxy Labs., Ltd.*, 2005 WL 2296613, at *2 (D. Del. 2005).  Instead, it is irrelevant hearsay, and highly prejudicial.  The Court excluded Mr. Evans's testimony in *AVM1*.  (*AVM1*, D.I. 294 at 1; *AVM1*, D.I. 283 at 9.)  *AVM1* addressed two circuit designs in two products that are not part of case, (JA48 ¶¶142, 149, 156; JA13 ¶¶47-48), while here AVM identified █████████ ████████ unique infringing circuits in newer products.  (JA15 ¶294; Ex. OO.)  And issues that were hotly contested in *AVM1*—including whether the accused products used simultaneous activation and contention—are admitted here.  (*Compare* JA48 ¶¶248-51 *with* JA36 ¶¶480, 490-91; *see also* D.I. 492 at 1-6.)

Playing and relying on *AVM1* expert testimony would create a confusing sideshow.  For example, as made clear in the parties' papers, different experts use the same key terms differently (*e.g.*, "overlap").  (*See, e.g.*, D.I. 492 at 2-4.)  Permitting introduction of prior expert testimony would require a mini-trial to explain what the expert—who is not even providing an opinion for this trial—meant in the last deposition when he, for example, used the word, "overlap."  (*See, e.g.*, D.I. 490 at 13 for an example of how prior testimony is being taken out of context.)  If Intel proceeds with its strategy, AVM may even have to bring its prior expert to this trial to explain on rebuttal what he meant by his testimony.  The testimony would confuse the jury, prejudice AVM, and waste time, and should be excluded.  *See* Fed. R. Ev. 403, 802.

Respectfully submitted,

*/s/ Benjamin J. Schladweiler*

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

OF COUNSEL:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
(310) 752-2400
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

Dated:  March 31, 2017

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>INTEL CORPORATION, )<br><br>Defendant. ) | C.A. No. 15-0033-RGA-MPT<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL**<br>**HIGHLY CONFIDENTIAL**<br>**ATTORNEYS' EYES ONLY** |

**PLAINTIFF AVM'S MOTION IN LIMINE NO. 2 TO PRECLUDE INTEL**
**FROM USING INFORMATION AND MAKING ARGUMENTS**
**NOT PRODUCED OR DISCLOSED IN DISCOVERY**

OF COUNSEL:
D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
jsheasby@irell.com

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC.*

Dated:  March 31, 2017

1

I.      **Unproduced Data – ███████████████████████████████████**

AVM seeks enforcement of the Court's prior order precluding Intel from using the

unproduced information in the ███████████████████████[1]  Intel does not dispute

that the Court precluded it from relying on this information.  (D.I. 500 at 8-9 ("Judge Thynge

held only that witnesses may not testify about the unproduced ████████").)  And it has

alleged that this is the data that will show █████████████  But in an attempt to

avoid the consequences of the Court's order, Intel attempts (1) to criticize AVM and its expert

witnesses for failing to analyze or consider the unproduced data; and (2) to offer opinions and

alleged evidence about what the unproduced data allegedly showed, (*see* D.I. 500 at 6-7).

These attempts violate the Magistrate Judge's order.  (D.I. 438, Ex. D at 59-60.)  For the

same reasons AVM set forth in its motion to exclude certain testimony of Intel's expert, Dr.

Subramanian, ███████████████(D.I. 438 at 11-14; D.I. 542 at 1-7), AVM now asks the

Court to prevent Intel's attempted end-run around the Court's prior order by precluding Intel or

any of its other witnesses from testifying or offering evidence as to ████████████

██████

In brief, AVM diligently sought the data on █████████████during discovery, but

Intel refused to produce it.  (D.I. 438 at 4-5; D.I. 438 at Ex. A at 2; Ex. B at 13 (No. 29); Ex. C at

6.)  Intel initially denied the existence of such data.  (Ex. JA44 at 400:11-401:9.)  It was not until

a reconvened deposition of Intel's 30(b)(6) witness, Arun Krishnamoorthy—after fact discovery

had closed—that AVM even learned of the existence of the ████████ from which ██

---

[1] AVM filed a *Daubert* motion covering similar subject matter.  (*See* D.I. 438 at 11-14 (arguing
that reliance by Intel's expert Dr. Vivek Subramanian on such evidence violates the orders of
Chief Magistrate Judge Thynge and renders his opinion unreliable).)  This motion *in limine* seeks
to prevent Intel from presenting its prejudicial arguments using fact witnesses, cross-examination
questions, or attorney argument.

███████████ allegedly could be identified, ███████████████████████ (JA51 at 208:16-209:24; 217:11-218:1.)  Because Intel improperly withheld its █████████████, Judge Thynge precluded Intel from testifying to the information (1) in the ███████████ and (2) not otherwise produced.  (D.I. 438, Ex. D at 59-60 (emphasis added).)

Intel claims that the ████████████████████████████

████████████████████████████████████████████

████████████████████████████ (Ex. JA51 at 208:16-209:13 (emphasis added); *see also* D.I. 500 at 5 ("massive database . . . that contains a wide variety of information about ██████████████████████") (emphasis added).)  Intel has not shown that this information was otherwise produced (i.e., from a source other than the ████ ████████  In fact, Intel argues that it has not produced any data from which one can determine ██████████████████ (D.I. 500 at 5.)  Having deliberately withheld the exact data that Intel's 30(b)(6) witness claims is dispositive of the analysis, Intel must be precluded from using the information—either as a sword or shield— in any way.

## II.    Failure to Provide Discovery Responses—Logic High and Logic Low Values

The Court also should preclude Intel from arguing that it, its experts, or its employees, knows the values for logic high ("$V_{IH}$") and logic low ("$V_{IL}$") in the accused circuits or prior art.

During discovery, AVM asked Intel to identify the logic values for the accused circuits and specific transistors.  Intel refused to answer, and instead alleged ████████████

████████████████████████████████████████████

███████ (D.I. 483, Ex. U at 11-12.)  AVM also asked Intel to admit that the logic low voltage and the logic high voltage for particular circuits were within specific ranges.  Intel again refused to admit or deny these requests; instead it alleged ████████████████████████.  (D.I. 483, Ex. T, Nos. 13-23.)  In addition, despite AVM's infringement contentions and expert reports

2

addressing logic high/low for both infringement and validity, none of Intel's experts offered an opinion as the appropriate values to use for these logic levels in any circuit.  (JA26, JA36.)

The Court has broad discretion to fashion remedies following a party's failure to disclose information required in discovery.  *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 134 (3d Cir. 2009); *see also Scarborough v. Eubanks*, 747 F.2d 871, 877 (3d Cir. 1984) (identifying "a preclusion order" preventing use of undisclosed evidence as "an effective and appropriate alternative sanction."); *see also* Fed. R. Civ. P. 37(c)(1).  Courts in the Third Circuit consider the "Pennypack factors" when considering whether to impose discovery sanctions.  *See Walker Digital, LLC v. Google Inc.*, No. 11-309, 2013 WL 2949109 (D. Del. June 14, 2013) (citations omitted).

Permitting Intel, its witnesses, or its experts to offer opinions, testimony, or evidence on logic high and logic low now would be severely prejudicial AVM.  AVM had no opportunity to cross examine those witnesses or review any alleged evidence because Intel never disclosed it during discovery.  There is no cure for this prejudice because trial is imminent and any disclosure would require reopening depositions and expert discovery.  Bad faith is evidenced by Intel's repeated refusals to respond to discovery on this issue, and its allegations that a person of ordinary skill in the art would not know how to determine logic low ($V_{IL}$) and logic high ($V_{IH}$), even though ███████████████████████████ (D.I. 416 at 15-20.)  Intel should not be allowed to change positions by offering an opinion or evidence as to what those values allegedly are for any circuit or product.

3

Respectfully submitted,

/s/ Benjamin J. Schladweiler

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com


Counsel for Plaintiff AVM Technologies, LLC

OF COUNSEL:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
(310) 752-2400
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

Dated:  March 31, 2017

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | )    C.A. No. 15-0033-RGA-MPT |
| v. | ) |
| | )    **JURY TRIAL DEMANDED** |
| INTEL CORPORATION, | ) |
| | )    **FILED UNDER SEAL** |
| Defendant. | )    **HIGHLY CONFIDENTIAL** |
| | )    **ATTORNEYS' EYES ONLY** |

**PLAINTIFF AVM'S MOTION IN LIMINE NO. 3 TO EXCLUDE
EVIDENCE THAT INTEL DOES NOT INFRINGE BECAUSE IT ALLEGEDLY
<u>DESIRES TO ELIMINATE CONTENTION AND SIMULTANEOUS ACTIVATION</u>**

OF COUNSEL:
D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
jsheasby@irell.com

ROSS ARONSTAM & MORITZ LLP
Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

Dated: March 31, 2017

AVM respectfully asks the Court to rule that Intel may not elicit testimony or attorney argument about Intel's alleged desire[1] to eliminate contention and/or simultaneous activation in the design of the allegedly infringing circuits to argue that Intel (1) did not want to make or sell infringing circuits or (2) did not intend to infringe the patent.  Aside from being irrelevant, the testimony violates the principle that one cannot use privilege as both a sword and a shield, because here Intel withheld thousands of emails as privileged, preventing AVM from testing any innocent infringement claim.

Even though Intel's expert does not dispute that Intel's accused products include contention/overlap and simultaneous activation, he repeatedly emphasizes that Intel's designers did not *intend* to include those features.  (D.I. 444, JA36 at ¶¶160, 161, 163, 490, 491, 627, 633, 634, 637.)  And he cites to Intel engineers' testimony about this issue.  (*Id.* ¶160.)  The relevant issue for direct infringement, however, is whether the products include contention/simultaneous activation, not whether Intel's engineers designed the circuits with an intent to include it. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011) ("Direct infringement has long been understood to require no more than the unauthorized use of a patented invention . . . . a direct infringer's knowledge or intent is irrelevant.") (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 484 (1964)); *Plantronics, Inc. v. Aliph, Inc.*, No. 09-01714, 2014 WL 789115, at *1 (N.D. Cal. Feb. 26, 2014) (Alsup, J.) (granting motion in limine to preclude party from arguing that a claim required intent: "The jury shall be instructed that intent is not required for direct infringement.").  Intel should not be permitted to defend against AVM's direct infringement claims on the basis that it did not intend to infringe the patent.

---

[1] Since Intel, as a corporation, acts through its representatives such as employees, officers, and directors, this motion applies to statements regarding the intent of Intel's representatives as well.

1

Lack of intent or desire to include a feature also is irrelevant to damages.  The *Georgia-Pacific* factors are heavily relied upon in patent contexts.  *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the *Georgia–Pacific* factors to frame the reasonable royalty inquiry. Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue.").  Despite their specificity and scope, none of the fifteen *Georgia-Pacific* factors concern whether the accused infringer intended to infringe.  *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Moreover, in the hypothetical negotiation, the jury must assume that Intel is a voluntary licensee and infringer.  *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996) (infringer is assumed to be a willing licensee).  For Intel to assert to the jury that it did not want to infringe is simply an instruction to the jury that it should ignore this assumption.

Nor can Intel introduce its intent as a defense to AVM's claim of willful infringement.[2] First, Intel has withheld as privileged over a thousand documents with which AVM could test its intent.  "A long-standing legal principle based on fairness prevents the selective disclosure of evidence as a sword while using the shield of the attorney-client privilege to prevent testing of those assertions."  *Regeneron Pharm., Inc. v. Merus*, No. 14-1650, 2015 WL 10792010, at *1 (S.D.N.Y. Aug. 6, 2015); *see also In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (a district court should prevent sword-and-shield litigation tactics); *Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc.*, 707 F. Supp. 2d 463, 471 (D. Del. 2010).  Intel cannot avoid disclosure of its counsel's advice while simultaneously asserting it did not intend to

---

[2] Willful infringement is currently the subject of a summary judgment motion before the Court. (D.I. 422.)

infringe AVM's patent.  *See United States v. Bilzerian*, 926 F.2d 1285, 1291-92 (2d Cir. 1991) (waiver where the defendant argued that the evidence showed it had a good faith belief).

Second, knowledge of the asserted patent is a prerequisite to willfulness, *WBIP*, 829 F.3d at 134.  But whether Intel *desired* simultaneous activation or *wanted* to infringe is not a prerequisite to a finding of willfulness.  AVM can meet its burden of proving willfulness by a preponderance of the evidence by proving that Intel *knowingly* infringed or was willfully blind to infringement.  *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  Intel has represented that it learned of the patent no later than February 2005.  (D.I. 422 at 3.)  More Intel employees became knowledgeable about the patent in 2006, when Mr. Tran met with several employees.  (D.I. 488 at 6.)  The four Accused Product families in this matter were introduced between November 2010 and November 2014.  (*Id.* at 7-8.)  Despite Intel's knowledge of the patent, and despite Intel's claim that it would be easy and inexpensive to remove contention from its designs (D.I. 488, Ex. G at 28; *see also* Ex. I at 68 n.397), Intel has never removed contention/simultaneous activation from its products.  In fact, Intel specifically authorizes its engineers to include contention in the accused circuits (JA10 ¶¶536-37, 613-618; JA15 ¶200) and has increased contention with each successive generation—from Sandy Bridge, to Ivy Bridge, Haswell, and finally, Broadwell, despite the fact that processor size was decreasing. (JA10 ¶537; JA15 ¶200.)  The relevant issue is whether Intel includes the feature—not whether it *desires* the feature.

OF COUNSEL:                                    Respectfully submitted,
D. Michael Underhill
Eric J. Maurer                                 */s/ Benjamin J. Schladweiler*
Patrick M. Lafferty                            Benjamin J. Schladweiler (#4601)

BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
(310) 752-2400
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com


Dated: March 31, 2017

Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

4

# Exhibit 14A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-33-RGA |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| INTEL CORPORATION, | ) | **OUTSIDE COUNSELS' EYES ONLY –** |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

**DEFENDANT INTEL CORPORATION'S OPPOSITION TO
AVM'S MOTION IN LIMINE NO. 1: TO EXCLUDE REFERENCES TO AND
EXPERT TESTIMONY FROM PRIOR LITIGATIONS**

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Tel: (202) 663-6000

Dated: April 7, 2017

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

## I.   *AVM1* IS RELEVANT TO INTEL'S REBUTTAL OF AVM'S ALLEGATIONS OF WILLFULNESS AND BAD FAITH.

The prior litigation between AVM and Intel provides important context and is relevant to Intel's defenses before the jury.  For example, Intel relies on *AVM1* to rebut AVM's willfulness allegations.  In *AVM1*, Intel established reasonable non-infringement and invalidity defenses. The Court's order granting summary judgment of no willfulness supports the reasonableness of those defenses, which apply here as well (because AVM asserts the same patent and Intel's accused products are essentially the same).  *See* D.I. 422 at 1, 11; D.I. 539 at 1, 7-10.  AVM's assertion that *AVM1* is not relevant to willfulness is belied by AVM's own positions in this case, as *AVM* itself relies on an order from *AVM1* in alleging that Intel's actions in the present case were willful.  D.I. 488 at 2 (alleging Intel "continued" to infringe, "including after the Court's claim construction decision in *AVM1*, which made it apparent that Intel infringed"); *id.* at 11.

AVM has indicated that it plans to tell the jury (incorrectly) that "Intel proceeded in bad faith after it learned of Mr. Tran's patent," that Intel "stonewalled" Mr. Tran, and that "Intel has no excuse for ignoring the '547 patent years later, when it launched the Accused Products in this case, *after* AVM had already commenced *AVM1*."  *Id.* at 1-2.  Of course, AVM now admits its infringement claims in *AVM1* were baseless.  *See* D.I. 579 at 6-9.[1]  AVM also claims (again incorrectly) that, "in the years since *AVM1* was filed, Intel repeatedly instituted policies allowing greater and greater amounts of 'contention' in its chips, making it ever more reliant on Mr. Tran's invention."  *Id.* at 2.  To the extent AVM raises these or similar issues before the jury, Intel should be allowed to address the *AVM1* litigation to rebut suggestions that it has not treated Mr. Tran fairly or acted in good faith.  Excluding such evidence would unfairly prejudice Intel.

---

[1]      AVM's admission that its infringement accusations in *AVM1* were incorrect is also relevant to the credibility of AVM and its expert, Dr. Hassoun, who was retained in both cases.

## II.     EXPERT TESTIMONY FROM *AVM1* IS ADMISSIBLE AND RELEVANT.

*Kirk v. Raymark Industries, Inc.*, 61 F.3d 147 (3d Cir. 1995), does not suggest that expert testimony from *AVM1* is "irrelevant hearsay," as AVM alleges (AVM MIL#1 at 3).  *Kirk* involved expert testimony from "unrelated litigation."  *Id.* at 164.  By contrast, *AVM1* involved the same parties and the same subject matter as here—validity, infringement, and the value of the '547 patent.  Testimony from *AVM1* experts is thus admissible because "[a] deposition lawfully taken … in any federal-[court] action may be used in a later action involving the same subject matter between the same parties."  Fed. R. Civ. P. 32(a)(8); *see United States v. Vespe*, 868 F.2d 1328, 1339 (3d Cir. 1989) (Rule 32(a) is "independent exception to the hearsay rule").

