# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| AVM TECHNOLOGIES, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTEL CORPORATION, ) <br> ) <br> Defendant. ) | C.A. No. 15-33-RGA-MPT |

## PLAINTIFF AVM'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE A NEW TRIAL ON THE ISSUE OF INFRINGEMENT, AND FOR A NEW TRIAL ON THE ISSUE OF DAMAGES

*Of Counsel*:

D. Michael Underhill
Eric J. Maurer
Patrick M. Lafferty
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
munderhill@bsfllp.com
emaurer@bsfllp.com
plafferty@bsfllp.com
jknight@bsfllp.com

Edward H. Takashima
BOIES SCHILLER FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
etakashima@bsfllp.com

Rosanne C. Baxter
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
rbaxter@bsfllp.com

Benjamin J. Schladweiler (#4601)
Nicholas D. Mozal (#5838)
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
nmozal@ramllp.com

*Counsel for Plaintiff AVM Technologies, LLC*

Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 203-7096
jsheasby@irell.com

Dated: June 8, 2017

Pursuant to Federal Rules of Civil Procedure 50(b) and 59, Plaintiff AVM Technologies, LLC ("AVM") respectfully moves for (1) judgment as a matter of law of infringement (including no reverse doctrine of equivalents), or in the alternative for a new trial on infringement; and (2) a new trial on the issue of damages, including the admission of testimony from AVM's expert witnesses Marwan Hassoun, Ph.D. and John Hatch, Ph.D. that was previously precluded. The grounds for this motion will be fully set forth in AVM's Opening Brief in Support of Its Motion for Judgment as a Matter of Law and A New Trial, to be filed on June 16, 2017, as agreed by the parties and ordered by the Court, and are also generally outlined below. (D.I. 775.) AVM's original motions for JMOL are incorporated in their entireties in this filing. (D.I. 713 at 1783:19-1787:7; D.I. 716; D.I. 717.)

Among other things, no reasonable jury could properly have found non-infringement. (D.I. 713 at 1783:19-1787:7; D.I. 716; D.I. 717 at 1-9.) Intel directly (and literally) infringed claims 1, 2, 4, 5, 6, 7, 9, and 21 under 35 U.S.C. § 271(a) by making, using, selling, and importing microprocessors in the Sandy Bridge, Ivy Bridge, and Broadwell product families in/into the United States. As established during the testimony of Dr. Hassoun, Intel's accused products practice each and every limitation of the asserted claims,[1] and the reverse doctrine of equivalents is unavailable as a matter of law. Among other things, Dr. Hassoun explained in detail why every accused circuit met the last claim element of claim 1: that there be "a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation

---

[1] Prior to trial Intel stipulated that it was not disputing the presence of any of the asserted claim limitations except: "a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors" (claims 1, 2, 4, 5, 6, 7, 9); and "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase" (claim 21). (*See* Ex. B, filed with motion.) Dr. Hassoun showed how over a million accused circuits include a delay coupled to the precharge transistor, as well as simultaneous activation. Intel's expert did not dispute—and admitted—that Intel's circuits have a simultaneous activation and a delay on the precharge path. (D.I. 712 at 1466:6-15.)

1

transistors." (Trial Tr. at 547-559.) Dr. Hassoun testified that the delay circuit elements he identified "delay the signal to the precharge transistor," and thereby "cause[] simultaneous activation of the precharge and evaluation transistors at end of the precharge phase":

> If you remember the picture in the patent had a delay for causing simultaneous activation. *That's the delay for causing simultaneous activation right there*. And it's made up of these four -- five, these five different elements. Q. Okay. A. So when the clock travels through them, *it's going to get delayed a bit*, delayed a bit, so collectively they are the delay. (*Id.* at 537 (emphasis added).)
> *What causes a simultaneous activation is the relative delay between these two paths.* So the key to simultaneous activation is that you turn the precharge transistor on before you turn the -- you turn the evaluation transistor on before you turn the precharge transistor off. *So you need delay on the top more than the delay on the bottom. So the delay on the top is for causing the simultaneous activation.* (*Id.* at 541.)

