**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 15-33-RGA |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| INTEL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT INTEL CORPORATION'S REPLY
IN SUPPORT OF ITS RULE 50(B) MOTION FOR JUDGMENT
AS A MATTER OF LAW ON THE ISSUE OF INVALIDITY**

OF COUNSEL:

David C. Marcus
WILMER CUTLER PICKERING HALE
   AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 443-5300

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Todd Zubler
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

Dated: August 4, 2017
5345482 / 42223

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant and Counterclaimant
Intel Corporation*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................1

I. The "green" transistor between the precharge transistor and the logic block in the Myers & Ivey article is an "evaluation transistor" under the Court's construction.............1

    A. AVM distorts the Court's construction of "evaluation transistor." ..........................1

    B. AVM's other arguments wrongly ignore the Court's construction. ........................4

II. The Myers & Ivey article anticipates claims 6, 7, and 21......................................................7

    A. The Myers & Ivey article discloses that the evaluation transistor is inactive during the precharge phase as required by claims 6, 7, and 21. ...............................7

    B. The Myers & Ivey article discloses that the precharge transistor is active during a minor portion of the evaluation phase as required by claim 21.................8

III. Claims 4, 5, 6, 7, and 21 are also invalid as obvious. .........................................................9

CONCLUSION.......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*ABT Systems, LLC v. Emerson Electric Co.*,
   797 F.3d 1350 (Fed. Cir. 2015)..................................................................................................10

*Cimline, Inc. v. Crafco, Inc.*,
   413 F. App'x 240 (Fed. Cir. 2011) ............................................................................................10

*Connell v. Sears, Roebuck & Co.*,
   722 F.2d 1542 (Fed. Cir. 1983)..................................................................................................10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)....................................................................................................4

*In re Baxter Travenol Laboratories*,
   952 F.2d 388 (Fed. Cir. 1991)....................................................................................................10

*KSR International Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007).....................................................................................................................9

*Melchior v. Hilite Intternational, Inc.*,
   665 F. App'x 894 (Fed. Cir. 2016) ..............................................................................................5

*ParkerVision, Inc. v. Qualcomm Inc.*,
   621 F. App'x 1009 (Fed. Cir. 2015) ............................................................................................6

*Perfect Web Technologies, Inc. v. InfoUSA, Inc.*,
   587 F.3d 1324 (Fed. Cir. 2009)..................................................................................................10

*Solvay, S.A. v. Honeywell International Inc.*,
   886 F. Supp. 2d 396 (D. Del. 2012).............................................................................................5

*Wyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010)..................................................................................................10

**Federal Statutes**

35 U.S.C. § 102................................................................................................................................10

35 U.S.C. § 103................................................................................................................................10

## INTRODUCTION

AVM does not contest that the only invalidity dispute at trial was whether the "green" transistor in the Myers & Ivey article relied on by Dr. Ivey satisfies the Court's construction of "evaluation transistor." AVM seeks to avoid invalidity by altering the Court's construction to require that the evaluation transistor "*initiate*" the discharge phase, rather than merely be "used to control when the precharge node *may* discharge." But it was undisputed at trial that the green transistor must be turned on before the precharge node may discharge. The green transistor is therefore used to control when the precharge node may discharge, which compels the conclusion that it is an "evaluation transistor" under the Court's claim construction.

AVM also raises a handful of new arguments that it did not raise at trial regarding claims 6, 7, and 21, but those arguments fail in view of Dr. Ivey's testimony that the Myers & Ivey article discloses "clock skew" and therefore discloses the additional elements of those claims. AVM's arguments regarding obviousness also fail. As Dr. Ivey explained, the Wang article teaches adding an "anti-float circuit" to the Myers & Ivey circuit and also confirms the presence of "clock skew," thereby rendering claims 4, 5, 6, 7, and 21 obvious. In sum, the only reasonable conclusion based on the trial evidence is that each asserted claim of the '547 patent is invalid. The Court should accordingly grant Intel's motion for judgment as a matter of law.

## ARGUMENT

**I.    The "green" transistor between the precharge transistor and the logic block in the Myers & Ivey article is an "evaluation transistor" under the Court's construction.**

   **A.    AVM distorts the Court's construction of "evaluation transistor."**

Intel's opening brief (D.I. 784 at 6, 11-15) showed that the Myers & Ivey article discloses a transistor (shown in green in Dr. Ivey's slide below) that "is used to control when the precharge node may discharge" and therefore satisfies the Court's "evaluation transistor" claim construction.



