IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVM TECHNOLOGIES, LLC,<br><br>                       Plaintiff;<br>v.<br><br>INTEL CORPORATION,<br><br>                       Defendant. | Civil Action No. 15-0033-RGA-MPT |

### MEMORANDUM

Presently before the Court are Defendant's Motion for Judgment as a Matter of Law on the Issue of Invalidity (D.I. 778) and related briefing (D.I. 784, 790, 792), and Plaintiff's Renewed Motion for Judgment as a Matter of Law or in the Alternative a New Trial on the Issue of Infringement, and for a New Trial on the Issue of Damages (D.I. 779) and related briefing (D.I. 785, 789, 793).

For the reasons that follow, the Court will **DENY** Defendant's Motion for Judgment as a Matter of Law on the Issue of Invalidity (D.I. 778), and **DENY** Plaintiff's Renewed Motion for Judgment as a Matter of Law or in the Alternative a New Trial on the Issue of Infringement, and for a New Trial on the Issue of Damages (D.I. 779).

### I. LEGAL STANDARD

#### A. Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably

1

could find liability." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).

In assessing the sufficiency of the evidence, the Court must give the nonmovant, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). The Court may "not determine the credibility of the witnesses [nor] substitute its choice for that of the jury between conflicting elements in the evidence." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984). Rather, the Court must determine whether the evidence reasonably supports the jury's verdict. *See Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995); 9B *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party.").

Where the movant bears the burden of proof, the Third Circuit applies a stricter standard. *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976). To grant judgment as a matter of law in favor of a party that bears the burden of proof on an issue, the Court "must be able to say not only that there is sufficient evidence to support the [movant's proposed] finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding." *Id.*

**B. New Trial**

Federal Rule of Civil Procedure 59(a)(1)(A) provides, in pertinent part: "The court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal

2

court . . . ." Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 584–85 (D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 289 (3d Cir. 1993). Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law—in that the Court need not view the evidence in the light most favorable to the verdict winner—a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand" or where the verdict "cries out to be overturned" or "shocks [the] conscience." *Williamson*, 926 F.2d at 1352–53.

## II. ASSERTED CLAIMS

Plaintiff asserts claims 1, 2, 4, 5, 6, 7, 9, and 21 of U.S. Patent No. 5,859,547 ("the '547 patent"). They read as follows:

1.  A dynamic logic circuit, comprising:

    a dynamic logic block;

    a precharge transistor;

    an evaluation transistor between the dynamic logic block and the precharge transistor; and

    a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors.

3

2. The dynamic logic circuit of claim 1 wherein the precharge transistor includes a gate and a source-to-drain path, and the delay is coupled to the gate of the precharge transistor.

4. The dynamic logic circuit of claim 1 including an anti-float circuit coupled to the precharge transistor.

5. The dynamic logic circuit of claim 4 wherein the anti-float circuit includes a latch.

6. The dynamic logic circuit of claim 1 wherein the precharge and evaluation transistors each include a gate and a source-to-drain path, and the dynamic logic circuit includes a clock signal node coupled to the gates of the precharge and evaluation transistors for receiving a clock signal having precharge and evaluation phases for switching the precharge transistor between an active state during the precharge phase and an inactive state during a major portion of the evaluation phase and for switching the evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase.

7. The dynamic logic circuit of claim 6 wherein the delay is coupled between the clock signal node and the gate of the precharge transistor.

9. The dynamic logic circuit of claim 1 wherein the precharge transistor is an N-channel transistor and the evaluation transistor is a P-channel transistor.

21. A method of precharging and evaluating a dynamic logic circuit, the method comprising the steps of:

   switching a precharge transistor, using a clock signal, between an active state during a precharge clock phase and an inactive state during a major portion of an evaluation clock phase;

   switching an evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase;

   delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation clock phase.

## III. DISCUSSION

### A. Judgment as a Matter of Law of Invalidity

Defendant argues that all asserted claims of the '547 patent "are invalid for anticipation and/or obviousness." (D.I. 784 at 1). Defendant's motion follows the jury verdict that all asserted claims of the '547 patent are not invalid. (D.I. 731 at 5).