Testimony from AVM's technical expert in *AVM1*, Joseph McAlexander, is relevant to at least:  the state of the prior art; the written description of the '547 patent (D.I. 416 at 10-13); the indefiniteness of the "simultaneous activation" claims (*id.* at 2-3); rebutting AVM's argument that Intel has increased contention in its products over time, given that Mr. McAlexander opined that Intel allowed similar contention amounts in the *AVM1* products; and the alleged importance and value of the '547 patent.  Even ***AVM*** has acknowledged that Mr. McAlexander's opinions from *AVM1* are relevant to willfulness, inducement, and contributory infringement in this case.[2]

Similarly, testimony from AVM's damages expert in *AVM1*, Larry Evans, is relevant to damages in this case.  For example, his opinion that the parties would have agreed to a lump-sum royalty is relevant to rebut AVM's current expert's unsupported opinion to the contrary.  And Mr. Evans's opinion that Intel had already won the "speed war" is relevant to rebut AVM's

---

[2]     *See, e.g.*, D.I. 580-1, Ex. A, AVM Response to Interrogatory No. 11 at 22 (alleging willfulness based in part on the fact that AVM "provided Intel with further information about AVM's infringement allegations throughout the Prior Lawsuit"); D.I. 439-1, JA Ex. 10, Hassoun Infring. Rpt. ¶ 479 (alleging indirect infringement based in part on "the infringement and non-infringement expert reports from AVM and Intel in a prior litigation involving the '547 Patent").

claims that Intel would have paid billions for a patent that—even by AVM's own (erroneous) estimations—would increase processor speed by only miniscule amounts.  *See* D.I. 496 at 11.[3]

## III.   THE *HITACHI* LITIGATION IS RELEVANT TO DAMAGES AND TO REBUT AVM'S ALLEGATIONS THAT INTEL "STONEWALLED" MR. TRAN.

The *Hitachi* litigation is relevant to the parties' relative bargaining positions in the hypothetical negotiation.  *See* D.I. 496 at 13-14.  Translogic's loss of the $86.5 million damages award in *Hitachi* would have "encouraged Mr. Tran to negotiate a reasonable lump sum payment [and] … not risk further litigation by demanding an exaggerated royalty."  D.I. 439-1, JA Ex. 8 at 58; *id.*, JA Ex. 9 at 159; D.I. 496 at 13-14.  Mr. Tran even admits that the expense of *Hitachi* affected negotiations with Intel regarding another license (M-Cell), ████████████ ████████████████████████████████████████████████  D.I. 447-1, JA Ex. 55 at 118.

AVM apparently intends to argue that Intel involved lawyers in discussions about the '547 patent to "stonewall" Mr. Tran.  D.I. 488 at 12-13.  But when Mr. Tran first contacted Intel about the patent, Intel was aware of the ongoing lawsuit against Hitachi.  D.I. 447-1, JA Ex. 55 at 130, 161-162.  If AVM suggests to the jury that Intel's involvement of lawyers was nefarious, Intel's awareness of *Hitachi* is needed to put those accusations into context.  Intel's awareness of the *Hitachi* outcome is also relevant to its state of mind for willfulness since, when Intel began selling the accused products, one of Mr. Tran's "logic" patents had already been invalidated.

---

[3]     Although AVM had Mr. McAlexander provide testimony for claim construction and discovery in this case (*see* D.I. 579 at 6-7), AVM did not submit expert reports from Mr. McAlexander or Mr. Evans this time around.  This Court and others have found expert deposition testimony admissible where a party opts not to call an expert at trial in an apparent attempt to avoid their testimony.  *See, e.g.*, *Teva Pharm. USA, Inc. v. Abbott Labs.*, C.A. No. 02-1512-SLR, 2008 WL 4809116, at *1 (D. Del. Nov. 5, 2008) ("[T]hat a party has control over whether or not to introduce the expert and testimony supported by him, and the fact that the party has the right to choose the expert in the first place, certainly adds credence to the theory that an agency relationship exists between the expert and his supporting party." (citation omitted)); *Viiv Healthcare UK Ltd. v. Lupin Ltd.*, C.A. No. 11-576-RGA, Dkt. 182 (D. Del. June 18, 2013).

3

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000


Dated: April 7, 2017

By:   */s/ David E. Moore*
     David E. Moore (#3983)
     Bindu A. Palapura (#5370)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE 19899
     Tel:  (302) 984-6000
     dmoore@potteranderson.com
     bpalapura@potteranderson.com

     *Attorneys for Defendant Intel Corporation*

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-33-RGA |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| INTEL CORPORATION, | ) | **OUTSIDE COUNSELS' EYES ONLY –** |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

**DEFENDANT INTEL CORPORATION'S OPPOSITION TO
PLAINTIFF AVM TECHNOLOGIES, LLC'S MOTION IN LIMINE #2:
TO PRECLUDE INTEL FROM USING INFORMATION AND MAKING
ARGUMENTS NOT PRODUCED OR DISCLOSED IN DISCOVERY**

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Tel: (202) 663-6000

Dated: April 7, 2017

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

I.    **THERE IS NO BASIS TO PRECLUDE INTEL FROM USING DATA IN THE RECORD TO REBUT AVM'S UNSUPPORTED DAMAGES THEORY.**

AVM seeks to preclude Intel from relying on timely produced evidence to rebut AVM's unsupported damages theory—a request that Judge Thynge already denied.  D.I. 438, Ex. D at 56-60.    As discussed in Intel's *Daubert* briefs, AVM's damages claim depends on the assumption that Intel's accused circuits are speed-limiting.  *See, e.g.*, D.I. 429 at 8-10.  AVM's expert admitted, however, that he does not know which circuits are the speed-limiting circuits in the accused products.  D.I. 440-2, JA Ex. 17, Hassoun Dep. at 193:23-194:21.  Intel's expert demonstrated that Intel's ▮▮▮▮—which Intel produced during discovery and which AVM's expert considered in his infringement analysis but ignored in his damages analysis—▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* D.I. 444-1, JA Ex. 36, Subramanian Non-Infring. Rpt. ¶¶ 697-735.  Intel's separate ▮▮▮▮▮ confirms that the accused circuits ▮▮▮ ▮▮▮▮▮, but Intel's expert did not rely on that data (which did not come to light until after the close of document discovery) and will not rely on it at trial.  *Id.* ¶ 712 & n.834; D.I. 444-1, JA Ex. 39, Subramanian Dep. at 292:8-15 ("I understand that AVM is trying to keep that data out, so I did not rely on it.").  AVM never moved to compel production of the ▮▮▮▮▮ and declined Intel's repeated offers to produce representative samples.  *See* Intel MIL #2 at 3.

AVM nevertheless relies on the non-production of the ▮▮▮▮▮ to ask this Court to "preclud[e] Intel or [its] witnesses from testifying or offering evidence as to ▮▮▮▮▮ ▮▮▮▮▮▮"  AVM MIL #2 at 1.  The relief sought by AVM is identical to what it sought in its unsuccessful sanctions motion:  based on the non-production of the ▮▮▮▮▮ AVM asserted that "Intel should not be permitted to argue or suggest … that any of the infringing circuits ▮▮▮▮▮▮▮"  D.I. 356 at 4.  Judge Thynge denied AVM's request:

> [AVM's] argument is [Intel] can't rely on any data, can't rely on the claim that [an] infringing circuit will not ▮▮▮▮▮▮▮▮▮▮

are not limiting circuits.  I think that's pretty broad, too broad, quite frankly.

D.I. 438, Ex. D at 57.  Judge Thynge held only that witnesses may not testify about the ███

████ but she was clear that Intel and its witnesses may rely on data that had been produced

and argue that such data ███████████████████████████████████████ *Id.* at 59-60

("[T]o the extent that the information has been produced by Intel, that witness can testify.").[1]

AVM did not appeal Judge Thynge's order and thus AVM's attempt to circumvent the

ruling is both untimely and improper.  Moreover, Judge Thynge was plainly correct—Intel

produced voluminous data (including ██████) for the accused products that is independent

of the ████████, and there is no justification for restricting Intel's use of that timely

produced data.  If AVM is permitted to assert that the accused circuits ████████, it

would be unfair and prejudicial not to allow Intel to rebut that argument.

## II.   INTEL PRODUCED EXTENSIVE TECHNICAL DISCOVERY, INCLUDING INFORMATION SUFFICIENT FOR DETERMINING $V_{IL}$ AND $V_{IH}$ VALUES.

AVM's accusations that Intel acted in "bad faith" and refused to provide discovery

regarding logic low ("$V_{IL}$") and logic high ("$V_{IH}$") values are unfounded.  In response to AVM's

interrogatory asking for specific $V_{IL}/V_{IH}$ values for each of the more than ████████ accused

circuits, Intel explained that ████████████████████████████████████████

---

[1]   AVM continues to misrepresent the record regarding the ███████████ and the
████████████. *See, e.g.*, D.I. 541 at 2-3; D.I. 500 at 5-6, 8-13.  Intel has
always maintained that the ██████—the same data that AVM relies on for its infringement
allegations—can be used to ████████████████, and AVM's expert conceded
that Intel engineers use it for that purpose. *See* D.I. 541 at 8; D.I. 500 at 12.  By contrast, the
████████ contains
██████████. D.I. 445-1, JA Ex. 51, Krishnamoorthy Dep. at
209:14-210:6.   For example, the ████████████ may show ████████████
██████████ but it would not indicate ██████████
██████████ *Id.* at 208:16-211:23.  However, the ████████ can be used to
determine ███
██████████████████████████████████ *Id.* at 250:11-252:5.

██████  D.I. 483, Ex. U at 11-12.[2]  In response to AVM's requests for admission, Intel objected that it would require expert analysis to calculate $V_{IL}/V_{IH}$ values for specific circuits. D.I. 483, Ex. T at 10-15.  AVM never moved to compel the production of additional information, and AVM does not deny that Intel produced extensive technical discovery regarding its products, which was more than sufficient information for an expert to perform a $V_{IL}/V_{IH}$ analysis.

Intel produced that discovery even though, as explained in its summary judgment briefs, determining specific $V_{IL}/V_{IH}$ values is not needed to analyze infringement, validity, or preclusion.  D.I. 431 at 15-17; D.I. 416 at 15-16.[3]  AVM's expert has nevertheless attempted— contrary to the Court's construction—to redefine the claim term "simultaneous activation" to depend on $V_{IL}/V_{IH}$ values.  D.I. 439-1, JA Ex. 10, Hassoun Infring. Rpt. ¶ 426.  Intel's experts have explained that Dr. Hassoun's analysis for determining "simultaneous activation" is inconsistent with the '547 patent, textbooks, industry practice, and AVM's prior positions; and they have identified several flaws in Dr. Hassoun's methodology for measuring $V_{IL}/V_{IH}$ in the accused circuits.  *E.g.*, D.I. 444-1, JA Ex. 36, Subramanian Non-Infring. Rpt. ¶¶ 192-251, 995; D.I. 442-1, JA Ex. 27, Ivey Reply Rpt. ¶¶ 8-16, 145-148.  Intel's experts should be permitted to testify as to these opinions, which they disclosed in their experts reports and AVM asked them about at their depositions.  Intel and its experts have not calculated separate $V_{IL}/V_{IH}$ values for the accused circuits or prior art and do not intend to do so at trial.[4]

---

[2]     AVM misleadingly asserts that ███████████████████████████████ (AVM MIL #2 at 3), but there is no dispute that █████████████████████████████████.

[3]     Indeed, neither AVM nor its expert ever suggested that $V_{IL}/V_{IH}$ was relevant to infringement or validity in *AVM1*.  D.I. 440-2, JA Ex. 17, Hassoun Dep. at 124:18-24 ("I did not see any discussion of VIL or VIH, that I can recall right now, in [Mr.] McAlexander's report.").

[4]     Intel's expert also performed and disclosed simulations showing that Intel's accused circuits have no charge-sharing problem.  For that analysis, he used the $V_{IL}/V_{IH}$ values proposed by AVM's expert—which demonstrated that there is no charge-sharing problem even under Dr. Hassoun's view.  D.I. 444-1, JA Ex. 36, Subramanian Non-Infring. Rpt. ¶¶ 883-889, 970-1020.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000


Dated: April 7, 2017

By:   */s/ David E. Moore*
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19899
      Tel:  (302) 984-6000
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-33-RGA |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| INTEL CORPORATION, | ) | **OUTSIDE COUNSELS' EYES ONLY –** |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

### DEFENDANT INTEL CORPORATION'S OPPOSITION TO PLAINTIFF AVM TECHNOLOGIES, LLC'S MOTION IN LIMINE #3:  TO EXCLUDE EVIDENCE THAT INTEL DOES NOT INFRINGE BECAUSE IT ALLEGEDLY DESIRES TO ELIMINATE CONTENTION AND SIMULTANEOUS ACTIVATION

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
   AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Tel: (202) 663-6000

Dated: April 7, 2017

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

AVM wrongly seeks to preclude Intel from presenting evidence that its design goal for the accused products was to avoid or minimize contention, *i.e.*, the only purportedly novel feature of the '547 patent.  AVM incorrectly believes that Intel is pursuing a "lack of intent" non-infringement defense and asserts that since *mens rea* is not relevant to whether a product directly infringes, the evidence should not be admitted for any purpose.  But Intel is not asserting any such *mens rea* non-infringement defense, and the evidence that AVM seeks to exclude is relevant to many issues to be decided at trial, including non-infringement, damages, willfulness, inducement/contributory infringement, and the reverse doctrine of equivalents.  There is no basis to limit Intel's presentation of its defense on these issues.

*First*, AVM again mischaracterizes the non-infringement opinion of Intel's expert Dr. Subramanian.  As explained in response to AVM's *Daubert* motion (which raised the same issue), Dr. Subramanian's opinion of no literal infringement is based on the ***function*** of the accused "delay … for simultaneously activating" element, not the subjective intent of Intel's engineers.  D.I. 500 at 18-20.  Dr. Subramanian explained that the accused circuitry does not satisfy the requirement of "a delay … for simultaneously activating the precharge and evaluation transistors"—which the Court construed to require that the delay element is "for causing" simultaneous activation (D.I. 344 at 2)—because it performs the opposite function of reducing overlap.  D.I. 500 at 19.  Evidence regarding the function performed by the accused circuitry is clearly relevant to infringement and does not turn on the state of mind of Intel's engineers.

*Second*, Intel's goal of minimizing contention is relevant—and important—to the issue of damages.  Intel's determination that contention harms performance and should be avoided is plainly relevant to the question of what Intel would have agreed to in a hypothetical negotiation to license the '547 patent.  AVM attempts to avoid this fact by asserting that the hypothetical

negotiation assumes the alleged infringer is a willing licensee, but that misses the point:  the fact that Intel does not want contention and would get no benefit from it is probative of the fact that in a hypothetical negotiation Intel would not pay much for a license, let alone ███████ that AVM is seeking.  Intel's goal of minimizing contention is also relevant to at least five *Georgia-Pacific* factors:  the "utility and advantages" of the invention over alternative modes (factor 9); the benefits of the invention as practiced (factor 10); the extent to which the infringer used the invention (factor 11); the portion of profits that should be credited to the invention versus non-patented elements (factor 13); and how it would be valued in a hypothetical negotiation (factor 15).  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

*Third*, Intel's goal of avoiding contention is also relevant to Intel's defenses on willful infringement and inducement/contributory infringement.  AVM does not dispute this fact, but argues that Intel should be precluded from presenting its defense because it withheld "over a thousand documents" as privileged in this litigation.  AVM MIL#3 at 2.  That is nonsensical.  Intel's assertion of privilege in no way diminishes its right to defend itself at trial, and no adverse inference may be drawn against Intel.  *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (en banc) ("When the attorney-client privilege and/or work-product privilege is invoked by a defendant in an infringement suit, is it appropriate for the trier of fact to draw an adverse inference with respect to willful infringement?  The answer is 'no.'").  AVM speculates that Intel is avoiding "disclosure of its counsel's advice" (AVM MIL #3 at 2), but that is irrelevant because Intel is not asserting an "opinion of counsel" defense.[1]   Rather, Intel's defense is based (in part) on the fact that its engineering goal of

---

[1]      Even in such cases, the alleged infringer does not forfeit its willfulness defense but simply waives privilege with respect to the limited set of documents related to the opinion of counsel.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007), *abrogated on*

minimizing contention shows that Intel lacks the requisite culpability to act in a way that infringes the patent (even if the products are found to infringe). *See, e.g.*, *Halo*, 136 S. Ct. at 1933.[2]  AVM has squarely put Intel's intent at issue:  its infringement expert repeatedly opined on Intel's intent in designing the accused circuits (D.I. 439-1 & 440-1, JA Ex. 10, Hassoun Infring. Rpt. ¶¶ 534-545, 662-664), and AVM opposed Intel's motion for summary judgment of no willful infringement based on (wholly unsupported) assertions that Intel's design engineers subjectively intended to copy the '547 patent and to embark on a "systematic infringement campaign" (D.I. 488 at 10-11, 16-17).  The fact that Intel's engineers actually sought to avoid contention is thus relevant to rebutting AVM's willfulness allegations.

*Finally*, AVM ignores that Intel's design goal of minimizing contention is also relevant to its reverse doctrine of equivalents defense.  The overriding principle of the '547 patent is the use of a delay for causing simultaneous activation of the precharge and evaluation transistors to overcome a charge-sharing problem.  *See, e.g.*, D.I. 439-1, JA Ex. 1, '547 patent, abstract, 3:13-19, 6:7-27.  By contrast, Intel's accused circuits (which have no charge-sharing problem) operate in a fundamentally different way—the accused delay circuitry is used to avoid or reduce contention, and any residual contention is permitted merely as a tolerance in the manufacturing process.  D.I. 444-1, JA Ex. 36, Subramanian Non-Infring. Rpt. ¶¶ 628-630.  Thus, even if the accused circuits are found to literally meet the claim elements, Intel's design goal—minimizing contention—demonstrates that the accused products do not gain the alleged benefit of the '547 patent but are "so far changed in principle" that Intel cannot be said to be using the purported invention.  D.I. 504 at 8-10.

---

*other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1928 (2016).

[2]      Intel's additional willfulness defenses (*e.g.*, that it did not copy, that it acted reasonably and in good faith) likewise do not implicate the attorney-client privilege.  *See* D.I. 422 at 10-15.

Respectfully submitted,


POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
   AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000


Dated: April 7, 2017

By:   */s/ David E. Moore*
        David E. Moore (#3983)
        Bindu A. Palapura (#5370)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE 19899
        Tel:  (302) 984-6000
        dmoore@potteranderson.com
        bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

# Exhibit 14B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-0033-RGA-MPT |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| INTEL CORPORATION, | ) | |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | **HIGHLY CONFIDENTIAL** |
| | ) | **ATTORNEYS' EYES ONLY** |

**PLAINTIFF AVM'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE NO. 1**
**TO EXCLUDE REFERENCES TO AND EXPERT TESTIMONY**
**FROM PRIOR LITIGATIONS**

OF COUNSEL:
D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Edward H. Takashima
BOIES SCHILLER FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

Dated: April 10, 2017

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
jsheasby@irell.com

Intel does not dispute that testimony or argument about *AVM1*, prior expert testimony, or the *Hitachi* case would prejudice the jury.  Indeed, Intel confirms that is what it intends—it argues it should be allowed to argue that it expected to win this case because it won the last one.  (*See* Opp. at 1.)  This is precisely the kind of "AVM lost then, so it should lose now" prejudice that courts exclude.  Intel does not identify even one case supporting its contrary argument.