Dr. Hassoun also testified that Intel's Performance Verification ("PV") data showed that the accused circuits have simultaneous activation. (*Id.* at 554-559.) In this regard, Intel previously advised the Court that the performance verification data was sufficient to determine infringement. (Intel's March 13, 2017 Kessler Reply, D.I. 532 at 6 n.8 ("PV data provides the only timing information needed to analyze infringement.").) Dr. Hassoun explained how he used Intel's own PV data and source code to calculate the extent of simultaneous activation for every single one of the accused circuits, (D.I. 710, Tr. at 548), and that Intel generates contention reports throughout the design process that tell the design engineers how much contention is in each accused circuit. (*Id.* at 548-549.) Dr. Hassoun performed extensive modeling to determine the magnitude and scope of simultaneous activation. (*Id.* at 585-588.) It is undisputed that simultaneous activation in the accused circuits can exceed 100 picoseconds, (*id.* at 553); and that there are 720 infringing circuits in the single core chips in the Sandy Bridge family, (*id.* at 554); 700,666 infringing circuits in the single core chips in the Ivy Bridge family, (*id.* at 555-556); 651,041 infringing circuits in the single core chips in the Haswell family, (*id.* 552); and 5,016 infringing circuits in the single core chips in the Broadwell family, (*id.* 558-559).

2

Dr. Hassoun also testified that, during the design process, Intel continually "dials in" the amount of contention by changing delay elements. (D.I. 713, Tr. at 1738-1739.) He explained, for example, that the delay elements of the same circuit in a later generation of products may be adjusted to change the amount of simultaneous activation, demonstrating that "the delay is for the purpose of simultaneous activation." (*Id.* at 1746-1749.) He also discussed another example of Intel "dialing" in the amount of contention in two circuits in the Ivy Bridge family of products that had many of the same components, but with different delay elements that resulted in different amounts of simultaneous activation. (*Id.* at 1748-1750.)

No reasonable jury could have found non-infringement. Intel's sole non-infringement defense was that, although its circuits have simultaneous activation and a delay coupled to the precharge transistor, the delay is not included "for causing," or "so that" there is, simultaneous activation. The defense is based on irrelevant, and less than a scintilla of, evidence. The main thrust of Intel's defense is that its design goal is to include the delays to reduce simultaneous activation, which is an irrelevant intent-based non-infringement defense. Worse, it is based on confusing and conclusory testimony that the delays allegedly reduce simultaneous activation. This conclusory argument is insufficient to create a genuine dispute of material fact, and it also is immaterial because it focuses on the alleged elimination of start of precharge (SOP) as a result of the use of the precharge delay elements, and does not address whether the delays cause end of precharge (EOP) simultaneous activation (which is the simultaneous activation that is the focus of this lawsuit).

With respect to EOP simultaneous activation, Dr. Hassoun explained *without contradiction* that the delay circuit elements in each of the infringing circuits that creates the relative delay and thereby causes simultaneous activation. (*See, e.g.*, D.I. 710, Tr. at 541, 569-

3

570.) Indeed, Intel's fact witness admitted that by speeding up the arrival time of the signal to precharge transistor, simultaneous activation can be eliminated, demonstrating without a doubt that it is the delay (slowing) of the signal that causes the simultaneous activation. (D.I. 712 at 1361:23-1362:7.)