DDX6.52. It is undisputed that the precharge node *cannot* discharge if this green transistor is off, and that the green transistor *must* first turn on for the precharge node to discharge. *See* D.I. 784 at 12-13. The green transistor is thus "used to control when the precharge node may discharge."

AVM seeks to avoid this conclusion by modifying the Court's construction to include the words "initiation" and "discharge phase." AVM contends that "an evaluation transistor must be used to control the timing of the *initiation* of the *discharge (evaluation) phase*."[1] D.I. 790 at 1.[2] The Court's claim construction, however, does not require the evaluation transistor to "initiate" or trigger the "discharge phase." Indeed, the terms "initiate" and "discharge phase" appear nowhere in the claims of the '547 patent or the Court's claim construction. Rather, the Court's construction requires only that an "evaluation transistor" be "*used to control* when the precharge node *may* discharge." D.I. 682 at 2. The green transistor does so. That transistor (analogized to a green

---

[1] Emphases have been added unless otherwise noted.

[2] *See* D.I. 790 at 2 (transistor does not "control the *timing* of the discharge phase" (emphasis in original)); *id.* at 7 ("[E]valuation transistors … are used to control the timing of the *initiation* of the *discharge (evaluation) phase*."); *id.* at 11 (arguing that the green transistor does not have "anything to do with *initiating* the *discharge (evaluation) phase*"); *id.* at 12 (arguing that the transistor does not control "when the *discharge phase* is *initiated*").

2

valve in Dr. Ivey's demonstrative above) is located directly below the precharge node X (illustrated by Dr. Ivey as a bucket). DDX6.52; *see* D.I. 713 at 1583:13-1584:10 (Ivey). When the green transistor is turned off (*i.e.*, the green valve is closed), the precharge node *may not* discharge (*i.e.*, the bucket cannot empty). For the precharge node to discharge, the green transistor must first be activated (*i.e.*, the green valve must first be opened). *See* D.I. 713 at 1584:4-22 (Ivey); *id.* at 1668:15-20 (Wolfe).

The green transistor is similar to the first of two switches that must be turned on in order for an airplane engine to start up. While the first switch may not "initiate" the engine's actual start up (which does not occur until the second switch is flipped), the first switch nonetheless is used to control when the engine *may* start, because the engine may not start unless the first switch is on. Similarly, while the activation of the green transistor is not the triggering event that "initiates" the discharge phase in the Myers & Ivey circuit, the green transistor certainly "is used to control when the precharge node *may* discharge." That is all that is required.[3]

AVM contends that Dr. Ivey's testimony on this issue was "conclusory" (D.I. 790 at 14), but it was not. Dr. Ivey explained in detail why the green transistor satisfies the Court's construction. He first described how the green transistor is "connected to a clock signal," identified as $\Phi_2$. D.I. 713 at 1579:24-1581:4, 1582:7-1583:4 (Ivey); *see also* DTX0075 at 00003 (Figs. 3(a), 3(b)); DDX6.43; DDX6.45; DDX6.50. Dr. Ivey then explained that the green transistor must be turned on before the precharge node can discharge and therefore is "used to control when the

---

[3] As Intel explained (D.I. 784 at 14-15), the fact that a second transistor is *also* used to control when the precharge node may discharge (D.I. 790 at 12) does not negate the fact that the green transistor satisfies the Court's construction of "evaluation transistor." Moreover, even the bottom transistor that AVM identifies as the "evaluation transistor" does not necessarily *initiate* discharge of the precharge node. As the '547 patent makes clear, the precharge node may discharge only when transistors in the logic block are also on (or "conducting"). PTX0001 at 1:43-50, 6:37-40.

3

precharge node may discharge." D.I. 713 at 1583:5-1584:22 (Ivey).

AVM also attacks Dr. Ivey's "evaluation transistor" analysis on the ground that "lots of other transistors have to be on" for the precharge node to discharge, suggesting that Dr. Ivey's analysis is wrong because it would "encompass" these other transistors as "evaluation transistors." D.I. 790 at 15-16 (quoting D.I. 713 at 1668:7-1669:7).  But there is no requirement that the claimed circuit include only a single evaluation transistor, and the existence of the "other transistors" that AVM identifies does not affect whether the green transistor satisfies the Court's claim construction.  In any case, these "other transistors" cannot be "evaluation transistors" because most are not even part of the claimed "dynamic logic circuit" (*e.g.*, transistors that "generate the clock" or "power supply" (D.I. 713 at 1668:20-1669:1)), and there was no evidence that any are connected to a clock signal as the Court's "evaluation transistor" construction also requires.