#### 1. Anticipation

Defendant argues that claims 1, 2, 6, 7, 9, and 21 of the '547 patent are invalid as anticipated by the Myers & Ivey reference (M&I) (DTX0075). (D.I. 784 at 5). Defendant's argument hinges on whether what M&I labels the "hold transistor" is the claimed "evaluation transistor." (*Id.* at 1, 3). Defendant's expert conceded that if M&I's "hold transistor" is not an "evaluation transistor," then M&I does not anticipate the claims. (D.I. 713 at 1635-36, 1666-71).

I construed "evaluation transistor" to mean "a transistor that is connected to a clock signal and is used to control when the precharge node may discharge." (JX1 at 2).

Plaintiff asserts that the "hold transistor" in M&I is not an "evaluation transistor." (D.I. 790 at 1-2). M&I discloses multiple transistors. Plaintiff notes that the text of M&I refers to one of the transistors as being in the "evaluation" network, and that this transistor (which is not an "evaluation transistor" as I have construed that term) is distinct from the "hold transistor" that Defendant argues is an "evaluation transistor." (*Id.* at 12 (citing D.I. 713 at 1639, 1667, 1672)).

The parties agree that the "precharge node" may not "discharge" if the "hold transistor" in M&I is off. (D.I. 792 at 2; D.I. 790 at 11). The parties also agree that the "hold transistor" remains on for the entirety of the "precharge" and "discharge" stages. (D.I. 790 at 11 (citing D.I. 713 at 1668:7-1669:7, 1671:15-24); D.I. 784 at 12-13; D.I. 792 at 2 (MI's "hold transistor" "must first turn on for the precharge node to discharge") (emphasis omitted)). Plaintiff argues that this agreement means that M&I's "hold transistor" does not "control when the precharge

5

node may discharge." (D.I. 790 at 11). Defendant, however, argues the opposite, since the "hold transistor" is required to be on for the "precharge node" to "discharge." (D.I. 792 at 2).

Given the parties' agreement, I find that a reasonable jury could have found that M&I's "hold transistor" is not "used to control when the precharge node may discharge." Rather, its being on is a necessary precondition for the precharge node to discharge.[1]

Plaintiff argues, "The validity of claims 6-7 and 21 should be upheld for additional reasons." (D.I. 790 at 3, 16). Independent claim 6 and dependent claim 7 of the '547 patent cover "switching the evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase," and independent claim 21 covers "switching an evaluation transistor between an inactive state during the precharge clock phase and an active state during the evaluation clock phase." (PTX1, claims 6, 21).

Plaintiff notes that these limitations require that the evaluation transistor be "inactive" during the "precharge clock phase." (D.I. 790 at 16). However, argues Plaintiff, Defendant's expert Dr. Peter Ivey relied on a demonstrative exhibit modifying M&I Figure 3(b), which shows the "hold transistor," which he refers to as an "evaluation transistor," is active "during the precharge clock phase." (D.I. 790 at 16-17 (citing DDX 6.46)). Plaintiff urges that Dr. Ivey's explanation of this demonstrative's representation was "brief, conclusory, and incomprehensible." (D.I. 790 at 17).[2]

---

[1] Separately, Plaintiff argues that "the evidence established that M&I is similar to the prior art," and therefore does not anticipate the asserted claims. (D.I. 790 at 6-11). As Defendant notes, "the proper comparison for invalidity is between the asserted prior art and the claims as construed, not between the asserted prior art and other prior art." (D.I. 792 at 4 (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1252 (Fed. Cir. 2014) ("Anticipation challenges under § 102 must focus only on the limitations actually recited in the claims."))). Therefore, Plaintiff's argument does not impact my conclusion.

[2] Plaintiff also complains that Dr. Ivey "fail[ed] to describe how he determined where to draw the scale" in his demonstratives, and "did not even describe what [certain] vertical lines are supposed to represent." (D.I. 790 at 17-18). Defendant argues that Plaintiff could have cross-examined Dr. Ivey on the topic, but did not. (*Id.* at 18). Because Plaintiff did not make the scale an issue at the trial, I do not consider Plaintiff's argument.