Intel's argument in favor of presenting to the jury the Court's order on willfulness (*AVM1*, D.I. 181) is meritless.  First, plaintiffs routinely make pre-trial decisions about what issues to take to trial; it is unreasonable to interpret AVM's withdrawal of its willfulness claim in *AVM1* as indicating that Intel's conduct was not willful.  (*AVM1*, D.I. 172.)  Second, AVM does not "admit its infringement claims [in *AVM1*] were baseless."  Third and most important, even assuming *arguendo* that Intel's products in *AVM1* did not infringe, that is irrelevant to any jury issue in the present case.  This case involves different Accused Products, which most certainly infringe, that Intel designed and sold years after the products at issue in *AVM1*.

Intel should not be allowed to cherry-pick Mr. McAlexander's or Mr. Evans' testimony.  To respond, AVM would have to call those witnesses—who did not submit an expert report in this case—to explain their opinions, how the facts in *AVM1* and this case differ, and why their prior statements do not assist Intel.  This sideshow would be confusing and would needlessly complicate a complex case, in which the parties have retained experts to testify to all the issues Intel identifies.  In addition, Mr. Evans' testimony was excluded from *AVM1* as unreliable.

References to the *Hitachi* case also should be excluded.  The prejudice and confusion dramatically outweigh any probative value.

To ensure that this lawsuit is decided on its own merits, Intel should be precluded from referring to testimony or argument about *AVM1*, prior expert testimony, or the *Hitachi* case.

Respectfully submitted,

OF COUNSEL:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Edward H. Takashima
BOIES SCHILLER FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
(310) 752-2400
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

Dated:  April 10, 2017

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on April 10, 2017, a true copy of the

foregoing document was served via electronic mail upon the following counsel of record for Intel

Corporation:

Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

David C. Marcus
Nancy Lynn Schroeder
WILMERHALE
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
david.marcus@wilmerhale.com
nancy.schroeder@wilmerhale.com

Matthew Leary
WILMERHALE
1225 Seventeenth Street
Suite 2600
Denver, CO 80202
matthew.leary@wilmerhale.com

William F. Lee
Jordan L. Hirsch
Lauren B. Fletcher
Kevin A. Goldman
Claire M. Specht
Sarah R. Frazier
WILMERHALE
60 State Street
Boston, MA 02109
william.lee@wilmerhale.com
jordan.hirsch@wilmerhale.com
lauren.fletcher@wilmerhale.com
kevin.goldman@wilmerhale.com
claire.specht@wilmerhale.com
sarah.frazier@wilmerhale.com

Jason Kipnis
WILMERHALE
950 Page Mill Road
Palo Alto, CA 94304
jason.kipnis@wilmerhale.com

Todd Zubler
William G. McElwain
Brittany Amadi
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
todd.zubler@wilmerhale.com
william.mcelwain@wilmerhale.com
brittany.amadi@wilmerhale.com

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 15-0033-RGA-MPT |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| INTEL CORPORATION, ) | **FILED UNDER SEAL** |
| ) | **HIGHLY CONFIDENTIAL** |
| Defendant. ) | **ATTORNEYS' EYES ONLY** |

### PLAINTIFF AVM'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE NO. 2
### TO PRECLUDE INTEL FROM USING INFORMATION AND MAKING ARGUMENTS
### <u>NOT PRODUCED OR DISCLOSED IN DISCOVERY</u>

OF COUNSEL:
D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Edward H. Takashima
BOIES SCHILLER FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

Dated:  April 10, 2017

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
jsheasby@irell.com

AVM seeks to preclude Intel from relying on data it never produced—the ██████ ████—through any witness' testimony or attorney argument.  In its opposition, Intel appears to agree that it should not use or mention ████████ in any capacity during trial.  (Opp. at 1-2 (agreeing that Intel's expert "will not rely on [the ████████ at trial" and admitting that Judge Thynge held that "witnesses may not testify about the ████████") Intel has provided no basis for any of its witnesses to use, mention, or rely on ████████ in the face of Judge Thynge's order precluding them from doing so.  (D.I. 438, Ex. D at 59-60.)[1]

Intel references another set of data, ████████ arguing that data can ████████ ████  That question will be hotly debated at trial.  But Intel must not be permitted to get in excluded evidence by claiming the ████ is consistent with the ████████ or by having witnesses testify as to what they believe the ████████ would show.

As to logic high/logic low values, Intel does not dispute that it never provided analysis as to what those values are for the Accused Products.  Intel stated ████████ ████ (D.I. 483, Ex. U at 11-12), and its experts have not calculated those values either.  (Opp. at 3.)  Intel's experts therefore should be precluded from opining as to what the correct logic low or logic high values are.  They also may not claim that they know how to calculate such values, since both they and Intel have refused to calculate those values throughout this entire litigation.  To permit them to perform such a calculation, or say they could but chose not to, would be severely prejudicial since AVM would be unable to cross-examine them on their supposed (unused and untested) ability.

---

[1] AVM seeks to prevent Intel from relying on unproduced data by getting it in through fact witnesses' testimony about what they think the data would show.  Judge Thynge's order precluded such testimony.  (D.I. 438, Ex. D at 59-60.)  Intel should be required to show data on which it relies was produced before Judge Thynge's ruling on September 27, 2016 (and not merely witness statements relying on the data).

Respectfully submitted,

/s/ Benjamin J. Schladweiler

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

OF COUNSEL:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Counsel for Plaintiff AVM Technologies, LLC

Edward H. Takashima
BOIES SCHILLER FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
(310) 752-2400
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

Dated:  April 10, 2017

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on April 10, 2017 a true copy of the

foregoing document was served via electronic mail upon the following counsel of record for Intel

Corporation:

Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

David C. Marcus
Nancy Lynn Schroeder
WILMERHALE
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
david.marcus@wilmerhale.com
nancy.schroeder@wilmerhale.com

Matthew Leary
WILMERHALE
1225 Seventeenth Street
Suite 2600
Denver, CO 80202
matthew.leary@wilmerhale.com

William F. Lee
Jordan L. Hirsch
Lauren B. Fletcher
Kevin A. Goldman
Claire M. Specht
Sarah R. Frazier
WILMERHALE
60 State Street
Boston, MA 02109
william.lee@wilmerhale.com
jordan.hirsch@wilmerhale.com
lauren.fletcher@wilmerhale.com
kevin.goldman@wilmerhale.com
claire.specht@wilmerhale.com
sarah.frazier@wilmerhale.com

Jason Kipnis
WILMERHALE
950 Page Mill Road
Palo Alto, CA 94304
jason.kipnis@wilmerhale.com

Todd Zubler
William G. McElwain
Brittany Amadi
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
todd.zubler@wilmerhale.com
william.mcelwain@wilmerhale.com
brittany.amadi@wilmerhale.com

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>INTEL CORPORATION, )<br><br>Defendant. ) | C.A. No. 15-0033-RGA-MPT<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL**<br>**HIGHLY CONFIDENTIAL**<br>**ATTORNEYS' EYES ONLY** |

**PLAINTIFF AVM'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE NO. 3
TO EXCLUDE EVIDENCE THAT INTEL DOES NOT INFRINGE
BECAUSE IT ALLEGEDLY DESIRES TO ELIMINATE CONTENTION
AND SIMULTANEOUS ACTIVATION**

OF COUNSEL:
D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Edward H. Takashima
BOIES SCHILLER FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

Dated:  April 10, 2017

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
jsheasby@irell.com

Intel distinguishes between circuit function and Intel's intent: "Evidence regarding the function performed by the accused circuitry is clearly relevant and does not turn on the state of mind of Intel's engineers." (Opp. at 1.) Exactly. The latter does not affect the former. That is why Intel should not be allowed to put on evidence of what Intel or its engineers intended.

Intel is plainly pursuing a lack of intent defense to infringement; it states that intent is relevant to infringement (it is not) and argues that it does not infringe under the reverse doctrine of equivalents because it subjectively did not want the patented feature (also incorrect). Intel also argues that contention is not useful. But that is different from whether Intel subjectively desires it or not. Intel's argument about its intent is designed to mislead the jury. AVM will show that contention permits Intel to achieve faster processor speed and lower power consumption, which Intel indisputably wants. Intel is trying to obfuscate the issue by saying it does not subjectively desire the contention itself. This is improper.

While discussing damages, Intel conflates intent with design. Whether contention enhances processor speed and efficiency, and how much the accused products use contention, are properly at issue. Whether Intel *desires* contention is not.

Intel does not refute that the sword and shield doctrine precludes its discussions of intent now. AVM does not seek an adverse inference. It seeks to preclude Intel from arguing it never intended to infringe, where evidence that would show that evidence of its intent was withheld as privileged.

Intel claims subjective intent to minimize contention defeats the culpability to infringe the patent, citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). *Halo* says nothing of the sort. It discusses how intentional *or knowing* infringement can satisfy willfulness. Intel does not even try to rebut knowing infringement here, nor could it.

Respectfully submitted,

/s/ Benjamin J. Schladweiler

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

OF COUNSEL:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Counsel for Plaintiff AVM Technologies, LLC

Edward H. Takashima
BOIES SCHILLER FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
(310) 752-2400
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

Dated:  April 10, 2017

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on April 10, 2017, a true copy of the

foregoing document was served via electronic mail upon the following counsel of record for Intel

Corporation:

Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

David C. Marcus
Nancy Lynn Schroeder
WILMERHALE
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
david.marcus@wilmerhale.com
nancy.schroeder@wilmerhale.com

Matthew Leary
WILMERHALE
1225 Seventeenth Street
Suite 2600
Denver, CO 80202
matthew.leary@wilmerhale.com

William F. Lee
Jordan L. Hirsch
Lauren B. Fletcher
Kevin A. Goldman
Claire M. Specht
Sarah R. Frazier
WILMERHALE
60 State Street
Boston, MA 02109
william.lee@wilmerhale.com
jordan.hirsch@wilmerhale.com
lauren.fletcher@wilmerhale.com
kevin.goldman@wilmerhale.com
claire.specht@wilmerhale.com
sarah.frazier@wilmerhale.com

Jason Kipnis
WILMERHALE
950 Page Mill Road
Palo Alto, CA 94304
jason.kipnis@wilmerhale.com

Todd Zubler
William G. McElwain
Brittany Amadi
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
todd.zubler@wilmerhale.com
william.mcelwain@wilmerhale.com
brittany.amadi@wilmerhale.com

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)

# Exhibit 15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AVM TECHNOLOGIES, LLC,                    )
                                          )
        Plaintiff,              )   C.A. No. 15-33-RGA
                                          )
                                          )   **JURY TRIAL DEMANDED**
    v.                              )
                                          )   **HIGHLY CONFIDENTIAL –**
INTEL CORPORATION,                        )   **OUTSIDE COUNSELS' EYES ONLY –**
                                          )   **FILED UNDER SEAL**
        Defendant.              )

## DEFENDANT INTEL CORPORATION'S MOTION IN LIMINE #1: TO PRECLUDE TESTIMONY AND ARGUMENT REGARDING THE "JUST IN TIME" PRECHARGE CIRCUITS AND THE EV5 PRODUCT

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Tel: (202) 663-6000

Dated: March 31, 2017

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

## I.   THE COURT SHOULD PRECLUDE EVIDENCE AND ARGUMENT REGARDING INTEL'S "JUST IN TIME" PRECHARGE CIRCUITS.

Intel engineers Sapumal Wijeratne and Eric Donkoh invented the "just in time" precharge ("JITP") circuit.  *See* Horn Decl., Ex. A, U.S. Patent No. 7,952,941 ("the '941 patent").  It is a circuit that activates both a precharge transistor and a "select" transistor (which is different from the accused wordline transistor) to reduce charge-sharing.  *Id.* at 6:26-42.  ███████████

████████████████████████████████████████████

███████████   D.I. 505-1, Ex. A, Wijeratne Dep. at 180:25-181:7, 186:1-8.

The JITP circuit has no relevance to any jury issue, such as infringement, validity, or damages.  AVM does not accuse any JITP circuit of infringement.  And none of AVM's experts—technical or otherwise—has provided any opinions regarding Intel's JITP circuit.[1]

AVM has nonetheless indicated that it may attempt to rely on the JITP circuit as purported evidence that Intel has copied and/or recognized the alleged benefits of the '547 patent.[2]  At his deposition, Joseph Tran—AVM's sole employee and a named inventor of AVM's '547 patent—asserted that Intel's JITP patent "praised" the "concept" or "idea" of the '547 patent.  D.I. 445-1, JA Ex. 43, 6/9/16 Tran Dep. at 175:1-176:8, 288:25-289:13; *id.*, 6/10/16 Tran Dep. at 6:14-7:16.  But Mr. Tran's unsupported and self-serving testimony has no evidentiary value because it refers to a circuit that is ***different*** from the '547 patent and not even accused of infringement by AVM.  *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, C.A. No. 12-3844, 2014 WL 4593338, at *3-4 (N.D. Cal. Sept. 15, 2014) (sales of an unaccused

---

[1]   In his opening report, Intel's invalidity expert Dr. Ivey briefly addressed the JITP circuit only to address AVM's assertions in its interrogatory responses and Mr. Tran's assertions at his deposition.  D.I. 441-1 & 442-1, JA Ex. 26, Ivey Invalidity Rpt. ¶¶ 296, 645-648.  Dr. Ivey will not discuss the JITP circuit at trial, unless AVM is permitted to do so.

[2]   *See, e.g.*, Horn Decl., Ex. B, AVM Second Suppl. Resp. to Interrogatory No. 16 at 34 (Apr. 1, 2016); *id.*; Ex. D, AVM Second Suppl. Resp. to Interrogatory No. 22A at 45 (Jun. 29, 2016); *see also id.*, Ex. E, AVM Exhibit List (PX0957, PX1066, PX1327).

product were not probative of "the commercial success" or "value of the patented technology," when the plaintiff had not "made a connection between the accused and unaccused products"). Indeed, AVM's experts did not mention Intel's JITP circuit in their discussions of secondary considerations of non-obviousness (such as praise for the patent, copying, and commercial success) or the value of the '547 patent. *See, e.g.*, D.I. 444-1, JA Ex. 40, Wolfe Rpt. ¶¶ 248-271.

Admission of evidence regarding the JITP circuit also would be highly prejudicial to Intel, would waste time, and would be likely to mislead or confuse the jury.  AVM would essentially be permitted to rely on a "concept" taken out of context in an *unrelated* Intel patent to suggest that Intel's JITP circuit and the '547 patent are similar, even though AVM's experts have expressed no such opinions.  There is also serious risk that the jury would be confused into thinking that ████████████████████████████████████████████████████████

████████████████████████████████████████████████ And this evidence could unfairly suggest to the jury that Intel copied the '547 patent, even though there is no actual evidence of copying (and Intel in fact did not copy).  Because evidence and argument regarding the JITP circuit has no probative value and would be highly prejudicial to Intel and misleading or confusing to the jury, it should be excluded under FRE 402 and 403.

## II.   THE COURT SHOULD PRECLUDE EVIDENCE AND ARGUMENT REGARDING THE EV5 PRODUCT.

The DEC Alpha 21164, referred to as the "EV5," is a microprocessor that qualifies as prior art to the '547 patent.  While Intel disclosed the EV5 as a prior art product and specifically relied on circuits in the E-Box portion of the product in *AVM1*, Intel is no longer relying on the EV5 processor as prior art in this case.  Horn Decl., Ex. F, 8/8/16 Amadi Email ("Intel will no longer be relying on the DEC Alpha 21164.").  Intel's invalidity expert Dr. Ivey did not discuss the EV5 product or the circuits in its E-Box as invalidating prior art in his expert report in this

case.[3]  The EV5 is not relevant to any remaining issue and therefore should be excluded from trial.  *See Chislum v. Department of Corr.*, C.A. No. 01-4901, 2005 WL 1827950, at *2 (D.N.J. Aug. 2, 2005) (precluding plaintiff from offering evidence to prove allegations no longer in the case, "as such evidence would be irrelevant and unduly prejudicial under Rules 402 and 403").

In his expert report, AVM's validity expert Dr. Wolfe made a number of misleading statements about the EV5 which, if admitted, would only confuse or mislead the jury and prejudice Intel.  Dr. Wolfe speculated—with no support whatsoever—that Intel chose not to rely on the EV5 because "additional timing analysis … determined that EV5 did not simultaneously activate precharge and evaluation transistors."  D.I. 444-1, JA Ex. 40, Wolfe Rpt. ¶ 177.  Dr. Wolfe also implied that this supposed flaw with the EV5 is applicable to other, unrelated prior art references—even though there is no connection between the EV5 product (and specifically its E-Box circuits) and those other references.  *Id.* ¶ 179 ("I may therefore use this example to illustrate how Dr. Ivey's speculative assertions regarding references like the Benschneider article, the P6, and Colwell and Steck article are unreliable.").

Intel's reason for choosing other prior art references over the EV5 product is not relevant to any issue the jury will be asked to decide.  Allowing AVM to speculate about Intel's reason for withdrawing its reliance on the EV5 and implying that the same reason somehow applies to other prior art references would be highly prejudicial to Intel.  The jury may be misled into determining the merit of a prior art reference without looking at the actual evidence underlying it.  Such arguments would also waste trial time.  AVM should accordingly be precluded under FRE 402 and 403 from offering any evidence or argument relating to the EV5.