Finally, although AVM believes that it need not show that Intel *intended* to use the delays in the Accused Products to cause the simultaneous activation in the infringing circuits, the evidence is overwhelming that Intel's engineers intentionally used a delay to delay the signal to the precharge transistor and create simultaneous activation when needed in its critical register file circuits. (D.I. 711, Tr. at 774-776.) Intel has increased the amount of allowed contention in each successive generation of the Accused Products, from 5 to 10, 15, and 18 picoseconds. (D.I. 710, Tr. at 583-584; PTXs 222, 229, 1155, 1156.) Further, Dr. Hassoun testified that:

- Intel knows its circuits have simultaneous activation but have not eliminated it, even though its engineers testified they could do so with "no problem." (D.I. 710, Tr. at 571.)
- The delay and resulting simultaneous activation is in the accused circuits for an express purpose: to increase the performance and reliability of the circuits. (*Id.* at 513.)
- Each circuit is designed individually, and the "engineers have to make a decision as to what they need to do in order to get the fastest circuit, the most power efficient circuit, and the most reliable circuit." (*Id.* at 513-514.)
- Because simultaneous activation has a higher power drain, engineers would only put it into a circuit where it is needed for the other benefits, including speed and reliability. (*Id.* at 514; D.I. 711, Tr. at 775.)
- The use of the simultaneous activation is limited to a subset of the register file circuits, evidencing that Intel weighed the costs and benefits of using simultaneous activation on a circuit-by-circuit basis. (D.I. 710, Tr. at 542.)

Because AVM established literal infringement, the burden shifted to Intel to set forth a prima facie case of non-infringement under the reverse doctrine of equivalents ("RDOE"). Intel failed to do this, and even if it had established a prima facie case, no reasonable jury could find non-infringement under the doctrine. Intel expert Dr. Subramanian's reverse doctrine of equivalents testimony is that the principle "behind the '547 patent is to have a delay to cause

overlap" and that "[t]he Intel circuits use delay to minimize or eliminate overlap." (D.I. 712, Tr. at 1451-1452.) This defense fails as a matter of law for at least three reasons. First, this defense is identical to Intel's literal infringement defense; but reverse DOE only comes into play if Intel literally infringes the asserted claims. *DePuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.*, 567 F.3d 1314, 1338 (Fed. Cir. 2009). For purposes of reverse DOE, one must assume that the delay in the accused circuits causes simultaneous activation. Second, Intel's intent-based defense is also irrelevant for reverse DOE. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36-37 & 41 (1997) (infringement, including related to equivalence, judged objectively); *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1523 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997) ("[a]ccidental or 'innocent' infringement is still infringement."); *cf. Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (the RDOE is an application of the doctrine of equivalents in against the patentee). Third, Dr. Subramanian's testimony does not explain how the Intel products perform "the same or similar function in a substantially different way." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1124 (Fed. Cir. 1985) (en banc). If it is assumed that Intel literally infringes the simultaneous activation limitations—as is the case under the RDOE—Intel must establish how the simultaneous activation is achieved differently than in the patent. It is undisputed, however, that Intel's circuits have delay circuits and have simultaneous activation. Intel has not even attempted to explain how that simultaneous activation is achieved—let alone how it is achieved in a way that is different than in the patent. (D.I. 712, Tr. at 1451-1452.)

Finally, even if Intel had made a prima facie showing under the RDOE, the evidence overwhelmingly establishes: that Intel's products have delay elements; that those delay elements delay the signal to the precharge transistor; and that as a result, there is simultaneous activation.

(*See, e.g.*, D.I. 713, Tr. at 1730-73; D.I. 710, Tr. at 537-559.) This is precisely the same way that simultaneous activation is achieved in the '547 patent. And as described above, the evidence also establishes that Intel knows (and intends) that the delays cause simultaneous activation. The delay elements used by Intel operate using the same principles as in the patent.

If a JMOL of infringement is not granted, then a new trial should be granted in the alternative. The non-infringement verdict goes against the great weight of the evidence (see above). In addition, Intel's non-infringement defense was a confusing and prejudicial defense that focused on irrelevant issues such as intent and a type of simultaneous activation (SOP) that was not even asserted in this case.