### B. AVM's other arguments wrongly ignore the Court's construction.

In addition to distorting the Court's construction of "evaluation transistor," AVM makes a scattered series of arguments that ignore the Court's construction altogether.

*First*, AVM contends that the Myers & Ivey circuit cannot invalidate the '547 patent because it is "like [the circuit] in the prior art Figure 1A in the '547 patent." D.I. 790 at 7.  As an initial matter, the proper comparison for invalidity is between the asserted prior art and the ***claims*** as construed, not between the asserted prior art and ***other prior art***.  *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1252 (Fed. Cir. 2014) ("Anticipation challenges under § 102 must focus only on the limitations actually recited in the claims.").  AVM's argument is also factually wrong.  The Myers & Ivey circuit that Dr. Ivey relied upon was the circuit depicted in Figure 3(a) of the article, which—unlike Figure 1A of the patent—includes a transistor (the green transistor) between the precharge node and the logic block.  The circuit that Dr. Wolfe said was like Figure 1A of the patent was the circuit from Figure 1 of the Myers & Ivey article—a ***different***

4

circuit that Dr. Ivey did not rely on. *See* D.I. 713 at 1663:4-1664:11 (Wolfe).[4]

*Second*, AVM attempts to distinguish the Myers & Ivey article from the '547 patent because the Myers & Ivey circuit includes three phases (precharge, discharge, and hold), whereas the '547 patent describes only two phases (precharge and evaluation). D.I. 790 at 8. But nothing in the patent or its claims requires only two phases, and it is improper to distinguish prior art based on an additional feature not recited in the claims. *See Melchior v. Hilite Int'l, Inc.*, 665 F. App'x 894, 899 (Fed. Cir. 2016) ("[P]rior art cannot be distinguished on the ground that it lacks features that are not claim limitations."); *Solvay, S.A. v. Honeywell Int'l Inc.*, 886 F. Supp. 2d 396, 404 (D. Del. 2012), *aff'd*, 742 F.3d 998 (Fed. Cir. 2014). Indeed, as AVM's own expert admitted, "adding something to a disclosure of the invention"—such as an extra phase—"does not avoid invalidity." D.I. 713 at 1717:6-9 (Wolfe); *see also id.* at 1717:21-1718:3 (Wolfe); D.I. 784 at 14.

*Third*, AVM contends that the Myers & Ivey article does not invalidate because it is "similar to the Kondoh prior art" that the Patent Office considered during prosecution. D.I. 790 at 10. Again, it is improper to compare the asserted prior art to other prior art. But even so, the Myers & Ivey circuit is materially different from the Kondoh circuit. As AVM concedes (D.I. 790 at 10) and as the applicants recognized during prosecution, Kondoh's N5 transistor—which AVM equates to the green transistor in the Myers & Ivey article—is ***not connected to a clock signal.***

---

[4] AVM also points to language in the Myers & Ivey article stating that the "discharge phase" is "mutually exclusive" of the precharge phase. D.I. 790 at 7. But as Dr. Ivey explained and the reference itself makes plain, the "mutually exclusive" language refers not to the Figure 3(a) circuit that Dr. Ivey relied on, but instead to the separate Figure 2 circuit. *See* D.I. 713 at 1641:16-1642:18 (Ivey); DTX0075 at 00002. Further, the claims require "simultaneous activation" or overlap in the activation of the precharge and evaluations ***transistors***. Indeed, as Dr. Ivey explained, the precharge and discharge phases in Myers & Ivey are "mutually exclusive" in "exactly the same way" in the '547 patent: the timing diagram in the '547 patent (Figure 4) shows "mutually exclusive" precharge and evaluation ***phases*** even though there is overlap between the activation of the precharge and evaluation ***transistors***. D.I. 713 at 1630:9-14 (Ivey); *see also id.* at 1630:20-1631:1; PTX0001 at 5:44-45, Figs. 4(A)-4(E).