6

In response, Defendant argues that Plaintiff "points to Figure 3(b) from the [M&I] article, but ignores Dr. Ivey's testimony regarding Figure 4(c), which is the figure that he relied on to establish this element and which represents the actual timing of the circuit." (D.I. 792 at 7). Defendant continues, "Dr. Ivey . . . relied on the clock skew shown in Figure 4(c) to establish that the evaluation transistor was 'inactive' during part of the precharge clock phase." (*Id.* at 8 (citing D.I. 713 at 1603:20-1604:16)). Defendant notes that Dr. Ivey's testimony on this issue "was unrebutted." (D.I. 792 at 8). Defendant also notes that Dr. Ivey testified that "the signal waveforms in Figure 4(c) were 'actually measured from the chip itself,' unlike the idealized, theoretical waveforms in Figure 3(b)." (*Id.* at 7 (citing D.I. 713 at 1604:5-16)).

Whether Dr. Ivey's effort to reconcile his Figure 3(b) demonstrative with his Figure 4(c) testimony was successful, or "brief, conclusory, and incomprehensible," was an issue for the jury. A reasonable jury could have found that M&I's "hold transistor" is active "during the precharge clock phase," and therefore found for Plaintiff on the issue. Or, a reasonable jury might have found Dr. Ivey's testimony less than compelling and concluded that Defendant had not proved by clear and convincing evidence that the "hold transistor" was inactive "during the precharge clock phase."

Accordingly, I will deny Defendant's Motion for Judgment as a Matter of Law on the Issue of Invalidity (D.I. 778), as to anticipation.

### 2. Obviousness

The ultimate conclusion of obviousness is a legal one appropriate for judgment as a matter of law. *See ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1354 (Fed. Cir. 2015).

7

Defendant argues that claims 4, 5, 6, 7, and 21 of the '547 patent are invalid as obvious in view of M&I alone or in combination with the Wang reference (DTX0079), which built upon M&I. (D.I. 784 at 1, 3, 8).

Plaintiff says Dr. Ivey did not actually offer an obviousness analysis for claims 6, 7, and 21. (D.I. 790 at 19). In response, Defendant merely argues,

> Here, the evidence clearly established that [M&I], both alone and when combined with . . . Wang, disclosed the dynamic logic circuits recited in asserted claims 6, 7, and 21. At a minimum, Dr. Ivey explained that claims 6, 7, and 21 were anticipated by the [M&I] article, and "a disclosure that anticipates under § 102 also renders the claim invalid under § 103, for 'anticipation is the epitome of obviousness.'" *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983).

(D.I. 792 at 10). Defendant's statement strikes me as a concession that Plaintiff is correct when it argues that Dr. Ivey did not actually provide a reasoned analysis for why claims 6, 7, and 21 would be obvious. (D.I. 790 at 19-20; D.I. 792 at 10). Dr. Ivey did testify that Wang disclosed the "clock skew," on which he relied to show that claims 6, 7, and 21 are invalid. (D.I. 792 at 10 (citing D.I. 713 at 1605:6-21)). Dr. Ivey also testified that it would have been obvious to combine Wang and M&I. (D.I. 792 at 9 (citing D.I. 713 at 1600:23-1601:55). However, the latter testimony was about claims 4 and 5, which pertain to the "anti-float circuit" limitation. Accordingly, Defendant does not point to any testimony from Dr. Ivey that claims 6, 7, and 21 are obvious. As Plaintiff notes, Dr. Ivey's "testimony for claims 6-7 and 21 did not address the differences between the claims and the art, why the combination allegedly would have been obvious in light of those differences, or where there was a motivation to combine—or any of the other factual underpinnings—required for an obviousness analysis." (D.I. 790 at 20).

Defendant also argues that claims 4 and 5 are obvious. (D.I. 792 at 9). Defendant notes, "[Plaintiff] does not dispute that the Wang article supplied the one element missing from [M&I] (the 'anti-float circuit')." (*Id.*).