---

[3]   Dr. Ivey did separately discuss a prior art article ("the Benschneider article") that described other circuits in the EV5—specifically, circuits in the I-Box portion of the product. D.I. 441-1, JA Ex. 26, Ivey Rpt. ¶¶ 418-459.  But to avoid any potential confusion regarding the EV5, Dr. Ivey will not rely on the Benschneider article at trial either.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000


Dated: March 31, 2017

By:    */s/ David E. Moore*
       David E. Moore (#3983)
       Bindu A. Palapura (#5370)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE 19899
       Tel:  (302) 984-6000
       dmoore@potteranderson.com
       bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-33-RGA |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| INTEL CORPORATION, | ) | **OUTSIDE COUNSELS' EYES ONLY –** |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

**DEFENDANT INTEL CORPORATION'S MOTION IN LIMINE #2:
TO PRECLUDE TESTIMONY AND ARGUMENT INCONSISTENT
WITH THE COURT'S PRIOR RULINGS**

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Tel: (202) 663-6000

Dated: March 31, 2017

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

## I.   THE COURT SHOULD PRECLUDE EVIDENCE AND ARGUMENT INCONSISTENT WITH THE COURT'S CLAIM CONSTRUCTIONS.

Evidence and argument inconsistent with the Court's constructions are inadmissible at trial under Federal Rules of Evidence 402 and 403.   Claim construction is a question of law for the Court decide.   *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).   Any evidence or argument regarding claim construction that deviates from the Court's constructions would be irrelevant, confusing, prejudicial, and would invite jurors to disregard the Court's prior rulings.[1]

AVM has indicated that it will argue at trial that a non-periodic signal (such as a "gated clock" signal) could satisfy the Court's construction of "clock signal."   D.I. 439-1, JA Ex. 10, Hassoun Infring. Rpt. ¶¶ 422-423; D.I. 440-2, JA Ex. 15, Hassoun Reply Rpt. ¶¶ 95-102 (discussing Intel documents that purportedly show that "the output of a gated clock is a clock signal").   AVM made essentially the same argument in support of its proposed construction of "clock signal."   *See, e.g.*, D.I. 286 at 10 ("AVM's position [is] that 'clock signal' need not have a 'regular period.'"); *id.* at 23 ("Many documents and patents, including those authored by Intel, provide examples of non-regular or non-periodic signals that are also 'clock signals.'").   The Court rejected AVM's position and construed "clock signal" to mean "a signal occurring or

---

[1]       *See, e.g.*, *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("No party may contradict the court's construction to a jury."); *Cordis Corp. V. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("[I]t is improper to argue claim construction to the jury because the risk of confusing the jury is high when experts opine on claim construction." (internal quotation marks omitted)); *Personalized User Model, LLP v. Google Inc.*, C.A. No. 09-525-LPS, 2014 WL 807736, *1 (D. Del. Feb. 27, 2014) (excluding testimony inconsistent with court's claim construction); *LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 198, 210 (D. Del. 2006) ("[T]o the extent that the court's claim construction and related decisions are inconsistent with the opinions expressed in their respective expert reports, such opinions will not be admitted at trial."); *Eaton Corp. v. Parker-Hannifin Corp.*, C.A. No. 00-751-SLR, 2003 WL 179992, *1 (D. Del. Jan. 24, 2003) (granting motion *in limine* to preclude testimony inconsistent with court's claim construction).

recurring at a constant rate, used for synchronization."  D.I. 328 at 5.  The Court expressly rejected AVM's theory that the term "clock signal" could encompass non-periodic signals:  "I … do not find persuasive AVM's citations to diagrams of gated clocks, clock output signals, or On-Die Clocks that appear non-periodic, as they appear to be referring to something other than a straightforward clock signal.  …  I find that 'clock signal' should be construed to reflect the fact that the signals must occur at regular intervals …."  *Id.* at 8.

As discussed in Intel's summary judgment briefs regarding invalidity, claim preclusion, and *Kessler*, AVM has also indicated that it will argue that the "delay" and "simultaneous activation" terms should be applied in a manner that is inconsistent with the Court's claim constructions—by treating the claimed "delay" as requiring a ***relative*** delay, and the claimed "simultaneous activation" as requiring a ███ measure of transistor activation newly created by AVM's expert in this case.  D.I. 534 at 7-9; D.I. 532 at 7-8; D.I. 431 at 12-16; D.I. 416 at 15-6.

AVM should not be permitted to reargue claim construction under the guise of its infringement and validity theories.  Such practice is improper and not relevant to the issues to be decided by the jury.  Introducing such evidence or argument would serve only to mislead the jury, confuse the issues, waste time, and prejudice Intel and should accordingly be excluded.

## II.    THE COURT SHOULD PRECLUDE EVIDENCE AND ARGUMENT BASED ON INTEL'S NON-PRODUCTION OF DATA.

AVM should be precluded from making any arguments or asking the jury to make any adverse inferences based on Intel's non-production of data.  AVM has already filed a motion on this issue (D.I. 356), and lost:  Chief Magistrate Judge Thynge denied AVM's request for sanctions and adverse inferences based on Intel's non-production of the so-called ███ ███" and ███  D.I. 436, Ex. E at 215; D.I. 438, Ex. D at 56-60, 111-113.  AVM objected to the ruling solely with respect to the ███, and the Court

overruled AVM's objections.  D.I. 397 at 2.  AVM has nevertheless continued to assert, without any basis, that Intel has improperly withheld data that would be harmful to Intel's positions and that adverse inferences are warranted.  *See, e.g.*, D.I. 542 at 1-2; D.I. 491 at 9; D.I. 436 at 9-10.

AVM should not be permitted to circumvent the rulings of this Court and the Magistrate. Moreover, an adverse inference is plainly inappropriate here, where there is no evidence that Intel sought to "suppress the truth" and all evidence is to the contrary.[2]  Intel engineer Arun Krishnamoorthy—the only fact witness to testify regarding the ███████████ and ███████████ █████—testified that the data contradicts AVM's damages theories.  D.I. 500 at 5-6; D.I. 496 at 15-16.  While it would be impractical for Intel to produce the entire ███████████ ███████████████████████ Intel has repeatedly offered to produce representative samples (in addition to ███████████████ already produced), and Intel stands by those offers.  D.I. 500 at 7 & n.4; D.I. 496 at 15 & n.7; D.I. 438, Ex. D at 53, 60-61; D.I. 436, Ex. E at 207.[3] Tellingly, AVM has rejected those offers, and never moved to compel the production of such data—instead, it sought counterfactual adverse inferences (which were denied).  AVM should not be allowed to argue issues to the jury that have already been decided correctly against it.[4]

---

[2]    *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (an adverse inference requires an indication of "fraud and a desire to suppress the truth," and "[n]o unfavorable inference arises when … the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for" (internal quotation marks omitted)); *see also McAdams v. United States*, 297 F. App'x 183, 187 (3d Cir. 2008) ("an adverse negative inference is an extreme remedy," and finding that a mere lack of production of certain reports "did not rise to the level of spoliation of evidence").

[3]    The ████████ is likewise enormous, and also duplicative of data produced by Intel.  D.I. 438, Ex. D at 111-113; D.I. 397 at 2.

[4]    There is also no basis for an adverse inference as to Intel's non-production of ████████ ████████ which ████████████████ no longer exists.  D.I. 506 at 19 & n.9; D.I. 447-1, JA Ex. 59, 2012 Kreitzer Dep. at 94; D.I. 434, Ex. G, 2016 Kreitzer Dep. at 335-336; *see also* Fed. R. Civ. P. 37(e); *Accurso v. Infra-Red Servs., Inc.*, 169 F. Supp. 3d 612, 618 (E.D. Pa. 2016).  Intel did not act with any intent to deprive, and AVM's expert agreed it is "not unusual" that the data no longer exists.  D.I. 445-1, JA Ex. 42, Wolfe Dep. at 184.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000


Dated: March 31, 2017

By:    */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-33-RGA |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| INTEL CORPORATION, | ) | **OUTSIDE COUNSELS' EYES ONLY –** |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

**DEFENDANT INTEL CORPORATION'S MOTION IN LIMINE #3
TO EXCLUDE DAMAGES EVIDENCE AND ARGUMENT THAT IS NOT RELEVANT
TO EITHER PARTY'S DAMAGES THEORIES**

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Tel: (202) 663-6000

Dated: March 31, 2017

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

## I.   AVM SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR ARGUMENT REGARDING INTEL'S TOTAL REVENUES/PROFITS.

Evidence of Intel's total revenues and profits for the company and the accused products should be excluded under FRE 402 and 403.  Such evidence is not relevant because AVM has not asserted or shown that the "entire market value rule" applies.  *See LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d. 51, 67-68 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319-1320 (Fed. Cir. 2011) (total accused revenues not relevant where patentee conceded invention did not drive demand).  AVM's damages expert Dr. Hatch does not claim that the '547 patent is the basis of demand for the accused products and admits "the success of Intel's products is driven by many factors unrelated to the '547 patent."  D.I. 441-1, JA Ex. 22, Hatch Dep. at 276; *see id.*, JA Ex. 18, Hatch Rpt. ¶ 173.  Nor has he shown any nexus between the '547 patent and Intel's corporate revenues and profits.  Intel's total corporate-wide and accused revenues/profits are thus not relevant to damages.  *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("[E]vidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute.").

Allowing this information at trial would prejudice Intel and mislead the jury.  "Admission of … overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve[s] to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's calculation[.]"  *LaserDynamics*, 694 F.3d at 67; *see Uniloc*, 632 F.3d at 1320 (disclosing accused revenues of $19 billion dollars "cannot help but skew the damages horizon for the jury").  Even were there any probative value, it would be substantially outweighed by the risk of unfair prejudice and confusing or misleading the jury.

## II.   AVM SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR ARGUMENT REGARDING UNDISCLOSED, NON-COMPARABLE LICENSES.

AVM has not identified a single license agreement that it contends is comparable to the

hypothetical license that the parties would have negotiated for the '547 patent.  *See* D.I. 441-1, JA Ex. 22, Hatch Dep. at 273-274.  AVM's licensing and damages experts both admit that the only license agreements they even looked at were the agreements *Intel* identified as comparable in its interrogatory response.  *See id.* at 252-253; D.I. 439-1, JA Ex. 4, Chandler Dep. at 74-77.

Even so, AVM has indicated that at trial it may seek to rely on previously undisclosed settlement and license agreements.  *E.g.*, D.I. 531 at 2; Horn Decl., Ex. E, AVM Exhibit List at PX0264, PX0867, PX0869, PX1098, PX1099, PX1190.  AVM did not disclose these agreements during discovery (Horn Decl., Ex. C, AVM Interrogatory Resp. 19A at 12), and no expert in this case has opined that they are comparable.  Moreover, this Court determined in *AVM1* that two of the agreements (the MicroUnity and Intergraph settlements) are *not* comparable to the hypothetical license (*AVM1*, D.I. 230 at 7), and a third agreement (the WARF settlement) could not be used absent an "analysis of the litigation" (*AVM1*, D.I. 283 at 6), which AVM did not do in *AVM1* and has not done in this case.

Because during fact and expert discovery AVM never even contended, let alone demonstrated, that these agreements are comparable, they are irrelevant and would only prejudice Intel, confuse the issues, and mislead the jury.  *See id.*; *ResQNet.com*, 594 F.3d at 872-873 (factfinder "should not rely on unrelated licenses to increase the reasonable royalty rate" beyond comparable rates).  AVM should be precluded under FRE 402 and 403 from introducing or discussing these agreements or others that neither party identified as comparable.

## III.   AVM SHOULD BE PRECLUDED FROM INTRODUCING DAMAGES CALCULATIONS BASED ON CIRCUITS OTHER THAN THE FOUR CIRCUITS IDENTIFIED BY AVM'S DAMAGES EXPERTS.

Dr. Hatch has purported to calculate the precise amount of Intel revenues attributable to the speed benefit that the '547 patent provides to Intel's accused products.  His calculations are based on the speed measurements of ████████████ identified by Dr. Hassoun (AVM's

technical expert).  Under FRE 402 and 403, AVM should be precluded at trial from introducing damages calculations based on any circuits other than those four individual circuits.

To calculate damages, Dr. Hatch relied on Dr. Hassoun's measurements of the alleged speed benefit of the '547 patent in "Tech Models" 1a and 3a.  D.I. 441-1, JA Ex. 18, Hatch Rpt. ¶¶ 198, 200; *id.*, JA Ex. 20, 11/09/2016 Hatch Suppl. Rpt. ¶ 10.  Those Tech Models report the alleged speed benefit ████████████████████████████████████████ ██████████████████████████ D.I. 440-1, JA Ex. 10, Hassoun Infring. Rpt. ¶¶ 609, 621; D.I. 440-2, JA Ex. 12, Hassoun Suppl. Rpt. ¶¶ 3, 6.  Dr. Hassoun determined the alleged speed benefit ████████████ down to a precise number of picoseconds.  Dr. Hatch then used those specific numbers to calculate the revenue benefit to Intel.  D.I. 441-1, JA Ex. 18, Hatch Rpt. ¶¶ 197-200.[1]  If Drs. Hatch and Hassoun had used different circuits, Dr. Hatch's revenue calculations would change ████████████████████████.[2]

AVM has not attempted to measure or calculate the revenue benefit of any individual circuit ████████████████████████████[3]  Yet AVM has indicated it may try to rely on measurements of other accused circuits at trial to support its damages claim.  *See* D.I. 491 at 10.  Evidence or testimony about other circuit measurements or calculations—which Dr. Hatch never considered and which would have led to different revenue calculations—would be irrelevant, misleading to the jury, and unfairly prejudicial to Intel.  It should be excluded.

---

[1]     Dr. Hatch translated the purported speed benefit into a revenue benefit using a regression analysis done by another AVM expert, Dr. Knittel.  D.I. 441-1, JA Ex. 20, Hatch Rpt. ¶ 193; *id.*, JA Ex. 22, Hatch Dep. at 92-93.

[2]     This is not conjecture:  when Dr. Hatch changed the specific Haswell circuit used for his revenue calculations, his damages number ████████████.  *See* D.I. 429 at 16 n.12.

[3]     Dr. Hatch discussed Dr. Hassoun's Tech Models 4 and 5, but he did not base his ultimate damages calculations on them.  In any event, Tech Models 4 and 5 use ██████████████ as Tech Models 1 and 3 (Dr. Hassoun also included ████████████████ but they were not used for damages calculations).  D.I. 440-1, JA Ex. 10, Hassoun Infring. Rpt. ¶¶ 631, 644.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000


Dated: March 31, 2017

By:   */s/ David E. Moore*
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19899
      Tel:  (302) 984-6000
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVM TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 15-33-RGA<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)  **HIGHLY CONFIDENTIAL – OUTSIDE**<br>)  **COUNSELS' EYES ONLY –**<br>)  **FILED UNDER SEAL**<br>)<br>) |

**DECLARATION OF STEVEN J. HORN IN SUPPORT OF DEFENDANT
INTEL CORPORATION'S MOTIONS IN LIMINE**

I, Steven J. Horn, declare as follows:

1.       I am an attorney at the law firm of WilmerHale, counsel for Defendant Intel

Corporation ("Intel") in the matter of *AVM Technologies, LLC v. Intel Corporation*, C.A. No. 15-

33-RGA (D. Del.).  I am licensed to practice law in Massachusetts and am admitted *pro hac vice*

in this action.

2.       I make this declaration in support of Defendant Intel Corporation's Motions in

Limine.

3.       I am familiar with the facts set forth herein.

4.       Attached hereto as Exhibit A is a true and correct copy of U.S. Patent No.

7,952,941, which issued on May 31, 2011.

5.      Attached hereto as Exhibit B is a true and correct copy of excerpts from AVM Technologies, LLC's Supplemental Response to Intel Corporation's Interrogatory Nos. 1, 3, 10, 13, and 16 (specifically, AVM's Second Supplemental Response to Interrogatory No. 16), dated April 1, 2016.

6.      Attached hereto as Exhibit C is a true and correct copy of excerpts from AVM Technologies, LLC's Supplemental Objections and Second Supplemental Responses to Defendant Intel Corporation's Interrogatory No. 19A, dated April 4, 2016.

7.      Attached hereto as Exhibit D is a true and correct copy of excerpts from AVM Technologies, LLC's Second Supplemental Objections and Responses to Defendant Intel Corporation's Interrogatory No. 22A, dated June 29, 2016.

8.      Attached hereto as Exhibit E is a true and correct copy of excerpts from AVM Technologies, LLC's Corrected Exhibit List, dated March 24, 2017.

9.      Attached hereto as Exhibit F is a true and correct copy of an email from Brittany Amadi to Jon Knight, et al., dated August 8, 2016.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 31, 2017.

_Steven J. Horn_

_____

Steven J. Horn

# Exhibit A

US007952941B2

## (12) United States Patent
### Wijeratne et al.

(10) Patent No.: **US 7,952,941 B2**
(45) Date of Patent: **May 31, 2011**

(54) **METHOD AND APPARATUS FOR REDUCING LEAKAGE IN BIT LINES OF A MEMORY DEVICE**

(75) Inventors: **Sapumal B Wijeratne**, Portland, OR (US); **Eric Kwesi Donkoh**, Hillsboro, OR (US)

(73) Assignee: **Intel Corporation**, Santa Clara, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 283 days.

(21) Appl. No.: **12/345,442**

(22) Filed: **Dec. 29, 2008**

(65) **Prior Publication Data**

US 2010/0165753 A1      Jul. 1, 2010

(51) Int. Cl.
*G11C 7/00*         (2006.01)
(52) **U.S. Cl.** .................. **365/189.11**; 365/203; 365/228
(58) **Field of Classification Search** ............. 365/189.11, 365/203, 228, 154
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 7,417,910 B2 * | 8/2008 | Kang et al. | 365/203 |
| 7,668,035 B2 * | 2/2010 | Chu et al. | 365/227 |
| 7,830,727 B2 * | 11/2010 | Arsovski et al. | 365/189.15 |

* cited by examiner

*Primary Examiner* — David Lam
(74) *Attorney, Agent, or Firm* — Blakely, Sokoloff, Taylor & Zafman LLP

(57) **ABSTRACT**

A method and system to allow reduction of leakage in the bit lines of a memory device. In addition, minimal delay to the bit lines is introduced by the method and system. The memory device has a plurality of bit lines and a plurality of nodes to facilitate access of a respective one of the bit lines. A logic circuit that has a plurality of transistors and each transistor is coupled with the respective one of the bit lines and with a respective one of the nodes to reduce leakage of the bit lines when the transistors are deactivated. A just in time pre-charge method is also used to avoid the requirement of an additional pre-charge device to prevent excessive charge sharing while enabling the reduction of leakage of the bit lines.