Finally, if JMOL or new trial of infringement is granted, then damages will need to be retried. AVM respectfully contends that the Court incorrectly precluded the testimony from AVM's expert witnesses Marwan Hassoun, Ph.D. and John Hatch, Ph.D., and AVM should be permitted to rely upon that evidence, as well as related testimony from AVM's expert witness Professor Christopher Knittel, in any retrial.

Attached hereto as Exhibit A are Plaintiff's Proposed Orders based on the alternative relief sought.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ROSS ARONSTAM & MORITZ LLP |
| *Of Counsel*: | */s/ Benjamin J. Schladweiler* |
|  | Benjamin J. Schladweiler (#4601) |
| D. Michael Underhill | Nicholas D. Mozal (#5838) |
| Eric J. Maurer | 100 S. West Street, Suite 400 |
| Patrick M. Lafferty | Wilmington, DE  19801 |
| Jon R. Knight | (302) 576-1600 |
| BOIES SCHILLER FLEXNER LLP | bschladweiler@ramllp.com |
| 1401 New York Avenue, N.W. | nmozal@ramllp.com |
| Washington, D.C.  20005 |  |
| (202) 237-2727 | *Counsel for Plaintiff AVM Technologies, LLC* |
| munderhill@bsfllp.com |  |
| emaurer@bsfllp.com |  |
| plafferty@bsfllp.com |  |
| jknight@bsfllp.com |  |
|  |  |
| Edward H. Takashima | Jason G. Sheasby |
| BOIES SCHILLER FLEXNER LLP | IRELL & MANELLA LLP |
| 401 Wilshire Boulevard, Suite 850 | 1800 Avenue of the Stars, Suite 900 |
| Santa Monica, CA  90401 | Los Angeles, CA  90067-4276 |
| (310) 752-2400 | (310) 203-7096 |
| etakashima@bsfllp.com | jsheasby@irell.com |
|  |  |
| Rosanne C. Baxter |  |
| BOIES SCHILLER FLEXNER LLP |  |
| 333 Main Street |  |
| Armonk, NY  10504 |  |
| (914) 749-8200 |  |
| rbaxter@bsfllp.com |  |

Dated:  June 8, 2017

7

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on June 8, 2017, a true copy of the foregoing *Plaintiff AVM's Renewed Motion for Judgment as a Matter of Law or in the Alternative a New Trial on the Issue of Infringement, and for a new trial on the Issue of Damages* was served via electronic mail upon the following counsel of record:

David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
dmoore@potteranderson.com
bpalapura@potteranderson.com

David J. Burman
Jonathan L. McFarland
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
dburman@perkinscoie.com
jmcfarland@perkinscoie.com

Jason Kipnis
WILMERHALE
950 Page Mill Road
Palo Alto, CA  94304
jason.kipnis@wilmerhale.com

Todd Zubler
William G. McElwain
Brittany Amadi
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
todd.zubler@wilmerhale.com
william.mcelwain@wilmerhale.com
brittany.amadi@wilmerhale.com

*Counsel for Defendant Intel Corporation*

William F. Lee
Jordan L. Hirsch
Lauren B. Fletcher
Kevin A. Goldman
Claire M. Specht
Sarah R. Frazier
Michaela P. Sewall
Steven J. Horn
Joseph J. Mueller
WILMERHALE
60 State Street
Boston, MA  02109
william.lee@wilmerhale.com
jordan.hirsch@wilmerhale.com
lauren.fletcher@wilmerhale.com
kevin.goldman@wilmerhale.com
claire.specht@wilmerhale.com
sarah.frazier@wilmerhale.com
michaela.sewall@wilmerhale.com
steven.horn@wilmerhale.com
joseph.mueller@wilmerhale.com

David C. Marcus
WILMERHALE
350 South Grand Avenue
Suite 2100
Los Angeles, CA  90071
david.marcus@wilmerhale.com

Matthew Leary
WILMERHALE
1225 Seventeenth Street
Suite 2600
Denver, CO  80202
matthew.leary@wilmerhale.com

*Counsel for Defendant Intel Corporation*

 */s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)