5

*See* PTX0006 at AVM002969 ("[T]he transistor N5 is not the evaluation transistor, as described in Kondoh. Foremost, there is no clock signal connected to the transistor N5."); *see also* D.I. 713 at 1590:9-1592:17 (Ivey). The Kondoh transistor therefore cannot be an "evaluation transistor" and is very different from the Myers & Ivey green transistor, which undisputedly *is* connected to a clock signal, as the Court's claim construction requires. *See* D.I. 713 at 1582:18-1583:4 (Ivey).[5]

*Finally*, AVM again ignores the Court's claim construction when it argues that the green transistor in the Myers & Ivey article cannot be an evaluation transistor because the Wang article suggests it is a "hold transistor." D.I. 790 at 13.[6] As explained in Intel's opening brief (D.I. 784 at 13-14), the labels given to the green transistor by another prior-art reference are irrelevant to whether the green transistor meets the Court's construction. *See ParkerVision, Inc. v. Qualcomm Inc.*, 621 F. App'x 1009, 1018 (Fed. Cir. 2015) (reversing denial of JMOL of invalidity, and noting that "the failure of a reference to disclose a claim limitation in the same words used by the patentee is not fatal to a claim of invalidity"). The Wang article never uses the term "evaluation transistor," much less applies this Court's construction of that term. Nor is there any evidence to suggest that the label "hold transistor" was intended to preclude the green transistor from being an evaluation transistor as opposed to, for example, merely distinguishing one transistor from another. Thus, the Wang article is just another diversionary argument that AVM uses to avoid addressing the Court's construction, under which the green transistor in Myers & Ivey is an "evaluation transistor."

---

[5] The green transistor in the Myers & Ivey article also differs from the N5 transistor in Kondoh because it does not "always remain[] activated"; it switches from an active to inactive state based on clock signal $\Phi_2$. D.I. 713 at 1579:24-1580:15 (Ivey); DTX0075 at 00003 (Fig. 3(b)).

[6] Despite AVM's repeated references to the green transistor as a "hold transistor" (D.I. 790 at 6, 8, 9, 11-16, 18), neither the Wang article nor the Myers & Ivey article ever uses that phrase.

**II.     The Myers & Ivey article anticipates claims 6, 7, and 21.**

For claims 6, 7, and 21, AVM now challenges whether the Myers & Ivey circuit discloses certain limitations on which AVM offered *no evidence* at trial—either through cross-examination of Dr. Ivey or from its own expert Dr. Wolfe. Dr. Ivey's unrebutted testimony compels the conclusion that claims 6, 7, and 21 are invalid as anticipated, and AVM's belated attempt to challenge his testimony should be rejected.

**A.     The Myers & Ivey article discloses that the evaluation transistor is inactive during the precharge phase as required by claims 6, 7, and 21.**

AVM first contends that Dr. Ivey failed to establish that the evaluation transistor (the green transistor) is "inactive" during the precharge phase, as required by claims 6, 7, and 21. D.I. 790 at 16-18. AVM points to Figure 3(b) from the Myers & Ivey article, but ignores Dr. Ivey's testimony regarding Figure 4(c), which is the figure that he relied on to establish this element and which represents the actual timing of the circuit. Contrary to AVM's assertion (*id.* at 17), Dr. Ivey's testimony regarding this limitation was far from "conclusory," and indeed, went unrebutted.

Dr. Ivey explained, using the demonstrative below, that the signal waveforms in Figure 4(c) were "actually measured from the chip itself," unlike the idealized, theoretical waveforms in Figure 3(b). D.I. 713 at 1604:5-16; DDX6.83; *see also* DTX0075 at 00004 (Fig. 4(c)).



Dr. Ivey further explained that due to "the realities of circuit design," the signals measured from the actual chip are never perfectly matched to the theoretical signals. D.I. 713 at 1604:5-24. He explained that this phenomenon—*i.e.*, the shifting of signals in actual circuits—is known as "clock skew," and that it was well-known at the time of the '547 patent. *Id.* at 1605:1-9. Dr. Ivey then relied on the clock skew shown in Figure 4(c) to establish that the evaluation transistor was "inactive" during part of the precharge clock phase (as shown by the area shaded in yellow on the right above). *Id.* at 1603:20-1604:16.[7] Though Dr. Ivey's testimony was unrebutted, AVM now complains about "the scale" on Dr. Ivey's demonstratives. D.I. 790 at 17-18.[8] But AVM was free to cross-examine Dr. Ivey on that subject during trial or present contrary testimony from its own expert. AVM did neither. AVM's after-the-fact attempt to challenge Dr. Ivey's analysis should be rejected.

      **B.    The Myers & Ivey article discloses that the precharge transistor is active during a minor portion of the evaluation phase as required by claim 21.**

AVM next asserts that there is "no teaching" in the Myers & Ivey article that the precharge transistor "turns on during any portion of the evaluation clock phase," as required by claim 21. D.I. 790 at 19. But the only testimony on this issue—Dr. Ivey's—was to the contrary. Dr. Ivey explained, citing the actual waveforms from the Myers & Ivey circuit, that the precharge transistor is "activated just during the very beginning of that Td [evaluation] period highlighted in yellow"

---

[7]    Dr. Ivey also explained that the same "clock skew" phenomenon was disclosed in the Wang article, which clearly shows a shift in the evaluation clock signal (highlighted in green) such that the evaluation transistor is inactive during the precharge clock phase (shaded in yellow). *See* D.I. 713 at 1605:10-14 (Ivey); DDX6.84; *see also* DTX0079 at 00004 (Fig. 2(b)).