8

As a preliminary matter, I find that M&I does not supply the claimed "evaluation transistor." *Supra* Section II.A.1. Defendant does not assert that another reference provides the "evaluation transistor."[3] The lack of an "evaluation transistor" in the prior art is enough to deny Defendant's motion, as to the obviousness of claims 4 and 5.

As to the "anti-float circuit" element, Plaintiff argues that Dr. Ivey "did not even attempt to explain why one of ordinary skill in the art would have been motivated to make that combination—or how the resultant circuit would look after the combination." (D.I. 790 at 19 (citing D.I. 713 at 1600-01)). Defendant responds, "[N]ot only was there a motivation to combine [M&I] with Wang, but the teachings of the two were actually combined in Wang." (D.I. 792 at 9 (citing D.I. 713 at 1599:8-1600:15)) (emphasis omitted). I need not evaluate this dispute. Because neither M&I nor Wang discloses the "evaluation transistor," I will deny Defendant's Motion for Judgment as a Matter of Law on the Issue of Invalidity (D.I. 778), as to obviousness.

## B. Judgment as a Matter of Law of Infringement

Plaintiff argues that Defendant infringes all asserted claims of the '547 patent. (D.I. 785 at 3). Defendant's motion follows the jury verdict of non-infringement. (D.I. 731 at 3).

Defendant argued one non-infringement defense at trial. The asserted independent claims require "a delay coupled to the precharge transistor for simultaneously activating the precharge and evaluation transistors" (claim 1) and "delaying the precharge clock phase to the precharge transistor so that the precharge transistor is activated during a minor portion of the evaluation

---

[3] Plaintiff further argues that the Wang reference identifies M&I's "bottom transistor" as being its only "evaluation transistor," and refers to its "middle transistor" as being a "hold transistor," not an "evaluation transistor." (D.I. 790 at 14 (citing D.I. 713 at 1638:7-10)). Plaintiff argues that Wang's labels are "strong evidence as to how a person of ordinary skill in the art would have understood each transistor's operation." (*Id.*). A reasonable jury could have found that Wang further supports a finding that no reference provides the claimed "evaluation transistor."

9

clock phase" (claim 21). I construed "for simultaneously activating" to mean "for causing to be on at the same time." (JX1 at 2).

Plaintiff argues that it "identified EOP simultaneous activation—the very same type described in the patent—in over a million [of Defendant's] circuits." (D.I. 785 at 9 (citing PTX0001, DTX0755)). "[Defendant's] own witnesses admitted that [Defendant's] delays result in the precharge transistor turning off later than when the evaluation transistor turns on, resulting in simultaneous activation," says Plaintiff. (D.I. 785 at 10 (citing D.I. 711 at 859:7-20, 962:6-16, 860:24-861:7, 963:4-13; D.I. 712 at 1268:24-1269:10, 1466:11-15, 1464:14-1465:7, 1448:20-22, 1466:6-10, 1361:23-1362:7)). Plaintiff argues that in addition to Defendant's admissions, Plaintiff's "expert provided unrebutted testimony that (1) identified the delay elements in the accused circuits; and (2) established that the amount of EOP simultaneous activation in [Defendant's] circuits is directly proportional to the amount that the precharge signal is delayed relative to the evaluation signal, which is caused by those delay elements."[4] (D.I. 785 at 11 (citing D.I. 710 at 541:9-18, 537:1-10, 550:4-551:16, 570:13-571:5)) (emphasis omitted).

Defendant responds that the accused "delay" is not "for causing" simultaneous activation of the precharge and evaluation transistors, but rather is "for reducing" simultaneous activation. (D.I. 789 at 5). Defendant summarizes the testimony of its expert, Dr. Vivek Subramanian, as providing that "because the path to the evaluation transistor also includes a delay, the accused 'delay' on the path to the precharge transistor does not cause a mismatch in signal timing, but instead reduces the preexisting mismatch in timing." (D.I. 789 at 4-5 (citing D.I. 712 at 1442:6-1450:4)). Dr. Subramanian further testified, "If I were to take out a delay in what [Plaintiff] says

---

[4] In its briefing, Plaintiff uses "EOP" to mean "end of precharge." Plaintiff uses "SOP" to mean "start of precharge." (D.I. 785 at 3).