15 Claims, 5 Drawing Sheets





(PRIOR ART)
FIG. 1

(PRIOR ART)
FIG. 2

87511DOC11333921



FIG. 3

87511DOC11333922



FIG. 4



FIG. 5

| Signal | Rising edge | Falling edge |
|---|---|---|
| 520 Input clock | Ref 1 | Ref 2 |
| 530 Bit line enable | < Ref 1 | > Ref 2 |
| 515 Local clock | Ref 1 + 2 INV | Ref 2 + 2 INV |
| RdWL | Ref 1 + 4 INV | Ref 2 + 4 INV |
| 162 Activation signal of pre-charge device | Ref 1 + 4 INV | Ref 2 + 4 INV |
| 312 Enable 1 | Ref 1 + 2 INV | Ref 2 + 2 INV |

600                    FIG. 6

| | | Cycle 1 | | Cycle 2 | | Cycle 3 | | Cycle 4 | |
|---|---|---|---|---|---|---|---|---|---|
| | | No read | | Read 11th entry | | Read 50th entry | | No read | |
| LBL id | Entries | Pre-ch | Eval | Pre-ch | Eval | Pre-ch | Eval | Pre-ch | Eval |
| LBL 1 | 0:7 | En1=0 | En1=0 | En1=0 | En1=0 | En1=0 | En1=0 | En1=0 | En1=0 |
| LBL 2 | 8:15 | En2=0 | En2=0 | En2=0 | **En2=1** | **En2=1** | En2=0 | En2=0 | En2=0 |
| LBL 3 | 16:23 | En3=0 | En3=0 | En3=0 | En3=0 | En3=0 | En3=0 | En3=0 | En3=0 |
| LBL 4 | 24:31 | En4=0 | En4=0 | En4=0 | En4=0 | En4=0 | En4=0 | En4=0 | En4=0 |
| LBL 5 | 32:39 | En5=0 | En5=0 | En5=0 | En5=0 | En5=0 | En5=0 | En5=0 | En5=0 |
| LBL 6 | 40:47 | En6=0 | En6=0 | En6=0 | En6=0 | En6=0 | En6=0 | En6=0 | En6=0 |
| LBL 7 | 48:55 | En7=0 | En7=0 | En7=0 | En7=0 | En7=0 | **En7=1** | **En7=1** | En7=0 |
| LBL 8 | 56:63 | En8=0 | En8=0 | En8=0 | En8=0 | En8=0 | En8=0 | En8=0 | En8=0 |

700                    FIG. 7

87511DOC11333924



FIG. 8



FIG. 9

US 7,952,941 B2

1

## METHOD AND APPARATUS FOR REDUCING LEAKAGE IN BIT LINES OF A MEMORY DEVICE

### FIELD OF THE INVENTION

This invention relates to a memory device, and more specifically but not exclusively, to the reduction of leakage in bit lines of the memory device.

### BACKGROUND DESCRIPTION

Memory devices consume static power because of leakage through its transistors. To counter the leakage problem, low leakage (high dielectric constant) transistors and circuit techniques have been used.

FIG. 1 shows a prior art register file 100. The local bit line (LBL) 1 140 is a distributed domino (typically 8:1) multiplexer and is connected to several adjacent one bit cells 110 and 120 in LBL block 1 101. The LBL 1 140 can be merged with LBL 2 145 using a two input AND NOT (NAND) gate 185. The output of the NAND gate 185 is sent to a global bit line 182 that merges many LBLs along a memory column.

The access of the one bit cells 110 and 120 are controlled by read word line (RdWL). During the pre-charge phase of the LBLs 140 and 145, pre-charge devices 160 and 170 pull up the voltage level of the LBLs 140 and 145 respectively. The voltage level of the LBLs 140 and 145 is typically pulled up to the voltage supply $V_{CC}$ 190 of the register file 100. When register file 100 is inactive, the RdWL of each one bit cell 110 and 120 deactivates transistors 112 and 122 respectively and the data stored in each one bit cell 110 and 120 cannot be accessed by the LBLs 140 and 145.

Static power consumption of the register file 100 can occur through the leakage of transistors 112 and 122. For example, when LBL 1 140 is pre-charged to $V_{CC}$, when the transistors 112 and 122 are deactivated by the RdWLs of the one bit cells 110 and 120 respectively, and when the transistors 114 and 124 are activated by the data stored in the one bit cells 110 and 120 respectively, leakage via transistors 112 and 122 can occur. This is because the drain and source terminal of transistors 112 and 122 are at $V_{CC}$ and at ground potential respectively.

FIG. 2 shows a prior art register file 200 with a transistor 210 added to reduce the leakage of the LBL 140. The source terminal of transistors 114 and 124 are connected to the drain terminal of transistor 210. Capacitors 212 and 214 represent the equivalent capacitance seen by LBL 1 140 and LBL 2 145 respectively. When register file 200 is inactive, transistor 210 is deactivated to reduce the leakage of transistors 112 and 122. Unlike the earlier example where the source terminal of transistors 112 and 122 are at ground potential, a deactivated transistor 210 can provide leakage reduction by disconnecting the path of the source terminal of transistors 112 and 122 to the ground terminal.

However, the circuit technique used in register file 200 has several flaws. The transistor 210 weakens the pull-down network of the one bit cells 110 and 120 since the charge on the capacitor 212 has to go through transistor 210. To compensate for the delay caused by the weakening of the pull-down network, transistor 210 is typically made three times larger than the typical transistor in register file 200. A virtual $V_{SS}$ track 211 is also required to connect transistors 114 and 124 to transistor 210. In addition, the increase in size of transistor

2

210 to compensate the delay can also cause the leakage of transistor 210 to increase and it offsets the leakage reduction of transistors 112 and 122.

### BRIEF DESCRIPTION OF THE DRAWINGS

The features and advantages of embodiments of the invention will become apparent from the following detailed description of the subject matter in which:

FIG. 1 illustrates a prior art register file;

FIG. 2 illustrates a prior art register file;

FIG. 3 illustrates a memory device in accordance with one embodiment of the invention;

FIG. 4 illustrates a segmentation logic block of a memory device in accordance with one embodiment of the invention;

FIG. 5 illustrates an implementation of a circuit to enable the just in time pre-charge method in accordance with one embodiment of the invention;

FIG. 6 illustrates a table of the signal timings of FIG. 5 in accordance with one embodiment of the invention;

FIG. 7 illustrates the operation of the invention in accordance with one embodiment of the invention;

FIG. 8 illustrates a simplified version of the memory device of FIG. 3 in accordance with one embodiment of the invention; and

FIG. 9 illustrates a block diagram of a system to implement the methods disclosed herein in accordance with one embodiment of the invention.

### DETAILED DESCRIPTION

Reference in the specification to "one embodiment" or "an embodiment" of the invention means that a particular feature, structure or characteristic described in connection with the embodiment is included in at least one embodiment of the invention. Thus, the appearances of the phrase "in one embodiment" appearing in various places throughout the specification are not necessarily all referring to the same embodiment.

Embodiments of the invention allow reduction of leakage in the bit lines of a memory device. In addition, minimal delay to the bit lines is introduced by embodiments of the invention. The memory device includes, but is not limited to, a read only memory (ROM), a branch register file, a predicate register file, an integer register file, a general purpose register file, a floating point file, or any other form of an array of data storing registers. The bit lines include, but are not limited to, local bit lines or global bit lines. Although embodiments of the invention described herein are primarily directed to local bit lines, one of ordinary skill in the relevant art will readily appreciate that embodiments of the invention can also be directed to global bit lines as well.

FIG. 3 illustrates a memory device 300 in accordance with one embodiment of the invention. The memory device 300 has a global bit line 182 that is connected with a segmentation logic block 350 via transistor 180. The LBL block 1 101 and LBL block 2 102 are connected with the segmentation logic block 350 via LBL 1 140 and LBL 2 145 respectively. One of ordinary skill in the relevant art will readily appreciate that other logic or devices may also be connected with memory device 300 to enable its operation. For the sake of clarity, only the relevant or salient parts of the circuitry of the memory device 300 are discussed herein. For example, LBLs 140 and 145 are each connected with an enabling signal or logic that is not illustrated in FIG. 3.

The LBL block 1 140 has two one bit cells 110 and 120. In one embodiment, the number of one bit cells in LBL block 1

US 7,952,941 B2

3

140 is a factor or a multiple of the entry of the memory device 300. For example, if the number of entries of the memory device 300 is 64 entries, the number of one bit cells in LBL block 140 can be 8, 16, 32, 64, or any other combinations. The LBL block 2 102 can have identical or different configuration as LBL block 1 101. Although only two LBL blocks 101 and 102 have been depicted in FIG. 3, memory device 300 can have any number of LBL blocks.

The one bit cell 110 has two transistors 112 and 114 connected in series, i.e., the source terminal of transistor 112 is connected to the drain terminal of transistor 114. The gate and drain terminal of transistor 112 are connected to the read word line (RdWL) and to the LBL 1 140 respectively. The RdWL of one bit cell 110 controls the read access of one bit cell 110. The data of the one bit cell 110 is stored at the gate terminal of transistor 114 via two back-to-back connected inverters. The one bit cell 120 has the same structure as one bit cell 110. Both one bit cells 110 and 120 are connected to the LBL 1 140 and LBL block 1 101. LBL block 1 101 allows only a single one bit cell to be active at any one time. This means that only one RdWL in LBL block 1 101 can activate the access of the selected one bit cell, while the rest of the RdWLs in the other non-selected one bit cells are deactivated.

Segmentation logic block 350 has several components, namely, the transistors 310 and 320, the pre-charge devices 160 and 170, the keeper devices 169 and 179, the two input NAND gate 185, the inverters 164 and 174, and the transistor 180 that receives NAND gate 185 to GBL 182. The pre-charge device 160 of LBL 1 140 is connected with the node 166. When transistor 310 is activated, the pre-charge device 160 pulls up the voltage level of the LBL 1 140 during the pre-charge phase. The keeper device 169 is also activated during the pre-charge phase via inverter 164. Similarly, the pre-charge device 170 of LBL 2 145 is connected with the node 176. When transistor 320 is activated, the pre-charge device 170 pulls up the voltage level of the LBL 2 145 during the pre-charge phase. The keeper device 179 is also activated during the pre-charge phase via inverter 174.

In one embodiment of the invention, the pre-charge devices 160 and 170 are single transistors. In other embodiments, other logic may also be used to pull up the voltage level of the LBLs 140 and 145. The gate and drain terminal of pre-charge device 160 are connected with an activation signal 162 and a voltage supply 190 respectively. Similarly, the gate and drain terminal of pre-charge device 170 are connected with an activation signal 172 and the voltage supply 190 respectively. In one embodiment of the invention, the voltage supply 190 is connected to the voltage supply $V_{CC}$ of the memory device 300.

The source terminal of pre-charge devices 160 and 170 are connected with the LBL 1 140 and the LBL 2 145 respectively. In one embodiment of the invention, when activation signal 162 activates pre-charge device 160, the LBL 1 140 is pulled up to the voltage level of $V_{CC}$-$V_{TH}$. Similarly, when activation signal 172 activates pre-charge device 170, the LBL 2 145 is pulled up to the voltage level of $V_{CC}$-$V_{TH}$.

The keeper devices 169 and 179 are also connected with the nodes 166 and 176 respectively. When transistors 310 and/or 320 are activated, the keeper devices 169 and 179 maintain the voltage level of the LBL 1 140 and LBL 2 145 respectively. During the pre-charge phase of the LBL 1 140, the LBL 1 140 is set to logic one. The input of the inverter 164 is LBL 1 140 and the output of the inverter 164 is inverted to logic zero. The activation signal 168 of the keeper device 169 is connected to the output of the inverter 164 and the keeper device 169 is activated when the LBL 1 140 is set to logic one as activation signal 168 is an active low signal. Similarly,

4

during the pre-charge phase of the LBL 2 145, the LBL 2 145 is set to logic one. The input of the inverter 174 is LBL 2 145 and the output of the inverter 174 is inverted to logic zero. The activation signal 178 of the keeper device 179 is connected to the output of the inverter 174 and the keeper device 179 is activated when the LBL 2 145 is set to logic one as activation signal 178 is an active low signal.

In one embodiment of the invention, the keeper devices 169 and 179 are single transistors. In other embodiments, other logic may also be used to maintain the voltage level of the LBLs 140 and 145. The source and drain terminal of keeper device 169 are connected with the node 166 and a voltage supply 190 respectively. Similarly, the source and drain terminal of keeper device 179 are connected with the node 176 and a voltage supply 190 respectively.

Although the voltage supply 190 of pre-charge devices 160 and 170 and keeper devices 169 and 179 are shown as connected to the voltage supply of the memory device $V_{CC}$, in other embodiments, the voltage supply 190 of pre-charge devices 160 and 170 and keeper devices 169 and 179 can also be connected to different voltage supplies. The source terminal of keeper device 169 is connected with the LBL 1 140 when transistor 310 is activated. In one embodiment of the invention, when activation signal 168 activates keeper device 169, the LBL 1 140 is maintained at the voltage level of $V_{CC}$-$V_{TH}$ when transistor 310 is activated. $V_{TH}$ is the threshold voltage level of transistor 310. When the enable signal 1 312 is set to $V_{CC}$ to turn on transistor 310, the voltage level of LBL 1 140 will be at $V_{CC}$-$V_{TH}$ since the node 166 is maintained at $V_{CC}$ by keeper device 169. The voltage level drop of $V_{TH}$ at LBL 1 140 is required to turn on transistor 310. Similarly, when the enable signal 2 322 is set to $V_{CC}$ to turn on transistor 320, the voltage level of LBL 2 145 will be at $V_{CC}$-$V_{TH}$. The operation of keeper device 179 is similar to the operation of keeper device 169 and shall not be repeated herein.

During each evaluation phase of the LBLs 140 and 145, transistors 310 and 320 are activated to facilitate access of the LBLs 140 and 145. When one bit cell 110 is to be accessed for example, RdWL of one bit cell 110 activates transistor 112. If a logic zero is stored at the input of transistor 114 in the one bit cell 110, transistor 114 will not be activated and LBL 1 140 will be maintained at the voltage level of $V_{CC}$-$V_{TH}$ by keeper device 169. If a logic one is stored in the one bit cell 110, transistor 114 will be activated and LBL 1 140 will be pulled to ground potential as there is a path from voltage supply 190 to the ground terminal via activated transistors 112 and 114.

Transistors 310 and 320 avoid the disadvantages of the prior art register file 200 as described earlier in FIG. 2. The source terminal of transistors 310 and 320 are connected with LBL 1 140 and LBL 2 145 respectively. The drain terminal of transistors 310 and 320 are connected with node 166 and node 176 respectively. One of ordinary skill in the relevant skill will appreciate that the connection of the transistors 310 and 320 source can be swapped, i.e., the connection of the source terminal can be swapped with the connection of the drain terminal. The nodes 166 and 176 facilitate access of LBL 1 140 and LBL 2 145 respectively.

During the pre-charge phase of memory device 300, the enable signal 1 312 and the enable signal 2 322 deactivate transistors 310 and 320 respectively. In the high leakage scenario where transistors 112 and 122 are deactivated by their respective RdWL, and where transistors 114 and 124 are activated by the data stored in one bit cells 110 and 120, transistors 310 and 320 reduce leakage of LBL 1 140 and LBL 2 145 respectively when they are deactivated. This is because the voltage level of LBL 1 140 will move to an equilibrium voltage level where the leakage current through transistors

US 7,952,941 B2

5

112 and 310 is equalized when transistor 310 is deactivated, i.e., LBL 1 140 is floating or unconnected. The equilibrium voltage of LBL 1 140 converges to a level close to $V_{SS}$ or close to ground potential. The voltage level of LBL 2 145 similarly converges to a level close to $V_{SS}$ or to ground potential.

Since the voltage level of LBL 1 140 is close to $V_{SS}$ or close to ground potential, the drain terminal of transistors 112 and 122 is also close to $V_{SS}$ or close to ground voltage level as LBL1 140 is connected to the drain terminal of transistors 112 and 122. The leakage current through transistors 112 and 122 is reduced significantly as the voltage level difference between the drain terminal and the source terminal of transistors 112 and 122 is small. This technique has an advantage as the sizes of the transistors 310 and 320 do not have to be three times bigger than the typical transistor size in the memory device 300. The delay introduced by the addition of transistors 310 and 320 is minimal as LBLs 140 and 145 are pre-charged to $V_{CC}$-$V_{TH}$.

FIG. 4 illustrates a segmentation logic block 450 of a memory device 400 in accordance with one embodiment of the invention. The segmentation logic block 450 requires lesser chip area to implement than segmentation logic block 350. The segmentation logic block 450 is area optimized to perform identical functions as segmentation logic block 350. The function(s) of the transistors 310 and 320, the pre-charge device 160, the keeper device 179, and the transistor 180 in FIG. 4 has been discussed earlier and shall not be repeated herein.

The NAND gate 185 of FIG. 3 is replaced with an inverter 430 in FIG. 4. The enable signals 312 and 322 are multiplexed (not shown) such that only one enable signal can be active at any one time. The output of the inverter 430 drives the keeper device 179. The voltage supply 190 of the pre-charge device 160 and keeper device 179 are connected together. In one experimental study, the segmentation logic block 450 can reduce the number of required devices by about 50% and reduces the foot print by about 40% when compared to segmentation logic block 350.