[8]    The testimony that AVM cites regarding "switching transition time" is irrelevant. *See* D.I. 790 at 18. As Dr. Ivey explained (consistent with the Court's constructions), a transistor is activated once it is "switched on." D.I. 713 at 1550:13-16. Dr. Ivey applied that understanding— which was unchallenged on cross-examination—when analyzing invalidity of the asserted claims.

8

in Figure 4(c) (below on the right), thus satisfying this claim limitation. D.I. 713 at 1610:1-9.



DDX6.92; *see also* DTX0075 at 00004 (Fig. 4(c)). AVM cites no testimony—and there is none—to support its bare assertion to the contrary.

### III. Claims 4, 5, 6, 7, and 21 are also invalid as obvious.

AVM contends that Dr. Ivey's obviousness analysis for claims 4 and 5 was deficient. D.I. 784 at 19. But as Intel explained (D.I. 784 at 8-10), Dr. Ivey's testimony was more than sufficient to establish obviousness of those claims. AVM does not dispute that the Wang article supplied the one element missing from Myers & Ivey (the "anti-float circuit"). Its sole complaint—about combining the two references—rings hollow: not only was there a motivation to combine Myers & Ivey with Wang, but the teachings of the two references were ***actually combined*** in Wang. *Id.*

AVM's arguments regarding claims 6, 7, and 21 fare no better. Contrary to AVM's assertion (D.I. 790 at 19-20), Intel presented sufficient expert evidence to establish obviousness. Dr. Ivey applied the correct obviousness standard (D.I. 713 at 1541:11-1542:8), and although no explicit motivation to combine is required under *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), he testified that Wang itself shows that it would have been obvious to combine the teachings of Myers & Ivey and Wang (D.I. 713 at 1600:23-1601:5). Dr. Ivey also specifically

9

cited Wang as disclosing the "clock skew" on which he relied to show that claims 6, 7, and 21 are invalid. *E.g.*, D.I. 713 at 1605:6-21 ("Q. If we come back to … claim 6, does your article disclose either alone or in combination with Wang the final limitation? A. Yes, it does.").[9]

The ultimate conclusion of obviousness is a legal one appropriate for judgment as a matter of law. *See ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1354 (Fed. Cir. 2015). Here, the evidence clearly established that Myers & Ivey, both alone and when combined with the follow-on article by Wang, disclosed the dynamic logic circuits recited in asserted claims 6, 7, and 21. At a minimum, Dr. Ivey explained that claims 6, 7, and 21 were anticipated by the Myers & Ivey article, and "a disclosure that anticipates under § 102 also renders the claim invalid under § 103, for 'anticipation is the epitome of obviousness.'" *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983); *see also In re Baxter Travenol Labs.*, 952 F.2d 388, 391 (Fed. Cir. 1991).

## CONCLUSION

The Court should enter judgment as a matter of law that claims 1, 2, 4, 5, 6, 7, 9, and 21 of the '547 patent are invalid under 35 U.S.C. § 102 and/or § 103.

---

[9] *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1239 (Fed. Cir. 2010) ("[E]xpert testimony concerning motivation to combine may be unnecessary …."); *Cimline, Inc. v. Crafco, Inc.*, 413 F. App'x 240, 246 (Fed. Cir. 2011) ("The obviousness analysis may 'include recourse [by the factfinder] to logic, judgment, and common sense available to the person of ordinary skill that do[es] not necessarily require explication in any reference or expert opinion.'" (quoting *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009)) (alterations in original)).

|  | Respectfully submitted, |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| David C. Marcus<br>WILMER CUTLER PICKERING HALE<br>    AND DORR LLP<br>350 South Grand Avenue<br>Los Angeles, CA 90071<br>Tel: (213) 443-5300 | By: */s/ David E. Moore*<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE  19801<br>    Tel:  (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com |
| William F. Lee<br>Lauren B. Fletcher<br>Jordan L. Hirsch<br>WILMER CUTLER PICKERING HALE<br>    AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>Tel: (617) 526-6000 | *Attorneys for Defendant and Counterclaimant Intel Corporation* |

Todd Zubler
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000

Dated:  August 4, 2017
5345482 / 42223