10

is the delay in [Defendant's] parts, when I add them in, it actually reduces overlap, not causes it." (D.I. 712 at 1403:15-22).

Plaintiff argues that Defendant's non-infringement defense is improperly based on intent. Plaintiff argues that Defendant's "non-infringement defense was based on design goals" in that Defendant "focused . . . not on what its circuits do, but instead on why [Defendant] includes delay in its circuits." (D.I. 785 at 12). Intent is not an element of direct infringement, and "[a]ccidental or 'innocent' infringement is still infringement." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1523 (Fed. Cir. 1995).

Plaintiff is correct that if Defendant were to proffer a non-infringement defense based on "design goals," that defense would be improper. I previously recognized that "design goals" and "intent" are essentially the same. (D.I. 637 at 4). I noted that Defendant's "design goals" evidence might be relevant to damages and indirect infringement, but is not relevant to direct infringement.[5] (*Id.*).

However, Defendant's non-infringement defense is based neither on intent nor on "design goals." As Defendant argues, "Dr. Subramanian's infringement analysis was based on circuit function, not the intent of [Defendant's] engineers." (D.I. 789 at 7). My construction requires that an infringing delay be "for causing simultaneous activation." Defendant's expert testified that Defendant's accused delay is not "for causing simultaneous activation," because its physical effect is reducing simultaneous activation. (D.I. 712 at 1403:15-22). Furthermore, the jury was repeatedly told by experts, counsel, and me not to consider intent when deciding infringement. (D.I. 789 at 7-9 (citing D.I. 709 at 232:23-233:4; D.I. 712 at 1467:12-17, 1469:5-9); D.I. 722 at 1919:12-13).

---

[5] Plaintiff later took indirect infringement out of the case.

11

Accordingly, I find that Defendant presented evidence that could have led a reasonable jury to find that the accused delay is not "for causing" simultaneous activation.

Separately, Defendant argues that Plaintiff "raises for the first time in its Rule 50(b) motion a new argument that Defendant's non-infringement defense focused on the wrong type of simultaneous activation—SOP (start-of-precharge) rather than EOP (end-of-precharge) contention." (D.I. 789 at 10).

Substantively, Defendant argues, "Intel documents . . . indicate that [Defendant] used techniques to avoid both EOP and SOP contention." (D.I. 789 at 10 (citing PTX330.00073, .00077; DTX755.00078-.00079)). Defendant also notes, "Dr. Subramanian never said that his analysis was limited to SOP contention," and argues that his analysis was not so limited. (D.I. 789 at 10 (citing D.I. 712 at 1445:23-1450:4, 1400:19-1403:22)). Notably, Defendant points out that Plaintiff "did not cross-examine Dr. Subramanian on the difference between EOP and SOP contention," the technical distinction on which Plaintiff now relies. (D.I. 789 at 11).[6] Plaintiff argues that certain evidence about ways to remove contention from the accused circuits implies "[b]y logical necessity" that the accused delay elements cause EOP simultaneous activation. (D.I. 785 at 9 (citing D.I. 712 at 1361:23-1362:7, 1170:9-13; D.I. 711 at 963:4-13, 860:24-861:7)). However, Defendant responds that its "witnesses testified that there are many techniques to reduce contention in [Defendant's] circuits," and "[t]hese techniques involve multiple, different changes to transistors on the precharge path, the wordline path, or both paths in [Defendant's] complex circuit designs and do not imply—much less compel the conclusion— that the accused delays cause [EOP] simultaneous activation." (D.I. 789 at 10 (citing D.I. 712 at 1361:23-1362:7, 1170:9-13; D.I. 711 at 963:4-13, 860:24-861:7)). A reasonable jury could have

---

[6] Plaintiff does not respond to this argument in its reply brief, thereby conceding that it did not conduct any such line of cross-examination. (*See generally* D.I. 793).