In the design of segmentation logic blocks 350 and 450, although transistors 310 and 320 are able to reduce the leakage of the LBLs 140 and 145 respectively, excessive charge sharing between the transistor node connected to keeper devices 169 and 179 and the LBLs 140 and 145 may result in noise failure during the evaluation phase of memory devices 300 and 400. For example, during the evaluation phase of LBL 1 140, the pre-charge device 160 is deactivated and the keeper device 169 maintains the voltage level of the node 166 at $V_{CC}$. The voltage level of LBL 1 140 is close to $V_{SS}$ or close to ground potential during the pre-charge phase as discussed earlier and it remains close to $V_{SS}$ or close to ground potential prior to the evaluation phase. When transistor 310 is activated by the enable signal 1 312 during the evaluation phase of LBL 1 140, charge sharing between the node 166 and the LBL 1 140 may occur as there is a potential difference. The charge sharing may cause the keeper device 169 to turn off and result in noise failure.

One possible but non-ideal solution is to have additional pre-charge devices each connected with the LBLs 140 and 145 to ensure that both the source and drain terminal of the transistors 310 and 320 are at $V_{CC}$ to ensure that there is no charge sharing. However, if another pre-charge device is each added to the LBLs 140 and 145, there will be no leakage reduction of the bit lines. In one embodiment of the invention, a just in time (JIT) pre-charge method is used to address the charge sharing problem. The enable signals 312 and 322 activate transistors 310 and 320 prior to the deactivation of the pre-charge devices 160 and 170 respectively. When transis-

6

tors 310 and 320 are activated, the LBLs 140 and 145 are pulled to the voltage level of $V_{CC}$-$V_{TH}$ by the pre-charge devices 160 and 170 respectively prior to the start of the evaluation phase of LBLs 140 and 145.

At the start of the evaluation phase of memory devices 300 and 400, the LBLs 140 and 145 have a voltage level of $V_{CC}$-$V_{TH}$. When transistor 112 is activated by the RdWL of transistor 112 during the evaluation phase of LBL 1 140, the potential difference between the node 166 and the LBL 1 140 is $V_{LN}$. Since $V_{LN}$ is a small voltage level that causes minimal charge sharing, no noise failure will occur. The JIT pre-charge method avoids the requirement of an additional pre-charge device to prevent excessive charge sharing while enabling the reduction of leakage of the bit lines.

FIG. 5 illustrates an implementation of a circuit 500 to enable the JIT pre-charge method in accordance with one embodiment of the invention. For the sake of clarity, circuit 500 shows the logic required for the JIT pre-charge method for LBL 1 140 in memory device 300. The logic required for JIT pre-charge method for LBL 2 145 is similar and one of ordinary skill in the relevant art can apply the same logic for LBL 2 145. In addition, only a single one bit cell 110 is illustrated in FIG. 500. The logic required for other one bit cells are similar and shall not be repeated herein for the sake of clarity.

The bit line enable signal 530 controls the access of the LBL 1 140 and the entry 0 enable signal 510 controls the access of the one bit cell 110. The bit line enable signal 530 goes through buffer 546 and becomes the enable signal 1 312 of transistor 310. The input clock 520 of memory device 300 is gated with the bit line enable signal 530 using the two input AND gate 542. The output of AND gate 542 becomes the local clock 515. The local clock 515 goes through buffer 548 and becomes the activation signal 162 of pre-charge device 160. The local clock 515 is gated with the entry 0 enable signal 510 using the two input AND gate 540 to become the RdWL of one bit cell 110. The circuit 500 allows the activation of the transistor 310 prior to the deactivation of the pre-charge device 160 to reduce charge sharing between the LBL 1 140 and the node 166. The circuit 500 can also be implemented in the segmentation logic 450 of FIG. 4 to achieve the JIT pre-charge method.

FIG. 6 illustrates a table 600 of the signal timings of FIG. 5 in accordance with one embodiment of the invention. Table 600 shows an example of the signals discussed in FIG. 5 and the timing of their rising and falling edges. In the example, the AND gates 540 and 542, and the buffers 546 and 548 are each assumed to have a delay equivalent to two inverter (INV) delays, i.e., the time required for a signal to pass through two INVs.

The time reference of the signals is considered with respect to the rising and falling edges of input clock 520. The rising edge of input clock 520 is assumed to be at time reference 1 (Ref 1) and the failing edge of input clock 520 is assumed to be at time reference 2 (Ref 2). The rising edge of bit line enable signal 530 is activated prior to Ref 1 (<Ref 1) to meet the setup time requirement of the AND gate 542. Similarly, the falling edge of the line enable signal 530 is deactivated after Ref 2 (>Ref 2) to meet the hold time requirement of the AND gate 542. The rising edge of local clock 515 is delayed by two INV delays (Ref 1+2 INV) due to the delay of AND gate 542. Similarly, the falling edge of local clock 515 is delayed by two INV delays (Ref 2+2 INV) due to the delay of AND gate 542.

The rising edge of RdWL of one bit cell 110 is delayed by four INV delays (Ref 1+4 INV) due to the combined delay of AND gates 540 and 542. Similarly, the falling edge of RdWL

US 7,952,941 B2

7

of one bit cell **110** is delayed by four INV delays (Ref **2**+4 INV) due to the combined delay of AND gates **540** and **542**. The rising edge of the activation signal of pre-charge device **160** is delayed by four INV delays (Ref **1**+4 INV) due to the combined delay of AND gate **542** and buffer **548**. Similarly, the falling edge of the activation signal of pre-charge device **160** is delayed by four INV delays (Ref **2**+4 INV) due to combined delay of AND gate **542** and buffer **548**. The rising edge of the enable signal **1 312** of transistor **310** is delayed by two INV delays (Ref **1**+2 INV) due to the delay of buffer **546**. Similarly, the falling edge of the enable signal **1 312** of transistor **310** is delayed by two INV delays (Ref **2**+2 INV) due to buffer **546**.

The example in table **600** shows that the activation of the transistor **310** occurs two inversions prior to the deactivation of the pre-charge device **160** to reduce charge sharing between the LBL **1 140** and the node **166**. Although the example in table **600** shows a delay of two INV delays activation between the activation of transistor **310** and the deactivation of the pre-charge device **160**, this is not meant to be limiting. The AND gates **540** and **542**, and the buffers **546** and **548** can have any amount of delay or no delay at all.

FIG. **7** illustrates the operation of the invention in accordance with one embodiment of the invention. Table **700** illustrates the operation of a register file with sixty four entries in four clock cycles. There are eight LBLs and each LBL has eight one bit cells to make up a total of sixty four entries. For example, LBL **1** has eight entries (**0**:**7**), LBL **2** has another eight entries (**8**:**15**) and so on. Each LBL has a transistor **310** connected to reduce the leakage of each LBL when the transistor **310** is deactivated.

In cycle **1**, no read access is performed and all the enable signals of the transistors **310** of LBL **1** to LBL **8** are deasserted (En[**1**:**8**]=0). In cycle **2**, the 11th entry of the register file is accessed and therefore the enable signal of transistor **310** of LBL **2** is asserted to logic one (En**2**=1) during the evaluation (eval) phase. In cycle **3**, the 50th entry is accessed and therefore the enable signal of transistor **310** of LBL **2** is asserted to logic zero (En**2**=0) and the enable signal of transistor **310** of LBL **7** is asserted to logic one (En**7**=1) during the evaluation phase. In cycle **4**, no read access is performed and the enable signal of the transistor **310** of LBL **7** remains at logic one (En**7**=1) during the pre-charge (pre-ch) phase and is asserted to logic zero (En**7**=0) during the evaluation phase. From the example from table **700**, the dominant state of any LBL is in its lowest leakage state with the enable signal of transistor **310** of each LBL asserted to logic zero. A LBL is brought to the high leakage state only when it is known through the partial decoding of the read address that a particular LBL is needed for the next read.

FIG. **8** illustrates a simplified version of the memory device **300** in accordance with one embodiment of the invention. For the sake of clarity, LBL **2 145**, LBL blocks **101** and **102**, and the other logic connected to node **166** are not shown in FIG. **8**. Capacitor $C_{BIG}$ **812** represents the equivalent capacitance seen by LBL **1 140** and capacitor $C_{SMALL}$ **814** represents the equivalent capacitance seen by the node **166**. During the pre-charge phase of LBL **1 140**, node **166** is pulled to voltage level $V_{CC}$ by pre-charge device **160** in one embodiment of the invention. Therefore, the maximum voltage level that $C_{SMALL}$ **814** can be charged to is $V_{CC}$. Since transistor **310** is connected in series with LBL **1 140** and node **166**, there will be a voltage level drop of $V_{TH}$ at $C_{BIG}$ **812** when transistor **310** is activated. Therefore, the maximum voltage level that $C_{BIG}$ **812** can be charged to is voltage level $V_{CC}$-$V_{TH}$.

When memory device **300** is compared to the prior art register file **100**, less current will be discharged via LBL **1 140**

8

as the voltage level on LBL **1 140** is reduced by $V_{TH}$ for memory device **300**. The total charge to be discharged via LBL **1 140** is $(V_{CC}$-$V_{TN})$*$C_{BIG}$+$(V_{CC})$*$C_{SMALL}$ for the memory device **300**. The total charge to be discharged via LBL **1 140** for prior art register file **100** is $(V_{CC})$*$C_{BIG}$. Therefore the delay increase of memory device **300** compared to the prior art register file **100** is smaller than expected by $V_{TN}$*$C_{BIG}$ due to the LBL **1140** precharged to $V_{CC}$-$V_{TN}$. For this reason the delay penalty of inserting transistor **310** is minimal.

In one embodiment of the invention, memory devices **300** and **400** allow reduction of leakage of their bit lines and at the same time, improve the operational frequency. In one embodiment of the invention, all the transistors described herein are implemented using either N-channel Metal Oxide Semiconductor (NMOS) field effect transistor (FET) or P-channel MOS FET (PMOS). In another embodiment, the transistors described herein may be implemented using any combination of PMOS and/or NMOS transistors. In other embodiments, the transistors may be also replaced with other devices that have a similar switching ability as the transistor.

FIG. **9** illustrates a block diagram of a system **900** to implement the methods disclosed herein according to an embodiment. The system **900** includes but is not limited to, a desktop computer, a laptop computer, a notebook computer, a personal digital assistant (PDA), a server, a workstation, a cellular telephone, a mobile computing device, an Internet appliance or any other type of computing device. In another embodiment, the system **900** used to implement the methods disclosed herein may be a system on a chip (SOC) system.

The system **900** includes a chipset **935** with a memory controller **930** and an input/output (I/O) controller **940**. A chipset typically provides memory and I/O management functions, as well as a plurality of general purpose and/or special purpose registers, timers, etc. that are accessible or used by the processor **925**. The processor **925** may be implemented using one or more processors and each processor has the memory devices **300** and/or **400**.

The memory controller **930** performs functions that enable the processor **925** to access and communicate with a main memory **915** that includes a volatile memory **910** and a non-volatile memory **920** via a bus **965**. The volatile memory **910** includes, but is not limited to, Synchronous Dynamic Random Access Memory (SDRAM), Dynamic Random Access Memory (DRAM), RAMBUS Dynamic Random Access Memory (RDRAM), and/or any other type of random access memory device. The non-volatile memory **920** includes, but is not limited by, flash memory, ROM, EEPROM, and/or any other desired type of memory device.

Memory **915** stores data and instructions to be executed by the processor **925**. Memory **915** may also stores temporary variables or other intermediate data while the processor **925** is executing instructions. The system **900** includes, but is not limited to, an interface circuit **955** that is coupled with bus **965**. The interface circuit **955** is implemented using any type of well known interface standard including, but is not limited to, an Ethernet interface, a universal serial bus (USB), a third generation input/output interface (3GIO) interface, and/or any other suitable type of interface.

One or more input devices **955** are connected to the interface circuit **955**. The input device(s) **945** permit a user to enter data and commands into the processor **925**. For example, the input device(s) **945** is implemented using, but is not limited to, a keyboard, a mouse, a touch-sensitive display, a track pad, a track ball, and/or a voice recognition system. One or more output devices **950** connect to the interface circuit **955**. For example, the output device(s) **950** are implemented using, but

US 7,952,941 B2

9

are not limited to, light emitting displays (LEDs), liquid crystal displays (LCDs), cathode ray tube (CRT) displays, printers and/or speakers). The interface circuit **955** includes a graphics driver card.

The interface circuit **955** includes a communication device such as a modem or a network interface card to facilitate exchange of data with external computers via a network. The communication link between the system **900** and the network may be any type of network connection such as an Ethernet connection, a digital subscriber line (DSL), a telephone line, a cellular telephone system, a coaxial cable, etc.

Access to the input device(s) **945**, the output device(s) **950**, and/or the network is typically controlled by the I/O controller **940** in a conventional manner. In particular, the I/O controller **940** performs functions that enable the processor **925** to communicate with the input device(s) **945**, the output device(s) **950** and/or the network via the bus **965** and the interface circuit **955**.

While the components shown in FIG. **9** are depicted as separate blocks within the system **900**, the functions performed by some of these blocks may be integrated within a single semiconductor circuit or may be implemented using two or more separate integrated circuits. For example, although the memory controller **930** and the I/O controller **940** are depicted as separate blocks within the chipset **935**, one of ordinary skill in the relevant art will readily appreciate that the memory controller **930** and the I/O controller **940** may be integrated within a single semiconductor circuit.

Although examples of the embodiments of the disclosed subject matter are described, one of ordinary skill in the relevant art will readily appreciate that many other methods of implementing the disclosed subject matter may alternatively be used. In the preceding description, various aspects of the disclosed subject matter have been described. For purposes of explanation, specific numbers, systems and configurations were set forth in order to provide a thorough understanding of the subject matter. However, it is apparent to one skilled in the relevant art having the benefit of this disclosure that the subject matter may be practiced without the specific details. In other instances, well-known features, components, or modules were omitted, simplified, combined, or split in order not to obscure the disclosed subject matter.

Various embodiments of the disclosed subject matter may be implemented in hardware, firmware, software, or combination thereof, and may be described by reference to or in conjunction with program code, such as instructions, functions, procedures, data structures, logic, application programs, design representations or formats for simulation, emulation, and fabrication of a design, which when accessed by a machine results in the machine performing tasks, defining abstract data types or low-level hardware contexts, or producing a result.

While the disclosed subject matter has been described with reference to illustrative embodiments, this description is not intended to be construed in a limiting sense. Various modifications of the illustrative embodiments, as well as other embodiments of the subject matter, which are apparent to persons skilled in the art to which the disclosed subject matter pertains are deemed to lie within the scope of the disclosed subject matter.

What is claimed is:

**1**. A memory device comprising:

a plurality of bit lines;

a plurality of nodes, wherein each node is to facilitate access of a respective one of the bit lines;

a logic circuit comprising:

10

a plurality of transistors, each transistor coupled with the respective one of the bit lines and with a respective one of the nodes, wherein the transistors are to reduce leakage of the bit lines when deactivated; and

at least one keeper device coupled with the respective one of the nodes to maintain the voltage level of each bit line during an evaluation phase of each bit line when a respective one of the transistors is activated; and

at least one pre-charge device coupled with the respective one of the nodes to pull up a voltage level of each bit line during a pre-charge phase of each bit line when a respective one of the transistors is activated.

**2**. The memory device of claim **1**, wherein each transistor is activated prior to a deactivation of the at least one pre-charge device to reduce charge sharing between the respective one of the bit lines and the respective one of the nodes.

**3**. The memory device of claim **1**, wherein the memory device is one of a read only memory (ROM), a branch register file, a predicate register file, an integer register file, a general purpose register file or a floating point register file.

**4**. The memory device of claim **1**, wherein the bit lines are local bit lines or global bit lines.

**5**. The memory device of claim **1**, wherein a first terminal of each transistor is coupled with the respective one of the bit lines, wherein a second terminal of each transistor is coupled with the respective one of the nodes, and wherein the first and the second terminal is either a source or a drain terminal.

**6**. A processor comprising:

a plurality of memory devices, each memory device comprising:

a plurality of bit lines;

a plurality of nodes, wherein each node is to facilitate access of a respective one of the bit lines;

a logic circuit comprising:

a plurality of transistors, each transistor coupled with the respective one of the bit lines and with a respective one of the nodes, wherein the transistors are to reduce leakage of the bit lines when deactivated; and

at least one keeper device coupled with the respective one of the nodes to maintain the voltage level of each bit line during an evaluation phase of each bit line when a respective one of the transistors is activated; and

at least one pre-charge device coupled with the respective one of the nodes to pull up a voltage level of each bit line during a pre-charge phase of each bit line when a respective one of the transistors is activated.

**7**. The processor of claim **6**, wherein each transistor is activated prior to a deactivation of the at least one pre-charge device to reduce charge sharing between the respective one of the bit lines and the respective one of the nodes.

**8**. The processor of claim **6**, wherein each memory device is one of a read only memory (ROM), a branch register file, a predicate register file, an integer register file, a general purpose register file or a floating point register file.

**9**. The processor of claim **6**, wherein the bit lines are local bit lines or global bit lines.

**10**. The processor of claim **6**, wherein a first terminal of each transistor is coupled with the respective one of the bit lines, wherein a second terminal of each transistor is coupled with the respective one of the nodes, and wherein the first and the second terminal is either a source or a drain terminal.

**11**. A system comprising:

at least one processor, each processor comprising:

US 7,952,941 B2

11

a plurality of memory devices, each memory device comprising:

a plurality of bit lines;

a plurality of nodes, wherein each node is to facilitate access of a respective one of the bit lines;

a logic circuit comprising:

a plurality of transistors, each transistor coupled with the respective one of the bit lines and with a respective one of the nodes, wherein the transistors are to reduce leakage of the bit lines when deactivated; and

at least one keeper device coupled with the respective one of the nodes to maintain the voltage level of each bit line during an evaluation phase of each bit line when a respective one of the transistors is activated; and

at least one pre-charge device coupled with the respective one of the nodes to pull up a voltage level

12

of each bit line during a pre-charge phase of each bit line when a respective one of the transistors is activated.

**12**. The system of claim **11**, wherein each transistor is activated prior to a deactivation of the at least one pre-charge device to reduce charge sharing between the respective one of the bit lines and the respective one of the nodes.

**13**. The system of claim **11**, wherein each memory device is one of a read only memory (ROM), a branch register file, a predicate register file, an integer register file, a general purpose register file or a floating point register file.