12

agreed with Defendant's characterization of the implications of the techniques described by its witnesses. Therefore, I find that Defendant presented sufficient evidence for a reasonable jury to find non-infringement, whether considering EOP or SOP contention.

Procedurally, Defendant argues that Plaintiff waived its EOP/SOP argument. (D.I. 789 at 12). A renewed post-verdict JMOL motion under Federal Rule of Civil Procedure Rule 50(b) "may not be made on grounds not included in the earlier [Rule 50(a)] motion." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1105 (Fed. Cir. 2003). Plaintiff argues that its "JMOL infringement motion directly implicated [Defendant's] non-infringement argument, including EOP/SOP simultaneous activation." (D.I. 793 at 8 (citing D.I. 713 at 1785; D.I. 717 at 2-4)). Plaintiff also notes, "[T]he evidence regarding the distinction between EOP/SOP simultaneous activation is in the record." (D.I. 793 at 8 (citing PTX0330 at 77; DTX755.78-79)). However, Plaintiff does not point to anything in its Rule 50(a) motion about the EOP/SOP distinction, as is required by Rule 50(b). (D.I. 793 at 8). Accordingly, I agree with Defendant that Plaintiff waived its EOP/SOP argument.

Thus, Plaintiff's EOP/SOP argument not only has no substantive merit, but it was also waived.

I will deny Plaintiff's Renewed Motion for Judgment as a Matter of Law on the Issues of Infringement and Damages (D.I. 779).[7,8]

---

[7] Plaintiff argues that Defendant's defense under the reverse doctrine of equivalents, *see SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123-24 (Fed. Cir. 1985), fails as a matter of law. (D.I. 785 at 16). Given the jury's finding of no literal infringement, the issue is moot, and I therefore do not consider it in deciding Plaintiff's motion.

[8] In the pretrial stipulation, Defendant conceded that it uses each accused product in the United States. (D.I. 676 at ¶ 18). Accordingly, I reject Defendant's invitation to deny Plaintiff's Motion for Judgment as a Matter of Law on Infringement with respect to method claim 21 on grounds that Plaintiff "failed to prove that [Defendant] used each accused product in the United States." (D.I. 789 at 13).

## C. New Trial on the Issues of Infringement and Damages

Plaintiff argues that even if none of the issues it raises justifies JMOL of infringement, a new trial is still proper. Plaintiff argues that two separate grounds justify a new trial.

First, Plaintiff argues, "[E]ven if none of the issues raised ... would justify JMOL, new trial is proper because there is compelling evidence that the jury was not able to draw the distinction the Court felt was appropriate that design purpose was relevant for damages but not relevant for direct infringement." (D.I. 785 at 17-18 (citing D.I. 722 at 2002:23-2003:3, 1999:6-19; D.I. 712 at 1207:22-1208:2)). Plaintiff "submits that the Court should not have allowed any testimony on design purpose, and that it should also not have allowed testimony on previous [Defendant] designs that were not accused of infringement and were not identified as invalidating prior art." (D.I. 785 at 18).

Defendant responds that it was Plaintiff "that made [Defendant's] intent an issue at trial—in terms of [Defendant's] design goals for the accused product and previous designs—and [Defendant] properly rebutted [Plaintiff's] incorrect assertions regarding that issue." (D.I. 789 at 16). For example, says Defendant, Plaintiff "argued that [Defendant's] design purpose was to increase contention in its products and was shown by increasing amounts of 'allowed' contention in later products." (D.I. 789 at 16 n.7 (citing D.I. 709 at 163:5-8)). Plaintiff "cannot complain of an alleged error based on evidence relevant to an issue [Plaintiff] opened the door to," argues Defendant. (*Id.*). On a substantive note, Defendant argues, "[T]his is no different from [Plaintiff's] argument that [Defendant] asserted a 'lack of intent' non-infringement defense." (D.I. 789 at 16).