**14**. The system of claim **11**, wherein the bit lines of each memory device are local bit lines or global bit lines.

**15**. The system of claim **11**, wherein a first terminal of each transistor is coupled with the respective one of the bit lines, wherein a second terminal of each transistor is coupled with the respective one of the nodes, and wherein the first and the second terminal is either a source or a drain terminal.

\* \* \* \* \*

# Exhibit B

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit C

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit D

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit E

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit F

**From:** Amadi, Brittany
**Sent:** Monday, August 08, 2016 6:59 PM
**To:** 'Jon Knight'; 'Patrick Lafferty'; 'Michael Underhill'; 'Richard Meyer'; bschladweiler@seitzross.com; 'Rosanne C. Baxter'; 'Eric Maurer'; 'Chapman Good'; 'Edward Takashima'; 'Chapman Good'
**Cc:** Zubler, Todd; Fletcher, Lauren; Leary, Matthew; 'Palapura, Bindu A.'; dmoore@potteranderson.com; 'Potter IP Secretaries'
**Subject:** AVM Technologies v. Intel, No. 15-cv-33

Counsel,

Attached for service please find the Third Supplemental Ex. A7 to Intel's Invalidity Contentions.  In addition, Intel will no longer be relying on the DEC Alpha 21164 microprocessor.

Best,
Brittany

**Brittany Amadi | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6022 (t)
+1 202 663 6363 (f)
brittany.amadi@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

# Exhibit 15A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **C.A. No. 15-0033-RGA-MPT** |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| INTEL CORPORATION, | ) |
| | ) **FILED UNDER SEAL** |
| Defendant. | ) **HIGHLY CONFIDENTIAL** |
| | ) **ATTORNEYS' EYES ONLY** |

**PLAINTIFF AVM'S OPPOSITION TO INTEL MOTION IN LIMINE NO. 1:**
**TO PRECLUDE TESTIMONY AND ARGUMENT REGARDING**
**THE "JUST IN TIME" PRECHARGE CIRCUITS AND THE EV5 PRODUCT**

Of Counsel:
D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC.*

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
jsheasby@irell.co

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

Dated:  April 7, 2017

1

# I.     Intel's '941 Patent Is Relevant To Copying, Damages, Willfulness, and Utility.

Intel's '941 patent, which Intel calls the "just in time" precharge circuits patent, addresses two key concepts from the '547 patent: a delay to the precharge transistor and simultaneous activation of two transistors.  Far from being irrelevant, the '941 patent shows that Intel's engineers recognized the value of the '547 patent in the Accused Products, and, contrary to Intel's claims, intended to use AVM's patented invention in the Accused Circuits.

It is undisputed that Intel was aware of the '547 patent at least as early as March 2005. (Ex. 1 at 11.)  Intel then met with the inventor of the '547 patent, Joseph Tran, from April through September of 2006.  (*Id.*)  In 2008, Intel filed for the '941 patent, which describes dynamic logic circuits that use a delay to the precharge transistor and simultaneous activation of two transistors to address charge sharing.  (*See* Horn Decl., Ex. A at 6:10-14.)  Indeed, one of the listed inventors, Sapumal Wijeratne, confirmed that the embodiment disclosed in the '941 patent matches nearly verbatim the description of simultaneous activation in the '547 patent:[1]

| '547 Patent 5:49-6:19 (excerpts) | Wijeratne 225:2-230:22 (excerpts) |
|---|---|
| Referring to FIGS. 3A and 4B, FIG. 4B shows the delayed clock signal received at the gate 312 of the precharge transistor 302. | Q. So it shows the delayed clock signal 162 received at the gate of the pre-charge transistor 160; right? A. Yes. |
| During the portion 402 of the delayed clock, the precharge transistor is activated, and the evaluation transistor is also activated. | Q. During a portion of the clock signal 162, the pre-charge transistor is activated and then the transistor 310 will also be activated; right? A. During 402 – Q. Yes. THE WITNESS: There will be some overlap, yes. |
| During the portion 402, the evaluation transistor electrically couples (i.e., charge can flow between) the precharge | Q. And during that overlap, the transistor 310 electrically couples so that charge can flow between the pre-charge node 166 and the local bit line node |

---

[1] In formulating his questions, AVM's counsel actually read from the '547 patent's description of simultaneous activation (while changing the labels and numbers of the components). The exhibit about which Mr. Wijeratne testified is Figure 4 from the '547 patent, modified to match the numerical identifiers and labels used in the '941 patent.  It is attached as Exhibit 3.

1

| | |
|---|---|
| node and the logic block.<br><br>Thus, the precharge transistor charges the logic block through the evaluation transistor.<br><br>This charging of the logic block overcomes the problems shown in the circuit of FIG. 2. | 140; right? A. Yes.<br><br>Q. Thus the pre-charge transistor 160 charges the node 140 through the transistor 310; right? A. Yes.<br><br>Q. And this charging overcomes the problem of charge sharing that may have resulted in erroneous voltage levels on the pre-charge node; right? A. Yes. |

Mr. Wijeratne was the lead Intel engineer for the register file methodology in two of the four Accused Products, in which all accused circuits are ▮▮▮▮▮▮▮▮▮▮▮ (D.I. 408, Ex. E at 27:17-22.)  Further, Mr. Wijeratne was in the Intel group that decided to allow increased relative delay between the precharge and evaluation transistors in the accused circuits.  (Ex. 2 at 8.) Therefore, the '941 patent and Mr. Wijeratne's related testimony is probative that (1) Intel knowingly employed delay and simultaneous activation into the ▮▮▮▮▮▮▮▮▮▮▮▮ after learning of the '547 patent, while telling Mr. Tran that it had no interest in it (copying, willfulness, damages); and (2) Intel recognized the benefits of these techniques (utility, damages).  Indeed, the facts that Intel (1) denied any intent to use the '547 patent; (2) alleges the '547 patent has no utility; and (3) at the same time obtained a patent on similar concepts further undermines the relevance of any alleged "offer" Mr. Tran allegedly made (which AVM refutes occurred) to the hypothetical negotiation because Intel was not negotiating in good faith.

## II.    EVIDENCE AND ARGUMENT REGARDING THE EV5 IS ADMISSIBLE

Evidence regarding the DEC Alpha 21164 ("EV5") microprocessor is relevant and admissible, as it rebuts the methodology and opinions of Dr. Ivey, Intel's invalidity expert.  Intel alleges that the EV5 is prior art to the '547 patent.  (Intel MIL No. 1 at 2.)  Intel alleged in *AVM1* and in this case that the EV5 invalidated the prior art.  Intel relied on circuit simulations by one of its employees to assert that the EV5 anticipated the '547 patent.  (*See* D.I. 408, Ex. A.)

AVM's experts analyzed those simulations and found that the simulations had a material error that affected the timing between the alleged precharge and evaluation transistors.  After the error was corrected, the EV5 did not simultaneously activate precharge and evaluation transistors.  (*See* Ex. 4 at 20-24.)  These facts demonstrate the importance of running correct simulations to determine the relative timing of signals in dynamic logic circuits; circuit topology alone did not alert Intel to the fact that (1) its simulations were wrong; and (2) the circuit did not have simultaneous activation.  After AVM shared its evidence with Intel, Intel stated it "will no longer be relying on the DEC Alpha 21164 microprocessor."  (Horn Decl., Ex. F.)

Intel argues that AVM should not be allowed to offer evidence regarding the EV5 on which Intel does not rely.  (Intel MIL No. 1 at 2-3.)  Yet Intel has not cited a single case (nor is AVM aware of one) supporting its position.  The only case Intel cites, *Chislum v. Dept. of Corrections*, 2005 WL 1827950, *2 (D.N.J. Aug. 2, 2005), merely held, on the specific facts of the case, that a plaintiff's reference to dismissed medical care and other tort claims would be irrelevant and prejudicial in a subsequent trial on other claims.

Here, AVM's planned testimony about the EV5 is directly relevant to the invalidity issues.  It undermines Dr. Ivey's claim—disputed by AVM—that he can determine the relative timing of signals in prior art circuits such as those in the P6, the Colwell and Steck Article, and the Benschneider Article based solely on their topology, without conducting timing simulations.[2]  (*See* JA26 at 214-251).  Specifically, Dr. Ivey intends to offer erroneous opinions about the alleged relevance of prior art that suffer from methodological errors that are demonstrated by Intel's prior reliance on the EV5.  The facts regarding EV5 bear directly on the reliability and credibility of Dr. Ivey's opinions and reasoning.

---

[2] While Intel MIL No. 1 states that Dr. Ivey will not rely on the Benschneider article at trial, it appears that this statement is conditioned on Intel MIL No. 1 being granted.

Respectfully submitted,

Of Counsel:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
Boies, Schiller & Flexner LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Edward H. Takashima
Boies, Schiller & Flexner LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
(310) 752-2400
etakashima@bsfllp.com

Rosanne C. Baxter
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
rbaxter@bsfllp.com

Jason G. Sheasby
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

Dated:  April 7, 2017

/s/ Benjamin J. Schladweiler
Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on April 7, 2017, a true copy of *Plaintiff AVM's Opposition to Intel Motion In Limine No. 1* was served via electronic mail upon the following counsel of record for Intel Corporation:

Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

David C. Marcus
Nancy Lynn Schroeder
WILMERHALE
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
david.marcus@wilmerhale.com
nancy.schroeder@wilmerhale.com

Matthew Leary
WILMERHALE
1225 Seventeenth Street
Suite 2600
Denver, CO 80202
matthew.leary@wilmerhale.com

William F. Lee
Jordan L. Hirsch
Lauren B. Fletcher
Kevin A. Goldman
Claire M. Specht
Sarah R. Frazier
WILMERHALE
60 State Street
Boston, MA 02109
william.lee@wilmerhale.com
jordan.hirsch@wilmerhale.com
lauren.fletcher@wilmerhale.com
kevin.goldman@wilmerhale.com
claire.specht@wilmerhale.com
sarah.frazier@wilmerhale.com

Jason Kipnis
WILMERHALE
950 Page Mill Road
Palo Alto, CA 94304
jason.kipnis@wilmerhale.com

Todd Zubler
William G. McElwain
Brittany Amadi
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
todd.zubler@wilmerhale.com
william.mcelwain@wilmerhale.com
brittany.amadi@wilmerhale.com

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVM TECHNOLOGIES, LLC,     ) | |
|     ) | |
|        Plaintiff,     ) | |
|     ) | **C.A. No. 15-0033-RGA-MPT** |
|    v.     ) | |
|     ) | **JURY TRIAL DEMANDED** |
| INTEL CORPORATION,     ) | |
|     ) | **FILED UNDER SEAL** |
|        Defendant.     ) | **HIGHLY CONFIDENTIAL** |
|     ) | **ATTORNEYS' EYES ONLY** |

**PLAINTIFF AVM'S OPPOSITION TO INTEL MOTION IN LIMINE NO. 2:**
**TO PRECLUDE TESTIMONY AND ARGUMENT INCONSISTENT**
**WITH THE COURT'S PRIOR RULINGS**

Of Counsel:
D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@msfllp.com

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC.*

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
jsheasby@irell.com

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

Dated:  April 7, 2017

1

# I.     AVM'S EXPERT APPLIED THE COURT'S CLAIM CONSTRUCTION

AVM has no intention of contradicting the Court's claim constructions, and agrees that neither party should be permitted to do so.  But any such issues are more effectively addressed at trial, in the specific context.  It is inappropriate for Intel to raise this issue now, where AVM's ability to respond is severely circumscribed by page limits. This is especially true where Intel's motion is really a tardy and thinly disguised motion for partial summary judgment.

"Clock Signal": AVM does not argue that a non-periodic signal is a "clock signal" under the Court's construction.  But Intel attempts to misapply the Court's opinion to preclude AVM from showing that certain *portions* of Intel's gated clock output (not the *entire* output) are indeed clock signals under the Court's construction.  Specifically, AVM's expert intends to testify about *portions* of the gated clock output that correspond to the actual clock signal ("a signal occurring or recurring at a constant rate") that pass through the gating element. The fact that the gate does not permit the entire clock signal to pass through does not change the fact that the portions it does permit remain a clock signal.  AVM's expert explains this concept in his report.[1]

AVM will *not* point to the *entire* gated clock output and call it a clock signal.  That is the claim construction issue that the Court addressed and resolved against AVM. Specifically, AVM counsel unsuccessfully argued for a construction that would have permitted AVM to read "clock signal" on the *entire output* of the gated clock, not just the slices of the clock signal coming out of the gated clock output (which Intel's proposal permitted).  (D.I. 301 at 30:4-18.)

"Simultaneous Activation":  Intel's argument is frivolous.  The Court construed "for simultaneously activating" to mean "for causing to be on at the same time."  (D.I. 344 at 2.) Intel is inconsistent on how to apply this construction. Sometimes, Intel's expert argues that

---

[1] AVM's expert also explains how, even if Intel is correct and those slices are not clock signals, they are at a minimum the equivalent of clock signals.  He also explains how the evaluation transistors are connected to a clock signal.  Those opinions are not the subject of Intel's motion.

Intel's transistors are "on" at the threshold voltage; other times, Intel argues that its transistors are "on" when they reach 50% of Vcc—which can be two to three times greater than the threshold voltage.  (JA59 at 113:17-20.)  AVM's expert will testify—*as the patent directly states*—that "on" is when the voltage is either logic high or low (depending upon whether it is a PMOS or NMOS transistor).    (JA1 at 4:26-29, 4:35-39; *see also id*. at 5:55-57, 6:44-49, 7:5-9)  Dr. Hassoun's analysis of *when* the logic high/low occurs in Intel's transistors is a factual issue.

"Delay":  AVM applies the Court's claim construction of "a delay coupled between the clock signal node and the gate terminal of the precharge transistor."  As explained in other briefing before the Court, "delay" is a relative term, and AVM's application of claim 12 complies with the Court's construction.  (D.I. 536 at 9-10.)

## II.    AVM SHOULD BE ALLOWED TO TELL THE JURY THAT INTEL REFUSED TO PRODUCE RELEVANT DATA IN RESPONSE TO AVM'S REQUESTS

No "order" precludes AVM from telling the jury that Intel failed to produce data that Intel now claims would resolve key issues in the case.  Intel is wrong that a denial of an adverse inference or sanctions is tantamount to precluding AVM from addressing the issue at trial through cross-examination or other testimony.  In fact, AVM specifically asked Judge Thynge whether AVM was precluded from referring to Intel's failure to produce, and she said no:

> MR. UNDERHILL:  I mean, in other words, we're not precluded from making the point that Intel had this data and did not produce it; is that correct?
> THE COURT:  . . .if Judge Andrews allows that type of examination, I don't see -
> - I personally do not see a problem with it. I think it depends in the context of which it's trying to be presented. (D.I. 438, Ex. D at 115);

As to other data, Judge Thynge stated: "I think from that point on, it technically goes to weight. I mean, you set there and you cross examine the crap out of this guy."  (D.I. 436, Ex. E at 215:8-11; *id.* at 216:22-217:1; D.I. 438, Ex. D at 56-60.)  Because Intel improperly withheld its data, Judge Thynge also precluded Intel from relying on any evidence not produced as of September

27, 2016.  (D.I. 438, Ex. D at 59-60; D.I. 436, Ex. E at 212:13-22.)  Intel simply ignores that it withheld evidence (D.I. 438 at 4-5; D.I. 438, Ex. A at 2; Ex. B at 13 (No. 29); Ex. C at 6), untruthfully answered discovery responses (JA44 at 400:11-401:9), and still refuses to produce the relevant data.  At the very least, the jury should be entitled to the full picture and to decide what inferences to draw, if any.[2]

Intel's assertion that its refusal to produce should be ignored because it offered an allegedly "representative sample" of some of the data is absurd.  There would have been no way for AVM to assess whether the sample is representative or not without seeing the underlying data, which Intel refused and refuses to produce.  It also does not explain why Intel falsely stated during discovery that the data did not exist. (*See, e.g.*, JA44 at 400:11-401:9; D.I. 438, Ex. C (No. 32).)

Finally, AVM will face substantial prejudice if Intel is permitted to mention its data (or supposed conclusions that can be drawn from it), but AVM cannot explain that Intel failed to produce that data.  As explained in AVM's second motion *in limine*, Intel hypocritically criticizes AVM for not relying on evidence Intel inappropriately withheld.  Here, Intel plans to offer testimony that AVM could have confirmed (or more likely rebutted) if it could have reviewed the withheld data.  It would be grossly unfair for AVM not to be allowed to explain why it did not do so.

---

[2] *See Rogers v. Exxon Research & Eng'g Co.*, 550 F.2d 834, 843 (3d Cir. 1977) (where spoliation "could reasonably raise an unfavorable inference . . . [t]he reasons for the action are more properly matters for argument to the jury rather than grounds for exclusion.") *overruled on other grounds by Smith v. Joseph Schlitz Brewing Co.*, 584 F.2d 1231 (3d Cir. 1978); *Bull v. UPS*, 665 F.3d 68 (3d Cir. 2012); *Mensch v. Bic Corp.*, No. 90-6002, 1992 WL 236965, at *3 (E.D. Pa. Sept. 17, 1992) (cited with approval in *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)); *see Accurso v. Infra-Red Servs., Inc.*, 169 F. Supp. 3d 612, 619 (E.D. Pa. 2016) (denying motion for adverse inference, but expressly permitting the issue to be raised based upon evidence of intent shown at trial).