Before trial, I ruled that testimony about "design goals" would be allowed, because that testimony was relevant to damages. (D.I. 637 at 4). Plaintiff has proffered no evidence indicating that ruling was an abuse of discretion. Rather, Plaintiff's arguments amount to a re-

14

hash of its "intent" argument in support of its Motion for Judgment as a Matter of Law of Infringement. There, I note that the jury was repeatedly told not to consider intent when making its direct infringement determination, and find that Defendant presented non-intent-based evidence that could have led a jury to reasonably reach a conclusion of no direct infringement. *Supra* Section II.B. Furthermore, Plaintiff itself relied on testimony about "design goals." (D.I. 709 at 163:5-8). Plaintiff cannot have it both ways and receive a new trial because "design goals" testimony was permitted. Accordingly, I will deny Plaintiff's Renewed Motion for a New Trial on the Issues of Infringement and Damages (D.I. 779), as to design goals.[9]

Second, Plaintiff argues, "[A] new trial is required based on the Court's evidentiary rulings." (D.I. 785 at 18). Namely, Plaintiff notes that it "attempted to enter into evidence the summary data on all of the simulations Dr. [Marwan] Hassoun used to determine infringement of each of the accused circuits" as a "summary" under Federal Rule of Evidence 1006. (D.I. 785 at 18 (citing D.I. 710 at 380:22-382:3)). The document consisted of 350 pages of computer printouts containing separate lines of data for approximately 42,000 individual circuits. (D.I. 789 at 17 (citing D.I. 785, Exh. 1)). I ruled against the admission of the evidence because it was too voluminous and was not something a jury could use. (D.I. 710 at 381:18-23). Nonetheless, I ultimately allowed Plaintiff to show the exhibit to the jury to demonstrate its thickness, which, at the time, seemed to satisfy Plaintiff. (D.I. 710 at 381:24-382:11).

Before returning a verdict of non-infringement, the jury asked a question: "Were Dr. Hassoun's simulations admitted as evidence? If so, where, (exhibit number)." (D.I. 724 at 2074:7-9). I responded, "Dr. Hassoun testified about his simulations, but there is no exhibit entered into evidence with the simulations." (*Id.* at 2078:4-5).

---

[9] It is unclear whether or where Plaintiff preserved this argument. However, given my conclusion, I need not address the issue of preservation.

15

Plaintiff says the jury's question amounts to "clear and persuasive evidence that the absence of simulation data in the record had a profound impact on the jury's decision making." (D.I. 785 at 19).

Defendant disputes that the jury was actually requesting the proposed exhibit. Defendant represents that the voluminous document relates to Defendant's "PV data," which it characterizes as distinct from the "simulations performed by . . . Dr. Hassoun." (D.I. 789 at 16). Dr. Hassoun testified at trial about his simulations of eight individual circuits, and how those circuits would purportedly perform if "contention" were removed. (D.I. 710 at 606:11-18).

I need not resolve Defendant's argument that "PV data" and "simulations" are distinct pieces of evidence. Even assuming the jury was requesting the proposed exhibit, Plaintiff asserted that the "primary" purpose of the proposed exhibit was "to illustrate to the jury how complicated and complex" the simulations were. (D.I. 710 at 381:13-382:11). Plaintiff was permitted to use the document for that purpose, without admitting it into evidence. (*Id.*). The document comprised 350 pages solely filled with data, which would not have been of any use to the jury as a summary. (D.I. 785, Exh. 1). The jury's question does not change this assessment. Accordingly, Plaintiff has not identified any error in the evidentiary ruling, and has not identified any harm or substantial right that was affected by the evidentiary ruling. I will deny Plaintiff's Renewed Motion for a New Trial on the Issues of Infringement and Damages (D.I. 779), as to my evidentiary rulings.

Because I deny Plaintiff's Motion for a New Trial on infringement in full, Plaintiff's request for a new trial on damages (D.I. 785 at 20) is moot.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment as a Matter of Law on the Issue of Invalidity (D.I. 778) is **DENIED**, and Plaintiff's Renewed Motion for Judgment as a

16

Matter of Law or in the Alternative a New Trial on the Issues of Infringement and Damages (D.I. 779) is **DENIED.**

A separate order to this effect will be entered.

_____
United States District Judge