Respectfully submitted,

/s/ Benjamin J. Schladweiler

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

OF COUNSEL:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
(310) 752-2400
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

Dated:  April 7, 2017

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on April 7, 2017, a true copy of *Plaintiff*

*AVM's Opposition To Intel Motion In Limine No. 2* was served via electronic mail upon the

following counsel of record for Intel Corporation:

Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

David C. Marcus
Nancy Lynn Schroeder
WILMERHALE
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
david.marcus@wilmerhale.com
nancy.schroeder@wilmerhale.com

Matthew Leary
WILMERHALE
1225 Seventeenth Street
Suite 2600
Denver, CO 80202
matthew.leary@wilmerhale.com

William F. Lee
Jordan L. Hirsch
Lauren B. Fletcher
Kevin A. Goldman
Claire M. Specht
Sarah R. Frazier
WILMERHALE
60 State Street
Boston, MA 02109
william.lee@wilmerhale.com
jordan.hirsch@wilmerhale.com
lauren.fletcher@wilmerhale.com
kevin.goldman@wilmerhale.com
claire.specht@wilmerhale.com
sarah.frazier@wilmerhale.com

Jason Kipnis
WILMERHALE
950 Page Mill Road
Palo Alto, CA 94304
jason.kipnis@wilmerhale.com

Todd Zubler
William G. McElwain
Brittany Amadi
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
todd.zubler@wilmerhale.com
william.mcelwain@wilmerhale.com
brittany.amadi@wilmerhale.com

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVM TECHNOLOGIES, LLC,           ) | |
| ) | |
| Plaintiff,           ) | **C.A. No. 15-0033-RGA-MPT** |
| ) | |
| v.           ) | **JURY TRIAL DEMANDED** |
| ) | |
| INTEL CORPORATION,           ) | **FILED UNDER SEAL** |
| ) | **HIGHLY CONFIDENTIAL** |
| Defendant.           ) | **ATTORNEYS' EYES ONLY** |

**PLAINTIFF AVM'S OPPOSITION TO INTEL MOTION IN LIMINE NO. 3:
TO EXCLUDE CERTAIN DAMAGES EVIDENCE AND ARGUMENT**

Of Counsel:
D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com


Edward H. Takashima
BOIES, SCHILLER & FLEXNER r LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com


Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com


Dated:  April 7, 2017

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC.*

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
jsheasby@irell.com

I.     **AVM SHOULD BE PERMITTED TO INTRODUCE EVIDENCE AND ARGUMENT REGARDING INTEL'S TOTAL REVENUES AND PROFITS.**

AVM's damages expert, Dr. John Hatch, uses Intel's revenues and profits in two ways. Both are entirely proper under the Entire Market Value Rule (EMVR).

*First*, Dr. Hatch properly uses Intel's revenues and profits for the Accused Products as a starting point in his analysis, before apportioning down to the incremental economic benefit the parties could have expected Intel to obtain by using the '547 patent in the Accused Products. (JA18, Hatch Report ¶¶ 108-113, 188-201; JA21 ¶¶ 64-73.)  Many courts have recognized that such a use of unapportioned revenues or profits as a starting point before apportioning does not violate the EMVR.  *See ART+COM Innovation-pool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 513-14 (D. Del. 2016) (allowing use of total revenue for product segment as a starting point); *CMU v. Marvell Tech. Grp., Ltd.*, 2012 WL 3679564, at *3-4 (W.D. Pa. 2012) (allowing use of total revenue, total profit, or total margin as a starting point); *PACT XPP Techs., AG v. Xilinx, Inc.*, 2012 WL 1666390, at *2 (E.D. Tex. 2012) (allowing use of average sales price followed by an apportionment); *Ericsson Inc. v. D-Link Sys., Inc.*, 2013 WL 4046225, at *15 (E.D. Tex. 2013), *aff'd in relevant part*, 773 F.3d 1201 (Fed. Cir. 2014) (affirming admission of testimony regarding product price that apportioned down to the "market value of the contribution of the asserted patents to the end products.").[1]

*Second*, Dr. Hatch uses Intel's public financial documents containing Intel's operating margin as part of his assessment of how the parties would have divided the expected economic benefit Intel would reap from the '547 patent between the patent holder and Intel.  (JA18 ¶¶ 219-

---

[1] Intel's cases are not to the contrary.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319-21 (Fed. Cir. 2011) (no apportionment analysis); *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 68-70 (Fed. Cir. 2012) (apportionment analysis "plucked out of thin air based on vague qualitative notions"); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868-73 (Fed. Cir. 2010) (analysis based on "licenses with no relationship to the claimed invention").

222; JA21 ¶¶ 121-122.)  Dr. Hatch did not use Intel's operating margin (or the financial data needed to calculate it) as part of his royalty base analysis.  The EMVR does not apply.

## II.     ANY RULING ON THE LICENSE AND SETTLEMENT AGREEMENTS ON AVM'S EXHIBIT LIST WOULD BE PREMATURE.

AVM intends to use settlement and license agreements—all produced by Intel—during cross-examination or rebuttal.  AVM intends to demonstrate that Intel's licensing expert inconsistently applied his "objective" criteria and arbitrarily selected (low-value) licenses as being allegedly comparable while rejecting higher value licenses.  AVM's use is entirely permissible.  In any event, any ruling on the use of these license agreements should await trial.

## III.    AVM'S EXPERTS' REPORTS AND DEPOSITION TESTIMONY DISCLOSE THEIR INTENDED TESTIMONY.

Intel's motion is unnecessary in light of Intel's stated purpose—to preclude AVM's experts from making arguments not included in their expert reports.[2]  The Federal Rules already limit expert testimony to what is disclosed in their reports and depositions. Fed. R. Civ. P. 26. Intel might as well have filed a motion that "the Federal Rules apply."  At trial, the Court can address any such issues in the proper context, as it would if any party's expert attempts to testify beyond their respective disclosures.  In reality, Intel seeks an order that it can unnecessarily limit AVM's experts from testifying regarding their *disclosed* opinions.

Intel broadly and improperly requests that the Court preclude AVM from offering *any* "[e]vidence or testimony about other circuit measurements or calculations—which Dr. Hatch never considered and which would have led to different revenue calculations," allegedly because

---

[2] Intel cites to one page in AVM's opposition to Intel's *Daubert* motion to justify filing this motion.  But that page explains why Dr. Hassoun's analysis does *not* depend on any of the accused circuits being the "speed limiting" circuit.  It is therefore unclear what specific new "calculations" Intel believes AVM, Dr. Hassoun, or Dr. Hatch are planning to perform.  In any event, AVM identified where Dr. Hassoun disclosed his opinions in his expert reports on each issue addressed in its opposition brief.

it "would be irrelevant, misleading to the jury, and unfairly prejudicial to Intel."  (Intel MIL No.

3 at 3.)  This is nonsense.  First, it is premised on Intel's continued mischaracterization of

AVM's technical and damages analysis that has no basis in reality: Dr. Hassoun's methodology

was certainly *not* limited to analyzing ▇▇▇▇▇▇▇ while assuming that they are "speed

limiting."  (D.I. 491.)  The parties briefed this issue extensively in conjunction with Intel's

Motion to Exclude Certain Testimony of Marwan Hassoun.  (D.I. 429; D.I. 491.)

Second, it is not clear what scope of preclusion Intel is arguing for.  Dr. Hassoun

conducted a detailed infringement analysis and found ▇▇▇ of infringing circuits in the

Accused Products.  The fact that there are ▇▇▇ of circuits that infringe is highly relevant to

infringement, damages, utility, and willful infringement.  Dr. Hassoun conducted a technical

benefits analysis based on Intel having to remove *all* of the contention and simultaneous

activation (*i.e.* from all of the infringing register file circuits).  He then determined baseline

contention and simultaneous activation numbers ▇▇▇▇▇▇▇▇▇▇▇▇

(D.I. 491 at 18-20.)  The reasonableness and conservative nature of his analysis is demonstrated

by multiple factors that Intel may argue are also included in its *motion in limine*, including that

(1) he found that other circuits within the accused products had contention and simultaneous

activation numbers equal to or exceeding the baseline numbers; (2) his experiments showed that

accused circuits had two to three times the amount of contention and simultaneous activation

reported in Intel's data; and (3) the interrelatedness of the register files with upstream,

downstream, and related circuits rendered those circuits critical (and also undermined Intel's

reliance on ▇▇▇▇▇▇.  (D.I. 491 at 1-6, 15.)  This information is clearly relevant.

All of AVM's experts' analyses, the bases for them, and their expected trial testimony is

properly disclosed in their respective expert reports and deposition testimony.

Respectfully submitted,

*/s/ Benjamin J. Schladweiler*

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

OF COUNSEL:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES, SCHILLER & FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Edward H. Takashima
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
(310) 752-2400
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
rbaxter@bsfllp.com

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

Dated: April 7, 2017

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on April 7, 2017, a true copy of *Plaintiff*

*AVM's Opposition to Intel Motion In Limine No. 3* was served via electronic mail upon the

following counsel of record for Intel Corporation:

Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

David C. Marcus
Nancy Lynn Schroeder
WILMERHALE
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
david.marcus@wilmerhale.com
nancy.schroeder@wilmerhale.com

Matthew Leary
WILMERHALE
1225 Seventeenth Street
Suite 2600
Denver, CO 80202
matthew.leary@wilmerhale.com

William F. Lee
Jordan L. Hirsch
Lauren B. Fletcher
Kevin A. Goldman
Claire M. Specht
Sarah R. Frazier
WILMERHALE
60 State Street
Boston, MA 02109
william.lee@wilmerhale.com
jordan.hirsch@wilmerhale.com
lauren.fletcher@wilmerhale.com
kevin.goldman@wilmerhale.com
claire.specht@wilmerhale.com
sarah.frazier@wilmerhale.com

Jason Kipnis
WILMERHALE
950 Page Mill Road
Palo Alto, CA 94304
jason.kipnis@wilmerhale.com

Todd Zubler
William G. McElwain
Brittany Amadi
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
todd.zubler@wilmerhale.com
william.mcelwain@wilmerhale.com
brittany.amadi@wilmerhale.com

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)

# Exhibit 15B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-33-RGA |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| INTEL CORPORATION, | ) | **OUTSIDE COUNSELS' EYES ONLY –** |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

**DEFENDANT INTEL CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION IN LIMINE #1:  TO PRECLUDE TESTIMONY AND ARGUMENT REGARDING THE "JUST IN TIME" PRECHARGE CIRCUITS AND THE EV5 PRODUCT**

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
   AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Tel: (202) 663-6000

Dated: April 10, 2017

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

AVM's side-by-side comparison of excerpts taken from the '547 patent and truncated testimony of an Intel engineer is a perfect example of how AVM would misuse Intel's unaccused JITP circuit to confuse and mislead the jury.   AVM suggests that overlap in the JITP circuit between the precharge transistor and select transistor 310 is somehow relevant to the '547 patent, even though the select transistor 310 is undisputedly **different** from both the '547 patent's evaluation transistor and the wordline transistor that AVM accuses.   Indeed, none of AVM's experts has even mentioned the JITP circuit, much less asserted that it matches the '547 patent or the accused products.   The JITP circuit is therefore not probative of copying or willfulness because it both does not embody the '547 patent and is different than the accused circuits;[1] indeed, Intel's engineers designed the JITP circuit before they even knew of the '547 patent.   D.I. 408, Ex. E, Wijeratne Dep. at 149, 332; D.I. 442-1, JA Ex. 26, Ivey Rpt. ¶ 648.   It also is not probative of utility because it is different from the '547 patent.[2]   Finally, AVM has not suggested how the JITP circuit could be relevant to damages; it was not considered by any expert in valuing the '547 patent.

AVM's opposition also confirms that its planned use of the EV5 product rests **entirely** on its speculation about Intel's reason for withdrawing its reliance on that product.   Such evidence is irrelevant and unduly prejudicial.   *See Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC*, C.A. No. 12-1013-RGA, D.I. 257 at 1 (D. Del. Feb. 2, 2015) (granting motion *in limine* to preclude evidence related to defendant's withdrawn affirmative defenses).   AVM further suggests the EV5 relates to alleged "methodological errors" of Dr. Ivey's opinions, but Dr. Ivey offered no opinion on the EV5 product in this case, and AVM presented no such argument in its *Daubert* motion.

---

[1]      *See Inventio AG v. Thyssenkrupp Elevator Corp.*, C.A. No. 08-874-RGA, D.I. 552 at 2 (D. Del. Feb. 7, 2014) ("Copying requires the replication of a specific product" that "**embodi[es] … the relevant patent**."   (emphasis added and internal quotation marks omitted)).

[2]      *In re Fisher*, 421 F.3d 1365, 1371 (Fed. Cir. 2005) (utility means the "**claimed invention** has a significant … benefit to the public" (emphasis added)).

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

By:    */s/ David E. Moore*
       David E. Moore (#3983)
       Bindu A. Palapura (#5370)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE 19899
       Tel:  (302) 984-6000
       dmoore@potteranderson.com
       bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

Dated: April 10, 2017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AVM TECHNOLOGIES, LLC,            )
                                  )
         Plaintiff,      )   C.A. No. 15-33-RGA
                                  )
                                  )   **JURY TRIAL DEMANDED**
    v.                          )
                                  )   **HIGHLY CONFIDENTIAL –**
INTEL CORPORATION,                )   **OUTSIDE COUNSELS' EYES ONLY –**
                                  )   **FILED UNDER SEAL**
        Defendant.      )

**DEFENDANT INTEL CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS
MOTION IN LIMINE #2:  TO PRECLUDE TESTIMONY AND ARGUMENT
<u>INCONSISTENT WITH THE COURT'S PRIOR RULINGS</u>**

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Tel: (202) 663-6000

Dated: April 10, 2017

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

AVM's opposition confirms that AVM intends to advance interpretations of the Court's claim constructions that seek to undo them. For example, AVM admits that the Court ruled against AVM's proposed construction of "clock signal," which would have covered the output of a gated clock, so AVM now argues that one can divide that same output into smaller "portions" and somehow get a "clock signal." It is improper for AVM to make such contorted arguments to evade the Court's constructions—which is precisely why courts routinely grant motions *in limine* to preclude argument inconsistent with the court's constructions. *See* Intel MIL #2 at 1 n.1.

AVM's opposition also confirms that it intends to ask the jury to draw negative inferences based on Intel's non-production of certain data. AVM plans to circumvent Judge Thynge's order denying any adverse inference by arguing that Intel "refuses to produce the relevant data" and then asking the jury to draw its own inferences. The Court should prevent such semantic evasion of Judge Thynge's order. It is improper to present discovery disputes to the jury, which would derail the trial by requiring each party to relitigate those issues.[1] AVM misleadingly suggests Judge Thynge authorized AVM to make such an argument; in fact, she said it was an issue the Court could decide before trial. D.I. 438, Ex. D at 115. Intel already debunked AVM's false allegations of misconduct,[2] and AVM will face no unfair prejudice. Intel does not plan to present testimony about non-produced ██████████████████ With respect to ████████████████ Intel produced a sample, AVM deposed an Intel witness about ████████████ and Judge Thynge held it was a matter for cross-examination. D.I. 436, Ex. E at 215.

---

[1]     *See, e.g.*, *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. 11-515-LPS, 2017 WL 525668, at *1 (D. Del. Feb. 8, 2017) ("It would be improper, irrelevant, unfairly prejudicial, and confusing to the jury for the parties to refer to or re-fight discovery disputes at trial."); *Swoope v. CSX Transp., Inc.*, No. 13-0307, 2015 WL 12564948, at *5 (N.D. Ga. July 29, 2015) ("[D]iscovery disputes or alleged refusals to produce evidence or documents are irrelevant."); *Polson v. Cottrell, Inc.*, No. 04-882, 2007 WL 2409838, at *1 (S.D. Ill. Aug. 23, 2007) (similar).

[2]     Intel's discovery responses were completely truthful, and Intel's non-production of data was attributable only to logistical issues, not an effort to suppress the truth. D.I. 500 at 5-6, 9-11.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
     AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
     AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
     AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000


Dated: April 10, 2017

By:   */s/ David E. Moore*
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19899
      Tel:  (302) 984-6000
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

      *Attorneys for Defendant Intel Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-33-RGA |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| INTEL CORPORATION, | ) | **OUTSIDE COUNSELS' EYES ONLY –** |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

**DEFENDANT INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION IN
LIMINE #3 TO EXCLUDE DAMAGES EVIDENCE AND ARGUMENT THAT IS
<u>NOT RELEVANT TO EITHER PARTY'S DAMAGES THEORIES</u>**

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Tel: (202) 663-6000

Dated: April 10, 2017

POTTER ANDERSON & CORROON LLP

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

Allowing AVM to place Intel's total unapportioned revenues/profits before the jury would unfairly prejudice Intel. Contrary to AVM's assertion (MIL#3 Opp. at 1), Dr. Hatch did not use Intel's total accused revenues "as a starting point" from which he apportioned down. Dr. Hatch began with accused unit sales and built up to his damages number from the per-unit price of the accused products. D.I. 441-1, JA Ex. 18, Hatch Rpt. ¶¶ 171, 182-183, 192-200; D.I. 487 at 5. Dr. Hatch even opined that "the overall profitability of the products" has "no influence on the reasonable royalty." *Id.* ¶ 169. AVM also claims total revenues should be admitted because Dr. Hatch used Intel's overall operating margin as a royalty rate. But use of this royalty ***rate***—which Intel has opposed under *Daubert* (D.I. 427 at 14-17)—neither necessitates nor justifies admission of ***total revenues/profits***, which remain irrelevant and prejudicial.

AVM also is wrong that non-comparable licenses are appropriate for cross-examination or rebuttal purposes. AVM has presented no evidence that any of the "higher value" licenses it intends to rely on are comparable to the hypothetical license. Use of these licenses therefore cannot reliably undermine Dr. Shih's selection criteria or comparability analysis, and can instead only mislead and confuse the jury while prejudicing Intel. This evidence should be excluded.[1]

Finally, AVM's assertions about additional circuits that ***Dr. Hassoun*** allegedly considered miss the mark. The point is that ***Dr. Hatch*** calculated his damages number based on the speed measurements of ██████████████ identified by Dr. Hassoun. Dr. Hatch's calculations do not account for other circuits or for the overall number of infringing circuits. AVM should be precluded from suggesting that its damages calculations are based on any circuits other than ██████████████ used in Dr. Hatch's calculations.

---

[1]    Nor should the Court wait until trial to rule on these licenses. They are clearly improper now, and allowing AVM even to mention these licenses before the jury (for example, in a cross-examination question) would unfairly prejudice Intel.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
    AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

By:   */s/ David E. Moore*
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19899
      Tel:  (302) 984-6000
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

Dated: April 10, 2017